Robert V. Prongay (SBN 270796)
  rprongay@glancylaw.com
Charles H. Linehan (SBN 307439)
  clinehan@glancylaw.com
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Plaintiff Casey McIntosh*

[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL J. BUTALA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>OWLET, INC. f/k/a SANDBRIDGE ACQUISITION CORPORATION, KURT WORKMAN, KATE SCOLNICK, KEN SUSLOW, DOMENICO DE SOLE, RAMEZ TOUBASSY, JAMIE WEINSTEIN, KRYSTAL KAHLER, and MICHAEL F. GOSS,<br><br>Defendants. | Case No. 2:21-cv-09016-FLA-JEM<br><br>**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF CASEY MCINTOSH FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL** |
| JONES CHERIAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>OWLET, INC. f/k/a SANDBRIDGE ACQUISITION CORPORATION, KURT WORKMAN, KATE SCOLNICK, KEN SUSLOW, DOMENICO DE SOLE, RAMEZ TOUBASSY, JAMIE WEINSTEIN, KRYSTAL KAHLER, and MICHAEL F. GOSS,<br><br>Defendants. | Case No. 2:21-cv-09293-RGK-AGR |

Casey McIntosh ("McIntosh") respectfully submits this memorandum of law in support of his motion to consolidate the above-captioned actions, to appoint McIntosh as Lead Plaintiff, and to approve Glancy Prongay & Murray LLP ("GPM") as Lead Counsel pursuant to Section 21D of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 (15 U.S.C. § 78u-4), on behalf of a putative class (the "Class") of all persons and entities that: (a) purchased or otherwise acquired Owlet, Inc. ("Owlet" or the "Company") f/k/a Sandbridge Acquisition Corporation ("Sandbridge") securities between March 31, 2021 and October 4, 2021, inclusive (the "Class Period"); and/or (b) held Sandbridge common stock as of June 1, 2021 and were eligible to vote at Sandbridge's special meeting on July 14, 2021.

## I.     PRELIMINARY STATEMENT

The Private Securities Litigation Reform Act of 1995 ("PSLRA") provides that the Court shall appoint the "most adequate plaintiff"—the plaintiff most capable of adequately representing the interests of Class members—as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B). Pursuant to the PSLRA, the plaintiff or movant with the largest financial interest in the relief sought by the Class who otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") is presumed to be the most adequate plaintiff. This motion is made on the grounds that McIntosh is the "most adequate plaintiff" as defined by the PSLRA.

McIntosh has "the largest financial interest in the relief sought by the class" as a result of Defendants' wrongful conduct as alleged in this action. In addition, for purposes of this motion, McIntosh satisfies the relevant requirements of Rule 23, as his claims are typical of other Class members' claims, and he is committed to fairly and adequately representing the interests of the Class. Thus, pursuant to the PSLRA's lead plaintiff provision, McIntosh respectfully submits that he is the presumptively the most adequate plaintiff and should be appointed as lead plaintiff for the Class. Additionally, McIntosh's selection of GPM as Lead Counsel for the Class should be

approved because the firm has substantial expertise in securities class action litigation and the experience and resources to efficiently prosecute this action.

## II.     FACTUAL BACKGROUND

Sandbridge was a special purpose acquisition company formed for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization, or similar business combination with one or more businesses. On July 15, 2021, Sandbridge combined with Owlet Baby Care Inc., a company that designs and sells products and services for parents to proactively monitor the health and wellness of their children, and the combined company was renamed Owlet (the "Business Combination").

Owlet's flagship product is "Smart Sock," a baby monitor that allows parents to track an infant's oxygen levels, heart rate, and sleep trends in real time using the Owlet application. On October 4, 2021, Owlet revealed that it had received a warning letter from the U.S. Food and Drug Administration ("FDA"), stating that "the Company's marketing of its Owlet Smart Sock product . . . renders [it] a medical device requiring premarket clearance or approval from FDA." Owlet has not obtained such clearance or approval. Moreover, the FDA requested that Owlet "cease commercial distribution of the Smart Sock for uses in measuring blood oxygen saturation and pulse rate where such metrics are intended to identify or diagnose desaturation and bradycardia using an alarm functionality to notify users that measurements are outside of preset values."

On this news, Owlet's stock price fell $1.29, or 23%, to close at $4.19 per share on October 4, 2021, on unusually heavy trading volume, injuring investors. The price decline, moreover, harmed Sandbridge investors who could have voted against the Business Combination and redeemed their shares at $10.00 per share.

The complaints in this action allege that the Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects throughout the Class Period.

Specifically, the complaints allege that the Defendants failed to disclose to investors: (1) that Owlet was reasonably likely to be required to obtain marketing authorization for the Smart Sock because the FDA concluded it was a medical device; (2) that, as a result, Owlet was reasonably likely to cease commercial distribution of the Smart Sock in the U.S. until it obtained the requisite approval; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities during the Class Period, members of the Class have suffered significant losses and damages.

## III.    PROCEDURAL HISTORY

On November 17, 2021, Plaintiff Michael J. Butala commenced the first-filed securities class action against Owlet and certain of its officers, captioned *Butala v. Owlet, Inc. et al*, Case No. 2:21-cv-09016-FLA-JEM (the "*Butala* Action).

