ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS (259916)
JENNIFER N. CARINGAL (286197)
MICHAEL ALBERT (301120)
JUAN CARLOS SANCHEZ (301834)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
jcaringal@rgrdlaw.com
malbert@rgrdlaw.com
jsanchez@rgrdlaw.com

[Proposed] Lead Counsel for [Proposed] Lead Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL J. BUTALA, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> OWLET, INC. f/k/a SANDBRIDGE ACQUISITION CORPORATION, et al., <br><br> Defendants. | Case No. 2:21-cv-09016-FLA(JEMx) <br><br> <u>CLASS ACTION</u> <br><br> CHRISTOPHER J. SIMMONS' RESPONSE TO COMPETING LEAD PLAINTIFF MOTIONS <br><br> DATE: March 18, 2022 <br> TIME: 1:30 p.m. <br> CTRM: 6B <br> JUDGE: Hon. Fernando L. Aenlle-Rocha |

4875-2305-5633.v1

Four movants timely filed motions in this case seeking appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"):

| Movant | Claimed Financial Interest |
|---|---|
| Casey McIntosh | $548,842.69 |
| Dr. Thomas E. Tweito | $8,717.08 |
| Christopher J. Simmons | $8,609.47 |
| Drew Conant | $918.35 |

*See* ECF Nos. 10, 13, 17, 21.

The PSLRA provides that the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). The "'most capable' plaintiff – and hence the lead plaintiff – is the one who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of [Federal Rule of Civil Procedure] 23." *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002).[1] If that movant does not meet the typicality and adequacy requirements, "the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23." *Id.* at 730; *see Farhar v. Ontrak, Inc.*, 2021 WL 2980589, at *4 (C.D. Cal. July 13, 2021) ("While Kraus may have the largest financial interest, he is not a typical plaintiff under Fed. R. Civ. P. 23 because he . . . . may be subject to unique defenses.").

Here while Mr. McIntosh claims to have suffered nearly $550,000 in losses, he cannot be appointed lead plaintiff because he acquired ***all*** of his Owlet, Inc. ("Owlet") shares in a private stock-for-stock exchange of his Owlet Baby Care, Inc. ("OBC") private shares. *See* ECF No. 23-3 at 2 ("***On July 16, 2021, 106,306 shares of Owlet, Inc. (OWLT) were acquired from 51,776 private shares of Owlet Baby Care, Inc.***

---

[1] Unless otherwise noted herein, all emphasis is added and citations and footnotes are omitted.

- 1 -

4875-2305-5633.v1

*pursuant to the Business Combination*.”).  As such, Mr. McIntosh may be subject to unique reliance and damages defenses.  *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1029-30 (N.D. Cal. 1999) (denying lead plaintiff motion by investor who acquired its shares through a merger transaction); *In re Peregrine Sys., Inc. Sec. Litig.*, 2002 WL 32769239, at *5 (S.D. Cal. Oct. 11, 2002) (same); *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1110-11 (N.D. Cal. 2001) (same).

The fact that Mr. McIntosh acquired his Owlet shares through a private transaction involving his “private shares of [OBC],” (ECF No. 23-3 at 2), rather than purchasing Owlet shares on the open market “invites lengthy litigation both at the class certification stage and thereafter of whether that plaintiff is subject to unique defenses.”  *Critical Path*, 156 F. Supp. 2d at 1110-11.  The plethora of unknowns surrounding: (1) how, when, and at what price Mr. McIntosh obtained his **OBC** shares; (2) what non-public information about OBC was known to Mr. McIntosh in connection with the exchange of his OBC shares for Owlet shares; and (3) the non-typical terms at which he obtained his Owlet shares, not only exposes Mr. McIntosh to unique defenses, but will necessarily impose costs and other burdens on the class at every stage of the litigation.  “Certainly the Court should not appoint as lead plaintiff one whose appointment will invite scrutiny of the details of a private transaction.” *Id.*; *see also Peregrine*, 2002 WL 32769239, at *7 (“The exact financial knowledge held by these individuals at the time they acquired their shares will no doubt be fleshed out during discovery and issues unique to the Group raised at that time.  Those issues loom too large for the court to determine at this preliminary stage that the Remedy Group is able to adequately represent the interests of the remaining class members.”). For this reason alone, Mr. McIntosh cannot be appointed lead plaintiff.

