**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
JENNIFER L. JOOST (Bar No. 296164)
  jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94101
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

*Counsel for Dr. Thomas E. Tweito and*
*Proposed Lead Counsel for the Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| MICHAEL J. BUTALA, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>OWLET, INC. f/k/a SANDBRIDGE ACQUISITION CORPORATION, KURT WORKMAN, KATE SCOLNICK, KEN SUSLOW, DOMENICO DE SOLE, RAMEZ TOUBASSY, JAMIE WEINSTEIN, KRYSTAL KAHLER, and MICHAEL F. GOSS,<br><br>    Defendants. | No. 2:21-cv-09016 FLA (JEMx)<br><br>CLASS ACTION<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE MOTION OF DR. THOMAS E. TWEITO FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL, AND IN OPPOSITION TO THE COMPETING MOTIONS**<br><br>Date:      March 18, 2022<br>Time:      1:30 p.m.<br>Courtroom: 6B<br>Judge:      Hon. Fernando L. Aenlle-Rocha |

[*Caption continues on next page.*]

MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE MOTION OF DR. THOMAS E. TWEITO FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL, AND IN OPPOSITION TO THE COMPETING MOTIONS
CASE NOS.: 2:21-CV-09016 FLA (JEMx), *ET AL.*

JONES CHERIAN, Individually and on Behalf of All Others Similarly Situated,

    Plaintiff,

    v.

OWLET, INC. f/k/a SANDBRIDGE ACQUISITION CORPORATION, KURT WORKMAN, KATE SCOLNICK, KEN SUSLOW, DOMENICO DE SOLE, RAMEZ TOUBASSY, JAMIE WEINSTEIN, KRYSTAL KAHLER, and MICHAEL F. GOSS,

    Defendants.

No. 2:21-cv-09293 RGK (AGRx)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION OF DR. THOMAS E. TWEITO FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL
CASE NOS.: 2:21-CV-09016 FLA (JEMX), *ET AL.*

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ............................................................................... 1

II.   ARGUMENT ......................................................................................................... 3

    A.   McIntosh Acquired All of His Shares Through a Private Transaction and Cannot Satisfy the PSLRA's Requirements for Appointment ............................................................... 4

    B.   Dr. Tweito Satisfies the PSLRA's Requirements and Is Entitled to Appointment as Lead Plaintiff ............................................... 7

    C.   The Remaining Motions Should Be Denied ............................................ 9

    D.   There Is No Reason to Appoint Conant to Lead a Section 14(a) Subclass .............................................................................. 9

III.  CONCLUSION .................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec.*
   *Act (ERISA) Litig.*,
   Nos. 09 MD 2058(PKC), *et al.*,
   2012 WL 1308993 (S.D.N.Y. Apr. 16, 2012) ......................................................... 11

*Basile v. Valeant Pharms. Int'l, Inc.*,
   No. SACV 14-2004 DOC (ANx),
   2015 WL 13652714 (C.D. Cal. May 5, 2015) ..................................................... 10, 12

*Batter v. Hecla Mining Co.*,
   Nos. 19-cv-4883 (ALC), *et al.*,
   2020 WL 1444934 (S.D.N.Y. Mar. 25, 2020) .......................................................... 6

*Bo Young Cha v. Kinross Gold Corp.*,
   No. 12 Civ. 1203(PAE),
   2012 WL 2025850 (S.D.N.Y. May 31, 2012) ............................................................ 8

*In re Boeing Co. Aircraft Sec. Litig.*,
   No. 19 CV 2394,
   2019 WL 6052399 (N.D. Ill. Nov. 15, 2019) ...................................................... 10, 11

*In re Cavanaugh v. U.S. Dist. Ct. for the N. Dist. of Cal.*,
   306 F.3d 726 (9th Cir. 2002) ............................................................... 3, 8, 9, 10

*In re Cendant Corp. Sec. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ............................................................................. 3, 9

*In re Cohen v. U.S. Dist. Court for N. Dist. of Cal.*,
   586 F.3d 703 (9th Cir. 2009) ..................................................................... 2, 3, 10, 12

*In re Critical Path, Inc. Sec. Litig.*,
   156 F. Supp. 2d 1102 (N.D. Cal. 2001) .......................................................... 2, 4, 5, 6

