POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Movant Drew Conant*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL J. BUTALA, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> OWLET, INC. f/k/a SANDBRIDGE ACQUISITION CORPORATION, KURT WORKMAN, KATE SCOLNICK, KEN SUSLOW, DOMENICO DE SOLE, RAMEZ TOUBASSY, JAMIE WEINSTEIN, KRYSTAL KAHLER, and MICHAEL F. GOSS, <br><br> Defendants. <br><br> [Caption Continued On Next Page] | Case No. 2:21-cv-09016-FLA-JEM <br><br> REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION OF DREW CONANT FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL <br><br> DATE: March 18, 2022 <br> TIME: 1:30 p.m. <br> JUDGE: Fernando L. Aenlle-Rocha <br> CTRM: 6B, 6th Floor |

MEMORANDUM OF POINTS AND AUTHORITIES

JONES CHERIAN, Individually and on Behalf of All Others Similarly Situated,

                    Plaintiff,

          v.

OWLET, INC. f/k/a SANDBRIDGE ACQUISITION CORPORATION, KURT WORKMAN, KATE SCOLNICK, KEN SUSLOW, DOMENICO DE SOLE, RAMEZ TOUBASSY, JAMIE WEINSTEIN, KRYSTAL KAHLER, and MICHAEL F. GOSS,

                    Defendants.

Case No. 2:21-cv-09293-RGK-AGR

MEMORANDUM OF POINTS AND AUTHORITIES

Movant Conant[1] respectfully submits this Reply Memorandum of Points and Authorities in further support of his appointment as Lead Plaintiff of the 14(a) Class.

## I.    PRELIMINARY STATEMENT

Conant is the only movant claiming any financial interest in the relief sought by the 14(a) Class in this litigation, having held 918.352 Sandbridge shares as of June 1, 2021.[2] *See* Dkt. No. 19-1.  The other three movants[3] in this litigation have asserted financial interests only in the relief sought by the 10(b) Class and seek appointment as Lead Plaintiff based on the quantum of their claimed Section 10(b) losses incurred as a result of the fraud alleged in this litigation.  Accordingly, given Conant's significant financial interest in the claims of the 14(a) Class and his satisfaction of Rule 23's adequacy and typicality requirements (*see* Dkt. No. 18 at 8-11), Conant is by default the "most adequate plaintiff" of the 14(a) Class.

Of the three other movants claiming 10(b) losses, only one movant, Tweito, opposes Conant's appointment as Lead Plaintiff for the 14(a) Class, arguing that separate

---

[1] All capitalized terms herein are defined in Conant's moving or response briefs, unless otherwise indicated.  *See* Dkt. Nos. 18, 40.

[2] Tweito asserts that "Conant does not allege that he even suffered losses".  Dkt. No. 46 at 11.  Because losses in connection with claims arising under Section 14(a) are—unlike Section 10(b) losses—not easily calculated at this early stage of the litigation, Conant has stated his financial interest in this litigation in terms of his holdings of Sandbridge shares as of June 1, 2021, as is appropriate and customary for Section 14(a) claims.

[3] Conant's response brief erroneously referred to only two motions filed by 10(b) claimants (Tweito and McIntosh), omitting to mention a third motion filed by another 10(b) claimant, Christopher J. Simmons ("Simmons").  Dkt. No. 13.  As stated in his opposition brief, Conant takes no position on the appointment of Lead Plaintiff for the 10(b) Class and respectfully notes that, like Tweito and McIntosh, Simmons's lack of financial interest in the relief sought by the 14(a) Class makes him ill-suited to vigorously advocate on behalf of 14(a) Class members.  *See* Dkt. No. 40 at 2, 7.

leadership for the 14(a) Class is contrary to the goals of the PSLRA and that Tweito—despite claiming *zero* financial interest in the relief sought by the 14(a) Class—can nonetheless somehow represent the interests of 14(a) Class members in this litigation. *See* Dkt. No. 46 at 2. Then, implicitly conceding that he might perhaps *not* be well suited to pursuing 14(a) Claims, Tweito suggests that a separate 14(a) Class representative "may be added later" if Tweito deems it necessary. *Id.* at 11.

