Robert V. Prongay (SBN 270796)
  rprongay@glancylaw.com
Charles Linehan (SBN 307439)
  clinehan@glancylaw.com
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Lead Plaintiff Movant*
*Casey McIntosh*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL J. BUTALA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>OWLET, INC. f/k/a SANDBRIDGE ACQUISITION CORPORATION, KURT WORKMAN, KATE SCOLNICK, KEN SUSLOW, DOMENICO DE SOLE, RAMEZ TOUBASSY, JAMIE WEINSTEIN, KRYSTAL KAHLER, and MICHAEL F. GOSS,<br><br>Defendants. | Case No. 2:21-cv-09016-FLA-JEM<br><br>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF CASEY MCINTOSH FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL** |
| JONES CHERIAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>OWLET, INC. f/k/a SANDBRIDGE ACQUISITION CORPORATION, KURT WORKMAN, KATE SCOLNICK, KEN SUSLOW, DOMENICO DE SOLE, RAMEZ TOUBASSY, JAMIE WEINSTEIN, KRYSTAL KAHLER, and MICHAEL F. GOSS,<br><br>Defendants. | Case No. 2:21-cv-09293-RGK-AGR |

Lead Plaintiff Movant Casey McIntosh ("McIntosh") respectfully submits this memorandum of law in further support of his motion for consolidation of related actions, appointment as lead plaintiff, and approval of lead counsel (Dkt. No. 21), and in reply to the opposition memoranda filed by Dr. Thomas E. Tweito ("Tweito") (Dkt. No. 46, "Tweito Opp."); Christopher J. Simmons ("Simmons") (Dkt. No. 37, "Simmons Opp."); and Drew Conant ("Conant") (Dkt. No. 40, "Conant Opp.").[1]

## I.   INTRODUCTION

All three other movants concede that McIntosh has the largest financial interest in the relief sought by the class. Accordingly, McIntosh is the presumptively most adequate plaintiff.

Tweito and Simmons attempt to rebut the presumption by arguing that McIntosh is subject to unique defenses, but the purported defenses they identify are not "unique" to McIntosh. Specifically, they claim that McIntosh is unique because he acquired Owlet, Inc. ("Owlet") shares in exchange for Owlet Baby Care Inc. ("Owlet Baby Care") shares in connection with the latter's business combination with Sandbridge Acquisition Corporation ("Sandbridge"), and that McIntosh is thus subject to defenses not applicable to the rest of the class. This is incorrect. According to Owlet's public filings, approximately 81% of all Owlet shares issued and outstanding immediately following the business combination were acquired in the same way McIntosh acquired his shares, *i.e.*, in exchange for Owlet Baby Care shares. As such, if anything, McIntosh is more adequate to represent the class than an investor that acquired their shares in another way (such as purchasing them on the open market). Accordingly, Tweito and Simmons have failed to rebut the presumption that McIntosh is the most adequate plaintiff.

---

[1] All lead plaintiff movants agree that the related actions should be consolidated. As such, only appointment of lead plaintiff and approval of lead counsel are addressed herein.

Conant argues that the Court should create a Section 14(a) subclass and appoint Conant as lead plaintiff of the subclass. However, courts in this circuit and out routinely reject similar proposed subclasses because it is contrary to the text and purpose of the PSLRA, which contemplates the appointment of the presumptively most adequate plaintiff (here, McIntosh) to pursue all claims and direct the litigation, regardless of whether he has standing to pursue all claims. As such, the Court should decline Conant's request to create a subclass.

Since McIntosh is the presumptively most adequate plaintiff, and the presumption has not been rebutted, McIntosh should be appointed as lead plaintiff and his selection of counsel should be approved.

