# <u>EXHIBIT B</u>

## THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| MIRIAM EDWARDS, Individually And On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> MCDERMOTT INTERNATIONAL, INC., DAVID DICKSON, and STUART SPENCE, <br><br> Defendants. | CIVIL ACTION NO. 4:18-cv-04330 |
| THE PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI, Individually And On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> MCDERMOTT INTERNATIONAL, INC., DAVID DICKSON, and STUART SPENCE, <br><br> Defendants. | CIVIL ACTION NO. 4:19-cv-00135 |

## MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND
## APPROVAL OF LEAD PLAINTIFF'S SELECTION OF COUNSEL

Exhibit B
Page 5

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT .....................................................................................1

STATEMENT OF ISSUES ............................................................................................2

STATEMENT OF FACTS .............................................................................................3

ARGUMENT .................................................................................................................4

    I.    The Section 10(b) and Section 14(a) Claims ................................................. 4

    II.   MSPERS Should be Appointed Lead Plaintiff of the Section 14(a) Claim ..................... 7

        A.   The Motion of MSPERS is Timely ................................................................. 7

        B.   MSPERS Has the Largest Section 14(a) Financial Interest ....................................... 8

        C.   MSPERS Satisfies the Typicality and Adequacy Requirements of Rule 23 of the Federal Rules of Civil Procedure........................................................................ 8

    III.  The Court Should Approve Lead Plaintiff's Selection of Counsel ................................. 11

CONCLUSION................................................................................................................11

Exhibit B
Page 6

# TABLE OF AUTHORITIES

**Cases**

*Blake Partners, Inc. v. Orbcomm, Inc.*,
No. 07-4517 (WHW), 2008 U.S. Dist. LEXIS 43061 (D.N.J. June 2, 2008)...........................9

*In re Cobalt Int'l Energy, Inc., Sec. Litig.*,
Civ. Act. No. H-14-3428, 2017 U.S. Dist. LEXIS 91938
(S.D. Tex. June 15, 2017) ...........................................................................................9

*In re Enron Corp., Sec. Litig.*,
206 F.R.D. 427 (S.D. Tex. 2002)...........................................................................9, 10

*In re Fossil*,
713 F. Supp. 2d 644 (N.D. Tex. 2010) ......................................................................5

*Fresno Cnty. Emples. Ret. Ass'n v. comScore, Inc.*,
268 F. Supp. 3d 526 (S.D.N.Y. 2017) .......................................................................6

*Friedman v. Quest Energy Partners LP*,
261 F.R.D. 607 (W.D. Okla. 2009).............................................................................5

*Miller v. Ventro Corp.*,
No. C 01-01287 SBA, 2001 U.S. Dist. LEXIS 26027
(N.D. Cal. Nov. 28, 2001)............................................................................................7

*Parker v. Hyperdynamics*,
Civ. Act. No. 4:12-CV-999, 2013 U.S. Dist. LEXIS 21767
(S.D. Tex. Feb. 19, 2013) ..........................................................................................11

*In re Peregrine Sys. Sec. Litig.*,
Civ. Act. No. 02cv870-J (RBB), 2002 U.S. Dist. LEXIS 27690
(S.D. Cal. Oct. 2, 2002) ...............................................................................................5

*Ramzan v. GDS Holdings, Ltd.*,
Civ. Act. No. 4:18CV539-ALM-KPJ, 2018 U.S. Dist. LEXIS 183758
(E.D. Tex. Oct. 26, 2018) ............................................................................................8

*Singh v. 21 Vianet Grp., Inc.*,
No. 2:14-CV-894-JRG-RSP, 2015 WL 5604385 (E.D. Tex. Sept. 21, 2015).......................9, 10

*Stirman v. Exxon Corp.*,
280 F.3d 554 (5th Cir. 2002) ......................................................................................9

Exhibit B
Page 7

*Tarica v. McDermott Int'l, Inc.*,
    CIV Civ. Act. No.: 99-3831 SECTION: "R"(5), 2000 U.S. Dist. LEXIS 5031
    (E.D. La. Apr. 13, 2000) .................................................................................................. 10

**Statutes**

15 U.S.C. § 78t(a) ........................................................................................................................ 1

15 U.S.C. § 78u-4(a)(3)(B)(iii) ............................................................................................ *passim*

