UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MICHAEL J. BUTALA,

Plaintiff,

v.

OWLET, INC., et al.,

Defendants.

Case No. 2:21-cv-09016-FLA (JEMx)
Case No. 2:21-cv-09293-FLA (JEMx)

**ORDER GRANTING MOTIONS TO CONSOLIDATE RELATED ACTIONS; ORDER FOR ADDITIONAL BRIEFING ON MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL [DKTS. 10, 13, 17, 21]**

## RULING

Before the court are Movants Thomas E. Tweito ("Tweito"), Christopher J. Simmons ("Simmons"), Drew Conant ("Conant"), and Casey McIntosh's ("McIntosh") (collectively, "Movants") Motions for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Lead Plaintiff's Selection of Lead Counsel ("Motions"). Dkt. 10, 13, 17, 21. On March 10, 2022, the court found these Motions appropriate for resolution without oral argument and vacated the hearing set for March 18, 2022. Dkt. 53; *see also* Fed. R. Civ. P. 78(b); Local Rule 7-15.

1    For the reasons stated herein, the court GRANTS Movants' unopposed Motions

2  for Consolidation of Related Actions.  Dkt. 10, 13, 17, 21.  The action styled *Jones*

3  *Cherian v. Owlet, Inc., et al.*, Case No. 2:21-cv-09293-FLA (JEMx) ("Case No. 21-

4  9293") is hereby consolidated with the instant action, styled *Michael J. Butala v.*

5  *Owlet, Inc., et al.*, Case No. 2:21-cv-09016-FLA (JEXx) ("Case No. 21-9016").  No

6  further filings shall be made or accepted in Case No. 21-9293, and that action shall be

7  administratively closed.  All pleadings and filings therein shall maintain their legal

8  relevance.  Any further pleadings or filings received by the Clerk of Court for Case

9  No. 21-9293 shall be filed in the consolidated action bearing Case No. 21-9016.

10    The court further GRANTS the parties leave to file supplemental briefing

11  regarding the questions stated below, concerning Movants' requests to be appointed

12  Lead Plaintiff.   Any supplemental briefs shall be filed on or before 14 days from the

13  date of this Order and shall not exceed eight (8) pages per Movant or other party.

14                                                    **BACKGROUND**

15    Case Nos. 21-9016 and 21-9293 are putative securities class actions against

16  Defendant Owlet, Inc. ("Owlet"), Defendants Kurt Workman ("Workman") and Kate

17  Scolnick ("Scolnick") (the "Individual Defendants"), and Defendants Ken Suslow

18  ("Suslow"), Domenico De Sole ("De Sole"), Ramez Toubassy ("Toubassy"), Jamie

19  Weinstein ("Weinstein"), Krystal Kahler ("Kahler"), and Michael F. Goss ("Goss")

20  (collectively, the "Sandbridge Defendants") (all together "Defendants") for violation

21  of the Securities Exchange Act of 1934 (the "Exchange Act").  Although these two

22  actions were brought by different Named Plaintiffs, Michael J. Butala ("Butala") and

23  Jones Cherian ("Cherian") (collectively, "Plaintiffs"), the Complaints in each case are

24  substantially identical (with the same typographical errors), and assert the same claims

25  against the same Defendants, on behalf of the same putative classes.  *Compare* Case

26  No. 21-9016, Dkt. 1 ("Case No. 21-9016 Compl."), *with* Case No. 21-9293, Dkt. 1

27  ("Case No. 21-9293 Compl.") (collectively, "Compls.").  The court includes the

28  following allegations from the Complaints to provide context for the Movants'

arguments only and does not make any findings of fact regarding the truth of these allegations.

