POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Movant Drew Conant*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL J. BUTALA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>OWLET, INC. f/k/a SANDBRIDGE ACQUISITION CORPORATION, KURT WORKMAN, KATE SCOLNICK, KEN SUSLOW, DOMENICO DE SOLE, RAMEZ TOUBASSY, JAMIE WEINSTEIN, KRYSTAL KAHLER, and MICHAEL F. GOSS,<br><br>Defendants. | Case No. 2:21-cv-09016-FLA-JEM<br><br>SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION<br><br><u>CONSOLIDATED ACTION</u><br><br>JUDGE:  Fernando L. Aenlle-Rocha<br>CTRM:  6B, 6th Floor |

Movant Conant[1] respectfully submits this supplemental Memorandum of Points and Authorities in further support of his motion for appointment as Lead Plaintiff of the 14(a) Class.

## I.    PRELIMINARY STATEMENT

On September 29, 2022, having reviewed all memoranda of points and authorities in support of the competing motions of lead plaintiff movants Conant (Dkt. No. 17), McIntosh (Dkt. No. 21), Tweito (Dkt. No. 10), and Simmons (Dkt. No. 13), the Court entered an Order granting the competing movants "leave to file supplemental briefing" addressing six questions:

1. What were the circumstances by which McIntosh acquired shares of OBC and those shares were converted into shares of Owlet?
2. For Movants who claim membership in the Section 10(b) Class, were any of the Movants' shares of Owlet subject to terms, conditions, and/or restrictions that differed from those of an investor who purchased Owlet securities after the completion of the business combination?
3. Do putative Section 10(b) Class members, who obtained shares of Owlet through converted shares of OBC, constitute a separate class or sub-class from members who purchased or otherwise acquired share of Owlet after the business combination?
4. Do the Section 10(b) and 14(a) Classes constitute separate classes under Rule 23, or do they constitute a single class?  Do Plaintiffs intend to seek certification of these two groups as a single class, with all putative members considered together for purposes of Rule 23?
5. Can McIntosh, Tweito, or Simmons satisfy the requirements of Rule 23 as to the Section 14(a) Class, given that they do not allege they held Sandbridge common stock as of June 1, 2021, or were eligible to vote at Sandbridge's special meeting on July 14, 2021?

---

[1] All capitalized terms herein are defined in Conant's moving, response or reply briefs (Dkt. Nos. 18, 40, 48), or the Court's Order dated September 29, 2022 (Dkt. No. 55), unless otherwise indicated.

6. Given Conant's admission that he is not a member of the Section 10(b) Class, can he satisfy the requirements of Rule 23 as to that putative class?

Dkt. No. 55 at 11-12.

Conant hereby respectfully responds to the Court's Order.

Per his prior submissions in support of his motion, Conant only claims membership in the 14(a) Class and does not claim any membership in the 10(b) Class. As such, Conant takes no position with respect to the first three issues enumerated in the Court's Order— *i.e.*, the circumstances of McIntosh's acquisition of OBC shares and their conversion to Owlet shares; any terms, conditions, and/or restrictions affecting shares of movants claiming membership in the 10(b) Class; and the need for separate sub-classes within the 10(b) Class—which are relevant only to 10(b) Class members. Conant thus respectfully declines to submit any supplemental briefing on these issues.

With respect to the remaining three issues enumerated in the Court's Order—*i.e.*, whether the 10(b) and 14(a) classes constitute separate classes under Rule 23; whether McIntosh, Tweito or Simmons (collectively, the "10(b) Movants") satisfy the requirements of Rule 23 with respect to the 14(a) Class; and whether Conant can satisfy Rule 23 with respect to the 14(a) Class—Conant hereby respectfully submits the following arguments.

## II.  ARGUMENT

**The 10(b) and 14(a) Classes Constitute Separate Classes Under Rule 23 and Require Separate Representation**

As Conant has argued in his briefing to date, the 10(b) and 14(a) Classes constitute separate classes under Rule 23.  Rule 23(a) permits certification of a class only if:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

In addition, Rule 23(b)(3) requires a "find[ing] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Here, Conant respectfully submits that a single class consisting of both 10(b) and 14(a) claimants is unlikely to meet the relevant standards of Rule 23 because the fundamental differences between the elements of 10(b) and 14(a) claims will likely preclude finding that: (1) common questions predominate, as required by Rule 23(b)(3); and (2) any of the competing movants are adequate and typical of both 10(b) and 14(a) Class members, as required by Rule 23(a)(3)-(4).

