**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
JENNIFER L. JOOST (Bar No. 296164)
  jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94101
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

*Counsel for Dr. Thomas E. Tweito and*
*Proposed Lead Counsel for the Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| MICHAEL J. BUTALA, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>OWLET, INC. f/k/a SANDBRIDGE ACQUISITION CORPORATION, KURT WORKMAN, KATE SCOLNICK, KEN SUSLOW, DOMENICO DE SOLE, RAMEZ TOUBASSY, JAMIE WEINSTEIN, KRYSTAL KAHLER, and MICHAEL F. GOSS,<br><br>        Defendants. | No. 2:21-cv-09016 FLA (JEMx)<br><br>CLASS ACTION<br><br>**RESPONSE TO ORDER FOR ADDITIONAL BRIEFING ON MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL** |

RESPONSE TO ORDER FOR ADDITIONAL BRIEFING
CASE NO.: 2:21-CV-09016 FLA (JEMX)

Dr. Tweito respectfully submits this Response to the Court's September 29, 2022 Order for Additional Briefing on Motions for Appointment of Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel (ECF No. 55, the "Order").

As set forth in Dr. Tweito's prior submissions—and confirmed by this Response—Dr. Tweito is entitled to appointment as Lead Plaintiff under the PSLRA for the *entire class* (which asserts claims under Sections 10(b) *and* 14(a)).[1]  As evidenced by the need for the Court to seek additional information from McIntosh regarding his previously unexplained transactions, McIntosh is subject to disqualifying defenses arising from: (1) his initial private acquisition of OBC stock; and (2) his subsequent exchange of OBC stock for Owlet stock on potentially more favorable terms.  *See, e.g.*, *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1030 (N.D. Cal. 1999) (disqualifying movant who acquired shares through private transaction because he "would be encumbered with the unique question whether [he] acquired [his] shares on better terms than the investing public and not fully in reliance on the market price").  Moreover, there is no need to saddle Dr. Tweito—the movant with the largest financial interest who is not subject to unique defenses—with a co-lead plaintiff to represent his fellow class members in bringing Section 14(a) claims (which are predicated on the same misrepresentations that form the basis of the Section 10(b) claims).  As *Hevesi v. Citigroup Inc.*, makes clear, the PSLRA allows a single investor to serve as the lead plaintiff for an *entire class*, even where the investor might lack personal standing for a *subset of claims* brought by the class.  366 F.3d 70, 82 (2d Cir. 2004) ("because the PSLRA mandates that courts must choose a party who has . . . the largest financial stake in the outcome of the case, it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim"); *see also Rico v. Lordstown Motors Corp.*, No. 4:21 CV 616 (N.D. Ohio June 17, 2021), ECF

---

[1] Unless otherwise noted: (1) all capitalized but undefined terms have the meanings ascribed in Dr. Tweito's opening brief (ECF No. 10-1), opposition (ECF No. 46), and reply (ECF No. 51); and (2) all emphasis is added and all internal quotation marks and citations are omitted.

RESPONSE TO ORDER FOR ADDITIONAL BRIEFING
CASE NO.: 2:21-CV-09016 FLA (JEMx)                                                    1

No. 47 at 6 (appointing lead plaintiff that lacked standing for Section 14(a) claims because the movant nevertheless "satisfies the Rule 23 criteria" and it was not "necessary to create a subclass") (attached hereto as Exhibit A).  Accordingly, Dr. Tweito respectfully submits he should be appointed Lead Plaintiff for the **entire class**.

**1.    What were the circumstances by which McIntosh acquired shares of OBC and those shares were converted into shares of Owlet?**

Since McIntosh's initial disclosure that all of his Owlet stock was received pursuant to the July 2021 exchange of OBC stock, and that all of his shares of OBC stock were originally private (non-open market) acquisitions, *see* ECF No. 23-3, McIntosh has refused to provide additional information regarding his transactions. Despite Dr. Tweito and Simmons raising concerns (and asking for information) about McIntosh's transactions in their opposition briefs, *see* ECF No. 46 at 1-2, 4-7; ECF No. 37 at 1-5, McIntosh's reply failed to provide additional information about his private acquisition of OBC stock (*e.g.*, when he purchased, the purchase price, what information was available to him, *etc.*).  *See* ECF No. 50.  Moreover, McIntosh has not provided any rebuttal to the fact that "Defendants will likely argue that—given the allegations suggesting that Sandbridge overpaid for OBC—private OBC investors like McIntosh 'acquired [Owlet] shares on better terms than the investing public.'"  ECF No. 46 at 2.  Instead, McIntosh responds that his "transactions fall squarely within the class definition."  ECF No. 50 at 3.

