ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS (259916)
JENNIFER N. CARINGAL (286197)
MICHAEL ALBERT (301120)
JUAN CARLOS SANCHEZ (301834)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
jcaringal@rgrdlaw.com
malbert@rgrdlaw.com
jsanchez@rgrdlaw.com

[Proposed] Lead Counsel for [Proposed] Lead Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL J. BUTALA, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>OWLET, INC. f/k/a SANDBRIDGE ACQUISITION CORPORATION, et al.,<br><br>　　　　　　　　Defendants. | Case No. 2:21-cv-09016-FLA(JEMx)<br><br>Consolidated with Case No. 2:21-cv-09293-FLA (JEMx)<br><br><u>CLASS ACTION</u><br><br>CHRISTOPHER J. SIMMONS' SUPPLEMENTAL BRIEF IN RESPONSE TO COURT ORDER (ECF 55)<br><br>DATE　　　March 18, 2022 (vacated)<br>TIME:　　　1:30 p.m.<br>CTRM:　　　6B<br>JUDGE:　　Hon. Fernando L. Aenlle-Rocha |

4866-1044-9977.v1

Lead plaintiff movant Christopher J. Simmons respectfully submits the following responses to the Court's September 29, 2022 Order (ECF 55) requesting supplemental briefing on the following questions:

1.     What were the circumstances by which McIntosh acquired shares of OBC and those shares were converted into shares of Owlet?

N/A.

2.     For Movants who claim membership in the Section 10(b) Class, were any of the Movants' shares of Owlet subject to terms, conditions, and/or restrictions that differed from those of an investor who purchased Owlet securities after the completion of the business combination?

N/A. (Mr. Simmons purchased all of his Owlet warrants after the completion of the business combination) (*see* ECF 15-2).

3.     Do putative Section 10(b) Class members, who obtained shares of Owlet through converted shares of OBC, constitute a separate class or sub-class from members who purchased or otherwise acquired shares of Owlet after the business combination?

No.  While investors like Mr. McIntosh who obtained all of their shares of Owlet through converted shares of OBC are subject to serious unique defenses precluding their lead plaintiff candidacy (*see* ECF 37 at 2-5), there is no reason why class members who acquired Owlet shares through converted OBC shares obtained after the alleged fraud began should be splintered away from other putative class members.

4.     Do the Section 10(b) and 14(a) Classes constitute separate classes under Rule 23, or do they constitute a single class?  Do Plaintiffs intend to seek certification of these two groups as a single class, with all putative members considered together for purposes of Rule 23?

The claims brought under §§10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 are on behalf of a ***single*** class of investors and Mr. Simmons' intention

- 1 -

would be to seek certification of a single class, with all putative members considered together for purposes of Rule 23.  The §10(b) and §14(a) claims pertain to the same allegedly false and misleading statements made by the same defendants, and implicate the same core set of facts and discovery.  ECF 1 at ¶¶29-30; *Cherian*, ECF 1 at ¶¶29-30.  Unsurprisingly, both complaints filed in this case – including the *Cherian* complaint filed by Mr. Conant's counsel – were pled on behalf of a single class and contemplate this case proceeding through the certification stage on behalf of a single class.  *Cherian*, ECF 1 at ¶¶37-39 (asserting both §10(b) and §14(a) claims on behalf of a single class despite only having standing to bring §10(b) claims, and alleging that "[p]laintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein"); ECF 1 at ¶39 (same).

To be sure, the fact that the §10(b) and §14(a) claims implicate different provisions of the federal securities laws does not warrant a subclass or otherwise separating the claims.  *See Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1151 (N.D. Cal. 1999) ("[T]he [§14(a)] plaintiffs claim prejudice because their theories of recovery involve different showings of scienter and proof [than under §10(b)]. However, as all claims are based on the same financial disclosures, the existence of different pleading standards does not create the need for a separate lead plaintiff.").  To the contrary "because much of the proof for the § 10(b) and § 14(a) claims will be identical, fragmentation of the proxy claims would result in needless duplication of time and expense." *In re Reliance Acceptance Grp., Inc. Sec. Litig.*, 1998 WL 388260, at *4 (W.D. Tex. June 29, 1998); *see also Pipefitters Loc. 522 & 633 Pension Tr. Fund v. JDS Uniphase Corp.*, 2002 WL 35650215, at *6 (N.D. Cal. Aug. 7, 2002) (refusing to segment a single class alleging claims under §10(b) and §14(a) because a "proposal to subdivide the class and appoint lead plaintiffs for 'niche' classes would lead to the creation of multiple classes – each with its own class

- 2 -

counsel – in every securities case that alleged violations [of different provisions of the securities laws]").[1]

