Anne Johnson Palmer (CA Bar No. 302235)
ROPES & GRAY LLP
Three Embarcadero Center
San Francisco, CA 94111-4006
Tel. (415) 315-6300
Fax (415) 315-6350
Email: anne.johnsonpalmer@ropesgray.com

Mark S. Gaioni (CA Bar No. 339118)
ROPES & GRAY LLP
10250 Constellation Blvd.
Los Angeles, CA 90067
Tel: (310) 975-3300
Fax: (310) 975-3400
Email: mark.gaioni@ropesgray.com

Peter Welsh (*pro hac vice pending*)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Tel: (617) 951-7000
Fax: (617) 951-4888
Email: peter.welsh@ropesgray.com

*Attorneys for Defendants Ken Suslow, Richard Henry, Domenico De Sole, Ramez Toubassy, Jamie Weinstein, Krystal Kahler, and Michael F. Goss*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| MICHAEL J. BUTALA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>OWLET, INC. f/k/a SANDBRIDGE ACQUISITION CORPORATION, KURT WORKMAN, KATE SCOLNICK, KEN SUSLOW, RICHARD HENRY, DOMENICO DE SOLE, RAMEZ TOUBASSY, JAMIE WEINSTEIN, KRYSTAL KAHLER, and MICHAEL F. GOSS,<br><br>Defendant. | Case No. 21-cv-09016-FLA-JEM<br><br>Hon. Fernando L. Aenlle-Rocha<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SANDBRIDGE DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**<br><br>DATE:  May 31, 2024<br>TIME:  1:30 PM<br>CTRM:  6b<br>JUDGE:  Hon. Fernando L. Aenlle-Rocha<br><br>*[Filed concurrently with Notice of Motion and Motion to Dismiss, Declaration of Anne Johnson Palmer, Request for Judicial Notice, and [Proposed] Order]* |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT AND BACKGROUND ...................................... 1

ARGUMENT ........................................................................................................ 3

I.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER
      SECTION 14(A) ............................................................................................. 4

      A.    The Amended 14(a) Complaint Does Not Plead Any Allegedly False
      or Misleading Statements Attributable to the Sandbridge Defendants .......... 4

      B.    The Amended 14(a) Complaint Fails to Plead the Negligence of Any
      Sandbridge Defendant with Particularity ...................................................... 7

      C.    The Section 14(a) Claims Against the Sandbridge Director
      Defendants Are Exculpated ........................................................................... 9

II.   CONCLUSION ............................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*City of Birmingham Relief & Ret. Sys. V. Hastings*,
   2019 WL 3815722 (N.D. Cal. Feb. 13, 2019)................................................... 10

*Desaigoudar v. Meyercord*,
   223 F.3d 1020 (9th Cir. 2000)................................................................. 7

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
   564 U.S. 135 (2011) ............................................................................ 5, 6

*In re McKesson HBOC, Inc. Sec. Litig.*,
   126 F. Supp. 2d 1248 (N.D. Cal. 2000) ..................................................... 7

*Mendoza v. HF Foods Grp. Inc.*,
   2021 WL 3772850 (C.D. Cal. Aug. 25, 2021).............................................. 9

*Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*,
   2021 WL 1199035 (S.D.N.Y. Mar. 30, 2021) ............................................. 6

*In re Nektar Therapeutics*,
   2020 WL 3962004 (N.D. Cal. July 13, 2020)............................................. 5, 7

*In re Ocera Therapeutics, Inc.*,
   2018 WL 7019481 (N.D. Cal. Oct. 16, 2018).............................................. 7

*Paskowitz v. Pac. Cap. Bancorp*,
   2009 WL 4911850 (C.D. Cal. Nov. 6, 2009).............................................. 7

*In re TrueCar, Inc. Stockholder Derivative Litig.*,
   2020 WL 5816761 (Del. Ch. Sept. 30, 2020) ............................................ 9

*In re Wells Fargo & Co.*,
   2022 WL 345066 (N.D. Cal. Feb. 4, 2022)................................................ 9

-ii-

**Statutes**

15 U.S.C. § 78n(a) ...................................................................................*passim*

15 U.S.C. § 78t(a) ...................................................................................*3*

15 U.S.C. § 78u-4(b)(2)(A) ...................................................................... 7

Del. Code §102(b)(7)............................................................................. 9, 10

**Other Authorities**

17 C.F.R. § 240.14a-9............................................................................. 3

Federal Rule of Civil Procedure 12(b)(6)........................................... 1, 10

