LATHAM & WATKINS LLP
   Michele D. Johnson (CA Bar No. 198298)
    *michele.johnson@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
Telephone: +1.714.540.1235
Facsimile: +1.714.755.8290

   Colleen C. Smith (CA Bar No. 231216)
    *colleen.smith@lw.com*
12670 High Bluff Drive
San Diego, CA 92130
Telephone:  +1.858.523.5400
Facsimile:  +1.858.523.5450

   Meryn C. N. Grant (CA Bar No. 291315)
    *meryn.grant@lw.com*
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071-1560
Telephone:  +1.213.485.1234
Facsimile:  +1.213.891.8763

*Attorneys for Defendants Owlet, Inc. f/k/a
Sandbridge Acquisition Corporation and Kurt
Workman*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| MICHAEL J. BUTALA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>OWLET, INC. f/k/a SANDBRIDGE ACQUISITION CORPORATION, and KURT WORKMAN,<br><br>Defendants. | Case No. 2:21-cv-09016-FLA-SSCx<br><br>**DEFENDANTS OWLET, INC. AND KURT WORKMAN'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECTION 10(b) COMPLAINT**<br><br>Hearing Date:  May 31, 2024<br>Time:    1:30 p.m.<br>Ctrm:    6B<br>Judge:  Hon. Fernando L. Aenlle-Rocha |

## **TABLE OF CONTENTS**

**Page**

I.  THE COMPLAINT FAILS TO PLEAD FALSITY ................................... 2

    A.  Owlet's Statements Regarding the FDA's Communications Were Not False or Misleading ............................ 2

    B.  Owlet's Statements Regarding the Smart Sock's Regulatory Status Were Not False or Misleading ............................ 4

        1.  Owlet's Statements Regarding the Smart Sock's Regulatory Status Are Opinions ................................. 5

        2.  Owlet's Opinion Statements Are Not Actionable .................... 7

II.  PLAINTIFF FAILS TO PLEAD SCIENTER ........................................... 10

III. PLAINTIFF CANNOT BRING CLAIMS CONCERNING STATEMENTS BY PRE-MERGER OWLET ........................................... 12

IV.  PLAINTIFF'S RULE 7-3 ARGUMENTS ARE MERITLESS .................. 12

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Blue Chip Stamps v. Manor Drug Stores*
421 U.S. 723 (1975) ...................................................................................................... 12

*Buckman Co. v. Plaintiffs' Legal Committee*,
531 U.S. 341 (2001) ........................................................................................................ 5

*City of Dearborn Heights v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) .............................................................................. 5, 6, 7, 9

*Fin. Pac. Ins. Co. v. U.S. Fire Ins. Co.*,
2021 WL 9181462 (C.D. Cal. Dec. 29, 2021) ............................................................... 13

*Goucher v. Iterum Therapeutics plc*,
648 F. Supp. 3d 962 (N.D. Ill. 2022) .............................................................................. 4

*Grivas v. Metagenics, Inc.*,
2018 WL 6185977 (C.D. Cal. Jan. 4, 2018) .................................................................... 4

*In re Arrowhead Pharm., Inc. Sec. Litig.*,
2017 WL 5635422 (C.D. Cal. 2017) ............................................................................... 4

*In re CarLotz, Inc. Sec. Litig.*,
2023 WL 2744064 (S.D.N.Y. Mar. 31, 2023) ............................................................... 12

*In re Philip Morris Int'l Inc. Sec. Litig.*,
89 F.4th 408 (2d Cir. 2023) ............................................................................................. 6

*In re QuantumScape Securities Class Action Litigation*,
580 F. Supp. 3d 714 (N.D. Cal. 2022) ............................................................................ 6

*In re Resonant Inc. Sec. Litig.*,
2016 WL 1737959 (C.D. Cal. Feb. 8, 2016) ................................................................... 5

*In re Silicon Graphics Inc. Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999) ......................................................................................... 11

*In re Sinclair Broadcast Grp., Inc. Sec. Litig.*,
2020 WL 571724 (D. Md. Feb. 4, 2020) ......................................................................... 5

*In re Wet Seal, Inc. Sec. Litig.*,
   518 F. Supp. 2d 1148 (C.D. Cal. 2007)................................................................ 11

*In re Worlds of Wonder Sec. Litig.*,
   814 F. Supp. 850 (N.D. Cal. 1993)..................................................................... 7