On November 30, 2021, Plaintiff Jones Cherian filed a substantially identical class action, captioned *Cherian v. Owlet, Inc. et al*, Case No. 2:21-cv-09293-RGK-AGR (the "*Cherian* Action," and together with the *Butala* Action, the "Related Actions").

## IV.    ARGUMENT

### A.    The Related Actions Should Be Consolidated

Consolidation of related cases is appropriate where, as here, the actions involve common questions of law and fact, and therefore, consolidation would avoid unnecessary cost, delay, and overlap in adjudication. *See* Fed. R. Civ. P. 42(a); *see also Russo v. Finisar Corp.*, No. 11-cv-1252, 2011 WL 5117560, at *3 (N.D. Cal. Oct. 27, 2011) (noting that "actions [that] present virtually identical factual and legal issues . . . should be consolidated").

Each of the Related Actions presents similar factual and legal issues, as they all involve the same subject matter and present substantially identical legal issues. Each action alleges violations of the Exchange Act, each presents the same theories for recovery, and each is based on the same allegedly wrongful course of conduct. Because these actions arise from the same facts and circumstances and involve the same subject matter, consolidation of these cases under Federal Rule of Civil Procedure 42(a) is appropriate. *See Weisz v. Calpine Corp.*, No. 4:02-cv-1200, 2002 WL 32818827, at \*2-3 (N.D. Cal. Aug. 19, 2002) (consolidating cases).

**B.     McIntosh Should Be Appointed Lead Plaintiff**

The PSLRA provides the procedure for selecting a lead plaintiff in class actions brought under the federal securities laws. The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff"—*i.e.*, the plaintiff most capable of adequately representing the interests of the Class—is the person or group that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Waterford Twp. Police v. Mattel, Inc.*, 2017 WL 10667732, at \*3 (C.D. Cal. Sept. 29, 2017).

The presumption in favor of appointing a plaintiff or group of plaintiffs as lead plaintiff may be rebutted only upon proof "by a purported member of the plaintiff class" that the presumptively most adequate plaintiff:

(aa)    will not fairly and adequately protect the interest of the class; or

(bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(b)(iii)(II).

As set forth below, McIntosh has complied with all the PSLRA's requirements and satisfies all of the PSLRA criteria to be appointed lead plaintiff. McIntosh, to the

best of his knowledge, has the largest financial interest in this litigation, satisfies the relevant requirements of Rule 23, and is not aware of any unique defenses defendants could raise against him that would render him inadequate to represent the Class. Accordingly, McIntosh respectfully submit that he should be appointed lead plaintiff. *See In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) ("If the plaintiff with the largest financial stake in the controversy provides information that satisfies these requirements, he becomes the presumptively most adequate plaintiff").

### 1. McIntosh Filed A Timely Motion

On July 15, 2021, notice was published in connection with the *Butala* Action pursuant to Section 21D(a)(3)(A) of the PSLRA, 15 U.S.C. § 78u-4(a)(3)(A). *See* Declaration of Charles H. Linehan in Support of the Motion of Casey McIntosh for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Lead Counsel ("Linehan Decl."), Ex. A. Therefore, McIntosh had sixty days (*i.e.*, until January 18, 2022), to file a motion to be appointed as Lead Plaintiff. Because he acquired Owlet securities during the Class Period pursuant to the Business Combination, McIntosh is a member of the proposed class and has timely filed a motion for appointment as lead plaintiff within sixty days of the notice in compliance with the first PSLRA requirement. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa).

Additionally, as set forth in his PSLRA certification, McIntosh attests that he has reviewed the complaint, adopts the allegations therein, and is willing to serve as a representative of the Class. Linehan Decl., Ex. B. Accordingly, McIntosh satisfies the first requirement to serve as Lead Plaintiff for the class.

### 2. McIntosh Has The Largest Financial Interest In The Relief Sought By The Class

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii) (emphasis added); *In re Gemstar-TV Guide Int'l. Sec. Litig.*, 209 F.R.D. 447, 450 (C.D. Cal.

2002). At the time of this filing, McIntosh believes that he has the largest financial interest among Class members who filed timely applications for appointment as lead plaintiff and accordingly is presumed to be the "most adequate plaintiff."

McIntosh acquired Owlet securities during the Class Period at prices alleged to be artificially inflated by Defendants' misstatements and omissions and, as a result, suffered financial harm. *See* Linehan Decl., Ex. C. To the best of his knowledge, McIntosh is not aware of any other Class member that has filed a motion for appointment as lead plaintiff who claims a larger financial interest. As such, McIntosh believes he has the "largest financial interest in the relief sought by the Class," and thus satisfies the second PSLRA requirement to be appointed as lead plaintiff for the Class.

### 3. McIntosh Satisfies The Requirement Of Rule 23 Of The Federal Rules Of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See Cavanaugh*, 306 F.3d at 729-30. Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a).