Moreover, Mr. McIntosh’s stock-for-stock exchange undermines his ability to invoke the fraud-on-the-market presumption of reliance,[2] a central element of the

---

[2]    *Basic Inc. v. Levinson*, 485 U.S. 224, 247, 108 S. Ct. 978, 99 L. Ed. 2d 194 (1988) (“An investor who buys or sells stock at the price set by the market does so in

- 2 -

class's §10(b) claim. "All modern securities cases are premised on the fraud-on-the-market presumption adopted by a plurality in *Basic* . . . a presumption that will not be applied when the efficient-market assumption is inapplicable." *Network Assocs.*, 76 F. Supp. 2d at 1029-30. "Any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance." *Basic*, 485 U.S. at 248. If he were appointed, defendants would certainly exploit the details (as well as the unknowns) underlying Mr. McIntosh's private acquisition of both his OBC shares and his Owlet shares to undermine Mr. McIntosh's ability to invoke the fraud-on-the-market presumption on behalf of the class. For example, defendants are likely to argue that Mr. McIntosh did not rely on the market price of Owlet securities during the Class Period because he acquired his Owlet shares in a privately-negotiated stock-for-stock exchange rather than in the open market. The terms of the stock-for-stock exchange appear to have prohibited Mr. McIntosh from selling any of his Owlet shares for 18 months following the July 15, 2021 close of the Business Combination.[3] In other words, defendants will argue that even if Mr. McIntosh was aware of the allegedly-undisclosed facts prior to the October 4, 2021 revelation, he would have still been contractually obligated to hold his shares, regardless of the market price. This is precisely the sort of atypical circumstances that can "sever[] the link between the alleged misrepresentation and . . . his decision to

---

reliance on the integrity of that price. Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations, therefore, may be presumed for purposes of a Rule 10b-5 action.").

[3]    *See* https://www.sec.gov/Archives/edgar/data/0001816708/000114036121021726/ nt10020073x24_424b3.htm ("***The holders of New Owlet common stock issued as consideration pursuant to the Business Combination*** or to directors, officers and employees of New Owlet upon settlement or exercise of stock options or other equity awards outstanding as of immediately prior to the closing of the Business Combination (collectively, the "Lock-up Shares") ***may not transfer, subject to certain limited exceptions, any Lock-up Shares for 18 months after the consummation of the Business Combination***.").

- 3 -

4875-2305-5633.v1

trade at a fair market price." *Basic*, 485 U.S. at 248; *see also Network Assocs.*, 76 F. Supp. 2d at 1029-30 (declining to appoint as lead plaintiff whose "acquisition of . . . securities was not in open-market transactions but via a merger" because it "would be encumbered with the unique question whether it acquired its Network shares on better terms than the investing public and not fully in reliance on the market price").

Finally, Mr. McIntosh cannot serve as lead plaintiff because he will be subject to the unique defense that he benefitted from the same Business Combination that the Complaint alleges to have defrauded other class members.   ECF No. 1 at ¶6 ("Sandbridge investors who could have voted against the Business Combination and redeemed their shares at $10.00 per share suffered a loss of $5.81 per share.").  While Sandbridge investors allege that the undisclosed facts surrounding OBC's Smart Sock product resulted in them overpaying for OBC to the tune of $5.81 per share, Mr. McIntosh was arguably ***enriched*** by the alleged fraud precisely because it enabled the Business Combination to be effectuated, causing Mr. McIntosh's "51,776 private shares of [OBC]" (which shares the Sandbridge investors allege were already tainted with fraud) to be exchanged for more than they would have been worth if not for the fraud.  *See* ECF No. 23-3 at 2.  Under analogous circumstances in *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 998-99 (N.D. Cal. 1999), Judge Whyte "confess[ed] a certain degree of unease with the notion that holders of [OBC] stock are entitled to damages:"

> In particular, HBOC shareholders who purchased before the alleged fraud took place appear to have suffered no real economic loss.  Their shares were inflated due to fraud after they had purchased them, and they acquired McKesson HBOC at a discount because of that fraud. . . .  At worst, the allegedly false registration statements may have lulled some HBOC shareholders into holding their stock instead of cashing in on the fraud inflation.

*Id.*

- 4 -

4875-2305-5633.v1

Mr. McIntosh's claim that he was damaged like all other class members does not stand up to reason.  Like the movant in *McKesson HBOC*, Mr. McIntosh received the benefit from defendants' fraud when his 51,776 private shares of OBC were exchanged for Owlet shares on more favorable terms than they would have been if the truth regarding OBC's Smart Sock product were known to the public.[4]  "This hardly seems like a sympathetic case for damages."  *Id.*

In sum, Mr. McIntosh's acquisition of Owlet shares as a result of a private stock-for-stock transaction renders him atypical of the class and subjects him to unique defenses.