*Einhorn v. AxoGen, Inc.*,
   No. 8:19-cv-69-EAK-AAS,
   2019 WL 5636382 (M.D. Fla. Apr. 30, 2019) ........................................................ 10

*Erickson v. Snap, Inc.*,
   No. 2:17-cv-03679-SVW-AGR,
   2017 WL 11592635 (C.D. Cal. Sept. 18, 2017)...........................................1, 3, 4, 7

*Farhar v. Ontrak, Inc.*,
   No. 2:21-cv-01987-FLA (Ex),
   2021 WL 2980589 (C.D. Cal. July 13, 2021) ........................................................3

*Hedick v. Kraft Heinz Co.*,
   Nos. 19-cv-1339, *et al.*,
   2019 WL 4958238 (N.D. Ill. Oct. 8, 2019) .......................................................5, 6

*Hevesi v. Citigroup Inc.*,
   366 F.3d 70 (2d Cir. 2004) ..............................................................2, 9, 11

*Hufnagle v. Rino Int't. Corp.*,
   No. CV 10-8695-VBF,
   2011 WL 710704 (C.D. Cal. Feb. 14, 2011) .......................................................3, 4

*Hunt v. Bloom Energy Corp.*,
   No. 19-cv-02935-HSG,
   2021 WL 1110260 (N.D. Cal. Mar. 23, 2021) .........................................................11

*In re IMAX Sec. Litig.*,
   272 F.R.D. 138 (S.D.N.Y. 2010)..........................................................................7

*In re IMAX Sec. Litig.*,
   No. 06 Civ. 6128(NRB),
   2009 WL 1905033 (S.D.N.Y. June 29, 2009)........................................................7

*Kabak as Tr. of Stephen Kabak & Joy Schary Living Tr. v. Becton,
   Dickinson & Co.*,
   No. CV 20-2155 (SRC),
   2020 WL 3056281 (D.N.J. June 9, 2020) ............................................................12

*Lundy v. Ideanomics, Inc.*,
   No. 20 Civ. 4944 (GBD),
   2020 WL 7389027 (S.D.N.Y. Dec. 16, 2020).......................................................7

*In re Netflix, Inc. Sec. Litig.*,
    Nos. 12-0225 SC, *et al.*,
    2012 WL 1496171 (N.D. Cal. Apr. 27, 2012)..........................................................6

*In re Network Assocs., Inc. Sec. Litig.*,
    76 F. Supp. 2d 1017 (N.D. Cal. 1999)............................................................2, 5, 6

*In re Peregrine Sys., Inc. Sec. Litig.*,
    No. Civ. 02CV870-J-(RBB),
    2002 WL 32769239 (S.D. Cal. Oct. 11, 2002).......................................................5

*In re Snap Inc. Sec. Litig.*,
    No. 2:17-cv-03679-SVW-AGR,
    2019 WL 2223800 (C.D. Cal. Apr. 1, 2019).......................................................6, 7

**Statutes**

15 U.S.C. § 78u–4(a) ..............................................................................................4, 8

Dr. Thomas E. Tweito respectfully submits this memorandum of points and authorities in further support of his Motion (ECF No. 10) and in opposition to the competing motions (ECF Nos. 13, 17, & 21).[1]

## I.    PRELIMINARY STATEMENT

With losses of approximately $8,717 in connection with his Class Period transactions in Owlet securities on the open market, Dr. Tweito possesses the largest financial interest of any movant who *also* satisfies Rule 23's adequacy and typicality requirements *and* is not subject to unique defenses.  *See Erickson v. Snap, Inc.*, No. 2:17-cv-03679-SVW-AGR, 2017 WL 11592635, at *4 (C.D. Cal. Sept. 18, 2017) (appointing movant that possessed a smaller loss, but was adequate, typical, and not subject to unique defenses).[2]  Dr. Tweito is the only movant before the Court meeting all of the PSLRA's criteria for appointment as Lead Plaintiff.