Tweito is wrong. As noted in Conant's opposition brief, class leadership in securities class actions alleging both Section 14(a) and Section 10(b) claims commonly includes separate representatives for each claim. *See*, *e.g.*, *Burbige v. ATI Physical Therapy, Inc.*, 1:21-cv-4349 (N.D. Ill. Aug. 16, 2021), Dkt. No. 58 ¶¶ 26-28 (in consolidated amended complaint, different class representatives respectively alleging Section 10(b) and Section 14(a) claims); *Edwards v. McDermott International, Inc.*, 4:18-cv-4330 (S.D. Tex. Nov. 15, 2018), Dkt. No. 84 (appointing different lead plaintiffs for "all claims related to Section 10(b) of the Securities Exchange Act" and "all claims related to Section 14(a) of the Securities Exchange Act."). Tweito, for his part, has not cited a single case involving 14(a) claims alongside other alleged violations of the federal securities laws where a court denied a request to appoint separate representation for class members with 14(a) claims. Nor has Tweito even acknowledged, let alone addressed, the differences between 14(a) and 10(b) claims—an omission at odds with Tweito's unsupported assertion that he is capable of representing the interests of 14(a) Class

MEMORANDUM OF POINTS AND AUTHORITIES

2

members.  Although Tweito cites several inapposite cases to the effect that certain courts have disfavored the appointment of lead plaintiff groups, the appointment of a single 14(a) Class Lead Plaintiff alongside a single 10(b) Class Lead Plaintiff would not yield the type of lead plaintiff group—that is, unwieldy and assembled by counsel—that some courts have found problematic, nor implicate any of the concerns militating against the appointment of such groups.

For the reasons set forth in his response brief (Dkt. No. 40), Conant respectfully submits that separate representation for the 14(a) Class in this litigation is warranted and that Conant is plainly the "most adequate plaintiff"—that is, the presumptive Lead Plaintiff—of the 14(a) Class.

## II.    ARGUMENT

### THE COURT SHOULD APPOINT CONANT AS LEAD PLAINTIFF FOR THE 14(A) CLASS

As set forth in detail in his response brief (Dkt. No. 40), Conant respectfully submits that the Court should appoint him as Lead Plaintiff for the 14(a) Class in this litigation. Prevailing on the 10(b) Class's claims in this litigation will require establishing, *inter alia*, that Defendants deceived the investing public and caused investors to purchase Owlet securities at artificially inflated prices, and that investors were damaged when the truth emerged, causing the value of their Class Period purchases of Owlet securities to decline. Meanwhile, prevailing on the 14(a) Class's claims will require establishing, *inter alia*, that investors who held **Sandbridge** shares as of June 1, 2021 **and** were eligible to vote at the

special meeting of July 14, 2021 suffered damages due to false and misleading statements in the proxy for Sandbridge's Business Combination with Owlet, that they were denied the opportunity to make an informed decision in voting on the merger, thus did not receive their fair share of the value of the assets and business of the combined entity, suffered damages when the Company's stock price decreased, and were prevented from benefiting from a value-maximizing transaction. It is precisely because of these differences that courts see fit to appoint different class representatives to pursue 10(b) and 14(a) claims in actions alleging violations of both sections. *See*, *e.g.*, *ATI Physical Therapy*, Dkt. No. 58 ¶¶ 26-28 (in consolidated amended complaint, different class representatives respectively alleging Section 10(b) and Section 14(a) claims); *McDermott International*, Dkt. No. 84 (appointing different lead plaintiffs for "all claims related to Section 10(b) of the Securities Exchange Act" and "all claims related to Section 14(a) of the Securities Exchange Act.").

In opposing Conant's appointment as Lead Plaintiff for the 14(a) Class, Tweito does not even acknowledge these significant distinctions between 10(b) and 14(a) claims—let alone explain how Tweito could be an adequate or atypical 14(a) Class representative despite claiming *zero* financial interest in the relief that 14(a) Class members seek in this litigation. Rather, he simply asserts, without any explanation, that he "can adequately" do so. *See* Dkt. No. 46 at 2. Conspicuously, Tweito has cited no cases in which a court denied a request to appoint separate lead plaintiffs to pursue Section 14(a) and Section 10(b) claims in a securities fraud action in which both causes of action were alleged

(whereas Conant has provided recent examples of cases where such cases did proceed with separate lead plaintiffs—*see supra* pp. 2, 4). Tweito's opposition instead relies on generalized, out-of-context statements to the effect that the appointment of lead plaintiff groups is contrary to certain policy goals of the PSLRA, including its "fundamental goal of client control", and suggests that Tweito himself, if appointed Lead Plaintiff, will "add[] additional representatives if needed." *See* Dkt. No. 46 at 10-12.