## II.   MCINTOSH IS THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF

McIntosh satisfies all three requirements to be the presumptively most adequate plaintiff. All three competing movants concede that McIntosh has, by far, the largest financial interest. *See* Tweito Opp. at 1 ("While McIntosh claims a facially larger loss than Dr. Tweito . . . ."); Simmons Opp. at 1 ("[W]hile Mr. McIntosh claims to have suffered nearly $550,000 in losses . . . ."); Conant Opp. at 2 (recognizing McIntosh claims "losses of $548,843"). In fact, McIntosh's loss is approximately sixty-three times (63x) larger than the movant with the next largest loss:

| Movant | LIFO Loss |
|---|---|
| McIntosh | $548,842.69 |
| Tweito | $8,717.09 |
| Simmons | $8,609.47 |
| Conant | $6,522.06 |

McIntosh also filed a timely motion and made the required preliminary showing that he satisfies the requirements of Rule 23 in his opening memorandum (*see* Dkt. Nos. 21, 22). Accordingly, McIntosh is the presumptively most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

## III.   THE PRESUMPTION THAT MCINTOSH IS THE MOST ADEQUATE PLAINTIFF HAS NOT BEEN REBUTTED

The presumption that McIntosh is the most adequate plaintiff may be rebutted only upon "proof" that McIntosh "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render [him] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Speculative assertions are insufficient. *Murdeshwar v. Searchmedia Holdings Ltd.*, No. 10-cv-6794, 2010 WL 11556544, at *1 (C.D. Cal. Dec. 15, 2010) (holding "mere speculation" was insufficient to rebut the most adequate plaintiff presumption); *Armour v. Network Assocs., Inc.*, 171 F. Supp. 2d 1044, 1054 (N.D. Cal. 2001) ("Speculative assertions [are] insufficient to rebut the lead plaintiff presumption."); *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1151 (N.D. Cal. 1999) ("[S]peculations about possible conflicts do not rebut the statutory presumption that one lead plaintiff can vigorously pursue *all* available causes of action against *all* possible defendants under *all* available legal theories.") (emphasis in original).

Tweito and Simmons argue that McIntosh is subject to unique defenses because he acquired his Owlet shares as a result of the business combination of Sandbridge and Owlet Baby Care. *See* Tweito Opp. at 4-7; Simmons Opp. at 1-6. On July 16, 2021, McIntosh acquired 106,306 shares of Owlet (securities that are the subject of this action) in exchange for 51,776 shares of Owlet Baby Care, which he held before the business combination. *See* Dkt. No 23-3. However, Tweito and Simmons completely fail to prove that the purported defenses are unique to McIntosh. In fact, the defenses appear to apply to most of the shares at issue in this action.

As an initial matter, McIntosh's transactions fall squarely within the class definition. He "otherwise acquired" his shares on July 16, 2021—and the class definition includes "persons and entities . . . that purchased or ***otherwise acquired***

Owlet securities *between March 31, 2021 and October 4, 2021*." *See* Dkt. No. 1 ¶ 1 (emphasis added).

Moreover, following the business combination, 81% of all outstanding Owlet shares were acquired in the same way that McIntosh acquired his shares. *See* Form 10-Q for the period ended September 30, 2021, at 13.[2] Specifically, Owlet's Form 10-Q states:

> Each share of [Owlet Baby Care's] common stock outstanding prior to the Merger . . . was converted into the right to receive approximately 2.053 shares of Owlet's common stock. Accordingly, [Owlet Baby Care] common stock exchanged into 90,824,573 shares of Owlet common stock.

*Id.* This amounts to 81% of the 112,783,800 total Owlet shares issued and outstanding after the business combination. *See id.* at 14. In other words, any defenses applicable to McIntosh's shares also apply to most shares in this action. As such, any defenses based on the way McIntosh acquired his shares is not a *unique* defense, and therefore not disqualifying. *See In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 600 (C.D. Cal. 2009) (defense not unique if it "will presumably be analyzed at trial as part of classwide defenses"); *Banerjee v. Avinger, Inc.*, No. 17-cv-03400, 2017 WL 4552063, at *3 (N.D. Cal. Oct. 11, 2017) (no unique defense where "this issue . . . will be common to many class members"); *In re Turquoise Hill Res. Ltd. Sec. Litig.*, No. 20-cv-8585, 2021 WL 148752, at *6 (S.D.N.Y. Jan. 15, 2021) (no unique defense where "[t]hat form of conflict . . . is not unique to [the movant]"); *Stein v. Match Grp., Inc.*, No. 16-cv-549, 2016 WL 3194334, at *7 (N.D. Tex. June 9, 2016) (no unique defense because "to the extent that Defendants will seek to limit damages based on a negative causation defense, they will seek to do so on a class-wide basis"); *Freeland v. Iridium World Commc'ns, Ltd.*, 233 F.R.D. 40, 48 (D.D.C. 2006) ("The Court cannot say . . . that the potential vulnerability to a lack of loss causation defense is unique to