15 U.S.C. §78u-4(a)(3)(B)(v) ................................................................................................. 3, 11

15 U.S.C. § 78u-4(a)(3)(A)(i) ...................................................................................................... 7

15 U.S.C. § 78u-4(a)(3)(B) ......................................................................................................... 7

**Other Authorities**

Herbert B. Newberg & Alba Conte,
    Newberg on Class Actions §22.24, at 107-08 (4th ed. 2002) ..................................................... 9

**Rules**

Fed. R. Civ. P. 23(a) .............................................................................................................. 9, 10

iii

The Public Employees' Retirement System of Mississippi ("MSPERS"), by its counsel, hereby moves this Court for an Order pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") appointing MSPERS as Lead Plaintiff on the claims asserted in this action against McDermott International, Inc. ("McDermott"), David Dickson, and Stuart Spence (collectively, "Defendants") pursuant to Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 14a-9 promulgated thereunder, and approving its selection of Wolf Popper LLP as Lead Counsel regarding the Section 14(a) Claim (defined below).[1]  In support of this Motion, MSPERS submits the following argument, the Declaration of Chet B. Waldman, dated March 15, 2019 ("Waldman Decl."), and an Order, filed concurrently herewith.

## PRELIMINARY STATEMENT

MSPERS filed its class action complaint against the Defendants (Case No. 4:19-cv-00135, "*MSPERS*") on January 14, 2019, which alleges violations of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder, on behalf of all *investors* who *held* McDermott common stock as of April 4, 2018, had the right to vote on McDermott's merger with the Chicago Bridge & Iron Company N.V. ("CB&I") (the "Merger") pursuant to McDermott's Proxy Statement dated March 29, 2018 (the "Proxy"), and were damaged, primarily, by the false and misleading statements within or relating to the Proxy concerning the business of CB&I (the "Section 14(a) Claim" and the "Section 14(a) Class").

Separately pending before this Court at the time MSPERS filed its action was *Edwards v. McDermott International, Inc.* (Case No. 4:18-cv-04330, "*Edwards*"), an action alleging claims

---

[1]     Section 20(a) establishes control person liability for the violation of any provision of the Exchange Act.  *See* 15 U.S.C. § 78t(a).  As such, MSPERS' Section 20(a) claim, and the extent to which it is seeking lead plaintiff status, relates only to the conduct giving rise to the Section 14(a) Claim, as distinguished from conduct giving rise to claims under Section 10(b) of the Exchange Act.

1

under Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder, on behalf of *purchasers* of McDermott common stock during the period January 24, 2018, through October 30, 2018 (the "Section 10(b) Claim" and the "Section 10(b) Class"). Pursuant to the PSLRA, lead plaintiff movants for the Section 10(b) Claim filed motions by January 15, 2019. Those motions are currently *sub judice*.

On February 7, 2019, Defendants moved to consolidate the *MSPERS* and *Edwards* actions.

On February 22, 2019, this Court held a hearing on the competing lead plaintiff motions regarding the Section 10(b) Claim, along with Defendants' motion to consolidate. MSPERS' counsel participated in this hearing. The Court indicated orally that it would consolidate the two actions, but appoint separate lead plaintiffs for the Section 10(b) Claim and Section 14(a) Claim. The order granting consolidation of the two cases appeared as a minute entry on the *Edwards* docket later that same day; however, no entry has been made in the *MSPERS* docket.

MSPERS now moves this Court pursuant to the PSLRA to be appointed Lead Plaintiff for the Section 14(a) Claim and the Section 14(a) Class and for approval of its selection of Wolf Popper LLP to be Lead Counsel.

## **STATEMENT OF ISSUES**

Pursuant to the PSLRA, the Court shall appoint as lead plaintiff the movant who filed the complaint or timely files a lead plaintiff motion, possesses the largest financial interest in the outcome of the action, and otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). MSPERS submits that it should be appointed as Lead Plaintiff of the Section 14(a) Claim and of the Section 14(a) Class, because: (1) MSPERS filed the complaint giving rise to the Section 14(a) Claim, provided notice to the putative Section 14(a) Class as required by the PSLRA, and timely filed this motion; (2) to its counsel's knowledge,

MSPERS has the largest financial interest in the relief sought under the Section 14(a) Claim; (3) while the Section 10(b) and 14(a) Claims conflict with each other with respect to allegations of falsity, scienter, and loss causation, MSPERS is not a member of the putative Section 10(b) Class and therefore has no conflicting financial interests and is uniquely well-situated to represent the Section 14(a) Class; and (4) MSPERS also otherwise satisfies the requirements of Fed. R. Civ. P. 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  MSPERS' selection of Wolf Popper LLP as lead counsel should also be approved.  15 U.S.C. § 78u-4(a)(3)(B)(v).