"Sandbridge was a special purpose acquisition company formed for the purpose of effecting a merger, capital stock exchange asset acquisition, stock purchase, reorganization, or similar business combination with one or more businesses." Compls. ¶¶ 2.  On July 15, 2021, Sandbridge completed a business combination with Owlet Baby Care Inc. ("OBC"), a company that designed and sold products and services for parents to monitor the health and wellness of their children, and the combined company became Owlet.  *Id.* ¶¶ 3.  Owlet's flagship product was a baby monitor called Smart Sock, which allowed parents to track an infant's oxygen levels, heart rate, and sleep trends using an application.  *Id.* ¶¶ 4.

On March 31, 2021, Owlet[1] filed its Registration Statement on Form S-1, stating its revenues for the period that ended on December 31, 2020.  *Id.* ¶¶ 29.  The Registration Statement warned, in relevant part, that the United States Food and Drug Administration ("FDA") "'***may not agree*** with that conclusion [that the Smart Sock is not a medical device] and ***could*** require us to obtain marketing authorization' to sell Smart Sock."  *Id.* (emphasis and brackets in original).  On June 21, 2021, Owlet filed its proxy statement on Form 424b3 soliciting votes in favor of the business combination.  *Id.* ¶¶ 30.  The Proxy Statement stated Owlet's revenues for the period that ended on March 31, 2021, and warned, in relevant part, that "'the FDA … ha[s] expressed they do not agree with that conclusion [that the Smart Sock is not a medical device] and ***could*** require us to obtain marketing authorization' to sell the Smart

---

[1] It is unclear whether Plaintiffs allege these statements were made by Owlet, OBC, or Sandbridge.  Although the Complaints state these statements were made by "Owlet," Compls. ¶¶ 29-31, Plaintiffs allege Owlet was formed by the completion of the business combination on July 15, 2021, *id.* ¶¶ 3.  The timing and contents of these statements suggest Plaintiffs intended to plead they were made by OBC or Sandbridge, rather than by Owlet.  *See id.*

Sock." *Id.* (emphasis and brackets in original).  On August 12, 2021, Owlet announced its second quarter and full year 2021 financial results in a press release.  *Id.* ¶¶ 31.  Plaintiffs contend these statements were materially false and/or misleading and failed to disclose material, adverse facts about Owlet's business, operations, and prospects.  *Id.* ¶¶ 32.

On October 4, 2021, Owlet revealed it had received a warning letter from the FDA, which stated "the Company's marketing of its Owlet Smart Sock product … renders [it] a medical device requiring premarket clearance or approval from the FDA." *Id.* ¶¶ 34.  On this news, Owlet's stock price fell by $1.29, or 23%, to close at $4.19 per share on October 4, 2021, on unusually heavy trading volume.  *Id.* ¶¶ 35.

Plaintiffs filed the Complaints on November 17 and 30, 2021, on behalf of the following classes: "persons and entities: (a) that purchased or otherwise acquired Owlet securities between March 31, 2021 and October 4, 2021, inclusive (the 'Class Period'); and/or (b) held Sandbridge common stock … as of June 1, 2021 and were eligible to vote at Sandbridge's special meeting on July 14, 2021."  Compls. ¶¶ 1. The Complaints assert three causes of action for: (1) violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder against all Defendants; (2) violation of Section 20(a) of the Exchange Act against the Individual Defendants; and (3) violation of Section 14(a) of the Exchange Act against all Defendants.  Compls. ¶¶ 58-76.

On January 18, 2022, Movants filed the subject Motions, requesting the court (1) Consolidate Case Nos. 21-9016 and 21-9293, (2) appoint each Movant as Lead Plaintiff, pursuant to their own Motion, and (3) approve each Movant's selection of Lead Counsel.  Dkts. 10, 13, 17, 21.  Each Movant opposes the other Movants' requests for appointment of Lead Plaintiff and selection of Lead Counsel.  Dkts. 37, 40, 45, 46.

On March 7, 2022, the court found Case No. 21-9293 was related to Case No., 21-9016, and transferred the former action to this court.  Case No. 21-9293, Dkt. 16.

4

Pursuant to a stipulation by the parties, the court stayed Defendants' deadline to respond to the Complaint in Case 21-9293, pending the court's ruling on the subject Motions.  Case No. 21-9293, Dkt. 20.