"There are six elements to a securities fraud claim under § 10(b) and Rule 10b-5: (1) a material misrepresentation or omission; (2) scienter (*i.e.*, a wrongful state of mind); (3) a connection between the misrepresentation and the purchase or sale of a security; (4) reliance upon the misrepresentation (often established in 'fraud-on-the-market' cases via a presumption that the price of publicly-traded securities reflects all information in the public domain); (5) economic loss; and (6) loss causation." *Ark. Teacher Ret. Sys. v. Osi*

*Sys., Inc.*, No. 2:17-cv-08841-VAP-SKx, 2019 U.S. Dist. LEXIS 117860, at \*4-5 (C.D. Cal. May 07, 2019) (quoting *Loos v. Immersion Corp.*, 762 F.3d 880, 886-87 (9th Cir. 2014)).  Meanwhile, "[t]o state a claim under § 14(a) and Rule 14a-9, a plaintiff must establish that (1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction."  *In re Hot Topic, Inc. Sec. Litig.*, No. CV 13-02939 SJO (JCx), 2014 U.S. Dist. LEXIS 180513, at \*11-12 (C.D. Cal. May 02, 2014) (quoting *New York City Emples.' Ret. Sys. v. Jobs*, 593 F.3d 1018, 1022 (9th Cir. 2010)).

Prevailing on the 10(b) Class's claims in this litigation will thus require establishing, *inter alia*, that Defendants deceived the investing public and caused investors to purchase Owlet securities at artificially inflated prices, and that investors were damaged when the truth emerged, causing the value of their Class Period purchases of Owlet securities to decline.  Meanwhile, prevailing on the 14(a) Class's claims will require establishing, *inter alia*, that investors who held **Sandbridge** shares as of June 1, 2021 **and** were eligible to vote at the special meeting of July 14, 2021 suffered damages due to false and misleading statements in the proxy for Sandbridge's Business Combination with Owlet, that they were denied the opportunity to make an informed decision in voting on the merger, thus did not receive their fair share of the value of the assets and business of the combined entity, suffered damages when the Company's stock price decreased, and were prevented from

benefiting from a value-maximizing transaction.  Given the vastly different factual *and* legal issues that the 10(b) and 14(a) claims necessarily implicate, questions of law or fact common to class members would not predominate in a putative class consisting of both 10(b) and 14(a) claimants, as Rule 23(b)(3) requires.

Indeed, membership in the 10(b) and 14(a) Classes is entirely distinct.  Conant, a typical 14(a) Class member, purchased shares of *Sandbridge* (Owlet's SPAC predecessor) *prior* to the 10(b) Class Period, and *never* purchased shares of the combined business entity.  By contrast, qualifying for membership in the 10(b) Class requires an investor to have purchased *Owlet*—not Sandbridge—shares, and to have done so *during* the Class Period.  The two Classes are thus comprised of investors who acquired different securities during different time periods, pursuing different claims.

Moreover, given the different elements of 10(b) and 14(a) claims and starkly different nature of transactions of these class members,  there is no single movant that the Court could appoint as Lead Plaintiff who could establish typicality and adequacy under Rule 23(a) with respect to both the 10(b) and 14(a) classes.

"'The typicality requirement  is  satisfied  when  the  putative lead plaintiff has suffered the same injuries as absent class members, as a result of the same conduct by the defendants.'"  *Deora v. NantHealth, Inc.*, CV 17-01825 BRO (MRWx) *et al.*, 2017 U.S. Dist. LEXIS 117499, at *9 (C.D. Cal. May 31, 2017) (quoting *In re Diamond Foods, Inc., Secs. Litig.*, 281 F.R.D. 405, 409 (N.D. Cal. 2012)).  Here, as discussed at pp. 4-5,

prevailing on 10(b) claims necessarily implicates different factual and legal issues than prevailing on 14(a) claims, and the two respective claims allege different injuries, evaluated with reference to different measures of damages.  Moreover, the very timing and nature of the transactions between these two class members are distinct, requiring separate classes and class representation.  *See Roofer's Pension Fund v. Papa*, 333 F.R.D. 66, 89 (D.N.J. 2019) (certifying separate classes of investors respectively alleging, *inter alia*, violations of Exchange Act Sections 14(e) and 10(b)).  Accordingly, none of the 10(b) Movants has suffered the same injuries as the 14(a) Class as a result of the same conduct by the Defendants, and conversely, Conant has not suffered the same injuries as the 10(b) Class as the result of the same conduct by the Defendants.  Thus, none of the 10(b) Movants is typical of the 14(a) Class, nor is Conant typical of the 10(b) Class, under Rule 23(a)(3).