The very fact that the Court was forced to question McIntosh regarding his private investments in OBC stock and the subsequent exchange for Owlet stock, demonstrates that unique questions "could jeopardize the entire class by unnecessarily exposing all class members to the risk that McIntosh will be disqualified at later stages of litigation—thereby leaving the class without a lead plaintiff and potentially requiring the Court to reopen the lead plaintiff selection process (or dismiss the litigation entirely)."  ECF No. 46 at 7; *see also, e.g.*, *Network Assocs.*, 76 F. Supp. 2d

RESPONSE TO ORDER FOR ADDITIONAL BRIEFING
CASE NO.: 2:21-CV-09016 FLA (JEMx)                                          2

at 1030 (disqualifying movant who acquired shares through private transaction); *In re Critical Path, Inc. Sec. Litig.,* 156 F. Supp. 2d 1102, 1110-11 (N.D. Cal. 2001) (same); *Hedick v. Kraft Heinz Co.*, Nos. 19-cv-1339, *et al.*, 2019 WL 4958238, at *5 n.5 (N.D. Ill. Oct. 8, 2019) (rejecting movant because "a substantial portion of [its] claimed losses stem from merger shares" in which it potentially "received a windfall"). Regardless of McIntosh's response now, the circumstances surrounding his investment will be a constant distraction to the prosecution of the class's claims. *See In re Snap Inc. Sec. Litig.*, No. 2:17-cv-03679-SVW-AGR, 2019 WL 2223800, at *2 (C.D. Cal. Apr. 1, 2019) ("[C]ourts should not appoint a lead plaintiff whose appointment would pose a danger that absent class members will suffer if [the lead plaintiff] is preoccupied with defenses unique to it.") (alteration in original).

**2.    For Movants who claim membership in the Section 10(b) Class, were any of the Movants' shares of Owlet subject to terms, conditions, and/or restrictions that differed from those of an investor who purchased Owlet securities after the completion of the business combination?**

Dr. Tweito purchased 1,500 shares of Owlet stock on the open market on July 27, 2021, and August 12, 2021 (*i.e.*, after the completion of the business combination between Sandbridge and OBC on July 15, 2021). *See* ECF No. 10-3 (certification of transactions); ECF No. 46 at 1 (explaining that Dr. Tweito suffered "losses of approximately $8,717 in connection with his Class Period transactions in Owlet securities on the open market"). Dr. Tweito's open market transactions were made at prices available to *every* member of the public and he was harmed by Defendants' public misrepresentations. Unlike McIntosh, no movant has raised any arguments against Dr. Tweito's adequacy based on the nature of his purchases.

**3.    Do putative Section 10(b) Class members, who obtained shares of Owlet through converted shares of OBC, constitute a separate class or sub-class from members who purchased or otherwise acquired shares of Owlet after the business combination?**

Both complaints plead claims "on behalf of a [single] class, consisting of all

RESPONSE TO ORDER FOR ADDITIONAL BRIEFING
CASE NO.: 2:21-CV-09016 FLA (JEMx)                                                    3

persons and entities: (a) that purchased or otherwise acquired Owlet securities between March 31, 2021 and October 4, 2021, inclusive; and/or (b) held Sandbridge common stock held as of June 1, 2021 and were eligible to vote at Sandbridge's special meeting on July 14, 2021." ECF No. 1, ¶ 37; *see also* Order at 2 (finding complaints to be "substantially identical"). Accordingly, investors who exchanged OBC stock for Owlet stock are members of the pled class. Indeed, McIntosh has previously argued such that investors are part of the single class. *See* ECF No. 50 at 3.

**4.** **Do the Section 10(b) and 14(a) Classes constitute separate classes under Rule 23, or do they constitute a single class? Do Plaintiffs intend to seek certification of these two groups as a single class, with all putative members considered together for purposes of Rule 23?**

As described in response #3, the complaints plead claims on behalf of a single class of investors under Sections 10(b) and 14(a). *See* ECF No. 1, ¶ 37. Like the initial plaintiffs, Dr. Tweito intends to seek certification of a single class that would pursue both Section 10(b) and 14(a) claims, because both claims involve common issues of law and fact. Critically, the complaints allege that members of the class were induced to buy Owlet securities ***and/or*** exchange shares of Sandbridge stock based on nearly identical misrepresentations regarding the Owlet Smart Sock in the March 31, 2021 registration statement[2] and June 21, 2021 proxy statement. *See id.*, ¶¶ 29-30 (detailing misrepresentations); ¶ 62 (alleging violations of Section 10(b) for issuing false and misleading statements); ¶ 75 (alleging violations of Section 14(a) for issuing false and misleading statements). Similarly, when the truth was revealed on October 4, 2021, class members who purchased Owlet securities ***and/or*** exchanged Sandbridge stock for Owlet stock suffered injury. *See id.*, ¶ 35.[3]

---

[2] As the Court correctly notes, *see* Order at 3 n.1, the registration statement was not issued by Owlet, Inc. Instead, the registration statement was issued by Sandbridge. The ambiguity stems from the complaints' use of "Owlet" to simultaneously refer to Sandbridge and its post-combination successor, Owlet, Inc. *See* ECF No. 1 at 1.