And while it is certainly possible to have a conflict between groups of investors in securities litigation such that segmentation is necessary, it is "only a truly fundamental conflict of interest" that could preclude a case like this from proceeding on behalf of a single class. William B. Rubenstein, 3 *Newberg on Class Actions* §7:31 (6th ed.). No lead plaintiff movant has even alleged the existence of such a "fundamental" conflict of interest.[2] Accordingly, the PSLRA's presumption that "***all***

---

[1] *See also In re EQT Corp. Sec. Litig.*, 2022 WL 3293518, at *6 (W.D. Pa. Aug. 11, 2022) (certifying a single class of §§10(b) and 14(a) purchasers); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 245 F.R.D. 147, 160 (S.D.N.Y. 2007), *aff'd in part, vacated in part*, 574 F.3d 29 (2d Cir. 2009) (certifying a single class under two different provisions of the securities laws because "the two sets of claims are not antagonistic to each other because proof of one does not negate an essential element of the other"); *Reliance*, 1998 WL 388260, at *3-*4 ("[However,] all the claims asserted in this case, including the proxy [14(a)] claims, are based upon alleged false and misleading financial information disseminated during the class period . . . . In proving the § 10(b) claims, lead plaintiffs will necessarily prove the proxy claims . . . ."); *In re Deutsche Telekom Ag Sec. Litig.*, 229 F. Supp. 2d 277, 283 (S.D.N.Y. 2002) ("Courts have routinely certified a ***single class*** asserting both Securities Act and Exchange Act claims."); *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 451 (S.D. Tex. 2002) ("Thus their requests for splintering the action or appointing multiple Lead Plaintiffs to represent specialized interests, especially in light of the common facts and legal issues here, would undermine the purpose of the PSLRA."); *see generally Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975) ("Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit."). Unless otherwise noted herein, all emphasis is added and citations and footnotes are omitted.

[2] A perfect example is *Edwards v. McDermott Int'l, Inc.*, No. 4:18-cv-04330 (S.D. Tex.), cited by Mr. Conant. In *Edwards*, the initial plaintiff brought an action pursuant to §§10(b) and 20(a) of the Exchange Act. A subsequent action was filed alleging violations of §14(a) in which the plaintiff issued a ***separate*** 60-day PSLRA notice to only §14(a) claim holders, with a separate lead plaintiff deadline. *See Pub. Emps.' Ret. Sys. of Miss. v. McDermott Int'l, Inc.*, No. 4:19-cv-00135 (S.D. Tex.) ("*MPERS*"). The named plaintiff in *MPERS* with §14(a) claims strenuously argued in its submissions in *Edwards* why a case-specific conflict existed between the §10(b) and §14(a) class members. *See Edwards*, No. 4:18-cv-04330, ECF 16. What's more, all movants in *Edwards* agreed for the segmentation of the class. *Id.*, ECF 74. In contrast, there are no timely (or even belated) case-specific allegations in this case explaining why a fundamental conflict exists between the §10(b) and § 14(a) claims (and there have not been separate complaints filed, with separate allegations, for each of these claims).

- 3 -

4866-1044-9977.v1

available causes of action against *all* possible defendants under *all* available legal theories" can proceed as part of a single class at the lead plaintiff stage remains unrebutted. *Aronson*, 79 F. Supp. 2d at 1151 (emphasis in original).

5.    Can McIntosh, Tweito, or Simmons satisfy the requirements of Rule 23 as to the Section 14(a) Class, given that they do not allege they held Sandbridge common stock as of June 1, 2021, or were eligible to vote at Sandbridge's special meeting on July 14, 2021?

Yes, Mr. Simmons and Mr. Tweito satisfy the Rule 23 inquiry as to the §10(b) and §14(a) class even though they do not have individual standing to bring §14(a) claims.[3]  It has long been recognized that "'because the PSLRA mandates that courts must choose a party who has, among other things, the largest financial stake in the outcome of the case, ***it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim***.'"  *In re Leapfrog Enters., Inc. Sec. Litig.*, 2005 WL 3801587, at *3 (N.D. Cal. Nov. 23, 2005) (quoting *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004)); *In re Zynga Inc. Sec. Litig.*, 2013 WL 257161, at *2 (N.D. Cal. Jan. 23, 2013) ("the Court finds that the lead plaintiff does not have to have standing to sue on all causes of action raised in the underlying complaint"); *In re CTI Biopharma Corp. Sec. Litig.*, 2016 WL 7805876, at *3 (W.D. Wash. Sept. 2, 2016) ("Even assuming, however, that DAFNA cannot pursue Exchange Act claims due to lack of standing, that does not preclude DAFNA from serving as lead plaintiff."); *In re Outerwall Inc. S'holder Litig*, 2017 WL 881382, at *8 (W.D. Wash. Mar. 6, 2017) ("courts have routinely stated that a plaintiff may properly be a lead plaintiff even when the plaintiff does not have standing for every claim alleged on the class's behalf."); *Schueneman v. Arena Pharm., Inc.*, 2011 WL 3475380, at *5 (S.D. Cal. Aug. 8, 2011) ("The lead plaintiff does not need to have standing to sue on all causes of action raised in the underlying class complaints. . . .  Being a lead plaintiff is not the