Federal Rule of Civil Procedure 9(b) ................................................... 7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
CASE NO. 2:21-cv-09016-FLA-JEM

## PRELIMINARY STATEMENT AND BACKGROUND

Defendants Ken Suslow, Domenico De Sole, Ramez Toubassy, Jamie Weinstein, Krystal Kahler, Michael F. Goss (collectively, the "Sandbridge Director Defendants") and Richard Henry (together with the Sandbridge Director Defendants, the "Sandbridge Defendants") respectfully submit this Memorandum of Points and Authorities in support of their Motion to Dismiss the Amended Consolidated Complaint for Violations of the Federal Securities Laws filed by Lead Plaintiff Drew Conant on behalf of the purported Section 14(a) Class (the "14(a) Complaint" filed by "Plaintiff") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).   Owlet, Inc. ("Owlet" or the "Company"), Kurt Workman, and Kate Scolnick (together with Owlet, the "Owlet Defendants") have filed a separate motion to dismiss and supporting memorandum (the "Owlet 14(a) Brief").  The Sandbridge Defendants adopt and join the Owlet 14(a) Brief in full.   The Sandbridge Defendants respectfully submit their Motion and this supplemental Memorandum to raise additional, further bases on which the claims against them should be dismissed.[1]

Sandbridge Acquisition Corp. ("Sandbridge") was a special purpose acquisition company ("SPAC") formed for the purpose of undertaking an initial public offering—which was completed on September 14, 2020—and then effecting a business combination with a private company.[2]  14(a) Compl. ¶ 36.  Sandbridge combined with Owlet Baby Care, Inc. ("Old Owlet") via a reverse merger known as a "de-SPAC" Business Combination on July 15, 2021, forming the combined

---

[1] No claims are asserted against any of the Sandbridge Defendants in the Consolidated Complaint for Violations of the Federal Securities Laws filed by Lead Plaintiff Dr. Thomas E. Tweito on behalf of the purported Section 10(b) Class (the "10(b) Complaint").

[2] In the interest of brevity, the Sandbridge Defendants respectfully refer the Court to the Statement of Facts set forth in the Owlet 14(a) Brief, which is incorporated herein by reference.  This Memorandum highlights only certain facts of particular relevance to the additional arguments raised by the Sandbridge Defendants.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
CASE NO. 2:21-cv-09016-FLA-JEM

company now known as Owlet, Inc. (the "Business Combination"). *Id.* at ¶ 3. Prior to the Business Combination with Old Owlet, Sandbridge did not market any products, engage in any interactions with the United States Food and Drug Administration (the "FDA"), or undertake any other business operations; it existed solely for the purpose of effecting a future merger. *Id.* at ¶ 2. The Sandbridge Defendants were not officers or directors of Old Owlet, nor have they served as officers or directors of Owlet, Inc. in the time since the Business Combination closed. *Id.* at ¶¶ 20-26. Accordingly, the vast majority of the allegations in the 14(a) Complaint simply do not pertain to them.

The 14(a) Complaint focuses in overwhelming part on allegations about the Owlet Defendants in the years prior to the Business Combination. In particular, the 14(a) Complaint devotes the bulk of its allegations to statements by the Owlet Defendants about the Smart Sock Device in 2013-2014 (14(a) Compl. ¶¶ 44-57); the Company's decision to market the Smart Sock as a general wellness product in 2015 (*id.* at ¶¶ 43, 58-65, 69, 73); and the Owlet Defendants' interactions with the FDA between 2016-2018 (*id.* at ¶¶ 6, 70-72, 74-82, 86, 90, 92, 97-100, 104-108, 110-115). As the 14(a) Complaint acknowledges, Sandbridge was not formed until September 2020. *Id.* at ¶ 36. The Sandbridge Defendants had no interactions or affiliation with Old Owlet prior to October 2020. *See* Ex. 6, at 97-8.[3]

The 14(a) Complaint pleads just a small handful of allegations pertaining to the Sandbridge Defendants, all of which relate exclusively to the negotiation and diligence of the Business Combination. Specifically, Plaintiff alleges that:

- Sandbridge conducted due diligence of Old Owlet in connection with the prospective Business Combination, including allegedly receiving "access to

---

[3] All exhibits cited herein are appended to the declaration of Colleen C. Smith filed in connection with the Owlet 14(a) Brief and are designated "Ex. __" unless otherwise indicated.