*Markarian v. BMW of N. Am., LLC*,
   2022 WL 16531959 (C.D. Cal. Oct. 28, 2022) ..................................................... 13

*Menora Mivtachim Ins. v. Frutarom Indus.*,
   54 F.4th 82 (2d Cir. 2022) .............................................................................. 12

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
   540 F.3d 1049 (9th Cir. 2008) .......................................................................... 10

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension
   Fund*,
   575 U.S. 175 (2015) ................................................................................ 5, 6, 7, 9

*Pardi v. Tricida, Inc.*,
   2024 WL 1056013 (N.D. Cal. Mar. 11, 2024).............................................*passim*

*Scheuneman v. Arena Pharms., Inc.*,
   840 F.3d 698 (9th Cir. 2016) ........................................................................ 1, 10

*Sims v. Amazon.com, Inc.*,
   2022 WL 739524 (C.D. Cal. Jan. 27, 2022)....................................................... 13

*Strezsak v. Ardelyx Inc.*,
   2024 WL 1160900 (N.D. Cal. Mar. 18, 2024)................................................... 1, 9

*Tongue v. Sanofi*,
   816 F.3d 199 (2d Cir. 2016) ............................................................................ 10

*U.S. v. Bowen*,
   172 F.3d 682 (9th Cir. 1999) .......................................................................... 7, 8

*Washington v. Wechsler*,
   2023 WL 8114385 (C.D. Cal. Oct. 31, 2023) ..................................................... 13

**STATUTES**

21 U.S.C. §§ 321(h)(1)(A)–(C) ........................................................................ 8

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW

iii

DEFS.' REPLY IN SUPPORT OF MOTION
TO DISMISS PL.'S 10(b) COMPLAINT
Case No. 2:21-cv-09016-FLA-SSCx

## REGULATIONS

*General Wellness: Policy for Low Risk Devices*, 80 Fed. Reg. 2712, 2713 (2015)..................................................................................................8

## OTHER AUTHORITIES

FDA, *Letters to Industry*, https://www.fda.gov/medical-devices/industry-medical-devices/letters-industry ................................................2

*Pulse Oximeter Accuracy and Limitations: FDA Safety Communication*, https://public4.pagefreezer.com/content/FDA/20-02-2024T15:13/ https://www.fda.gov/medical-devices/safety-communications/pulse-oximeter-accuracy-and-limitations-fda-safety-communication ........................................................................................8

Plaintiff's theory is that Owlet committed securities fraud because it neither (1) definitively declared the Smart Sock a "medical device" under the FDCA when the FDA had reached no such conclusion, nor (2) disclosed its confidential negotiations with the FDA. Owlet instead took a good-faith position regarding the regulatory status of the Smart Sock in its disclosures to investors and—at the same time—expressly cautioned investors that the FDA might disagree with its conclusion. This is far from securities fraud.

Two recent cases in this Circuit closely track the facts here and show why dismissal is warranted. *See Pardi v. Tricida, Inc.*, 2024 WL 1056013 (N.D. Cal. Mar. 11, 2024); *Strezsak v. Ardelyx Inc.*, 2024 WL 1160900 (N.D. Cal. Mar. 18, 2024). In *Tricida*, the plaintiff alleged that statements regarding the statistical significance of clinical trial results misled investors because "the FDA had repeatedly indicated its disagreement" that the trial results "demonstrate[d] . . . clinical effectiveness." 2024 WL 1056013, at *2, 7. And in *Ardelyx*, the plaintiff alleged that statements regarding "the magnitude of the treatment effect" of a drug in development were misleading when the company "knew that the FDA had significant concerns" and omitted such concerns in statements to investors expressing optimism about the drug's "eventual approval." 2024 WL 1160900, at *2. The Court held the statements at issue in both cases non-actionable, reasoning in *Tricida* that it is not securities fraud when a company declines to "adopt the FDA's position as correct and share it with the public when discussing its product." 2024 WL 1056013, at *7. So too here. And just as the *Ardelyx* court reasoned that the "[d]efendants specifically disclosed the thrust of the concerns Plaintiff asks the Court to infer from the FDA statements at issue," 2024 WL 1160900, at *6, the same goes for Owlet, which repeatedly warned that the FDA had expressed disagreement with the company's assessment of the Smart Sock.