In making its determination that putative lead plaintiffs satisfy the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead, a *prima facie* showing that the movants satisfy the requirements of Rule 23 is sufficient. *Osher v. Guess? Inc.*, No. 01-cv-00871, 2001 WL 861694, at *3 (C.D. Cal. Apr. 26, 2001). At the lead plaintiff stage, "[t]he typicality and adequacy requirements of Rule 23 are the main focus" and "[e]xamination of the remaining requirements [of Rule 23] are deferred until the lead

plaintiff moves for class certification." *Richardson v. TVIA*, No. 06-cv-06304 RMW, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007) (citing *Cavanaugh*, 306 F.3d at 730)); *In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001) ("The initial inquiry . . . should be confined to determining whether the movant has made a *prima facie* showing of typicality and adequacy").

### a) McIntosh's Claims Are Typical

Rule 23(a)(3) of the Federal Rules of Civil Procedure requires that, "the claims . . . of the representative parties" be "typical of the claims . . . of the class." A proposed lead plaintiff's claims are typical of the class when the proposed lead plaintiff's claims and injuries arise from the same events or course of conduct that gives rise to other class members' claims and plaintiff's claims are based on the same legal theory. *See Osher*, 2001 WL 861694, at *4. Under Rule 23 a lead plaintiff's, "claims are typical 'if he is reasonably coextensive with those of the absent class members; they need not be substantially identical.'" *Id*. (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)).

Here, McIntosh's claims are typical of the claims asserted by the proposed Class. Like all members of the Class, McIntosh suffered losses as a result of his Owlet transactions during the Class Period. Like all members of the Class, McIntosh alleges that the Defendants violated federal securities laws by disseminating materially misleading statements concerning Owlet's operations and financial prospects. McIntosh's losses, like the losses suffered by all other members of the Class, arise from the artificial inflation of Owlet's stock price caused by the Defendants' alleged misrepresentations and omissions. Accordingly, McIntosh's interests and claims are typical of the interests and claims of the Class.

### b) McIntosh Is An Adequate Representative

The Rule 23(a)(4) adequacy requirement is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." Accordingly,

The Ninth Circuit has held that representation is "adequate" when counsel for the class is qualified and competent, the representative's interests are not antagonistic to the interests of absent class members, and it is unlikely that the action is collusive.

*Takeda v. Turbodyne Techs., Inc.,* 67 F. Supp. 2d 1129, 1137 (C.D. Cal. 1999) (citing *In re Northern Dist. of Cal., Dalkon Shield IUD Prod. Liab. Litig.,* 693 F.2d 847, 855 (9th Cir. 1982)).

The class representative must also have "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Yanek v. Staar Surgical Co.*, No. 04-cv-8007, 2004 WL 5574358, at *6 (C.D. Cal. Dec. 15, 2004).

Here, McIntosh easily satisfies the adequacy requirements. McIntosh's financial interest demonstrates that he has sufficient incentive to ensure vigorous advocacy, and "no evidence exists to suggest that [McIntosh is] antagonistic to other members of the class or his attorneys, thereby meeting the adequacy of representation requirement." *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1071 (C.D. Cal. 1999) (citation omitted). McIntosh resides in Josephine County, Oregon. McIntosh is a software executive and has been managing his own investment portfolio for approximately 20 years. Moreover, McIntosh has retained competent and experienced counsel with the resources and expertise to efficiently and effectively prosecute this action. *See* Linehan Decl., Ex. D (GPM firm résumé). In addition, McIntosh is not aware of any conflict between his claims and those asserted on behalf of the Class. As such, McIntosh is adequate to represent the Class.

**C.    The Court Should Approve Lead Plaintiff's Choice Of Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Yanek*, 2004 WL 5574358, at *7. The Court should not disturb the lead plaintiff's choice of counsel unless it is "necessary to protect the interests of the class." *Osher*, 2001 WL 861694, at *4 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)). Here, McIntosh has retained GPM to pursue this litigation on his behalf and will retain the firm as lead counsel in

the event McIntosh is appointed as lead plaintiff. As reflected by the firm's résumé, attached to the Linehan Declaration as Exhibit D, the Court may be assured that, by granting McIntosh's motion, the Class will receive the highest caliber of legal representation. Accordingly, the Court should approve McIntosh's selection of counsel.

## V.    CONCLUSION

For the foregoing reasons, Casey McIntosh respectfully asks the Court to grant his Motion and enter an Order: (1) consolidating the Related Actions; (2) appointing McIntosh as Lead Plaintiff; (3) approving Glancy Prongay & Murray LLP as Lead Counsel for the Class; and (4) granting such other and further relief as the Court may deem just and proper.

DATED:  January 18, 2022

**GLANCY PRONGAY & MURRAY LLP**

By:    *s/ Charles H. Linehan*

Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
Email:  clinehan@glancylaw.com

*Counsel for Plaintiffs Casey McIntosh and
Proposed Lead Counsel for the Class*

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007
Email: fcruz@frankcruzlaw.com

*Additional Counsel*

**<u>PROOF OF SERVICE BY ELECTRONIC POSTING</u>**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old. On January 18, 2022, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 18, 2022, at Los Angeles, California.

*s/ Charles H. Linehan*
Charles H. Linehan