With Mr. McIntosh out of the running, Dr. Thomas E. Tweito and Christopher J. Simmons are the movants with the next largest financial interests.  Dr. Tweito and Mr. Simmons' financial interests are roughly equal: Dr. Tweito claims only $109 more in losses than Mr. Simmons, a difference of 1.2%.  In similar situations, courts have appointed more than one investor as lead plaintiff when there are "'two or more smaller investors with roughly equal interests [and] no plaintiff with a significantly larger interest than all other plaintiffs.'"  *In re Baan Co. Sec. Litig.*, 271 F. Supp. 2d 3, 13 (D.D.C. 2002); *Piven v. Sykes Enters., Inc.*, 137 F. Supp. 2d 1295, 1303 (M.D. Fla. 2000) ( "[C]o-lead plaintiffs might be appropriate in cases where . . . two smaller [non-institutional] investors with equal losses exist in the absence of a plaintiff with a larger interest."); *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 549-50 (N.D. Tex. 1997) ("Co-Lead Plaintiffs might be appropriate in certain situations, such as [in the case of] . . . two or more smaller investors with roughly equal interests where there is no plaintiff with a significantly larger interest . . . ."); *see generally Miller v. Ventro Corp.*, 2001 WL 34497752, at *9 (N.D. Cal. Nov. 28, 2001) ("[T]he decision to create a separate class or co-lead plaintiffs is within the discretion of the Court.").  Doing so

---

[4]  However, unlike the movant in *McKesson HBOC*, Mr. McIntosh cannot even argue that "the allegedly false registration statements may have lulled [him] into holding [his] stock instead of cashing in on the fraud inflation" because he was subject to the aforementioned 18-month lock-up agreement.  97 F. Supp. 2d at 999.

- 5 -

may be particularly appropriate here because it would ensure broader representation for the class given the fact that Dr. Tweito traded in Owlet common stock during the class period, while Mr. Simmons traded in Owlet warrants. *Id*. at \*9-\*11 ("The Court . . . finds its appropriate to appoint a bondholder as co-lead plaintiff in addition to a stockholder."); *see also Sayce v. Forescout Techs., Inc.*, 2020 WL 6802469, at \*8 (N.D. Cal. Nov. 19, 2020) ("Appointing these two movants as co-lead plaintiffs will, therefore, provide the Court with the best representation of the entire class," particularly plaintiff "given the differences in the timing of when the Glazer Funds and Meitav purchased their stock."). It would also ensure the putative class is protected if unforeseen events arise in the future. *Id.* (noting that appointing both movants "will best protect the interests of the class should issues later arise"); *see also generally In re eHealth Inc. Sec. Litig.*, No. 4:20-cv-02395-JST, ECF No. 85 (N.D. Cal. Jan. 10, 2022) (ordering republication of notice and filing of new lead plaintiff motions after suggestion of death filed for existing lead plaintiff). Accordingly, Mr. Simmons is ready, willing, and able to serve as a lead plaintiff to ensure the entire putative class is represented throughout the course of this litigation.[5]

DATED:  February 25, 2022

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
JENNIFER N. CARINGAL
MICHAEL ALBERT
JUAN CARLOS SANCHEZ

s/ Michael Albert
MICHAEL ALBERT

---

[5]   The only other movant, Drew Conant, cannot be appointed because he alleges smaller losses than both Dr. Tweito and Mr. Simmons.  Consequently, the Court cannot consider his motion unless the presumption in favor of appointment of the other movants as lead plaintiff is rebutted. *See Cavanaugh,* 306 F.3d at 732 (court considers other motions "if and only if" the presumptive lead plaintiff is "found inadequate or atypical").

- 6 -

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
jcaringal@rgrdlaw.com
malbert@rgrdlaw.com
isanchez@rgrdlaw.com

[Proposed] Lead Counsel for [Proposed]
Lead Plaintiff

- 7 -

4875-2305-5633.v1

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on February 25, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

 s/ Michael Albert
MICHAEL ALBERT

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Email:  malbert@rgrdlaw.com

4875-2305-5633.v1

# Mailing Information for a Case 2:21-cv-09016-FLA-JEM Michael J. Butala v. Owlet, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Michael Albert**
  malbert@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jennifer L Joost**
  jjoost@ktmc.com,1759490420@filings.docketbird.com

- **Charles Henry Linehan**
  clinehan@glancylaw.com,charles-linehan-8383@ecf.pacerpro.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,ahood@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,jalieberman@pomlaw.com,lobas@pomlaw.com,abarbosa@pomlaw.co

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,CLinehan@glancylaw.com,info@glancylaw.com,robert-prongay-0232@ecf.pacerpro.com

- **Pavithra Rajesh**
  prajesh@glancylaw.com,info@glancylaw.com,pavithra-rajesh-9402@ecf.pacerpro.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)