While McIntosh claims a facially larger loss than Dr. Tweito, McIntosh is plagued by disqualifying defects that render him atypical, and require that his motion be rejected.  Here, McIntosh's *entire* financial interest is based on *private* transactions in Owlet Baby Care Inc. ("OBC").  *See* ECF No. 23-3.[3]  Subsequent to this private investment in OBC, McIntosh acquired *all* of his Owlet stock in connection with Sandbridge's merger with OBC.  McIntosh's derivative acquisition of Owlet stock

---

[1]    Unless otherwise noted: (1) all capitalized but undefined terms have the meanings ascribed in the Dr. Tweito's opening brief (ECF No. 10-1); (2) all emphasis is added and all internal quotation marks and citations are omitted; and (3) all references to "ECF No.    " are to docket entries in *Butala v. Owlet, Inc., et al.*, No. 2:21-cv-09016 FLA (JEMx) (C.D. Cal.).

[2]    On January 18, 2022, Dr. Tweito filed a timely motion under the PSLRA for an Order: (1) consolidating the above-captioned Related Actions; (2) appointing Dr. Tweito as Lead Plaintiff; (3) approving his selection of Kessler Topaz as Lead Counsel for the class; and (4) granting any such further relief as the Court may deem just and proper.  In addition to Dr. Tweito's Motion, motions seeking appointment as Lead Plaintiff were also filed by: (1) Casey McIntosh ("McIntosh") (ECF No. 21); (2) Christopher J. Simmons ("Simmons") (ECF No. 13); and (3) Drew Conant ("Conant") (ECF No. 17).

[3]    In connection with this business combination, Sandbridge changed its name to Owlet.  *See, e.g.*, ECF No. 22 at 2.

based on his private investment in OBC is fatal to his motion because non-open market transactions trigger a host of unique issues relating to, *inter alia*, reliance and damages that are irrelevant to the class's claims. It is for these reasons that courts routinely reject movants engaging in private stock transactions. *See In re Network Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1029-30 (N.D. Cal. 1999) (disqualifying movant who acquired shares through private transaction); *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1110-11 (N.D. Cal. 2001) (same). Indeed, Defendants will likely argue that—given the allegations suggesting that Sandbridge overpaid for OBC—private OBC investors like McIntosh "acquired [Owlet] shares on better terms than the investing public." *Network Assocs.*, 76 F. Supp. 2d at 1030. Even if this argument is ultimately unsuccessful, "[e]xposure to the concerns raised by a private transaction would disserve the class that the Court is charged with protecting." *Critical Path*, 156 F. Supp. 2d at 1111.

With McIntosh's disqualification, no other movant claims a larger loss than Dr. Tweito.

Moreover, Conant—who does not claim ***any*** losses in connection with Class Period transactions in Owlet securities—requests that he be appointed as a separate lead plaintiff (essentially creating a forced co-lead plaintiff structure) on behalf of a sub-class bringing claims pursuant to Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). *See* ECF No. 18 at 2. This request controverts the PSLRA's goal of empowering a single lead plaintiff "to exercise control over the litigation as a ***whole***." *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 n.13 (2d Cir. 2004). Dr. Tweito can adequately represent the class. *Id.* at 82 ("Nothing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action."). There is no need to fragment leadership of this litigation and appoint Conant to separately represent Section 14(a) claimants alongside

MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE MOTION OF DR. THOMAS E. TWEITO FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL, AND IN OPPOSITION TO THE COMPETING MOTIONS

CASE NOS.: 2:21-CV-09016 FLA (JEMx), *ET AL.*                                                                2

Dr. Tweito. *See In re Cohen v. U.S. Dist. Court for N. Dist. of Cal.*, 586 F.3d 703, 711 n.4 (9th Cir. 2009) (suggesting that the appointment of co-lead plaintiffs violates the PSLRA).

Accordingly, Dr. Tweito respectfully submits that he is the movant with the largest financial interest in the litigation that also satisfies the requirements of Rule 23, and requests that the Court grant his Motion in full.