Tweito's argument fails. First, the appointment of Conant as the sole 14(a) Class Lead Plaintiff and another movant as sole 10(b) Class Lead Plaintiff would not constitute the type of problematic "lead plaintiff group" contemplated by the inapposite cases cited by Tweito. While there may be circumstances in which the appointment of Lead Plaintiff groups is at odds with the PSLRA's goals, no such concerns are implicated here. Some courts have indeed expressed "skepticism" because "such groups are often formed by lawyers for purposes of obtaining appointment as lead counsel" by cobbling together unrelated individuals in an effort to manufacture the largest financial interest. *Haideri v. Jumei Int'l Holding, Ltd.*, No. 20-cv-02751-EMC, 2020 U.S. Dist. LEXIS 162510, at *9 (N.D. Cal. Sept. 4, 2020). Here, Conant moved for Lead Plaintiff status individually, represented by a single law firm (unlike Tweito, a single litigant whose papers nonetheless indicate his representation by *two* law firms). There has been no attempt to aggregate unrelated individuals in order to manufacture an inflated financial interest. The

appointment of separate lead plaintiffs for the 10(b) Class and 14(a) Class would thus in no way reward gamesmanship by counsel, because no such gamesmanship has occurred.

Likewise, courts may also decline to appoint multiple lead plaintiffs where doing so would result in an overlarge or unwieldy leadership structure. *See*, *e.g.*, *In re Surebeam Corp. Secs. Litig.*, No. 03 CV 1271 JM (POR), 2003 U.S. Dist. LEXIS 25022, at \*12-\*13 (S.D. Cal. Dec. 31, 2003) (noting that "[m]ost district courts will not aggregate 'huge amalgamations of unrelated persons as lead plaintiff.'") (quoting *In re Advanced Tissue Scis. Sec. Litig.*, 184 F.R.D. 346, 352 (S.D. Cal. 1998)).  Here, however, Conant seeks only to be appointed as the sole Lead Plaintiff for the 14(a) Class alongside, presumably, a single Lead Plaintiff for the 10(b) Class.  Courts in the Ninth Circuit routinely endorse such small and cohesive leadership structures.  *See*, *e.g.*, *Sayce v. Forescout Techs.*, No. 20-cv-00076-SI, 2020 U.S. Dist. LEXIS 217198, at \*22 (N.D. Cal. Nov. 19, 2020) (appointing two previously competing lead plaintiff movants as co-lead plaintiffs, noting that two members "would be a group within the meaning of 'small'"); *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1136 (C.D. Cal. 1999) (endorsing appointment of a "small group of manageable size that is capable of joint decisionmaking regarding the litigation.").  It is difficult to credit the argument that a leadership structure comprised of one Section 14(a) Lead Plaintiff and one Section 10(b) Lead Plaintiff would be so large or unwieldy as to impede the efficient prosecution of this litigation.

The Court should also decline Tweito's suggestion to appoint Tweito as the sole Lead Plaintiff in this litigation and then to permit Tweito to simply "add[] additional representatives" for the 14(a) Class if he considers it necessary.  Indeed, Tweito's proposal is ironic, given his purported concerns about strictly adhering to the PSLRA's lead plaintiff appointment process and advancing its "fundamental goal of client control."  Dkt. No. 46 at 10.  Tweito's proposal implicitly acknowledges that there *are*, in fact, differences between 10(b) and 14(a) claims that may warrant separate representation, undercutting his insistence that he can capably represent the interests of both investor classes.  Yet in Conant, there is already a statutorily qualified candidate for Section 14(a) Lead Plaintiff before the Court. Tweito has not offered a persuasive explanation as to why the Court should deny Conant's motion, in favor of empowering Tweito to simply choose a 14(a) Lead Plaintiff himself— *outside* of the parameters of the PSLRA—if Tweito later deems it necessary.

Moreover, if the Court were to accept Tweito's proposal, it is a near certainty that one of the at least two firms serving as Tweito's counsel—*not* Tweito himself—would simply hand-pick a client with standing to pursue 14(a) claims and add that investor to an Amended Complaint alongside Tweito.  The result would be *precisely* the type of outcome—a Lead Plaintiff group hand-picked and assembled by attorneys, in contravention of the goals of the PSLRA—that Tweito purports to oppose.

## III.   CONCLUSION

For the foregoing reasons, Conant respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Conant as Lead Plaintiff for the 14(a) Class; and (3) approving Pomerantz as Lead Counsel for the 14(a) Class.

Dated:  March 4, 2022                                    POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Movant Drew Conant and*
*Proposed Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2022, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Jennifer Pafiti*
Jennifer Pafiti