---

[2] Available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0001816708/000095017021004637/owlt-20210930.htm (filed November 15, 2021).

Mandelbaum's case."); *Farrah v. Provectus Biopharmaceuticals, Inc.*, 68 F. Supp. 3d 800, 806 (E.D. Tenn. 2014) ("[T]he potential defenses highlighted by Khemai are not unique and are not a basis for finding the presumption to be rebutted.").

None of the cases cited by Tweito and Simmons involving share acquisitions in connection with a merger demonstrate that McIntosh should be disqualified. *See* Tweito Opp. at 5; Simmons Opp. at 1-2. There was no dispute in those actions that the merger-related acquisitions constituted a small portion of total class period acquisitions. *See In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1029-30 (N.D. Cal. 1999) (no dispute that defenses regarding shares acquired in the merger would be "unique" to the movant); *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1110-11 (N.D. Cal. 2001) (same); *In re Peregrine Sys., Inc. Sec. Litig.*, No. 02-cv-870, 2002 WL 32769239, at *5 (S.D. Cal. Oct. 11, 2002) (same).[3] Moreover, *Peregrine* rejected a movant group "comprised of former directors, officers, founders and securities holders of Remedy Corporation, a public company acquired by Peregrine Systems," where "only one" stated that he only had access to "public financial information." *Id.* at *5, *7. Here, McIntosh was not a director, officer, or founder of Owlet Baby Care, was not involved in the execution of the merger, and did not have access to non-public information. In any event, the *Peregrine* court went on to appoint a movant group "who obtained Peregrine common stock when Peregrine acquired [their] company," demonstrating that the method by which McIntosh acquired Owlet shares does not disqualify him. *See id.* at *9-10 (reasoning that the movant group "did not rely on private information in obtaining their Peregrine stock").

Moreover, unlike in *Critical Path*, *Network Associates*, and *Peregrine*, the merger in this case is the central narrative basis of this action. Sandbridge (later

---

[3] *See also Hedick v. Kraft Heinz Co.*, 2019 WL 4958238, at *5 (N.D. Ill. Oct. 8, 2019) (doubting whether the operative complaint "intended to include merger shares") (cited in Tweito Opp. at 5).

Owlet) published misrepresentations about the financial prospects of the merger, both before and after the merger, to sell the merger to investors, including to Owlet Baby Care shareholders who were induced to exchange their Owlet Baby Care shares for Owlet shares in the merger. *See* Dkt. No. 1 ¶ 29 (the class period begins with Sandbridge filing a misleading registration statement in connection with the merger); *id.* at ¶ 1 (the class definition explicitly includes persons that "otherwise acquired" Owlet shares). All persons that purchased or otherwise acquired Owlet shares were injured when the price fell in response to later revelations of the truth. *See Id.* ¶ 35. As such, the defenses that Tweito and Simmons claim are "unique" to McIntosh will in fact be central issues in this litigation, regardless of who the lead plaintiff is, and are therefore not a basis to disqualify McIntosh. *See Countrywide*, 273 F.R.D. at 600.