## **STATEMENT OF FACTS**

McDermott provides engineering, procurement, construction, and installation and technology solutions to the energy industry.  ¶2.[2]

On December 18, 2017, after the close of the market, McDermott announced it had agreed to merge with CB&I pursuant to a stock-for-stock merger, after which McDermott would be the surviving company.  The combination was subject to approval by a majority of McDermott shareholders voting on the Merger.  ¶3.

The Proxy, dated March 29, 2018, was disseminated to McDermott record holders as of April 4, 2018.  Additionally, between April 2, 2018, and May 2, 2018, McDermott publicly filed materials with the U.S. Securities & Exchange Commission ("SEC") and disseminated other materials to shareholders that were intended to influence the shareholder vote.  ¶¶32-49.  The *MSPERS* complaint alleges that the Proxy, along with the other Merger-related materials, were materially false and misleading.  In particular, the Proxy failed to disclose material adverse facts about CB&I and CB&I's business, operations, and prospects.  ¶¶4, 26-31.

---

[2]     Unless otherwise indicated, references to "¶__" are to the *MSPERS* complaint.

Based on the representations in the Proxy and related materials, the Merger was approved by a majority of McDermott's shareholders eligible to vote thereon and closed on May 10, 2018. On the day the Merger closed, McDermott shares closed at $20.70 per share. ¶¶51-53.

On October 30, 2018, after the close of trading, McDermott reported financial results for its third quarter 2018, which fell far below analysts' estimates. Most significantly, the Company reported a $744 million negative change in the value of projects it had acquired from CB&I. The $744 million was a substantial addition to an earlier $221 million negative change in the value of projects it had acquired from CB&I back in May 2018. The $965 million aggregate loss in value represented more than 50% of the value paid by McDermott to acquire CB&I, as measured by the market value of the McDermott shares issued to CB&I shareholders pursuant to the Merger. ¶¶58-60.

On this news, on October 31, 2018, McDermott's share price fell $5.14 per share, nearly 40%, to close at $7.73 per share on unusually heavy trading volume. The overall decline in value of McDermott common stock from May 10, 2018, to October 31, 2018, was $12.97 per share (or 61.9%). ¶¶63-64.

## ARGUMENT

### I. THE SECTION 10(b) AND SECTION 14(a) CLAIMS

On February 22, 2019, this Court held a hearing in the *Edwards* action on the competing lead plaintiff motions for the Section 10(b) Claim and Defendants' motion to consolidate this action with the *Edwards* actions. The Court consolidated the two actions, but indicated that there should be separate Lead Plaintiffs for the Section 10(b) and Section 14(a) Claims. Later that day, the consolidation order was entered, but, as of this date, a Section 10(b) lead plaintiff has not been appointed.

4

The need for separate lead plaintiffs remains. The Section 10(b) and Section 14(a) Claims put forth divergent theories as to injury and damages, creating a potential conflict between the members of the purported classes (which are not co-extensive), thus requiring separate lead plaintiffs. *See Friedman v. Quest Energy Partners LP*, 261 F.R.D. 607 (W.D. Okla. 2009) (appointing separate lead plaintiffs for claims under Section 11 of the Securities Act of 1933 (5 U.S.C. § 77k) and Section 10(b) of the Exchange Act in light of potential conflicts); *In re Peregrine Sys. Sec. Litig.,* Civ. Act. No. 02cv870-J (RBB), 2002 U.S. Dist. LEXIS 27690 (S.D. Cal. Oct. 2, 2002) (same). Specifically, the Section 14(a) Claim alleges that the Proxy, and certain other Merger-related materials, contained false statements relating to CB&I's business, while the Section 10(b) Claim alleges false statements with respect to *both* McDermott's and CB&I's businesses leading up to, and following, the Merger. If the Section 10(b) Claim successfully proves the existence of false statements and loss causation concerning McDermott's business, rather than just false statements and loss causation related to CB&I, the Section 14(a) Claim will be undercut. Because MSPERS did not purchase McDermott common shares during the Section 10(b) Class period, it has no financial interest in the Section 10(b) Claim, and therefore MSPERS has no conflict in vigorously representing the Section 14(a) Class. *See* Waldman Decl. at ¶2.