## DISCUSSION

### I.    Moton for Consolidation of Related Actions

Pursuant to the Private Securities Litigation Reform Act (the "PSLRA"), the court should first rule on motions to consolidate before addressing the lead plaintiff and lead counsel issues.  15 U.S.C. § 78u-4(a)(3)(B)(ii).  Fed. R. Civ. P. 42(a) allows the court to consolidate actions that "involve a common question of law or fact." "The district court has broad discretion under this rule to consolidate cases pending in the same district." *Invs. Rsch. Co. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 877 F.2d 777, 777 (9th Cir. 1989).  In determining whether to consolidate actions, "a court weighs the interest in judicial convenience against the potential for delay, confusion, and prejudice caused by consolidation." *Paxonet Commc'ns, Inc. v. TranSwitch Corp.*, 303 F. Supp. 2d 1027, 1028 (N.D. Cal. 2003).

"Courts have recognized that securities class actions are particularly suited to consolidation to help expedite pretrial proceedings, reduce case duplication, avoid the involvement of parties and witnesses in multiple proceedings, and minimize the expenditure of time and money." *Hufnagle v. Rino Int'l Corp.*, Case No. 2:10-cv-08695-VBF (VBKx), 2011 WL 710704, at *2 (C.D. Cal. Feb. 14, 2011). "Consolidation is appropriate when multiple cases 'allege the same misrepresentations and omissions by' defendants and have similar class definitions." *Id.* (quoting *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1130 (C.D. Cal. 1999)).

The court finds that Case Nos. 21-9016 and 21-9293 are well-suited for consolidation.  Both Complaints are substantively identical (with the same typographical errors) and assert the same causes of action against the same Defendants, on behalf of the same putative classes, based on the same alleged misrepresentations.  *Compare* Case No. 21-9016 *with* Case No. 21-9293.  All

Movants request the court consolidate the two actions, and no party has filed an opposition to these requests.

Accordingly, the court GRANTS Movants' requests for consolidation and ORDERS the actions be consolidated for all purposes including, but not limited to, discovery, pretrial proceedings, and trial. The docket in Case No. 21-9016 shall constitute the Lead Case for the consolidated action, with all future filings in the consolidated actions to be filed in the Lead Case. The court further ORDERS the Clerk to file a copy of this order in and then administratively close Case No. 21-9293.

## II.    Motion for Appointment of Lead Plaintiff

### A.    Legal Standard

The PSLRA sets forth the requirements of securities class actions brought pursuant to the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(1). In particular, subdivision (a)(3) outlines the statutory requirements for a district court's appointment of lead plaintiff. "The Act instructs district courts to select as lead plaintiff the one 'most capable of adequately representing the interests of class members.'" *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(i)). "The 'most capable' plaintiff — and hence the lead plaintiff — is the one who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of [Fed. R. Civ. P. 23 ('Rule 23')]." *Id*. The court should follow a "three-step process for identifying the lead plaintiff pursuant to these criteria." *Id*.

First, the first plaintiff to file the lawsuit must cause notice of the lawsuit to be published in a widely circulated national business-oriented publication or wire service, advising members of the purported plaintiff class of the pendency of the action, the claims asserted therein, the purported class period, and that "any member of the purported class may move the court to serve as lead plaintiff of the purported class." 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

/ / /

Second, the court must consider any motion made by a class member in response to the notice requirement and appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members. *Id.* § 78u-4(a)(3)(B)(i).

Third, the court must "give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfied Rule 23's typicality and adequacy requirements." *Cavanaugh*, 306 F.3d at 730 (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)).

### B.   Analysis

#### 1.   Published Notice

On November 17, 2021, counsel for Plaintiff Butala published a notice in *Business Wire* announcing that a securities class action had been filed against Defendants and advising purchasers of Owlet securities that they had 60 days from the date of publication of the notice to file a motion to be appointed as lead plaintiff. *E.g.*, Dkt. 10-6 (Joost Decl. Ex. D). This publication was sufficient to satisfy the notice requirement. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).