"The test for adequacy asks whether the class representative and his counsel have any conflicts of interest with other class members' and whether the class representative and his counsel will prosecute the action vigorously on behalf of the class.'" *Nanthealth*, 2017 U.S. Dist. LEXIS 117499, at *10 (quoting *Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, 13-CV-05368-LHK *et al.*, 2014 U.S. Dist. LEXIS 80141, at *19-20 (N.D. Cal. June 10, 2014)).  In assessing adequacy, courts generally consider whether a lead plaintiff movant "has a significant stake in the outcome . . . such that it is likely that he will vigorously prosecute the claims." *Blake v. Canoo Inc.*, No. CV 21-2873 FMO (JPRx),

2022 U.S. Dist. LEXIS 36484, at *14 (C.D. Cal. Feb. 18, 2022). Here, the three 10(b) Movants have not even argued, much less established, that they have standing to pursue 14(a) claims in this litigation, whereas Conant is the only movant with standing to pursue 14(a) claims (and Conant has not argued that he has standing to pursue 10(b) claims). Lacking standing to pursue 14(a) claims—*i.e.*, lacking any legally cognizable injury traceable to the Defendants' alleged violations of Section 14(a)—the 10(b) Movants thus have *zero* stake in the outcome of the 14(a) claims, and thus cannot be counted upon to vigorously litigate those claims on behalf of the 14(a) Class, any more than Conant should be tasked with litigating the claims of the 10(b) Class, in whose outcome he likewise has no financial interest. Accordingly, none of the 10(b) Movants would be an adequate representative for the 14(a) Class, nor would Conant be an adequate representative for the 10(b) Class, under Rule 23(a)(4).

For the foregoing reasons, courts routinely certify subclasses consisting of investors bringing different statutory claims in securities class actions. In *In re SunEdison, Inc.*, 329 F.R.D. 124 (S.D.N.Y. 2019), the court exercised its discretion to appoint two separate subclasses, respectively consisting of (1) investors alleging Exchange Act claims and (2) investors alleging Securities Act claims. *Id.* at 133.

> The class of Exchange Act plaintiffs would consist of shareholders of SunEdison common stock during a proposed class period of September 2, 2015 to April 4, 2016, during which time the Company had approximately 336.7 million shares of common stock outstanding, with an average daily trading volume of 46.9 million shares. For the Securities Act claim, class members would be limited to a smaller number of preferred shareholders,

including those who directly acquired shares in that offering and those who can trace their shares to the offering's registration statement.

The Court concludes that a single class of shareholders, including both purchasers of common stock and preferred shares, would be overbroad.

*Id.* (internal citations omitted). *Deora v. NantHealth, Inc.*, CV 17-01825 BRO (MRWx) *et al.*, 2019 U.S. Dist. LEXIS 226997, at \*5-10 (certifying separate Securities Act and Exchange Act subclasses); *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 624 (C.D. Cal. 2009) ("the creation of three subclasses" consisting of investors in different types of securities "will help divide the issues and keep the arguments focused"); *Burbige v. ATI Physical Therapy, Inc.*, 1:21-cv-4349 (N.D. Ill. Aug. 16, 2021), Dkt. No. 58 ¶¶ 26-28 (in consolidated amended complaint, different class representatives respectively alleging Section 10(b) and Section 14(a) claims); *Edwards v. McDermott International, Inc.*, 4:18-cv-4330 (S.D. Tex. Nov. 15, 2018), Dkt. No. 84 (appointing different lead plaintiffs for "all claims related to Section 10(b) of the Securities Exchange Act" and "all claims related to Section 14(a) of the Securities Exchange Act.").

Finally, as stated above, Conant only claims membership in the 14(a) Class, not the 10(b) Class, and does not seek appointment as a representative for the 10(b) Class. As such, Conant does not claim to satisfy Rule 23's requirements with respect to the 10(b) Class.

## III.   CONCLUSION

For the foregoing reasons, Conant respectfully requests that the Court issue an Order: (1) appointing Conant as Lead Plaintiff for the 14(a) Class; and (2) approving Pomerantz as Lead Counsel for the 14(a) Class.

Dated:  October 13, 2022

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
J. Alexander Hood II
(admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
ahood@pomlaw.com

*Counsel for Movant Drew Conant and Proposed Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2022, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


*/s/ Jennifer Pafiti*
Jennifer Pafiti