[3] As previously noted, investors like McIntosh who privately acquired OBC stock—unlike investors who purchased Owlet stock on the open-market and/or exchanged Sandbridge stock—may be subject to unique defenses regarding reliance and loss causation. *See supra* pp. 2-3.

The single-class approach is consistent with the PSLRA's purpose of ensuring effective control of the litigation.  For example, in *In re Enron Corporation Securities Litigation*, the Court rejected a request to splinter a ***single*** class into multiple smaller classes (and appoint multiple corresponding lead plaintiffs), holding that "diligent and efficient prosecution of the causes of action must be encouraged" and "the litigation should proceed as a unified class with a strong Lead Plaintiff."  206 F.R.D. 427, 451 (S.D. Tex. 2002).  In so ruling, the *Enron* court recognized that the PSLRA authorizes "the appointment of one Lead Plaintiff or small cohesive group for a single class" and that "***requests for splintering the action or appointing multiple Lead Plaintiffs to represent specialized interests, especially in light of . . . common facts and legal issues . . . would undermine the purpose of the PSLRA***."  *Id*.  Indeed, the claims in *Enron*—as here—"ar[o]se out of a common core of facts, legal issues, deal with overlapping or intertwined Defendants, named or implied, and they attack[ed] various aspects of an alleged scheme and course of conduct to defraud [company] investors and the public by artificially inflating the price of [company] securities through a number of materially false and misleading statements and omissions," making the case suitable for a "unified class."  *Id*.

The court's recent analysis in *Lordstown* is particularly relevant.  There, as is the case here, the litigation involved parallel claims under Sections 10(b) and 14(a) arising in connection with a SPAC business combination.  One of the *Lordstown* movants sought appointment as a co-lead plaintiff to represent a Section 14(a) "subclass" because the movant with the largest financial interest did not have standing to personally bring Section 14(a) claims.  *See Lordstown* at 4-6.  In rejecting the this request, the court concluded that a single, unified class was appropriate, explaining that it was not "necessary to create a subclass" and that the movant with the largest financial interest—despite not having Section 14(a) standing—"satisfies the Rule 23 criteria."  *Id.* at 6; *see also In re Lordstown Motors Corp. Sec. Litig.*, No. 4:21-cv-

00616 (PAG) (N.D. Ohio Sept. 10, 2021), ECF No. 61 (lead plaintiff's amended complaint asserting Section 10(b) and 14(a) claims) (attached hereto as Exhibit B).

Here, because the claims under Sections 10(b) and 14(a) both center on core factual and legal issues stemming from Defendants' misrepresentations, much like the claims in *Enron* and *Lordstown*, the claims may be brought by a single class and the creation of a Section 14(a) subclass would unnecessarily splinter the litigation in contravention of the goals of the PSLRA. *See Lordstown* at 5-6.

5. **Can McIntosh, Tweito, or Simmons satisfy the requirements of Rule 23 as to the Section 14(a) Class, given that they do not allege they held Sandbridge common stock as of June 1, 2021, or were eligible to vote at Sandbridge's special meeting on July 14, 2021?**

Dr. Tweito satisfies the Rule 23 requirements for a single class asserting claims under both Sections 10(b) and 14(a). The fact that Dr. Tweito does not have standing to personally bring Section 14(a) claims does not render his claims atypical of the class, nor does it render him an inadequate plaintiff.

It is well-established that a lead plaintiff can satisfy the typicality and adequacy requirements of Rule 23 for a single class even when that plaintiff lacks standing for a subset of the claims brought by the class. *See, e.g.*, *Lordstown* at 5 (appointing lead plaintiff who lacked standing to pursue Section 14(a) claims and finding that the lead plaintiff was neither "atypical of the class" nor "an inadequate lead plaintiff"); *Eshe Fund v. Fifth Third Bancorp*, Nos. 1:08-cv-421, *et al.*, 2008 WL 11322108, at *6 (S.D. Ohio Dec. 16, 2008) (appointing lead plaintiff who lacked standing for certain claims asserted by the class, because there were sufficient similarities between the claims and because "[t]he law is clear that a lead plaintiff does not have to have standing on every claim in order to satisfy the typicality or adequacy requirements of Rule 23"); *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1157 (C.D. Cal. 2008) ("Judges presiding over complex securities class actions under the PSLRA have repeatedly rejected arguments . . . that seek to confuse the role of lead plaintiffs under

the PSLRA with that of named plaintiffs[.]") (ellipsis in original).