---

[3]    For the reasons described in Mr. Simmons' opposition papers, Mr. McIntosh cannot satisfy the requirements of Rule 23.  *See* ECF 37 at 2-5.

- 4 -

4866-1044-9977.v1

same thing as being a class representative, and additional named plaintiffs may be added later to represent subclasses of plaintiffs with distinct interests or claims.").[4]

Mr. Conant's "'speculation about potential class standing problems should not be resolved by the appointment of multiple lead plaintiffs . . ., but by the appointment, if necessary and desirable, of additional class representatives as the litigation proceeds.'" *Bodri v. Gopro, Inc*., 2016 WL 1718217, at *6 (N.D. Cal. Apr. 28, 2016); *see also Tanne v. Autobytel, Inc*., 226 F.R.D. 659, 669 n.38 (C.D. Cal. 2005) ("Even if none of the presently named plaintiffs has standing to pursue such a claim, however, plaintiffs may seek to add new named plaintiffs in order to assert the claim.").[5]  For that reason, Mr. Conant's citations to class certification decisions appointing additional class representatives (rather than lead plaintiff stage opinions) for separate causes of action or separate securities miss the mark.

Mr. Conant's citation to *Burbige v. ATI Physical Therapy, Inc*., No. 1:21-cv-04349 (N.D. Ill.) is particularly curious because it confirms Mr. Simmons' position that a lead plaintiff movant that lacks standing to assert §14(a) claims satisfies the requirements of Rule 23 as to a class asserting claims under both §10(b) and §14(a) at the lead plaintiff stage.  In *Burbige*, Mr. Conant's counsel represented the lead

---

[4]   As noted above, both of the complaints in this action were filed by plaintiffs that only had standing to bring §10(b) claims but which claimed to satisfy the requirements of Rule 23 for the entire class that they pled.  ECF 1 at ¶39; *Cherian*, ECF 1 at ¶39.

[5]   *See, e.g.*, *In re Jan. 2021 Short Squeeze Trading Litig.*, 2021 WL 4840857, at *5 (S.D. Fla. Oct. 15, 2021) ("In any event, PSLRA lead plaintiffs commonly do not have standing to sue on every claim; the proper solution is to simply add additional named plaintiffs."); *Kabak as Tr. of Stephen Kabak & Joy Schary Living Tr. v. Becton, Dickinson & Co*., 2020 WL 3056281, at *3 (D.N.J. June 9, 2020) ("Kim's argument regarding Industriens's standing to assert the claims of options investors is unavailing. This expressed concern with a lead plaintiff's standing with respect to the claims of each and every class member does not override the PSLRA's statutory scheme calling for the appointment of one lead plaintiff to exercise overall control of the litigation"); *Enron*, 206 F.R.D. at 451-56 (refusing to subdivide class and appoint multiple "niche" lead plaintiffs because it would "undermine the purpose of the PSLRA"); *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 438 (S.D.N.Y. 2008) ("[T]here is no requirement that a court select as lead plaintiff only a movant with standing to assert every possible claim against every defendant, nor does the presumptive lead plaintiff fail to satisfy the typicality prong if he or she cannot assert every possible claim.").

- 5 -

4866-1044-9977.v1

plaintiff movants with the largest overall financial interest in the relief sought by the class, but which lacked standing to bring the §14(a) claims that were part of the consolidated action.  While a competing lead plaintiff movant **did** have standing to assert a §14(a) claim, that movant recognized:

> While it is well established that a Lead Plaintiff need not have standing to sue on every possible cause of action, given NYC Carpenters' standing to assert claims under Section 14(a) – and Phoenix's lack thereof – NYC Carpenters stands ready, willing and able to assist Phoenix, if necessary, with the prosecution of this case, in general, and the Section 14(a) claims, in particular. *See Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 82 (2d Cir. 2004) (recognizing that because "the PSLRA mandates that courts must choose a party who has, among other things, the largest financial stake in the outcome of the case, it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim").