[Old] Owlet's directors, officers, books and records" and to unspecified documents posted to the diligence "data room."  14(a) Compl. ¶¶ 87-88.

- According to CW1, it "would have been communicated to Sandbridge during the due diligence process preceding the [Business Combination]" that "[Old] Owlet had to be careful not to market Smart Sock as a medical device." *Id.* at ¶ 79.

- The Sandbridge Defendants signed the Registration Statement on Form S-4 and the Proxy Statement filed with the United States Securities and Exchange Commission ("SEC") in connection with the Business Combination. *Id.* at ¶¶ 20-26, 96.

On the basis of these scant allegations, Plaintiff asserts that the Sandbridge Defendants are liable for making allegedly false or misleading statements in the Preliminary Proxy Statement soliciting shareholder approval for the Business Combination, which was included in the Form S-4 filed with the SEC on March 31, 2021 (the "Preliminary Proxy"), and in the final Proxy Statement subsequently filed with the SEC on June 21, 2021 (the "Final Proxy" and, together with the Preliminary Proxy, the "Proxies").  Plaintiff brings claims against the Sandbridge Defendants under Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a) (the "Exchange Act"), and Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9, and as control persons under Exchange Act Section 20(a), 15 U.S.C. § 78t(a).  Each of these counts fails to state a claim as a matter of law and should be dismissed as to all of the Sandbridge Defendants.

## ARGUMENT

The 14(a) Complaint alleges that certain statements in the Proxies were false or misleading because the Proxies allegedly failed to disclose various facts about the Owlet Defendants' interactions with the FDA and other pre-Business Combination conduct.  *See* 14(a) Compl. ¶ 90.  As demonstrated in the Owlet 14(a) Brief, Plaintiff fails to sufficiently allege that any of the challenged statements were false or misleading in any respect.  *See* Owlet 14(a) Br. at 10-21.  Plaintiff also fails to state a claim against any Defendant under Section 20(a) because the 14(a)

Complaint does not sufficiently plead a primary securities law violation. *See id*. at 21.

The claims against the Sandbridge Defendants, however, suffer from three further, additional flaws. ***First***, Plaintiff has not pled that any of the challenged statements in the Proxies are attributable to any of the Sandbridge Defendants. ***Second***, Plaintiff has not alleged with particularity facts giving rise to a strong inference that any of the Sandbridge Defendants acted with negligence, as they must to sustain their Section 14(a) claims. ***Third***, the claims against each of the Sandbridge Director Defendants fail because claims against them based on allegedly negligent conduct are exculpated under Sandbridge's Amended and Restated Certificate of Incorporation (the "Charter").

## I.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 14(a)

Plaintiff's Section 14(a) claims against the Sandbridge Defendants must be dismissed for all the reasons set forth in the Owlet 14(a) Brief, and for the additional reasons that: (i) the Section 14(a) Complaint does not identify any allegedly false or misleading statements attributable to the Sandbridge Defendants; (ii) the Section 14(a) Complaint does not adequately plead that any Sandbridge Defendant acted negligently; and (iii) as to the Sandbridge Director Defendants, each is exculpated for allegedly negligent conduct pursuant to the Sandbridge Charter.

### A.    The Amended 14(a) Complaint Does Not Plead Any Allegedly False or Misleading Statements Attributable to the Sandbridge Defendants

As set out extensively in the Owlet 14(a) Brief, the Complaint does not plead that any of the challenged statements in the Proxies were false or misleading. *See* Owlet 14(a) Br. at 10-21. This failure alone is sufficient to defeat all of the claims in the 14(a) Complaint against all Defendants. But the Section 14(a) Complaint suffers from a further, even more fundamental flaw with respect to the Sandbridge Defendants: none

of the challenged statements in the Proxies are even attributable to the Sandbridge Defendants in the first place. Instead, the Proxies expressly attribute each of the statements at issue to Old Owlet. *See Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142–43 (2011) ("[A]ttribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by—and only by—the party to whom it is attributed."). Because none of the Sandbridge Defendants were the "makers of the challenged statements," the claims against them should be dismissed for this reason as well. *In re Nektar Therapeutics*, 2020 WL 3962004, at *9 (N.D. Cal. July 13, 2020). A review of each of the challenged statements in the Proxies illustrates why this is so.