Defendants' motion should be granted for other reasons, too. Plaintiff utterly fails to plead any intent to defraud, *see Scheuneman v. Arena Pharms., Inc.*, 840 F.3d

698, 705 (9th Cir. 2016), failing even to identify any recognized motive for Owlet to commit fraud.  And Plaintiff cannot hold Owlet responsible for statements made prior to when the company became publicly traded through the de-SPAC transition.

## I.    THE COMPLAINT[1] FAILS TO PLEAD FALSITY

Plaintiff identifies two main categories of statements he says were false or misleading: (1) Owlet's statements regarding what the FDA had communicated regarding the Smart Sock; and (2) Owlet's opinion statements that the Smart Sock did not qualify as a medical device.  Neither was remotely false or misleading.

### A.    Owlet's Statements Regarding the FDA's Communications Were Not False or Misleading

In the Brief in Opposition ("Opp."), Plaintiff contends that Owlet's robust disclosures regarding the FDA's communications were misleading because "the FDA *had already* communicated to Defendants that the Smart Sock was a medical device."  ECF No. 114, at 10.  This theory ignores the FDA's public guidance on its communications with industry.  As Defendants have explained, ECF No. 90 ("Mot.") at 4, the FDA's pre-Warning Letter communications about a product are not definitive and instead represent only the agency's tentative view.  "It Has Come to Our Attention" letters are "early communication[s] to gather additional information" and are sent when the FDA "become[s] aware that regulated industry *may* be promoting a medical device in a manner that potentially violates the [FDCA]."  FDA, *Letters to Industry*, https://www.fda.gov/medical-devices/industry-medical-devices/letters-industry.  That the FDA sent such pre-Warning Letter communications to Owlet does not—as a matter of law—render false or misleading Owlet's statements that the FDA "may disagree" with the company's assessment of the Smart Sock or that the FDA "could require" the company "to obtain marketing authorization . . . to continue to sell the product."  Compl. ¶¶ 135, 164, 168, 179;

---

[1] The Complaint refers to ECF No. 79 and will be referenced herein as "Compl. ¶ _."

Opp. at 7.  Owlet's representations to investors were entirely accurate.

Plaintiff offers no response to this regulatory reality.  He proclaims that "this is not the law," Opp. at 11, but he does not and cannot cite any authority in support.

The text of the "It Has Come to Our Attention" letter in this case confirms that pre-Warning Letter communications from the FDA are far from definitive.  *See* Smith Decl., Ex. 2, ECF No. 90-4.  The letter expressly caveated its conclusions, stating only that it "appear[ed]" the Smart Sock met the "definition of a device" under the FDCA.  *Id.* at 2.  And the letter further invited Owlet to defend its view that the Smart Sock did not, in fact, so qualify.  *See id.*

Rather than engage with this letter, the Opposition hammers that the FDA told Owlet in no uncertain terms that the Smart Sock definitively qualified as a medical device.  Opp. at 10.  But the Complaint's own allegations and the FDA's letter flatly contradict that narrative.[2]  Plaintiff concedes that Owlet and the FDA engaged in a multi-year "correspond[ence]" regarding the proper classification of the Smart Sock.  *See* Opp. at 1, 2, 10.  The Warning Letter, which Plaintiff quotes, says the same: FDA "determined" that the Smart Sock qualified as a medical device following a prolonged "corresponde[nce]" with the company.  Compl. ¶¶ 141-42.  Plaintiff does not explain why the FDA would engage with Owlet for years before reaching an ultimate "determin[ation]" if the agency had actually concluded—*six years prior*—that the Smart Sock qualified as a medical device.  Nor can he.

Even if the Court declines to consider the contents of the 2016 letter, it only confirms what is clear as a matter of law from the FDA's public regulatory guidance: While Warning Letters "communicate[] the agency's position on a matter," pre-Warning Letter communications like "It Has Come to Our Attention" letters are not

---

[2] Attempting to avoid this natural reading of the FDA's correspondence with Owlet, Plaintiff contends that this Court cannot consider the 2016 "It Has Come to Our Attention" letter at all.  Opp. at 11 n.5, 14 n.7.  For the reasons provided in Defendants' reply in support of their request for judicial notice, that is wrong.

definitive and are instead sent to open a dialogue with industry.  Mot. at 11.  That legal guidance compels dismissal and raises no factual dispute.  *See, e.g.*, *Grivas v. Metagenics, Inc.*, 2018 WL 6185977, at *2 (C.D. Cal. Jan. 4, 2018) (taking judicial notice of guidance that "appears on the FDA's website" and relying on such guidance in granting a motion to dismiss).  And the timeline as articulated by the Complaint confirms as much:  Nothing in the FDA's guidance (nor in common sense) suggests that the agency would permit a product to be marketed for five years after the FDA concludes that it was being impermissibly marketed.