## II.   ARGUMENT

Under the "straightforward" and "sequential" selection process mandated by the PSLRA, a movant's financial interest is only the starting point when evaluating a lead plaintiff movant, as the movant must also "satisf[y] the typicality and adequacy requirements [before] he is entitled to lead plaintiff status." *In re Cavanaugh v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 306 F.3d 726, 732 (9th Cir. 2002). A movant seeking appointment as lead plaintiff that does not satisfy Rule 23's requirements cannot be appointed—regardless of that movant's asserted losses. *See In re Cendant Corp. Sec. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001) ("If (for any reason) the court determines that the movant with the largest losses cannot make a threshold showing of typicality or adequacy, then the court should . . . disqualify that movant from serving as lead plaintiff."). Moreover, the PSLRA "does not permit courts simply to 'presume' that the movant with 'the largest financial interest in the relief sought by the class' satisfies the typicality and adequacy requirements." *Id.* at 264 (3d Cir. 2001); *see also Farhar v. Ontrak, Inc.*, No. 2:21-cv-01987-FLA (Ex), 2021 WL 2980589, at *4 (C.D. Cal. July 13, 2021) (Aenlle-Rocha, J.) (rejecting movant that "may have the largest financial interest," but is "subject to unique defenses"); *Snap, Inc.*, 2017 WL 11592635, at *4 (same). "If the presumptive lead plaintiff is disqualified on [adequacy or typicality] . . . grounds, the candidate's position is forfeited and the court returns to the first phase to determine a new presumptive lead plaintiff" and "[t]he process

repeats itself until a candidate succeeds in both the first and second phases of the inquiry." *Hufnagle v. Rino Int't. Corp.*, No. CV 10-8695-VBF (VBKx), 2011 WL 710704, at *4 (C.D. Cal. Feb. 14, 2011), *adopted by* 2011 WL 710676 (C.D. Cal. Feb 16, 2011).

### A.  McIntosh Acquired All of His Shares Through a Private Transaction and Cannot Satisfy the PSLRA's Requirements for Appointment

While McIntosh claims to have suffered the largest losses in connection with his transactions in Owlet stock, McIntosh is subject to unique defenses—and cannot be appointed as lead plaintiff—because he acquired **all** of his shares of Owlet stock based on a **private transaction** in OBC.  *See* ECF No. 23-3 ("On July 16, 2021, 106,306 shares of Owlet, Inc. (OWLT) were acquired from 51,776 **private shares** of Owlet Baby Care, Inc. pursuant to the Business Combination.").  McIntosh's own filings establish that he did not purchase any Owlet stock on the open market during the Class Period.  *See id.*  McIntosh's private acquisition of OBC stock triggers a number unique defenses that defeat McIntosh's typicality.  *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II); *Snap*, 2017 WL 11592635, at *4 (explaining that "[t]he PSLRA asks the Court to consider whether the particular plaintiff is subject to unique defenses").  Specifically, unique issues concerning McIntosh's damages and reliance on Defendants' statements when entering into the private transaction would divert resources and attention away from the prosecution of the class's claims.  McIntosh would also face the unique question of whether he acquired Owlet shares on better terms than the rest of the class (which purchased shares on the open market).  It is precisely for these reasons that courts routinely reject appointing lead plaintiff movants acquiring shares through private transactions.

The Court's analysis in *Critical Path* is instructive.  There, the court found that a movant who, like McIntosh, had acquired its shares in a privately-negotiated

acquisition did not satisfy the PSLRA's and Rule 23's adequacy requirement.  156 F. Supp. 2d at 1110-11 (explaining that movant received Critical Path shares when Critical Path acquired another company in which the movant was already a shareholder).  In rejecting the movant, the court stated:

> Appointing as lead plaintiff one who acquired its shares in a private transaction invites lengthy litigation both at the class certification stage and thereafter of whether that plaintiff is subject to unique defenses.  ***Certainly the court should not appoint as lead plaintiff one whose appointment will invite scrutiny of the details of a private transaction***.

*Id.*

*Critical Path* is not alone.  In *Network Associates*, the court similarly found that a movant could not adequately represent the class where it acquired its shares through a private merger because the movant "would be encumbered with the unique question whether it acquired its . . . shares on better terms than the investing public and not fully in reliance on the market price."  76 F. Supp. 2d at 1030; *see also Hedick v. Kraft Heinz Co.*, Nos. 19-cv-1339, *et al.*, 2019 WL 4958238, at *5 n.5 (N.D. Ill. Oct. 8, 2019) (concluding that a movant was "subject to unique defenses that render [it] incapable of adequately representing the class" because "a substantial portion of [its] claimed losses stem from merger shares" in which it potentially "received a windfall") (first alteration in original); *In re Peregrine Sys., Inc. Sec. Litig.*, No. Civ. 02CV870-J-(RBB), 2002 WL 32769239, at *7 (S.D. Cal. Oct. 11, 2002) (rejecting movant who acquired the bulk of its shares through a private merger because "[t]hose issues loom too large for the court to determine at this preliminary stage that the [movant] is able to adequately represent the interests of the remaining class members").