Because a majority of Owlet shares following the merger were acquired in the same manner that McIntosh acquired his shares, he is more qualified to represent the class, not less. However, to the extent the Court has any concerns about his adequacy, McIntosh's counsel also represents Michael J. Butala, the investor that filed the initial complaint in this action. Mr. Butala purchased shares in the open market following the merger and can serve as an additional plaintiff to ensure that such class members are represented.[4] *See In re Glob. Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 205 (S.D.N.Y. 2003) ("Lead Plaintiffs have a responsibility to identify and include . . . purchasers of different categories of securities [who] have standing to bring claims on behalf of the various potential subclasses of securities purchasers"); *see also Christian v. BT Grp., plc*, 2017 WL 3705804, at *8 (D.N.J. Aug. 28, 2017) ("I take some comfort in the Pension Fund's offer to include an additional class representative"); *Ciccarello v. Alibaba Grp. Holding Ltd.*, 2022 WL

---

[4] As demonstrated by his certification, Butala purchased Owlet shares in the open market following the merger. *See* Dkt. No. 1 at 26.

409087, at *4 (S.D.N.Y. Feb. 10, 2022) (similar). In contrast, Tweito and Simmons have not identified any person that acquired shares in the merger that they would add as a plaintiff.

As such, Tweito and Simmons have failed to rebut the presumption that McIntosh is the most adequate plaintiff.

## IV. CONANT'S PROPOSED SUBCLASS IS NOT WARRANTED BY LAW, AND IS CONTRARY TO THE PURPOSE OF THE PSLRA

Conant argues that the Court should create a subclass of investors who have standing to pursue claims under Section 14(a) of the Exchange Act and appoint Conant as lead plaintiff of that subclass. *See* Conant Opp. at 5-7.

However, courts in this Circuit and out routinely reject the creation of subclasses at the lead plaintiff appointment stage of the litigation because it is contrary to the mandate and purpose of the PSLRA. *See McKesson*, 79 F. Supp. 2d at 1150-51 (denying a proposal by two movant groups "that they should represent all § 14(a) claims against McKesson" because the PSLRA creates a "statutory presumption that one lead plaintiff can vigorously pursue *all* available causes of action against *all* possible defendants under *all* available legal theories") (emphasis in original); *Weisz v. Calpine Corp.*, No. 4:02-cv-1200, 2002 WL 32818827, at *3 n.3 (N.D. Cal. Aug. 19, 2002) ("The matter of a subclass may be dealt [with] at the time of class certification."); *In re Cendant Corp. Litig.*, 182 F.R.D. 476, 480 (D.N.J. 1998) (a subclass "would injure the purpose of the PSLRA by fragmenting the plaintiff class and decreasing client control"). The same result is warranted here.

Conant's proposed subclass is especially inappropriate here because McIntosh's financial interest is so much larger than Conant's. *See Bodri v. Gopro, Inc.*, No. 16-cv-00232, 2016 WL 1718217, at *6 (N.D. Cal. Apr. 28, 2016) (rejecting a proposed subclass "[e]specially in light of Gao's relatively small financial interest in this litigation").

As such, the Court should decline to create a Section 14(a) subclass. *See also In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1157 (C.D. Cal. 2008) ("[N]othing in the PSLRA requires that the lead plaintiffs have standing to assert all of the claims so long as lead plaintiffs identify and include named plaintiffs [at the class certification stage] who have standing.") (citation and internal quotation marks omitted).

*      *      *

Accordingly, Tweito and Simmons have failed to present the proof necessary to rebut the presumption that McIntosh is the most adequate plaintiff, and Conant has failed to demonstrate that a Section 14(a) subclass is necessary in this action.

## V.   CONCLUSION

For the foregoing reasons, McIntosh respectfully requests that the Court appoint him as lead plaintiff, and approve his selection of Glancy Prongay & Murray LLP as lead counsel for the class.

DATED:  March 4, 2022

**GLANCY PRONGAY & MURRAY LLP**

By:  *s/ Charles H. Linehan*
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
Email:  clinehan@glancylaw.com

*Counsel for Plaintiffs Casey McIntosh and Proposed Lead Counsel for the Class*

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007
Email: fcruz@frankcruzlaw.com

*Additional Counsel*

## PROOF OF SERVICE BY ELECTRONIC POSTING

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old. On March 4, 2022, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 4, 2022, at Los Angeles, California.

*s/ Charles H. Linehan*
Charles H. Linehan