Moreover, the evidentiary and pleading burdens applicable to the Section 10(b) and Section 14(a) Claims are distinct. The Section 10(b) Claim requires scienter. *See In re Fossil*, 713 F. Supp. 2d 644, 650 (N.D. Tex. 2010) ("In order to state a claim for fraud under Section 10(b) and Rule 10b-5 of the Securities Exchange Act, a plaintiff must allege, in connection with the purchase or sale of securities, (1) a misstatement or an omission (2) of a material fact (3) *made with scienter* (4) on which plaintiff relied (5) that proximately caused the plaintiff's injury" (citation omitted and

5

emphasis added)). Additionally, "[b]ecause Plaintiffs claim securities fraud in violation of Rule 10(b), they must satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b)…." *Id.*

The Section 14(a) Claim, on the other hand, requires pleading and proving negligence as to the false and misleading Proxy statements. *Id.* at 654-55 ("To state a claim under § 14(a), a plaintiff must allege that (1) defendants misrepresented or omitted a material fact in a proxy statement…; (2) defendants acted ***at least negligently*** in distributing the proxy statement…; and (3) the false or misleading proxy statement was an essential link in causing the [loss-generating] corporate actions" (quotation marks and citation omitted; emphasis added)). However, the heightened fraud standard applicable to Section 10(b) claims could, under certain circumstances, be imposed on (and thus weaken) a Section 14(a) claim if the complaint, overall, "sounds in fraud." *See, e.g., Fresno Cnty. Emples. Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 558 (S.D.N.Y. 2017) ("when claims under Sections 11 and 14(a) 'are premised on allegations of fraud,' they must also satisfy [Fed. R. Civ. P. 9(b)]" (citing cases); although the Court found that Fed. R. Civ. P. 9(b) did not apply to the Section 14(a) claim because the complaint did not sound in fraud).

Furthermore, both remaining movants for lead plaintiff of the Section 10(b) Claim—the Nova Scotia Health Employees' Pension Plan ("NSHEPP") and the City of Pontiac General Employees' Retirement System ("Pontiac")—agree that there should be separate representation for the Section 10(b) and 14(a) Claims. *See Edwards*, Dkt. No. 49 at 2 (Pontiac stating "it appears unanimous that the §10(b) claim and §14(a) claim should have separate lead plaintiffs"); *Id.*, Dkt. 63 at 2 (NSHEPP acknowledging it "has no interest in any potential recovery arising from the Proxy Action's §14(a) claim," and "[i]f the Court grants consolidation, it can readily ensure that

6

Exhibit B
Page 14

the interests of the respective classes at issue in the two actions are protected by appointing MSPERS…to oversee the Proxy Action's §14(a) claims").[3]

Accordingly, separate lead plaintiffs for the Section 10(b) and Section 14(a) Claims should be appointed, with each Lead Plaintiff being afforded the opportunity to file a separate complaint.

## II. MSPERS SHOULD BE APPOINTED LEAD PLAINTIFF OF THE SECTION 14(a) CLAIM

Section 21D(a)(3)(B) of the PSLRA sets forth the procedure for selecting a lead plaintiff in class actions brought under the Exchange Act. 15 U.S.C. § 78u-4(a)(3)(B). Under this section, the Court is directed to appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, MSPERS satisfies all three of these criteria and is thus entitled to the presumption that it is the most adequate plaintiff and should be appointed Lead Plaintiff of the Section 14(a) Claim and Section 14(a) Class.

### A. The Motion of MSPERS is Timely

On January 14, 2019, MSPERS filed the *MSPERS* complaint and caused a notice to be published in accordance with Section 21D(a)(3)(A)(i) of the PSLRA (15 U.S.C. § 78u-4(a)(3)(A)(i)), informing putative Section 14(a) Class members that they had until March 15, 2019

---

[3]  *See also Miller v. Ventro Corp.*, No. C 01-01287 SBA, 2001 U.S. Dist. LEXIS 26027, at *38 (N.D. Cal. Nov. 28, 2001) (appointing two separate lead plaintiffs where competing movants "conceded that there are potential differences" between various class members).