#### 2.   Most Capable Plaintiff

On the second step, the court must evaluate the Motions to determine the member or members of the putative classes that are most capable of representing the interests of class members. *Id.* § 78u-4(a)(3)(B)(i). When making this determination, the court must "adopt a presumption that the most adequate plaintiff … is the person or group of persons that — (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i); (bb) … has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23…." *Id.* § 78u-4(a)(3)(B)(iii)(I). "The 'most capable' plaintiff - and hence the lead plaintiff - is the one who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of Rule 23." *Cavanaugh*, 306 F.3d at 729. / / /

1
2
3
4
5
6
7
8
9

> In other words, the district court must compare the financial stakes of
> the various plaintiffs and determine which one has the most to gain
> from the lawsuit.  It must then focus its attention on that plaintiff and
> determine, based on the information he has provided in his pleadings
> and declarations, whether he satisfies the requirements of Rule 23(a), in
> particular those of "typicality" and "adequacy."  If the plaintiff with the
> largest financial stake in the controversy provides information that
> satisfies these requirements, he becomes the presumptively most
> adequate plaintiff.  If the plaintiff with the greatest financial stake does
> not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this
> time considering the plaintiff with the next-largest financial stake, until
> it finds a plaintiff who is both willing to serve and satisfies the
> requirements of Rule 23.

10    *Cavanaugh*, 306 F.3d at 730, 732.

11        To make a prima facie showing of typicality, a movant need only establish that

12    his or her claims are substantially similar, rather than substantially identical, to all

13    class members' claims.  *See Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 667 (C.D. Cal.

14    2005) (explaining only a preliminary showing of typicality is needed for appointment

15    of a lead plaintiff because a wide-ranging analysis will take place during the class

16    certification process).  To determine whether a movant will fairly and adequately

17    protect the interests of all class members, the court should inquire about the movant's

18    interests in the outcome of the case, and his or her willingness to represent vigorously

19    the class' claims.  *See id*.  "In assessing whether the choice of lead counsel casts doubt

20    on the fitness of a presumptive lead plaintiff, the court determines 'whether the

21    presumptive lead plaintiff's choice of counsel is so irrational, or so tainted by self-

22    dealing or conflict of interest, as to cast genuine and serious doubt on that plaintiff's

23    willingness or ability to perform the functions of lead plaintiff.'"  *Id*. at 671 n. 44

24    (quoting *Cavanaugh*, 306 F.3d at 733).

25        Plaintiffs bring the subject action on behalf of two distinct groups: (a) persons

26    and entities "that purchased or otherwise acquired Owlet securities between March 31,

27    2021 and October 4, 2021, inclusive (the 'Class Period')," who seek recovery under

28    Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder (the

"Section 10(b) Class"); and/or (b) persons and entities that "held Sandbridge common stock … as of June 1, 2021 and were eligible to vote at Sandbridge's special meeting on July 14, 2021," who seek recovery under Section 14(a) of the Exchange Act (the "Section 14(a) Class").  Compls. ¶¶ 1.  After reviewing and considering the Movants' moving and opposing papers, unanswered questions remain regarding each Movant's qualifications to serve as Lead Plaintiff in this action.

McIntosh states he is the most capable Plaintiff because he has the largest financial interest among class members who filed applications timely.  Dkt. 22 at 5-6. According to McIntosh, he acquired 106,306 shares of Owlet on July 16, 2021, in exchange for 51,776 private shares of OBC, pursuant to the business combination. Dkt. 23-3 (Linehan Decl. Ex. C).  McIntosh does not identify clearly the terms under which he obtained shares of Owlet, when he received his shares of OBC, the terms on which his OBC shares were converted to Owlet shares, whether he had any choice in this conversion and/or took any affirmative action to effectuate the conversion, or whether the conversion occurred automatically without an opportunity to exchange his OBC shares for their full cash value instead.  Based on the current record, it is unclear whether McIntosh took any actions based on Defendants' alleged misrepresentations, or whether he was forced to accept shares of Owlet in exchange for his existing shares of OBC.  The court, therefore, lacks sufficient information to determine whether McIntosh is able to satisfy the typicality and adequacy requirements of Rule 23 with respect to either putative class.