The Second Circuit's analysis in *Hevesi* is instructive. There, defendants argued that a lead plaintiff did not meet Rule 23's typicality requirement because the lead plaintiff (who had standing under Section 10(b)) lacked standing for claims under the Securities Act of 1933. *See* 366 F.3d at 82. *Hevesi* rejected the argument that a lead plaintiff needed standing to pursue every claim brought by members of the class it represented, recognizing:

> Nothing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action. Rather, because the PSLRA mandates that courts must choose a party who has, among other things, the largest financial stake in the outcome of the case, ***it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim***.

*Id*. *Hevesi* further explained, "just as a class representative can establish the requisite typicality . . . if the defendants '***committed the same wrongful acts*** in the same manner against all members of the class,' . . . ***so too can lead plaintiffs***." *Id*. at 82-3.

*Hevesi*'s analysis applies in equal force here. As discussed above, claims under Sections 10(b) and 14(a) are appropriate for treatment as a single class here because both claims arise in connection with Defendants' misrepresentations regarding the Owlet Smart Sock in the registration statement and proxy statement, and the revelation of the truth on October 4, 2021. *See supra* pp. 4-6. Accordingly, Dr. Tweito's Section 10(b) claims are typical of the claims of all class members, including those with Section 14(a) claims. *See, e.g., Lordstown* at 6 (finding that a movant with standing to pursue claims under Section 10(b) "satisfies the Rule 23 criteria" in connection with a class asserting both Section 10(b) and Section 14(a) claims); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ("Under [Rule 23's] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of

absent class members; ***they need not be substantially identical***.").[4]

Moreover, Conant—who does not claim a larger loss than Dr. Tweito—cannot credibly argue that a single lead plaintiff is incapable of satisfying the Rule 23 requirements for a single class asserting claims under both Sections 10(b) and 14(a). Indeed, Conant initially sought appointment on behalf of a ***single*** class despite the fact that he does not claim to have standing under Section 10(b). *See* ECF No. 17 at 1 (requesting appointment "on behalf of persons or entities who . . . purchased or otherwise acquired Owlet . . . securities between March 31, 2021 and October 4, 2021 . . . and/or . . . held Sandbridge common stock held as of June 1, 2021 and were eligible to vote at Sandbridge's special meeting on July 14, 2021 (the 'Class')").

**6.      Given Conant's admission that he is not a member of the Section 10(b) Class, can he satisfy the requirements of Rule 23 as to that putative class?**

For the same reasons that a plaintiff with standing only for Section 10(b) claims can serve as lead plaintiff for a single class asserting claims under both Sections 10(b) and 14(a), so too can a plaintiff with standing only for Section 14(a) claims. Despite this general proposition, Conant cannot be appointed as lead plaintiff for the entire class because he does not possess a larger financial interest in this litigation that Dr. Tweito. In fact, Conant has not even attempted to provide the Court or the competing movants any calculation of his economic interest in the relief sought by this litigation. *See generally* ECF No. 18 at 8 (noting only the number of shares held on June 1, 2021). As such, Conant cannot satisfy the requirements of the PSLRA.

---

[4] To the extent prosecution of the litigation reveals that subclasses are necessary (for those who exchanged OBC stock or Sandbridge stock), a lead plaintiff may add additional named plaintiffs. *See Hevesi*, 366 F.3d at 83 ("[T]he PSLRA does not in any way prohibit the addition of named plaintiffs to aid the lead plaintiff in representing a class."). Moreover, there is no reason to splinter the litigation at this early stage. *See Enron*, 206 F.R.D. at 451 (explaining that concerns about subclasses can be addressed "if still appropriate or if newly appropriate" at class certification).

Dated: October 13, 2022

Respectfully submitted,

**KESSLER TOPAZ
  MELTZER & CHECK, LLP**

/s/ Jennifer L. Joost
JENNIFER L. JOOST (Bar No. 296164)
  jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94101
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

*Counsel for Dr. Thomas E. Tweito and
Proposed Lead Counsel for the Class*

**THE SCHALL LAW FIRM**
BRIAN J. SCHALL (Bar No. 290685)
  brian@schallfirm.com
1880 Century Park E, Suite 404
Los Angeles, CA 90067-1604
Telephone: (310) 301-3335
Facsimile: (310) 388-0192

*Additional Counsel*