*Id.*, ECF 36 at 2.  The court in *Burbige* appointed Mr. Conant's counsel's clients "given their financial interest, which exceeds that of any other proposed lead plaintiff." *Id.*, ECF 40 at 1.  Moreover, counsel's clients were found to "otherwise satisfy the requirements of Civil Rule 23 as applicable at this point" **notwithstanding their lack of standing to assert a §14(a) claim**.  *Id*.  The court-appointed lead plaintiffs subsequently included a named plaintiff with a §14(a) claim in an amended complaint, precisely as the PSLRA envisions. *See also Rose v. Butterfly Network, Inc.*, No. 2:22-cv-00854 (D.N.J. Aug. 8, 2022) (appointing as sole lead plaintiff the movant with the largest overall financial interest in §10(b) claim who lacked standing to assert §14(a) claims in securities class action that alleges both sets of claims, despite request from competing movant with §14(a) standing to appoint a co-lead plaintiff structure).

- 6 -

4866-1044-9977.v1

6.      Given Conant's admission that he is not a member of the Section 10(b) Class, can he satisfy the requirements of Rule 23 as to that putative class?

Yes, for the same reason that Mr. Simmons can satisfy the Rule 23 inquiry at the lead plaintiff stage for a single class alleging both claims, Mr. Conant could theoretically satisfy Rule 23 as to a single class of investors alleging violations of both §10(b) and §14(a) despite his lack of standing for the §10(b) claim.  However, when the circumstances of this case are taken into account, it is clear that Mr. Conant lacks the overall largest financial interest in the relief sought by the entire class, and it would therefore be inappropriate to proceed to the Rule 23 inquiry with respect to Mr. Conant.  *See In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) ("[T]he district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit.  It must then focus its attention on *that* plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'") (emphasis in original).

Of the remaining movants, Mr. Conant possesses the smallest interest in the relief sought by the class.  Indeed, Mr. Conant alleges that he purchased just under 919 qualifying shares of Sandbridge.  *See* ECF 19-1 (Mr. Conant claiming 918 whole and one fractional share worth a total of $10,000).  To give the Court an apples-to-apples comparison, Mr. Conant's financial interest can be quantified as $5,335 by applying the loss allegations contained both in the complaint and in Mr. Conant's lead plaintiff papers.  *See* ECF 1 at ¶6 ("Sandbridge investors who could have voted against the Business Combination  and redeemed their shares at $10.00 per share suffered a loss of $5.81 per share.").  It is therefore clear that Mr. Simmons and Dr. Tweito's  financial interests are each more than 50% greater than those of Mr. Conant.

Given Mr. Simmons' undisputed ability to satisfy Rule 23's requirements and the significant losses he suffered on his investment in Owlet warrants – which losses are roughly equal to those of Dr. Tweito – Mr. Simmons remains ready, willing, and

- 7 -

able to serve in a representative capacity to further the best interests of the putative class.

DATED:  October 13, 2022

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP


s/ Michael Albert
MICHAEL ALBERT

DANIELLE S. MYERS
JENNIFER N. CARINGAL
MICHAEL ALBERT
JUAN CARLOS SANCHEZ
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
jcaringal@rgrdlaw.com
malbert@rgrdlaw.com
isanchez@rgrdlaw.com

[Proposed] Lead Counsel for [Proposed]
Lead Plaintiff

- 8 -

4866-1044-9977.v1

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on October 13, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Michael Albert
MICHAEL ALBERT

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Email:  malbert@rgrdlaw.com

4866-1044-9977.v1

# Mailing Information for a Case 2:21-cv-09016-FLA-JEM Michael J. Butala v. Owlet, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Michael Albert**
  malbert@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Meryn C. N. Grant**
  meryn.grant@lw.com,meryn-grant-0298@ecf.pacerpro.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com,abarbosa@pomlaw.com

- **Michele D. Johnson**
  michele.johnson@lw.com,michele-johnson-7426@ecf.pacerpro.com,#ocecf@lw.com,jana.roach@lw.com

- **Jennifer L Joost**
  jjoost@ktmc.com,1759490420@filings.docketbird.com

- **Charles Henry Linehan**
  clinehan@glancylaw.com,charles-linehan-8383@ecf.pacerpro.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,jalieberman@pomlaw.com,ahood@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw.com,fgravenson@poml

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,CLinehan@glancylaw.com,info@glancylaw.com,robert-prongay-0232@ecf.pacerpro.com

- **Pavithra Rajesh**
  prajesh@glancylaw.com,info@glancylaw.com,pavithra-rajesh-9402@ecf.pacerpro.com

- **Colleen C Smith**
  colleen.smith@lw.com,colleen-c-smith-7786@ecf.pacerpro.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)