First, the Complaint challenges a set of statements in which the Proxies recite Old Owlet's own characterizations of its pre-Business Combination operations. For instance, Plaintiff challenges statements, included in the Risk Factors sections of the Proxies, that the FDA "may not agree" and that "FDA and/or certain regulatory authorities have expressed that they do not agree" with Old Owlet's conclusion that the Smart Sock is not a medical device. 14(a) Compl. ¶¶ 97-8; Ex. 7 at 35, 50; Ex. 6 at 37, 53. Similarly, Plaintiff challenges the description of a "Tachyarrhythmia Study," in which Old Owlet purportedly "acknowledg[ed] that the Smart Sock is used to diagnose disease or other conditions, or in the cure, mitigation, treatment, or prevention of disease." 14(a) Compl. ¶¶ 99-100; *see also* Ex. 7 at 173; Ex. 6 at 180. And elsewhere, Plaintiff challenges a statement in the Proxy that Old Owlet's revenue growth had been "primarily driven by substantial sales growth for the Owlet Smart Sock"—a statement Plaintiff acknowledges to be "literally accurate." 14(a) Compl. ¶¶ at 113-14; Ex. 7 at 190; Ex. 6 at 197-98. In each case, the statement in question is called out as a statement of Old Owlet. All of these statements are framed in the first person: "we could be required to cease selling" (Ex. 7 at 35, Ex. 6 at 25, 37); "we believe [the Tachyarrhythmia] study is indicative of the potential power of our data set . . ." (Ex. 7 at 173; Ex. 6 at 180); discussion regarding "our revenue growth" (Ex. 7 at 190; Ex. 6 at

197). And in each case, that first-person "we" is defined on the face of the Proxies themselves as Owlet "prior to the [Business Combination]" (Ex. 7 at 34; Ex. 6 at 36)— *not* Sandbridge, much less the individual Sandbridge Defendants.

Second, Plaintiff challenges the Proxies' citation to financial projections of Old Owlet, which Plaintiff claims were misleading because they were purportedly based on the "false underlying premise that Owlet would continue to market and sell the Smart Sock." 14(a) Compl. ¶¶ 102, 110; *cf.* Ex. 7 at 35, Ex. 6 at 37. As the Complaint acknowledges, however, the projections at issue are specifically identified as "prepared by, and [] the responsibility of [Old] Owlet's management." 14(a) Compl. ¶ 109; Ex. 7 at 100; Ex. 6 at 103. The Proxies go on to clarify that such "[i]nformation provided by Owlet does not constitute any representation, estimate or projection of any other party." Ex. 7 at 100, Ex. 6 at 103. In other words, the statement in question is definitively not a statement of Sandbridge or the Sandbridge Defendants.

Finally, Plaintiff challenges statements appearing in the copy of the Business Combination Agreement between Sandbridge and Old Owlet (which was included as an exhibit in the Proxies) that all products marketed by Old Owlet were "in compliance in all material respects with applicable FDA Laws" and that Old Owlet held "all material . . . approvals required by FDA Laws." 14(a) Compl. ¶ 6, 103, 111; Ex. 7 at A34-5; Ex. 6 at A34-5. These statements, however, appear within Article 3 of the Business Combination Agreement, in which "the Company [*i.e.* Old Owlet] represents and warrants to [Sandbridge]" certain factual information. Ex. 7 at A21 Ex. 6 at A21. In other words, those statements are statements of Old Owlet **to Sandbridge**, not statements by any of the Sandbridge Defendants to Sandbridge stockholders. *See Janus*, 564 U.S. at 142–43; *Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*, 2021 WL 1199035, at *28 n. 29 (S.D.N.Y. Mar. 30, 2021) (finding plaintiff's allegations that defendant "approved, reviewed, ratified" certain statements insufficient to make defendant the "maker" of those statements when they were "expressly attributed to other individuals.").

In sum, each and every one of the statements challenged by Plaintiff in the 14(a) Complaint is a statement made by Old Owlet, not a statement by any of the Sandbridge Defendants. Accordingly, none of them can sustain a Section 14(a) claim against the Sandbridge Defendants. *Nektar*, 2020 WL 3962004, at *9.