Owlet did what any prudent company should:  It expressed its opinion about the uncertain regulatory status of a new product, while caveating (repeatedly) for investors that the FDA may ultimately disagree with its judgment call.  Owlet disclosed in no uncertain terms that although it believed the Smart Sock did not qualify as a medical device, "the FDA and certain regulatory authorities *have expressed* they *may not agree* with that conclusion."  Compl. ¶¶ 164, 168, 179 (emphases added); *see also* Mot. at 8, 17.  Plaintiff says that was not enough.  Opp. at 11.  But the implication of Plaintiff's argument is that Owlet either had to *misstate* that the FDA *had* reached a definitive conclusion (when it had not) or had to disclose the details of an evolving dialogue with the agency.  The law does not require either approach.  *See, e.g.*, *Tricida*, 2024 WL 1056013, at *7 (no "general requirement" to disclose "every detail arising from the back-and-forth dialogue with the FDA"); *In re Arrowhead Pharm., Inc. Sec. Litig.*, 2017 WL 5635422, at *6 (C.D. Cal. 2017) (no duty to disclose FDA's "interim recommendations"); *Goucher v. Iterum Therapeutics plc*, 648 F. Supp. 3d 962, 977-78 (N.D. Ill. 2022) (collecting cases).  Because Plaintiff fails to plead that Owlet that made any false or misleading statements, the Complaint should be dismissed.

### B.    Owlet's Statements Regarding the Smart Sock's Regulatory Status Were Not False or Misleading

Owlet's statements regarding the Smart Sock's regulatory status are opinion

statements because they express a view on an inherently subjective judgment call. These opinion statements are not actionable, as Plaintiff fails to allege that Owlet embedded any untrue facts, omitted facts that made its opinion statements materially misleading in context, or stated opinions that it did not subjectively believe. *See City of Dearborn Heights v. Align Tech., Inc.*, 856 F.3d 605, 616 (9th Cir. 2017).

### 1.    Owlet's Statements Regarding the Smart Sock's Regulatory Status Are Opinions

Plaintiff contends that Owlet's statements that the Smart Sock was not a "medical device" were false or misleading. *See* Compl. ¶¶ 164, 168, 179; *see also id.* ¶ 162. In Plaintiff's telling, those statements misled investors because the FDA *later* deemed the Smart Sock a medical device by issuing the Warning Letter on October 25, 2021. *See id.* ¶¶ 140-41. But the securities laws impose liability only when a statement "was false or misleading *at the time it was made*." *In re Resonant Inc. Sec. Litig.*, 2016 WL 1737959, at *6 (C.D. Cal. Feb. 8, 2016) (emphasis added). And when, as here, a company makes statements about its compliance with an evolving regulatory program before the relevant agency has rendered any definitive decision, the company's statements are necessarily opinions.

Determining whether a product qualifies as a medical device within the meaning of the FDCA entails an "inherently subjective" judgment. *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186 (2015). Manufacturers of products do not, after all, get the ultimate say over whether a product qualifies as a medical device—the FDA does. *See In re Sinclair Broadcast Grp., Inc. Sec. Litig.*, 2020 WL 571724, at *8-9 (D. Md. Feb. 4, 2020) (concluding that statements about "compliance with FCC regulations" were opinions). And in making that determination, the FDA renders a complex factual and legal judgment about a product's "intended use." *See Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 345 (2001). Owlet's statements concerning the Smart Sock's

regulatory status were therefore statements of opinion.[3]

What's more, Owlet couched its disclosures in language making clear that the company was expressing its *view* and not a verifiable *fact*.  *See, e.g.*, Compl. ¶ 164 ("we have communicated our belief . . . .").  Statements about a speaker's "belief" are necessarily opinions.  *Omnicare*, 575 U.S. at 183-84.