McIntosh fits squarely into the concerns expressed by *Critical Path* and *Network Associates.* Questions about McIntosh's private acquisitions are particularly relevant here because this litigation concerns allegations that Owlet—and its predecessor OBC—improperly sold the Smart Sock device without marketing authorization from the FDA. *See, e.g.*, ECF No. 22 at 2. At the time of the business combination through which McIntosh exchanged his OBC shares for Owlet shares, OBC sold the Smart Sock device and OBC shares were valued as if the Smart Sock was being sold lawfully although it was not. As such, McIntosh—an early private investor in OBC—received an inflated value (2.053 Owlet shares per OBC share held) and must be disqualified. *See, e.g.*, *Network Assocs.*, 76 F. Supp. 2d at 1029; *Kraft*, 2019 WL 4958238, at *5 n.5.[4]

McIntosh's susceptibility to unique defenses disqualifies him from serving as lead plaintiff even if McIntosh might ultimately prevail against Defendants' challenges later in the litigation. *See, e.g.*, *In re Netflix, Inc. Sec. Litig.*, Nos. 12-0225 SC, *et al.*, 2012 WL 1496171, at *5 (N.D. Cal. Apr. 27, 2012) ("There is no requirement at this early stage to prove a defense, only to show a degree of likelihood that a unique defense might play a significant role at trial."); *Batter v. Hecla Mining Co.*, Nos. 19-cv-4883 (ALC), *et al.*, 2020 WL 1444934, at *7 (S.D.N.Y. Mar. 25, 2020) ("Where there is at least a ***potential*** that the presumptively most adequate lead plaintiff will be subject to unique defenses . . . disqualification is appropriate."). The class should not be saddled with the costs and distraction associated with the litigation of McIntosh's unique defenses. *See In re Snap Inc. Sec. Litig.*, No. 2:17-cv-03679-SVW-AGR, 2019 WL 2223800, at *2 (C.D. Cal. Apr. 1, 2019) ("[C]ourts should not appoint a lead plaintiff whose appointment would pose a danger that absent class members will suffer

---

[4]     Had the truth about OBC and the Smart Sock been known at the time of the Sandbridge-OBC merger, it is unlikely Sandbridge shareholders would have approved such a generous exchange ratio.

if [the lead plaintiff] is preoccupied with defenses unique to it.") (alteration in original).

Moreover, the unique issues associated with McIntosh's private transaction could jeopardize the entire class by unnecessarily exposing all class members to the risk that McIntosh will be disqualified at later stages of litigation—thereby leaving the class without a lead plaintiff and potentially requiring the Court to reopen the lead plaintiff selection process (or dismiss the litigation entirely). *See In re IMAX Sec. Litig.*, 272 F.R.D. 138, 160 (S.D.N.Y. 2010) (denying class certification and reopening the lead plaintiff selection process where the previously appointed lead plaintiff was "at a minimum . . . subject to unique defenses"); *Lundy v. Ideanomics, Inc.*, No. 20 Civ. 4944 (GBD), 2020 WL 7389027, at *3 (S.D.N.Y. Dec. 16, 2020) ("[I]f Defendants are later successful in any opposition to class certification or [the movant] as the class representative as a result of [the movant's] unique defense, class members may be subject to statute of repose concerns.").

As explained by The Honorable Stephen V. Wilson, "[t]here is no reason to subject the class to these unique defenses when a non-conflicted candidate for Lead Plaintiff"—Dr. Tweito—"is also before the Court." *Snap*, 2017 WL 11592635, at *4; *see also In re IMAX Sec. Litig.*, No. 06 Civ. 6128(NRB), 2009 WL 1905033, at *3 (S.D.N.Y. June 29, 2009) ("There seems little reason for us to subject the class members to such a risk."); *Critical Path*, 156 F. Supp. 2d at 1111.

**B.      Dr. Tweito Satisfies the PSLRA's Requirements and Is Entitled to Appointment as Lead Plaintiff**

With McIntosh removed from consideration, Dr. Tweito is the only movant capable of satisfying the PSLRA's largest financial interest, adequacy, and typicality requirements.