7

to file a lead plaintiff motion (the "Notice"). *See* Waldman Decl., Ex. A. Considering the *MSPERS* complaint and that the instant motion is timely, MSPERS satisfies the first element required to be appointed Lead Plaintiff.

> **B.      MSPERS Has the Largest Section 14(a) Financial Interest**

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall appoint as lead plaintiff the class member or members who represent the largest financial interest in the relief sought by the action. As of the record date of April 4, 2018, MSPERS held 167,252 shares of McDermott common stock. *See* Waldman Decl., Ex. B at ¶5. MSPERS continued to hold those shares of McDermott common stock immediately prior to the Merger on May 10, 2018. The closing market price of McDermott common stock was $6.64 per share on May 9, 2018. Following the Merger, McDermott common stock split one-for-three, pursuant to which MSPERS exchanged its 167,252 shares of McDermott common stock for 55,750 shares of common stock, which closed at $20.70 per share on May 10, 2018. MSPERS retained all of its shares at the time of the revelation of the truth and suffered a substantial loss of $723,077.50 as a result of Defendants' misconduct. *See Ramzan v. GDS Holdings, Ltd.*, Civ. Act. No. 4:18CV539-ALM-KPJ, 2018 U.S. Dist. LEXIS 183758, at *7 (E.D. Tex. Oct. 26, 2018) (using losses as the primary measure of financial interest). Neither MSPERS nor its counsel has received notice of any other applicant or applicant group that has sustained greater financial losses in connection with the Section 14(a) Claim. MSPERS therefore satisfies the largest financial interest requirement.

> **C.      MSPERS Satisfies the Typicality and Adequacy Requirements of Rule 23 of the Federal Rules of Civil Procedure**

In addition to timely moving for lead plaintiff and possessing the largest financial interest, a party must also "satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). While the PSLRA states that a lead plaintiff must meet the

8

Exhibit B
Page 16

requirements of Rule 23(a), of the four prerequisites to class certification, only two – typicality and adequacy – are relevant to the lead plaintiff determination. *See, e.g., Singh v. 21 Vianet Grp., Inc.*, No. 2:14-CV-894-JRG-RSP, 2015 WL 5604385, at *1 (E.D. Tex. Sept. 21, 2015) (at the lead plaintiff stage, only a *prima facie* showing of typicality and adequacy is required); *In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 441 (S.D. Tex. 2002) ("the proposed Lead Plaintiff must make at least a preliminary showing that it has claims that are typical of those of the putative class and has the capacity to provide adequate representation for those class members").

### 1. Typicality

Rule 23(a)(3) requires the representative parties' claims or defenses to be typical of those of the class. Typicality exists where the representative parties' claims arise from the same injury and course of conduct, and are based on the same legal issues. *See, e.g., Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002); *In re Cobalt Int'l Energy, Inc., Sec. Litig.*, Civ. Act. No. H-14-3428, 2017 U.S. Dist. LEXIS 91938, at *10 (S.D. Tex. June 15, 2017) (typicality satisfied where class representatives' claims "share the same legal theory" with putative class members).

There is a well-defined community of interest in the questions of law and fact involved in prosecuting the Section 14(a) Claim. Because the Section 14(a) Claim asserted by MSPERS is premised on the same legal and remedial theories and are based on the same types of misrepresentations and omissions as the other Section 14(a) Class members, typicality is satisfied. Herbert B. Newberg & Alba Conte, Newberg on Class Actions §22.24, at 107-08 (4th ed. 2002) ("The majority of class action decisions support the view that when it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is met.").

9

### 2. *Adequacy*

Under Rule 23(a)(4), a representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). As such, "class representatives must not have interests antagonistic to the class members." *Tarica v. McDermott Int'l, Inc.*, Civ. Act. No.: 99-3831 SECTION: "R"(5), 2000 U.S. Dist. LEXIS 5031, at *14 (E.D. La. Apr. 13, 2000). Pursuant to the PSLRA, "[t]he adequacy review 'serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent.'" *Enron*, 206 F.R.D. at 441 (citation omitted); *see also Singh,* 2015 WL 5604385, at *2 ("a plaintiff meets the adequacy requirement when she can fairly and adequately protect the proposed class, and her interests do not conflict with those of the other proposed class members" (internal quotation marks and citation omitted)).