Tweito states he acquired shares of Owlet on July 27 and August 12, 2021. Dkt. 10-3 (Joost Decl. Ex. A) at 3; Dkt. 10-4 (Joost Decl. Ex. B) at 5.  According to Tweito, he suffered losses of approximately $8,717 in connection with his transactions in Owlet securities during the class period.  Dkt. 10 (Mot. Br.) at 6.  It is undisputed Tweito is a member of the Section 10(b) Class; however, Tweito appears to admit he is not a member of the Section 14(a) Class.  *See* Dkt. 46 at 11-12; Dkt. 51 at 6-9.

Simmons states he acquired shares of Owlet during the Section 10(b) Class Period, on September 28, 2021.  Dkt. 15-2 (Albert Decl. Ex. B) at 6; Dkt. 15-3 (Albert Decl. Ex. C) at 8.  According to Simmons, he suffered approximately $8,600 in losses as a result of Defendants' alleged misconduct.  Dkt. 14 at 4.  Simmons acknowledges he suffered a smaller loss than Tweito, but requests appointment as co-lead plaintiff to allow broader representation for the class.  Dkt. 37 at 6.  Like Tweito, Simmons appears to claim membership in the Section 10(b) Class only and does not state any facts to establish membership in the Section 14(a) Class.

Conant states he purchased 918,352 shares in Sandbridge on February 24, 2021, and that he was eligible to vote at Sandbridge's special meeting on July 14, 2021. Dkt. 19-1 (Pafiti Decl. Ex. A); Dkt. 19-3 (Pafiti Decl. Ex. C) at 1, 3.   Conant admits he is not a member of the Section 10(b) Class and seeks appointment as Lead Plaintiff for the Section 14(a) Class only.  Dkt. 40 at 1-2.

Tweito contends there is no need to fragment leadership of this litigation by the appointment of multiple Lead Plaintiffs and cites *In re Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*, 586 F.3d 703, 711, n. 4 (9th Cir. 2009), to argue that the Ninth Circuit has suggested appointment of co-lead plaintiffs violates the PSLRA.  Dkt. 46 at 2-3. Tweito further cites *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004), to argue that a lead plaintiff need not have standing to sue on every available cause of action, and contends he is fully capable as serving as the sole Lead Plaintiff, despite not being a member of the Section 14(a) Class.  Dkt. 46 at 11.

In *Hevesi*, 366 F.3d at 82-83, the Second Circuit affirmed a district court's certification of a class, finding that "[n]othing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action."  *Hevesi*, however, neither considered nor held that a plaintiff could be certified as lead plaintiff for a class of which he is not a member.  This opinion establishes only that "just as a class representative can establish the requisite typicality under Rule 23 if the defendants 'committed the same wrongful acts in the same

manner against all members of the class,' [citation], so too can lead plaintiffs." *Id.* at 82.  To the contrary, the Second Circuit recognized that the lead plaintiff must satisfy the requirements of Rule 23, including the typicality requirement, to qualify as a class representative or lead plaintiff for a class.  *See id*.  *Hevesi*, thus, does not support Tweito's argument that a plaintiff can serve as lead plaintiff of a class for which he is not a member.