### B. The Amended 14(a) Complaint Fails to Plead the Negligence of Any Sandbridge Defendant with Particularity

The Section 14(a) Complaint asserts that its claims do not sound in fraud and are based solely on allegations of negligence. *See* 14(a) Compl. ¶ 140. That perfunctory disclaimer, however, does not relieve Plaintiff of the obligation to plead his Section 14(a) claim with particularity. Under the Private Securities Litigation Reform Act ("PSLRA"), a complaint bringing claims under the Exchange Act must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). This requirement does not apply solely to claims for which scienter is an element: a Section 14(a) plaintiff too must "plead with particularity facts that give rise to a strong inference of negligence." *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1267 (N.D. Cal. 2000); *Paskowitz v. Pac. Cap. Bancorp*, 2009 WL 4911850, at *4-8 (C.D. Cal. Nov. 6, 2009) (dismissing claim where complaint failed to "allege any facts, let alone provable, particularized facts as required by § 14(a), that Defendants did not believe [the] stated opinion, or that it was otherwise objectively false").[4] To satisfy this standard, Plaintiff must "clearly articulate the duty each Defendant had to [the Plaintiff,] and how their failure to satisfy that duty gave rise to negligence." *In re Ocera Therapeutics, Inc.*, 2018 WL 7019481, at *11 (N.D. Cal. Oct. 16, 2018). The 14(a) Complaint must allege negligence with particularly *as to each individual defendant*. "[L]umping together of Defendants will not be accepted." *Id.* (citation omitted).

---

[4] Moreover, if the Court finds that the 14(a) Complaint does sound in fraud, the heightened pleading requirements of Rule 9(b) apply as well. *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022-23 (9th Cir. 2000).

The 14(a) Complaint does not plead particularized allegations as to how any Sandbridge Defendant (much less each of them) failed to satisfy any duty owed to Plaintiff. The Section 14(a) Complaint includes only a bare handful of generalized allegations regarding the Sandbridge Defendants. None gives rise to any inference that any Sandbridge Defendant was negligent. To the contrary, Plaintiff specifically alleges that Sandbridge conducted due diligence of Owlet Baby Care, Inc. in connection with the prospective Business Combination, including allegedly receiving "access to Owlet's directors, officers, books and records" and "access to all of Owlet's due diligence documents in this virtual data room throughout the negotiation process…" 14(a) Compl. ¶¶ 87-88. In other words, Plaintiff acknowledges that Sandbridge undertook diligence efforts to understand and test the assertions being made by Old Owlet in negotiations, and to assess the risks posed by the potential Business Combination. In the context of those efforts, Plaintiff alleges that, according to CW1, it "would have been communicated to Sandbridge during the due diligence process preceding the [Business] Combination" that "Owlet had to be careful not to market Smart Sock as a medical device." *Id.* at ¶ 79. In other words, as the Owlet 14(a) Brief makes clear, the Complaint alleges that Sandbridge learned that Old Owlet was taking precautions ***to avoid*** an adverse regulatory finding—not that such a finding had already occurred. Owlet 14(a) Br. at 15-18.

To the extent Plaintiff intends to suggest that, through these admitted diligence efforts, Sandbridge came to learn facts that would render the challenged statements false or misleading, the Section 14(a) Complaint fails to plead any facts supporting that theory— much less facts raising the requisite "strong inference" of negligence as to each Sandbridge Defendant. Nowhere does the Section 14(a) Complaint plead who at Sandbridge had access to the data room, what documents were contained there, or which of those documents were reviewed (or not reviewed) and by whom, much less how any such documents purportedly established the falsity of any of the challenged statements. Nor does the Section 14(a) Complaint detail any conversations between any Sandbridge

-8-

Defendant and any of "Owlet's directors [and] officers" that allegedly revealed anything of the sort. Without any such details, the Plaintiff cannot allege with particularity that any of the Sandbridge Defendants acted negligently with respect to any of the challenged statements. *See, e.g.*, *Mendoza v. HF Foods Grp. Inc.*, 2021 WL 3772850, at *11 (C.D. Cal. Aug. 25, 2021) ("Plaintiffs cannot rely on group pleading. Nor can Plaintiffs rely on conclusory labels or boilerplate references to corporate executive duties." (citations omitted)).

### C. The Section 14(a) Claims Against the Sandbridge Director Defendants Are Exculpated.

The Section 14(a) claim also fails as to the Sandbridge Director Defendants because Sandbridge's Charter contains an exculpation clause pursuant to 8 Del. Code §102(b)(7), which protects its directors from liability for negligence. "Numerous courts, in considering … claims brought under section 14(a), have upheld application of exculpation clauses adopted pursuant to 102(b)(7)." *In re Wells Fargo & Co.*, 2022 WL 345066, at *45 (N.D. Cal. Feb. 4, 2022); *see also In re TrueCar, Inc. Stockholder Derivative Litig.*, 2020 WL 5816761, at *21 (Del. Ch. Sept. 30, 2020) (given the "exculpatory charter provision and the absence of scienter-based claims . . . in the Securities Class Action, [defendants] would not face a substantial likelihood of personal liability . . . ").