Plaintiff argues that where Owlet failed to qualify its statements with "we believe," it expressed facts and not opinions.  *See* Opp. at 14; Compl. ¶¶ 159, 162. But that is not what *Omnicare* says.  *See In re Philip Morris Int'l Inc. Sec. Litig.*, 89 F.4th 408, 418 (2d Cir. 2023) (qualifiers are not necessary to render statements opinions under *Omnicare*).[4]  Facts, it is true, "express[] certainty about a thing." *Omnicare*, 575 U.S. at 183.  But not every statement that expresses a firm view is necessarily a fact:  Where, as here, the speaker expresses a view about an "inherently subjective" judgment call, *Align*, 856 F.3d at 613-14, it is an opinion.  That such a statement qualifies as the speaker's "belief" is implicit in the nature of the statement itself.  *See* Mot. at 14; *Tricida*, 2024 WL 1056013, at *6-7 (interpretations of clinical data qualified as opinions because they "inherently reflect[ed] the speaker's assessment of and judgment about the underlying circumstances") (quotations omitted).

Plaintiff's citation to *In re QuantumScape Securities Class Action Litigation*, 580 F. Supp. 3d 714 (N.D. Cal. 2022), does not compel a different conclusion.  That case involved statements regarding objective issues, unlike the intended use of the Smart Sock.  Further, Owlet's full disclosures made clear that the company was expressing its *belief* that the Smart Sock qualified as "a consumer product and not a medical device," Compl. ¶ 162, as Owlet explicitly referenced its "belief" when discussing the Smart Sock's regulatory status throughout the rest of its filings, *see*

---

[3] This argument applies with equal force to Owlet's statement regarding its compliance with FDA permitting rules.  *See* Compl. ¶ 132.

[4] Plaintiff challenges *Philip Morris* as out-of-circuit, but Defendants can identify no case disagreeing with its analysis.

*id.* ¶¶ 164, 168, 179; *see also In re Worlds of Wonder Sec. Litig.*, 814 F. Supp. 850, 859 (N.D. Cal. 1993) ("statements . . . must be evaluated in light of the risk factor disclosure[s] set forth elsewhere in the document"); *Omnicare*, 575 U.S. at 190.

### 2.   Owlet's Opinion Statements Are Not Actionable

Opinion statements are actionable in only three narrow circumstances, as Plaintiff concedes. *See Align*, 856 F.3d at 615; Opp. at 15.  First, if a plaintiff alleges a "material misrepresentation, [it] must allege *both* that the speaker did not hold the belief she professed and that the belief is objectively untrue." *Align*, 856 F.3d at 616 (emphasis added and quotations omitted).  Second, opinion statements containing material untrue statements of fact are actionable.  *Id.*  Third, a statement may be actionable where the speaker omits material "facts going to the basis for the issuer's opinion" when read "fairly and in context."  *Id.* (quoting *Omnicare*, 575 U.S. at 194)).  None of these categories applies to Owlet's opinions that the Smart Sock did not qualify as a medical device, Compl. ¶¶ 162, 164, 168, 179, or that Owlet was in compliance with FDA regulations, *id.* ¶ 159.

Plaintiff asserts that Owlet's belief regarding the Smart Sock's regulatory status was "both objectively and subjectively untrue."  Opp. at 16.  But neither the Complaint nor the Opposition explains how Owlet's characterization of the Smart Sock's regulatory status was subjectively false.  Nor can they.  Plaintiff concedes that "intended use"—not a product's inherent characteristics—is the touchstone for determining whether a product qualifies as a medical device.  *Id.* at 3; *see also U.S. v. Bowen*, 172 F.3d 682, 686 (9th Cir. 1999).  Plaintiff further admits that "Owlet was responsible for defining the product's 'intended use.'"  Opp. at 3.  And, Plaintiff acknowledges, Owlet "market[ed] its product as a wellness device"—not as a medical device.  *Id.* at 6.  These allegations and arguments show that Owlet's belief was not unreasonable, as the classification of the Smart Sock turned on its intended use and, by extension, Owlet's promotional efforts.  Indeed, Plaintiff himself alleges that Owlet thought it could market the Smart Sock in such a way as to make clear it

was not a medical device, Compl. ¶ 68, and offers no contradictory allegations that Owlet knew otherwise following the FDA's release of the general wellness guidelines.