With losses of approximately $8,717 in connection with his Class Period purchases of Owlet stock on a LIFO basis, *see* ECF No. 10-4, Dr. Tweito suffered the largest losses of the remaining movants:

| MOVANT | CLAIMED LOSSES (LIFO)[5] |
|---|---|
| ~~Casey McIntosh~~ | ~~$548,843~~ |
| **Dr. Thomas E. Tweito** | **$8,717** |
| Christopher J. Simmons | $8,609 |
| Drew Conant | (no loss alleged) |

In addition to possessing the largest financial interest of the remaining movants, Dr. Tweito, as demonstrated in his opening brief and accompanying declaration, *see* ECF Nos. 10-1 & 10-5, readily meets the applicable adequacy and typicality requirements under Rule 23.  Indeed, Dr. Tweito has affirmatively demonstrated his commitment and ability to zealously prosecute this litigation for the benefit of the class and is not subject to any unique defenses.  Because there is no "proof" undermining Dr. Tweito's typicality and adequacy, Dr. Tweito should be appointed as Lead Plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (requiring "proof" to rebut presumption); *Cavanaugh*, 306 F.3d at 741 ("[B]y statute, the presumption of most adequate plaintiff may be overcome only upon proof that the presumptively most adequate plaintiff will not fairly and adequately protect the interests of the class' or 'is

---

[5]   LIFO is the preferred and most widely accepted methodology for calculating movants' financial interests.  *See Bo Young Cha v. Kinross Gold Corp.*, No. 12 Civ. 1203(PAE), 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012) ("[T]he overwhelming trend . . . nationwide has been to use LIFO[.]").  Competing movants' losses are taken from their respective filings.  *See* ECF Nos. 15-3, 19-1, & 23-3.

subject to unique defenses that render such plaintiff incapable of adequately representing the class.") (Wallace, J., concurring).

### C. The Remaining Motions Should Be Denied

Given that Dr. Tweito has satisfied all the PSLRA's requirements for appointment as Lead Plaintiff, and each of the remaining movants asserts a smaller financial interest, *see supra* Section II.B., the Court need not even consider the remaining competing motions. *See Cavanaugh*, 306 F.3d at 732 (stating that the movant with the largest losses satisfying the typicality and adequacy requirements "is entitled to lead plaintiff status").

### D. There Is No Reason to Appoint Conant to Lead a Section 14(a) Subclass

Recognizing that he did not purchase any Owlet securities during the Class Period—and thus would not have the largest financial interest in this litigation—Conant argues in his motion that he should be appointed lead plaintiff on behalf of those bringing claims pursuant to Section 14(a) of the Exchange Act. ECF No. at 2. Conant's request to splinter leadership of this litigation is inconsistent with the purpose of the PSLRA to empower a single lead plaintiff "to exercise control over the litigation as a *whole*." *Hevesi*, 366 F.3d at 82 n.13.

As noted above, the PSLRA's lead plaintiff selection process is "sequential" and "[t]he court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical." *Cavanaugh*, 306 F.3d at 732. "If no class member succeeds in rebutting the presumption," the inquiry ends and "the district court should appoint the presumptive lead plaintiff as the lead plaintiff." *Cendant*, 264 F.3d at 268.

The PSLRA does not contemplate a court's creation of a lead plaintiff group by forcibly piecing together various competing movants. *See Cavanaugh*, 306 F.3d at 732 ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job."). The Ninth Circuit has clearly suggested that co-lead plaintiff appointments, which deviate from the sequential nature of the analysis required by the PSLRA, violate the statute. *See Cohen*, 586 F.3d at 711 n.4 (explaining that the "district court may have erred in appointing 'co-lead plaintiffs'"); *accord Basile v. Valeant Pharms. Int'l, Inc.*, No. SACV 14-2004 DOC (ANx), 2015 WL 13652714, at *2 (C.D. Cal. May 5, 2015) ("Legally, the Ninth Circuit and district courts in this circuit have expressed doubt that it is appropriate under the PSLRA to appoint co-lead plaintiffs where the movants have not filed a joint motion to be appointed together."); *cf. Einhorn v. AxoGen, Inc.*, No. 8:19-cv-69-EAK-AAS, 2019 WL 5636382, at *3 (M.D. Fla. Apr. 30, 2019) (stating that appointing a "co-lead plaintiff is belied by policy considerations regarding control over and cost of securities class actions. . . . Appointment of co-lead plaintiffs detracts from the PSLRA's fundamental goal of client control."). Indeed, "courts routinely reject petitions for appointment as co-lead plaintiffs to represent the interests of various varieties of claimants and claims . . . as inconsistent with the PSLRA's focus on appointing as lead plaintiff an entity or person capable of exercising overall control of the litigation." *In re Boeing Co. Aircraft Sec. Litig.*, No. 19 CV 2394, 2019 WL 6052399, at *10 (N.D. Ill. Nov. 15, 2019), *recons. denied*, 2020 WL 476658 (N.D. Ill. Jan. 28, 2020).