MSPERS is not aware of any conflicts of interest between itself and the putative Section 14(a) Class it seeks to represent, nor is MSPERS' counsel aware of any unique defenses MSPERS may face. Instead, as evidenced by its injuries, MSPERS' interests are clearly aligned with the other putative Section 14(a) Class members who also suffered injuries due to Defendants' same alleged misstatements. MSPERS therefore satisfies Rule 23(a)(4)'s adequacy requirement.

Significantly, MSPERS did not purchase *any* McDermott shares of common stock during the Section 10(b) Class period, and thus has no conflict of interest in alleging claims arising primarily, if not exclusively, from false and misleading representations concerning CB&I's business, as disclosed in the Proxy and related materials in support of the Merger. *See* Waldman Decl., ¶2. Accordingly, MSPERS meets each of the PSLRA's three requirements demonstrating the presumptive most adequate plaintiff, and should therefore be appointed Lead Plaintiff of the Section 14(a) Claim and Section 14(a) Class. 15 U.S.C. § 78u-4(a)(3)(B)(iii).

### III. THE COURT SHOULD APPROVE LEAD PLAINTIFF'S SELECTION OF COUNSEL

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the lead plaintiff shall, subject to Court approval, "select and retain counsel to represent the class." *Parker v. Hyperdynamics*, Civ. Act. No. 4:12-CV-999, 2013 U.S. Dist. LEXIS 21767, at \*11 (S.D. Tex. Feb. 19, 2013). MSPERS, the presumptively most adequate Section 14(a) Claim lead plaintiff, has selected Wolf Popper to serve as Lead Counsel for the Section 14(a) Class. Wolf Popper possesses extensive experience litigating securities class actions and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors. *See* Waldman Decl., Ex. C. Thus, the Court can rest assured that by approving MSPERS' choice of Lead Counsel, the Section 14(a) Class will receive the highest caliber of representation.

### CONCLUSION

For the foregoing reasons, MSPERS respectfully requests the Court issue an Order (1) appointing MSPERS as Lead Plaintiff of the Section 14(a) Claim and for the Section 14(a) Class; (2) approving Wolf Popper as Lead Counsel regarding the Section 14(a) Claim and the Section 14(a) Class; (3) allowing MSPERS the option to file a separate complaint on behalf of the putative Section 14(a) Class only; and (4) granting such other relief as is deemed just and proper.

Dated: March 15, 2019

<div style="margin-left:50%;">

WOLF POPPER LLP

By: *s/Jeffrey W. Chambers*
Jeffrey W. Chambers
711 Louisiana, Suite 2150
Houston, TX 77002
(713) 438-5244

-and-

Chet B. Waldman
Robert C. Finkel

</div>

11

Matthew Insley-Pruitt
WOLF POPPER LLP
845 Third Avenue, 12th Floor
New York, New York 10022
(212) 759-4600

*Attorneys for the Public Employees'
Retirement System of Mississippi and
Proposed Lead Counsel for the Section
14(a) Class*

**CERTIFICATE OF CONFERENCE**

The Public Employee's Retirement Systems of Mississippi ("MSPERS") has not conferred with counsel for defendants or counsel for other parties who may make a competing motion for lead plaintiff because (i) the motion is mandated by statute to be made by March 15, 2019, (ii) defendants are not the adverse party on the motion, and (iii) MSPERS lacks knowledge of the identify of other investors (if any) who may file a motion for appointment of lead plaintiff.

Dated: March 15, 2019

WOLF POPPER LLP

By: *s/ Jeffrey W. Chambers*
Jeffrey W. Chambers
711 Louisiana, Suite 2150
Houston, TX 77002
(713) 438-5244

-and-

Chet B. Waldman
Robert C. Finkel
Matthew Insley-Pruitt
WOLF POPPER LLP
845 Third Avenue, 12th Floor
New York, New York 10022
(212) 759-4600

*Attorneys for the Public Employees'*
*Retirement System of Mississippi and*
*Proposed Lead Counsel for the Section*
*14(a) Class*

13

Exhibit B
Page 21