Similarly, while *In re Cohen*, 586 F.3d at 711 n. 4, stated in dicta that the PSLRA's reference to the "lead plaintiff" in the singular suggests that the court should appoint one lead plaintiff only, the Ninth Circuit also recognized that the PSLRA requires the lead plaintiff to satisfy the requirements of Rule 23.  *Id.* at 707-08.  *In re Cohen* did not involve claims brought by multiple separate classes and does not establish that a plaintiff can serve as lead plaintiff of a class for which he is not a member.  The opinion also does not establish that it is improper for a district court to appoint multiple lead plaintiffs in an action involving multiple separate classes asserting separate claims under the PSLRA based on the same misrepresentations alleged.  The court, therefore, disagrees with Tweito's contentions that the court cannot appoint separate Lead Plaintiffs for separate claims for violations of the PSLRA brought by separate classes.

On the other hand, this does not mean that a single Movant cannot serve as an adequate Lead Plaintiff for both the Section 10(b) and 14(a) Classes in this action.  That determination turns on the question of whether Plaintiffs consider the two groups to constitute one "class" within the meaning of Rule 23, such that a single representative could satisfy the requirements for the combined "class" (including typicality), or whether Plaintiffs consider the two groups to be separate and distinct classes and intend to seek certification separately for each of these "classes."  In short, if Plaintiffs intend to have these two groups considered and certified as separate classes, these putative classes are each entitled to their own Lead Plaintiff to ensure the interests of their members will be fairly and adequately protected.  If, however,

Plaintiffs intend to have these two groups considered and certified as a single class, then a single Lead Plaintiff will suffice.  The naming and characterization of these two groups as separate "classes" in the Movants' papers is not determinative of this question and does not establish that Plaintiffs consider these groups to be separate "classes" for purposes of Rule 23.

Accordingly, the court GRANTS the parties leave to file supplemental briefing regarding the following questions:

1. What were the circumstances by which McIntosh acquired shares of OBC and those shares were converted into shares of Owlet?

2. For Movants who claim membership in the Section 10(b) Class, were any of the Movants' shares of Owlet subject to terms, conditions, and/or restrictions that differed from those of an investor who purchased Owlet securities after the completion of the business combination?

3. Do putative Section 10(b) Class members, who obtained shares of Owlet through converted shares of OBC, constitute a separate class or sub-class from members who purchased or otherwise acquired shares of Owlet after the business combination?

4. Do the Section 10(b) and 14(a) Classes constitute separate classes under Rule 23, or do they constitute a single class?  Do Plaintiffs intend to seek certification of these two groups as a single class, with all putative members considered together for purposes of Rule 23?

5. Can McIntosh, Tweito, or Simmons satisfy the requirements of Rule 23 as to the Section 14(a) Class, given that they do not allege they held Sandbridge common stock as of June 1, 2021, or were eligible to vote at Sandbridge's special meeting on July 14, 2021?

6. Given Conant's admission that he is not a member of the Section 10(b) Class, can he satisfy the requirements of Rule 23 as to that putative class?

/ / /

12

1

**CONCLUSION**

2     For the foregoing reasons, the court GRANTS Movants' unopposed Motions

3  for Consolidation of Related Actions.  Dkt. 10, 13, 17, 21.  The action styled *Jones*

4  *Cherian v. Owlet, Inc., et al.*, Case No. 2:21-cv-09293-FLA (JEMx) is hereby

5  consolidated with the instant action, styled *Michael J. Butala v. Owlet, Inc., et al.*,

6  Case No. 2:21-cv-09016-FLA (JEXx).  No further filings shall be made or accepted in

7  Case No. 21-9293, and that action shall be administratively closed.  All pleadings and

8  filings therein shall maintain their legal relevance.  Any further pleadings or filings

9  received by the Clerk of Court for Case No. 21-9293 shall be filed in the consolidated

10  action bearing Case No. 21-9016.

11     The court additionally GRANTS the parties leave to file supplemental briefing

12  regarding the questions identified above.  Any supplemental briefs shall be filed on or

13  before 14 days from the date of this Order and shall not exceed eight (8) pages per

14  Movant or other party.

15

16     IT IS SO ORDERED.

17

18  Dated: September 29, 2022

19

20                                 FERNANDO L. AENLLE-ROCHA
                                   United States District Judge
21

22

23

24

25

26

27

28

13