Here, Section 8.1 of the Sandbridge Charter provides as follows:

[A] director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, except to the extent such exemption from liability or limitation thereof is not permitted under the DGCL . . . [or] unless they violated their duty of loyalty to the Corporation or its stockholders, acted in bad faith, knowingly or intentionally violated the law . . .

Decl. of Anne Johnson Palmer ("Palmer Decl."), Ex. 1 (Charter) at § 8.1. The Section 14(a) claims, as expressly plead by Plaintiff, are based solely on alleged negligence, and

not any act of bad faith or knowing or intentional conduct. 14(a) Compl. ¶ 1 ("These claims arise from Defendants' negligence, and do not assert that Defendants acted with scienter."). Therefore, as plead, the Sandbridge Director defendants cannot be held liable for a violation of Section 14(a) of the Exchange Act. *See City of Birmingham Relief & Ret. Sys. V. Hastings*, 2019 WL 3815722, at *9 (N.D. Cal. Feb. 13, 2019) (where company has adopted section 102(b)(7) charter provision a Section 14(a) plaintiff "must plead particularized factual allegations that 'support the inference that the disclosure violation was made in bad faith, knowingly or intentionally'" (citation omitted)).

Plaintiff's attempt to plead his Section 14(a) claims as direct, rather than derivative, cannot avoid the application of the Charter's exculpation clause. The exculpatory provision here applies on its face both to direct and derivative claims, as it protects directors from actions brought by "the corporation or its stockholders." Palmer Decl., Ex. 1 at § 8.1. Because Plaintiff expressly pleads his Section 14(a) claim based only on negligence, the 14(a) Complaint falls firmly within the scope of the exculpation clause, with the effect of barring that claim.

## II.   CONCLUSION

The Sandbridge Defendants respectfully request that the Court dismiss all claims for failure to state a claim under Rule 12(b)(6).

Dated: February 9, 2024          Respectfully submitted,

                                  By: /s/ Anne Johnson Palmer
                                  Anne Johnson Palmer (CA Bar No. 302235)
                                  ROPES & GRAY LLP
                                  Three Embarcadero Center
                                  San Francisco, CA 94111-4006
                                  Tel. (415) 315-6300
                                  Fax (415) 315-6350
                                  Email: anne.johnsonpalmer@ropesgray.com

                                  Peter Welsh (*pro hac vice pending*)
                                  ROPES & GRAY LLP
                                  Prudential Tower
                                  800 Boylston Street
                                  Boston, MA 02199-3600
                                  Tel: (617) 951-7000
                                  Fax: (617) 951-4888
                                  Email: peter.welsh@ropesgray.com

                                  Mark S. Gaioni (CA Bar No. 339118)
                                  ROPES & GRAY LLP
                                  10250 Constellation Blvd
                                  Los Angeles, CA 90067
                                  Tel: (310) 975-3300
                                  Fax: (310) 975-3400
                                  Email: mark.gaioni@ropesgray.com

                                  *Attorneys for Defendants Ken Suslow, Richard Henry, Domenico De Sole, Ramez Toubassy, Jamie Weinstein, Krystal Kahler, and Michael F. Goss*

-11-

## CERTIFICATE RE WORD COUNT

The undersigned, counsel of record for Sandbridge Defendants, certifies that this brief contains approximately 3,272 words, as calculated by Microsoft Word Word-Count (exclusive of the caption, the table of contents, the table of authorities, the signature block, and this certification required by L.R. 11-6.2), which complies with the 7,000 word limit of Local Rule 11-6.1.

Executed on February 9, 2024, at San Francisco, California.


                                        */s/ Anne Johnson Palmer*
                                        Anne Johnson Palmer

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
CASE NO. 2:21-cv-09016-FLA-JEM

## CERTIFICATE OF SERVICE

**BY CM/ECF TRANSMISSION:**  In accordance with the Electronic Case Filing Administrative Policies and Procedures Manual for the United States District Court, Central District of California, the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic filing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 9, 2024, at San Francisco, California.


_/s/ Anne Johnson Palmer_
Anne Johnson Palmer

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
CASE NO. 2:21-cv-09016-FLA-JEM