The Opposition thus resorts to contending that because the Smart Sock used pulse oximetry technology, it was *necessarily* a medical device. *See* Opp. at 1, 3, 4, 5, 6, 17. That contravenes the FDCA, the FDA's regulatory guidance concerning general wellness products, and Ninth Circuit precedent. *See* 21 U.S.C. §§ 321(h)(1)(A)–(C); FDA, *General Wellness: Policy for Low Risk Devices*, 80 Fed. Reg. 2712, 2713 (2015); *Bowen*, 172 F.3d at 686. As the FDA has readily acknowledged, while some pulse oximeters qualify as medical devices, there are also "over-the-counter oximeters" that may be sold as "general wellness . . . products" and that "do not undergo FDA review." FDA, *Pulse Oximeter Accuracy and Limitations: FDA Safety Communication*, https://public4.pagefreezer.com/content/ FDA/20 02 2024T15:13/ https://www.fda.gov/medical devices/safety communicati ons/pulse-oximeter-accuracy-and-limitations-fda-safety-communication.[5] Plaintiff offers no response to that regulatory reality, nor to the fact that the FDA continued to let Owlet market the Smart Sock as a general wellness product for nearly *six years* following the agency's 2016 communication. Mot. at 6-7.

Ignoring these allegations and arguments, the Complaint and Opposition instead attempt to use Kurt Workman's 2013 comments—comments that predate Owlet's challenged statements by *eight years*—to allege that Owlet must have believed the Smart Sock qualified as a medical device in 2021. Opp. at 16-17; Compl. ¶¶ 47-49. But Workman made those statements two years before the FDA announced the "general wellness" category that, by Plaintiff's admission, Owlet believed covered the Smart Sock. *See* Compl. ¶ 68 ("Owlet jumped at the chance to define the Smart Sock as a general wellness product."). Put differently, Plaintiff

---

[5] The hyperlink to this FDA guidance page in Defendants' Motion to Dismiss, ECF No. 90, at 16, has expired. The above link is an archived page provided by the agency.

seeks to hold Workman liable for statements about his belief before the general wellness category even existed. Workman's statements regarding the Smart Sock's regulatory status are no more probative of subjective falsity than the statement "60 m.p.h. is over the speed limit" is probative of subjective falsity two years before a speed limit is changed from 55 m.p.h. to 70 m.p.h.[6]

Plaintiff also pursues an omission theory, arguing that Owlet failed to disclose "the material fact that the FDA had repeatedly told Defendants that the Smart Sock was a medical device." Opp. at 15. But the Opposition fails to mention what the Complaint readily admits: Owlet disclosed to investors—repeatedly—that the FDA "ha[d] expressed [it] may not agree with" the company's view regarding the Smart Sock's regulatory status. Compl. ¶¶ 164, 168. The Final Proxy issued on June 21, 2021 emphasized this point, explaining that "the FDA and/or certain regulatory authorities have expressed *they do not agree* with" Owlet's regulatory assessment. *Id.* ¶ 179 (emphasis added). These disclosures, viewed "fairly and in context," *Omnicare*, 575 U.S. at 194, entirely undercut Plaintiff's omission theory of liability. *See, e.g.*, *Tricida*, 2024 WL 1056013, at *9 (dismissing complaint as to statements where Defendant "directly and specifically described risk factors based on what the FDA might ultimately decide"); *Ardelyx*, 2024 WL 1160900, at *6 (same).

Plaintiff contends that Owlet was obligated to disclose the FDA's tentative view—expressed in the agency's 2016 "It Has Come to Our Attention" letter—that the Smart Sock *appeared* to qualify as a medical device. *See* Opp. at 11-12; *see* Mot. at 6 (quoting the 2016 letter). Not so. First, as explained above, Owlet *did* disclose the FDA's tentative view. Second, Owlet was under no obligation to update the public about every interim FDA communication, particularly communications from five years prior. *Tricida* is (again) on point. There, the Court rejected the

---

[6] Plaintiff half-heartedly suggests that Owlet's opinion statements are actionable because they contained "untrue facts," the second of *Align*'s three categories of actionable opinion statements. *See* 856 F.3d at 616. But the only alleged "untrue fact" is Owlet's statement that it was in compliance with FDA regulations, Opp. at 15, which is, as a matter of law, opinion—not fact. *See supra* Section I.B.1.