Accordingly, there is no basis to appoint Conant as a co-lead plaintiff where, as here, Dr. Tweito has a larger financial interest and satisfies the typicality and adequacy requirements. *See Cavanaugh*, 306 F.3d at 732. Indeed, Conant does not (and cannot)

MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE MOTION OF DR. THOMAS E. TWEITO FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL, AND IN OPPOSITION TO THE COMPETING MOTIONS
CASE NOS.: 2:21-cv-09016 FLA (JEMx), *ET AL.*                                                                 10

allege that he possesses a larger financial interest than Dr. Tweito. In fact, Conant does not allege that he even suffered any losses. Instead, he simply states that he should lead a subclass asserting Section 14(a) claims because he held 918.352 shares of Owlet common stock (which were acquired before the Class Period). *See* ECF Nos. 18 at 8, & 19-3.

As the Second Circuit made clear:

> Nothing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action. Rather, because the PSLRA mandates that courts must choose a party who has, among other things, the largest financial stake in the outcome of the case, it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim.

*Hevesi*, 366 F.3d at 82. Similarly, the court in *Boeing* explained, "[t]he role of a lead plaintiff is to exercise control of the litigation as a whole, not to represent the interests of different constituencies within the class" as "[t]hat is the role of named plaintiffs, or class representatives" that "may be added later to represent subclasses of plaintiffs with distinct interests or claims." 2019 WL 6052399, at *10; *see also Hunt v. Bloom Energy Corp.*, No. 19-cv-02935-HSG, 2021 WL 1110260, at *1 (N.D. Cal. Mar. 23, 2021) ("[T]he PSLRA does not in any way prohibit the addition of named plaintiffs to aid the lead plaintiff in representing a class."); *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, Nos. 09 MD 2058(PKC), *et al.*, 2012 WL 1308993, at *2 (S.D.N.Y. Apr. 16, 2012) ("[T]he PSLRA vests lead plaintiffs with control over the litigation as a whole, including authority to name additional class plaintiffs to resolve standing concerns.").

Dr. Tweito is fully empowered to direct this litigation (including adding additional representatives if needed).  Conant's effort to force his involvement in this litigation as co-lead plaintiff violates the PSLRA.  *See Cohen*, 586 F.3d at 711 n.4; *Basile*, 2015 WL 13652714, at \*2; *Kabak as Tr. of Stephen Kabak & Joy Schary Living Tr. v. Becton, Dickinson & Co.*, No. CV 20-2155 (SRC), 2020 WL 3056281, at \*3 (D.N.J. June 9, 2020) (rejecting options trader's argument for appointment as a co-lead plaintiff and noting that "[t]he fragmented lead plaintiff arrangement" being proposed "finds no support in the PSLRA").  Accordingly, there is no reason to splinter control of the litigation and appoint Conant as a co-lead plaintiff in contravention of the PSLRA.

## III.   CONCLUSION

For the reasons set forth above, Dr. Tweito respectfully requests that the Court enter an Order: (1) consolidating the above-captioned Related Actions; (2) appointing Dr. Tweito as Lead Plaintiff; (3) approving his selection of Kessler Topaz as Lead Counsel for the class; and (4) denying all competing motions.

Dated: February 25, 2022

Respectfully submitted,

**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**

/s/ Jennifer L. Joost
JENNIFER L. JOOST (Bar No. 296164)
  jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94101
 Telephone: (415) 400-3000
Facsimile: (415) 400-3001

*Counsel for Dr. Thomas E. Tweito and Proposed Lead Counsel for the Class*

**THE SCHALL LAW FIRM**
BRIAN J. SCHALL (Bar No. 290685)
  brian@schallfirm.com
1880 Century Park E, Suite 404
Los Angeles, CA 90067-1604

Telephone: (310) 301-3335
Facsimile: (310) 388-0192

*Additional Counsel*