argument that a company must "adopt the FDA's position as correct and share it with the public when discussing its product." *Tricida*, 2024 WL 1056013, at *7. The Court in *Tricida* found no "Ninth Circuit authority suggesting that a company's failure to disclose the FDA's positions in real time establishes falsity under the PSLRA." *Id.*; *see also Tongue v. Sanofi*, 816 F.3d 199, 214 (2d Cir. 2016). The Complaint admits that Owlet and the FDA were engaged in an ongoing "dialogue" regarding the correct regulatory classification of the Smart Sock. *See* Compl. ¶¶ 146, 190, 191, 207. And, as *Tricida* acknowledged, a company's statement expressing an opinion contrary to the FDA about the status of a product is not false or misleading where there is, as here, a "years-long iterative dialogue with the FDA, during which the agency unsurprisingly raise[s] issues as to which there [are] differences of opinion." 2024 WL 1056013, at *8. Plaintiff has failed to plead falsity, and his claims must be dismissed.

## II.   PLAINTIFF FAILS TO PLEAD SCIENTER

The Ninth Circuit sets a high bar to plead scienter. *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1065-66 (9th Cir. 2008). The Complaint does not clear it. Plaintiff has not alleged particularized facts establishing that Defendants' statements were intentionally fraudulent or that they constituted an "*extreme* departure from the standards of ordinary care." *Scheuneman*, 840 F.3d at 705. Plaintiff's Opposition confirms this defect, highlighting four generalized categories of makeweight allegations. *See* Opp. at 18. None is sufficient.

*First*, Plaintiff points to Workman's 2013 comments about the Smart Sock. But those dated comments do not support any intent to defraud because they predate—by two years—the general wellness guidelines (which, in turn, were issued six years before the challenged statements). *See supra* Section I.B.2. Nor does Plaintiff anywhere allege that Workman said the Smart Sock qualified as a medical device *after* the FDA released those guidelines—by the Complaint's own admission, Owlet consistently represented the Smart Sock as a *non*-medical device following

the FDA's 2015 general wellness guidance.

*Second*, Plaintiff contends that the FDA's communications with Owlet show scienter. But, again, such pre-Warning Letter communications neither represented the agency's definitive view nor altered Owlet's view. *See supra* Section I.A. And Defendants in any event disclosed to investors—repeatedly—that the FDA had expressed disagreement with Owlet's assessment of the Smart Sock. If Defendants intended to deceive investors, why would they explicitly disclose that the agency had expressed a contrary view?

*Third*, Plaintiff contends that Defendants knowingly "circumvent[ed] FDA clearance by marketing the Smart Sock as a wellness device." Opp. at 18. As support, Plaintiff cites portions of the Complaint discussing the Smart Sock's pulse oximetry technology. *See* Compl. ¶¶ 68-73. But just as Plaintiff fails to grapple with the FDA's guidance concerning pre-Warning Letter communications, he also fails to address the FDA's public explanation that while some pulse oximeters qualify as medical devices, others do not. *See* Mot. at 18-19.

Plaintiff is left with a bare assertion that there existed a "financial imperative to [Owlet's] existence to continue marketing the Smart Sock." Opp. at 18. But these allegations do not suffice to plead scienter. Plaintiff's motive allegations boil down to an intent to secure financing—specifically, that by allegedly committing fraud, Owlet "was able to raise $6 million in venture funding in August 2015 in order to launch the Smart Sock with the alert feature but without FDA clearance in October 2015." Compl. ¶ 69; *see also id.* ¶¶ 3, 61. And "[a]lthough a desire to raise company financing can be probative of a motive to defraud investors, such allegations are insufficient by themselves to establish a strong inference of scienter." *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1174 (C.D. Cal. 2007) (quotations omitted); *see also In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 988 (9th Cir. 1999) (bare allegations of "motive and opportunity" are not sufficient to plead scienter). Nor does Plaintiff offer a cogent explanation for why Owlet's alleged

motive (to secure financing in 2015) would have encouraged Owlet to deceive the market in 2021.  Plaintiff's own allegations show that by 2021, Owlet had marketed the Smart Sock for six years, Compl. ¶¶ 142, 146, engaged in ongoing discussions with the FDA, *id.*; *see also id.* ¶¶ 190, 191, and had relayed the risk that the FDA might take adverse action to the market, *id.* ¶¶ 164, 168, 179.  Those allegations suggest a good-faith attempt to wrestle with a complicated regulatory regime, and not a misguided effort to mislead the market.  The more plausible inference is good faith, not fraud.  *See* Mot. at 19-20.

## III.   PLAINTIFF CANNOT BRING CLAIMS CONCERNING STATEMENTS BY PRE-MERGER OWLET

The statements Plaintiff alleges were false and misleading were made by and about Owlet when it existed as a private company, before its de-SPAC merger with Sandbridge.  Plaintiff cannot challenge the statements under the purchaser-seller rule.  *See Menora Mivtachim Ins. v. Frutarom Indus.*, 54 F.4th 82, 86 (2d Cir. 2022).  Plaintiff argues that Defendants "have provided no justification to adopt out-of-circuit authority that courts in this Circuit have rejected." Opp. at 20.  But *Frutarom* did not conjure the purchaser-seller rule out of thin air—it based its holding on the Supreme Court's decision in *Blue Chip Stamps v. Manor Drug Stores*, which confines standing to sue under Section 10(b) to "actual purchasers and sellers of securities." 421 U.S. 723, 730 (1975).  Because pre-merger Owlet and post-merger Owlet are not "interchangeable" entities, Plaintiff cannot bring claims based on statements made by and about pre-merger Owlet.  *See In re CarLotz, Inc. Sec. Litig.*, 2023 WL 2744064, at *4 (S.D.N.Y. Mar. 31, 2023).[7]

## IV.   PLAINTIFF'S RULE 7-3 ARGUMENTS ARE MERITLESS

Plaintiff contends—in passing—that Defendants failed to comply with Local

---

[7] Plaintiff alleges that Owlet incorporated statements from its Proxy and S-4 in the S-1 Registration Statement it filed on August 5, 2021, after its merger with Sandbridge.  Compl. ¶ 183.  But the statements in the S-1 were still made by and about Owlet *prior* to the merger.  In any event, the S-1 did not incorporate the statements alleged in paragraph 159 of the Complaint.

Rule 7-3. *See* Opp. at 2. Plaintiff provides no substantive basis to support this accusation. *See Markarian v. BMW of N. Am., LLC*, 2022 WL 16531959, at *2 n.1 (C.D. Cal. Oct. 28, 2022) (finding party forfeited Rule 7-3 argument by failing to "raise this issue in its [o]pposition"). And Plaintiff is wrong: Defendants conferred with Plaintiff regarding the Motion to Dismiss. Plaintiff never raised any substantive issue during the course of the parties' communications and conversations. Defendants also invited further discussion after the motion was filed, which Plaintiff declined. And Plaintiff nowhere states that he would change the pleadings or alter his arguments in light of Defendants' motion. *See Fin. Pac. Ins. Co. v. U.S. Fire Ins. Co.*, 2021 WL 9181462, at *2 (C.D. Cal. Dec. 29, 2021) (addressing merits of motion because the other party did not argue prejudice). Indeed, "the parties have fully briefed the issues in the subject Motion and Plaintiff does not request the court disregard certain arguments." *Sims v. Amazon.com, Inc.*, 2022 WL 739524, at *1 n.2 (C.D. Cal. Jan. 27, 2022). If the Court believes further meet and confer would be fruitful, Defendants request that the Court permit the parties to meet and confer and refile the motion. *See Washington v. Wechsler*, 2023 WL 8114385, at *1 (C.D. Cal. Oct. 31, 2023).

Defendants' Motion to Dismiss should be granted.

Dated:  May 10, 2024

Respectfully submitted,

LATHAM & WATKINS LLP

By: */s/ Colleen C. Smith*
    Colleen C. Smith

*Attorneys for Defendants Owlet, Inc. f/k/a Sandbridge Acquisition Corporation, and Kurt Workman*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendant Owlet, Inc. ("Owlet"), and Kurt Workman, certifies that this brief contains 4,089 words, which complies with the word limit of L.R. 11-6.1.

Dated: May 10, 2024                    */s/ Colleen C. Smith*
                                        Colleen C. Smith

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

14

DEFS.' REPLY IN SUPPORT OF MOTION
TO DISMISS PL.'S 10(b) COMPLAINT
Case No. 2:21-cv-09016-FLA-SSCx