LATHAM & WATKINS LLP
   Michele D. Johnson (CA Bar No. 198298)
      *michele.johnson@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
Telephone: +1.714.540.1235
Facsimile: +1.714.755.8290

   Colleen C. Smith (CA Bar No. 231216)
      *colleen.smith@lw.com*
12670 High Bluff Drive
San Diego, CA 92130
Telephone: +1.858.523.5400
Facsimile: +1.858.523.5450

   Meryn C. N. Grant (CA Bar No. 291315)
      *meryn.grant@lw.com*
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071-1560
Telephone: +1.213.485.1234
Facsimile: +1.213.891.8763

*Attorneys for Defendants Owlet, Inc. f/k/a
Sandbridge Acquisition Corporation, Kurt
Workman, and Kate Scolnick*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| MICHAEL J. BUTALA, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> OWLET, INC. f/k/a SANDBRIDGE ACQUISITION CORPORATION, KURT WORKMAN, KATE SCOLNICK, KEN SUSLOW, RICHARD HENRY, DOMENICO DE SOLE, RAMEZ TOUBASSY, JAMIE WEINSTEIN, KRYSTAL KAHLER, and MICHAEL F. GOSS, <br><br> Defendants. | Case No. 2:21-cv-09016-FLA-SSCx <br><br> **DEFENDANTS OWLET, INC., KURT WORKMAN, AND KATE SCOLNICK'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECTION 14(a) COMPLAINT** <br><br> Hearing Date: May 31, 2024 <br> Time: 1:30 p.m. <br> Ctrm: 6B <br> Judge: Hon. Fernando L. Aenlle-Rocha |

# TABLE OF CONTENTS

**Page**

I.   THE COMPLAINT FAILS TO PLEAD FALSITY ...................................... 2

   A.   Owlet's Statements Regarding the FDA's Communications Were Not False or Misleading.............................. 2

   B.   Plaintiff Fails to Plead That Owlet's Statements Regarding the Smart Sock's Regulatory Status Were False or Misleading ...................................................................... 6

      1.   Owlet's Statements Regarding the Smart Sock's Regulatory Status Are Opinions ................................. 6

      2.   The Complaint Undercuts Its Own Subjective Falsity Theory ........................................................ 7

      3.   Plaintiff Does Not Adequately Plead Subjective Falsity ......................................................................... 9

   C.   Owlet's Statements Regarding Its Compliance with FDA Regulations Were Not Plausibly False or Misleading....................... 10

   D.   Owlet's Forward-Looking Projections Are Protected by the PSLRA's Safe Harbor and Were Not Misleading ....................... 11

II.   PLAINTIFF'S RULE 7-3 ARGUMENTS ARE MERITLESS................... 11

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Buckman Co. v. Plaintiffs' Legal Committee,*
531 U.S. 341 (2001) .......................................................................................... 9

*City of Dearborn Heights v. Align Tech., Inc.,*
856 F.3d 605 (9th Cir. 2017) ......................................................................... 6, 7

*Fin. Pac. Ins. Co. v. U.S. Fire Ins. Co.,*
2021 WL 9181462 (C.D. Cal. Dec. 29, 2021) ............................................... 11

*Golub v. Gigamon Inc.,*
994 F.3d 1102 (9th Cir. 2021) ......................................................................... 8

*Goucher v. Iterum Therapeutics plc,*
648 F. Supp. 3d 962 (N.D. Ill. 2022) ............................................................... 5

*Grivas v. Metagenics, Inc.,*
2018 WL 6185977 (C.D. Cal. Jan. 4, 2018) ..................................................... 3

*In re Am. Int'l. Grp., Inc., 2008 Sec. Litig.,*
2013 WL 1787567 (S.D.N.Y. Apr. 26, 2013) .................................................. 7

*In re Arrowhead Pharm., Inc. Sec. Litig.,*
2017 WL 5635422 (C.D. Cal. 2017) ................................................................ 5

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec.*
*Act (ERISA) Litig.,*
757 F. Supp. 2d 260 (S.D.N.Y. 2010) .............................................................. 9

*In re Finjan Holdings, Inc. Sec. Litig.,*
2021 WL 1391539 (N.D. Cal. Apr. 13, 2021) .................................................. 7

*In re Philip Morris Int'l Inc. Sec. Litig.,*
89 F.4th 408 (2d Cir. 2023) .............................................................................. 6

*In re Sanofi Sec. Litig.,*
87 F. Supp. 3d 510 (S.D.N.Y. 2015) ................................................................ 8

*In re Sinclair Broadcast Grp., Inc. Sec. Litig.,*
2020 WL 571724 (D. Md. Feb. 4, 2020) .......................................................... 6

*In re Worlds of Wonder Sec. Litig.*,
   814 F. Supp. 850 (N.D. Cal. 1993) ...........................................................................6

*Johnson v. CBD Energy Ltd.*,
   2016 WL 3654657 (S.D. Tex. July 6, 2016) ............................................................7

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
   601 U.S. __, No. 22-1165, slip op. (S. Ct. April 12, 2024)....................................5

*Markarian v. BMW of N. Am., LLC*,
   2022 WL 16531959 (C.D. Cal. Oct. 28, 2022) .....................................................11

*Martinez v. Newsom*,
   46 F.4th 965 (9th Cir. 2022) ....................................................................................4

*Mehdi v. View, Inc.*,
   2023 WL 3592098 (N.D. Cal. May 22, 2023) ..........................................................7

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension*
   *Fund*,
   575 U.S. 175 (2015) ........................................................................... 1, 6, 7, 8

*Pardi v. Tricida, Inc.*,
   2024 WL 1056013 (N.D. Cal. Mar. 11, 2024) ............................................. 1, 2, 5

*Pino v. Cardone Capital, LLC*,
   2023 WL 7800138 (C.D. Cal. Oct. 4, 2023) ............................................................8

*Podany v. Robertson Stephens, Inc.*,
   318 F. Supp. 2d 146 (S.D.N.Y. 2004) ......................................................................8

*Sims v. Amazon.com, Inc.*,
   2022 WL 739524 (C.D. Cal. Jan. 27, 2022).............................................................12

*Strezsak v. Ardelyx Inc.*,
   2024 WL 1160900 (N.D. Cal. Mar. 18, 2024) ............................................. 1, 2, 5

*Washington v. Wechsler*,
   2023 WL 8114385 (C.D. Cal. Oct. 31, 2023) .........................................................12

**RULES**

Local Rule 7-3 ...............................................................................................................11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

iii

DEFS.' REPLY IN SUPPORT OF MOTION
TO DISMISS PL.'S 14(a) COMPLAINT
Case No. 2:21-cv-09016-FLA-SSCx

# REGULATIONS

17 C.F.R.

§ 240.10(b)..................................................................................................5

§ 240.10b-5...............................................................................................5

§ 240.14(a)................................................................................................5

§ 240.14a-9(a)...........................................................................................5

*Regulations Regarding "Intended Uses,"* 86 Fed. Reg. 41383, 41386-88 (2021).................................................................................................9

# OTHER AUTHORITIES

FDA, *Letters to Industry*, https://www.fda.gov/medical-devices/industry-medical-devices/letters-industry .............................................3

Owlet took a good-faith position in its disclosures regarding the regulatory status of the Smart Sock it had marketed for six years, while simultaneously warning investors (explicitly and repeatedly) that the FDA may disagree with the company's conclusions. There was nothing false or misleading about these statements, and Plaintiff's Opposition, ECF No. 109 ("Opp.") does not show otherwise.

Instead, the Opposition largely reiterates the core allegations of the Complaint[1] and doubles down on two pleading defects fatal to Plaintiff's claims. *First*, Plaintiff mischaracterizes (or, at best, misunderstands) the legal framework that governs whether a product qualifies as a medical device and ignores the FDA's express guidance on the meaning of its communications. This guidance makes clear, as a matter of law, that the FDA did not conclusively determine that the Smart Sock was marketed as a medical device until the agency issued its Warning Letter in October 2021—after the challenged statements were made. *Second*, Plaintiff expressly disclaims fraud, *see* Compl. ¶ 113, which means he cannot plead subjective falsity under *Omnicare* as a matter of law.

Two recent cases in this Circuit closely track the facts here and show why dismissal is warranted. *See Pardi v. Tricida, Inc.*, 2024 WL 1056013 (N.D. Cal. Mar. 11, 2024); *Strezsak v. Ardelyx Inc.*, 2024 WL 1160900 (N.D. Cal. Mar. 18, 2024). In *Tricida*, the plaintiff alleged that statements regarding the statistical significance of clinical trial results misled investors because "the FDA had repeatedly indicated its disagreement" that the trial results "demonstrate[d] . . . clinical effectiveness." 2024 WL 1056013, at *2, 7. And in *Ardelyx*, the plaintiff alleged that statements regarding "the magnitude of the treatment effect" of a drug in development were misleading when the company "knew that the FDA had significant concerns" and omitted such concerns in statements to investors expressing optimism about the drug's "eventual approval." 2024 WL 1160900, at

---

[1] The Complaint refers to ECF No. 80 and will be referenced herein as "Compl. ¶ _."

*2. The Court held the statements at issue in both cases non-actionable, reasoning in *Tricida* that it is not securities fraud when a company declines to "adopt the FDA's position as correct and share it with the public when discussing its product." 2024 WL 1056013, at *7. So too here. And just as the *Ardelyx* court reasoned that the "[d]efendants specifically disclosed the thrust of the concerns Plaintiff asks the Court to infer from the FDA statements at issue," 2024 WL 1160900, at *6, the same goes for Owlet, which repeatedly warned that the FDA had expressed disagreement with the company's assessment of the Smart Sock.

## I.      THE COMPLAINT FAILS TO PLEAD FALSITY

The Opposition identifies four categories of Owlet's statements that it asserts were misleading: (1) statements regarding the FDA's communications with the company, Opp. at 18-22; (2) opinion statements regarding the Smart Sock's regulatory status, *id.* at 15-18; (3) opinion statements concerning Owlet's regulatory compliance, *id.* at 22; and (4) forward-looking projection statements about revenue growth, *id.* at 22-24. None of these statements is actionable.

### A.      Owlet's Statements Regarding the FDA's Communications Were Not False or Misleading

Plaintiff contends that Owlet's robust disclosures—which stated that the FDA had "expressed" that it "may not agree" with Owlet's conclusion that the Smart Sock did not qualify as a medical device, Compl. ¶ 97—were misleading because the FDA had "already confirmed it did not agree with that conclusion," *id.* ¶ 98. This theory rests on an incorrect understanding of how the FDA communicates with the industry and is contravened by the allegations in the Complaint itself. As Defendants have explained, ECF No. 92 ("Mot.") at 4-5, the FDA's pre-Warning Letter communications about a product are not definitive and instead represent only the agency's tentative view. "It Has Come to Our Attention" letters are "early communication[s] to gather additional information" and are sent when the FDA "become[s] aware that regulated industry *may* be promoting a medical device in a

manner that potentially violates the [FDCA]." FDA, *Letters to Industry*, https://www.fda.gov/medical-devices/industry-medical-devices/letters-industry. That the FDA sent such pre-Warning Letter communications to Owlet does not—as a matter of law—render false or misleading Owlet's statements that the FDA "may not agree" with the company's assessment of the Smart Sock or that the FDA "could require" the company "to obtain marketing authorization . . . to continue to sell the product." Compl. ¶¶ 97, 105; *see* Opp. at 8-9. Owlet's statements and warnings to investors were accurate.

Plaintiff contends that the FDA's well-established and public guidance on its pre-Warning Letter communications is "outside the record" and, therefore, "a red herring." Opp. at 19. But courts routinely rely on precisely this kind of public legal guidance in considering a motion to dismiss. *See, e.g.*, *Grivas v. Metagenics, Inc.*, 2018 WL 6185977, at *2 (C.D. Cal. Jan. 4, 2018) (taking judicial notice of guidance that "appears on the FDA's website" and relying on such guidance in granting a motion to dismiss). Far from a red herring, the FDA's established guidance entirely undercuts the Complaint's theory that the FDA had "definitively determin[ed]" that the Smart Sock qualified as a medical device in its 2016 communication.

The "It Has Come to Our Attention" letter that Owlet received from the FDA, *see* Smith Decl., Ex. 2, ECF No. 92-3, only confirms that the FDA's pre-Warning Letter communications are tentative, not certain. The FDA explained that it "appear[ed]" the Smart Sock met the definition of a medical device, and it invited Owlet to submit documentation to the contrary. *Id.* That language is far from conclusive. Plaintiff argues that "[t]he FDA did not state in 2016 that the Smart Sock *may* meet the definition of a device." Opp. at 19. But the very nature of an "It Has Come to Our Attention" letter is tentative, as the FDA has publicly explained. Such letters are issued when the FDA becomes aware that a company "*may*" be marketing a medical device. FDA, *Letters to Industry*, *supra*. As a result, Plaintiff's repeated claims that the FDA's communication was "unequivocal[]," Opp. at 2,

"explicit[]," *id.* at 6, and "definitive[]," *id.* at 19, are wrong as a matter of law.

Attempting to manufacture a factual dispute, Plaintiff cites a 2017 news report, which (he says) shows that "the FDA communicated its determination to Owlet" before issuing the Warning Letter in 2021. Opp. at 20. But courts are "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Martinez v. Newsom*, 46 F.4th 965, 971 (9th Cir. 2022) (quotations omitted). The news story cited by Plaintiff nowhere states that the FDA sent a communication *to Owlet* regarding any conclusion about the Smart Sock. *See* Compl. ¶ 74 n.12. This conclusory allegation is far from enough to meet the PSLRA's high standard and presumption against allowing speculative securities fraud claims to proceed into costly (and unjustified) discovery.

Plaintiff turns as well to confidential witness statements. Yet not one alleges that the FDA communicated that the Smart Sock qualified as a medical device before the agency issued its Warning Letter in 2021. The witness allegations instead focus on the company's internal discussion about marketing the Smart Sock and confirm the company's unrelenting effort to make sure that its marketing complied with FDA guidance. *See* Compl. ¶¶ 75-79. Indeed, those very allegations show that Owlet was engaged in a multi-year dialogue with the FDA concerning the marketing for the Smart Sock, putting the lie to Plaintiff's accusation that the FDA had reached any definitive conclusion in 2016. *See id.*

Even the Warning Letter itself, which Plaintiff quotes at length, shows that the FDA did not reach a definitive conclusion regarding the Smart Sock's regulatory status until 2021. Unlike the "It Has Come to Our Attention" letter in 2016, which included only tentative ("it appears") language, the Warning Letter explained that the FDA had "reviewed" Owlet's "web site, multiple commercial websites, and [Owlet's] responses to FDA correspondence and *determined* that the Owlet Smart Sock" qualifies as a medical device. Compl. ¶ 120 (emphasis added). Plaintiff offers no explanation for why the FDA would engage in years of "correspondence"

before reaching an ultimate "determin[ation]" in the Warning Letter if the agency had actually concluded—*six years earlier*—that the Smart Sock qualified as a medical device. Nor can he.

In short, Owlet did what any prudent company should: It expressed its opinion about the uncertain regulatory status of a new product, while repeatedly advising investors that the FDA may ultimately disagree with its judgment call. Owlet explained to the market in no uncertain terms that although it believed the Smart Sock did not qualify as a medical device, "the FDA and certain regulatory authorities *have expressed* they *may not agree* with that conclusion." Compl. ¶¶ 97, 105; *see* Mot. at 8, 19-20; *see also, e.g.*, *Tricida*, 2024 WL 1056013, at *9 (dismissing complaint as to statements where Defendant "directly and specifically described risk factors based on what the FDA might ultimately decide"); *Ardelyx*, 2024 WL 1160900, at *6 (same). Plaintiff says that was not enough. Opp. at 18. But the implication of his argument is that Owlet either had to *misstate* that the FDA had reached a definitive conclusion (when it had not) or had to disclose the minute-by-minute details of an evolving dialogue with the agency. The law does not require either approach. *See, e.g.*, *Tricida*, 2024 WL 1056013, at *7 (no "general requirement" to disclose "every detail arising from the back-and-forth dialogue with the FDA"); *In re Arrowhead Pharm., Inc. Sec. Litig.*, 2017 WL 5635422, at *6 (C.D. Cal. 2017) (no duty to disclose FDA's "interim recommendations"); *Goucher v. Iterum Therapeutics plc*, 648 F. Supp. 3d 962, 977-78 (N.D. Ill. 2022) (collecting cases). Because Plaintiff fails to plead that Owlet that made any false or misleading statements, the Complaint should be dismissed.[2]

---

[2] Plaintiff contends that Owlet violated Section 14(a) by failing to disclose required information under Item 303 of Regulation S-K. Compl. ¶ 90; Opp. at 21-22. This argument fails. *See* Mot. at 13-14. The Supreme Court held unanimously that Item 303 does not support a "pure omission" liability theory under Rule 10b-5. *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. ___, No. 22-1165, slip op. at 1 (S. Ct. April 12, 2024). Like Section 10(b) and Rule 10(b)-5, Section 14(a) imposes liability only for affirmatively false or misleading statements, and under *Macquarie*'s logic (*id.* at 2, 4), it likewise does not support a "pure omission" liability claim. *See* 17 C.F.R. § 240.14a-9(a).

### B.   Plaintiff Fails to Plead That Owlet's Statements Regarding the Smart Sock's Regulatory Status Were False or Misleading

Owlet's statements regarding the Smart Sock's regulatory status are opinion statements because they expressed the company's view on an inherently subjective judgment call.  And these opinion statements are not actionable, as the Complaint fails to allege that Owlet did not sincerely believe those statements when made.  *See City of Dearborn Heights v. Align Tech., Inc.*, 856 F.3d 605, 616 (9th Cir. 2017).  Indeed, the Complaint expressly disclaims a fraud theory, which bars liability under *Omnicare* as a matter of law.

### 1.   Owlet's Statements Regarding the Smart Sock's Regulatory Status Are Opinions

Save for two lines in Opposition, Plaintiff does not challenge that Owlet's statements regarding the Smart Sock's regulatory status qualify as opinions.  Nor can he.  Owlet's statements that the Smart Sock did not qualify as a medical device were necessarily statements of opinion because they entailed an "inherently subjective" judgment call.  *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186 (2015); *see also In re Sinclair Broadcast Grp., Inc. Sec. Litig.*, 2020 WL 571724, at *8-9 (D. Md. Feb. 4, 2020) (concluding that statements about "compliance with FCC regulations" were opinion statements); *see also* Mot. at 14-15.  That is no less true for statements where Owlet did not caveat its view by stating that it was the company's "belief."  *See* Opp. at 16; Compl. ¶ 97; *see In re Philip Morris Int'l Inc. Sec. Litig.*, 89 F.4th 408, 418 (2d Cir. 2023); Mot. at 15.  What's more, the risk disclosures made clear that the company's assessment of the Smart Sock constituted Owlet's "belief."  *See* Compl. ¶ 97; *In re Worlds of Wonder Sec. Litig.*, 814 F. Supp. 850, 859 (N.D. Cal. 1993) ("statements . . . must be evaluated in light of the risk factor disclosure[s] set forth elsewhere in the document"); *see also Omnicare*, 575 U.S. at 190.

**2.     The Complaint Undercuts Its Own Subjective Falsity Theory**

In order to plead falsity of an opinion, Plaintiff must plead subjective falsity—*i.e.*, that Defendants did not sincerely believe their statements regarding the Smart Sock's regulatory status at the time they made them. *See Align*, 856 F.3d at 616. But the Complaint expressly disclaims allegations of fraud, which fatally undercuts Plaintiff's attempt to plead subjective falsity.

According to the Complaint, "the claims set forth herein do not sound in fraud and are based *on negligent conduct* by the Defendants named herein." Compl. ¶ 140 (emphasis added); *see also id.* ¶ 1; Opp. at 1. As numerous courts have recognized—including in this District—Plaintiff's insistence that his claims do not sound in fraud precludes finding that the Complaint satisfies *Omnicare*'s subjective falsity requirement. *See* Mot. at 15-16 (citing cases); *see also, e.g.*, *Mehdi v. View, Inc.*, 2023 WL 3592098, at *10-11 (N.D. Cal. May 22, 2023) ("any allegation that [defendant] knew that its statements were false" was "inconsistent" with "plaintiff disclaim[ing] any allegations of fraud"); *Johnson v. CBD Energy Ltd.*, 2016 WL 3654657, at *12 (S.D. Tex. July 6, 2016) (reasoning that plaintiff could not plead subjective falsity because the complaint disclaimed allegations of fraud); *In re Am. Int'l Grp., Inc., 2008 Sec. Litig.*, 2013 WL 1787567, at *4 (S.D.N.Y. Apr. 26, 2013) (same). Indeed, *Omnicare* itself explained that the plaintiff there could not plead subjective falsity because the complaint in that case "explicitly exclude[d] and disclaim[ed] any allegation sounding in fraud or deception." 575 U.S. at 186 (quotations omitted).

The Opposition cannot explain away this basic pleading defect.

*First*, Plaintiff accuses Defendants of "confusing subjective falsity with scienter." Opp. at 18. But *Omnicare* is clear: pleading subjective falsity requires showing that "the speaker did not hold the belief she professed." 575 U.S. at 186; *see also Align*, 856 F.3d at 616 (citing that same phrase from *Omnicare*); *see also In re Finjan Holdings, Inc. Sec. Litig.*, 2021 WL 1391539, at *12 (N.D. Cal. Apr. 13,

2021) (holding in a Section 14(e) case that even where negligence is the scienter standard, a plaintiff "must plead subjective falsity" where the "specific nature of his . . . claim . . . is based on opinion"). The Complaint's affirmative disavowal of a fraud theory therefore undercuts any allegation that Defendants did not honestly believe that the Smart Sock qualified as a medical device. That spells the end of Plaintiff's claim regarding Owlet's opinion statements.[3]

*Second*, Plaintiff implies that none of this jurisprudence matters when it comes to Section 14(a) claims and cites cases holding that a plaintiff need not plead anything more than negligence in this context. *See* Opp. at 18. But *Omnicare* applies all the same when it comes to Section 14(a), as the Ninth Circuit has explicitly held. *Golub v. Gigamon Inc.*, 994 F.3d 1102, 1106 (9th Cir. 2021) ("[W]e hold that *Omnicare*'s standards for pleading falsity of opinion—via either a misleading representation or omission—apply to claims arising under section 14(a)"). Plaintiff's argument concerning scienter is a straw man where, as here, his claim is premised on the theory that the speaker did not truly believe the statements they made at the time they made them. For instance, in *Pino v. Cardone Capital, LLC*, 2023 WL 7800138 (C.D. Cal. Oct. 4, 2023), the plaintiff brought a claim under Section 12 of the Securities Act of 1933, which, like Section 14(a), does not require proof of scienter. *Id.* at *5. As here, the *Pino* plaintiff's theory of liability turned on the subjective falsity of the defendants' opinion statements. *See id.* at *6. And because the plaintiff "disclaimed any and all allegations of fraud," the court correctly concluded that "Plaintiff cannot allege that Defendants did not honestly believe in

---

[3] To the extent there is confusion on this point, *see* Opp. at 18, consider Judge Lynch's explanation in *Podany v. Robertson Stephens, Inc.*: "While in a misstatement of fact case the falsity and scienter requirements present separate inquiries, in false statement of opinion cases . . . the falsity and scienter requirements are essentially identical. This is because a material misstatement of *fact* is alleged by pointing to the true fact about the world that contradicts the misstatement. . . . However, a material misstatement of *opinion* is by its nature a false statement, not about the objective world, but about the defendant's own belief." 318 F. Supp. 2d 146, 154 (S.D.N.Y. 2004); *see also In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 534 (S.D.N.Y. 2015).

the statements made." *Id.* at *6.  Put simply:  "[B]ecause Plaintiff has affirmatively disclaimed fraud . . . she cannot plead subjective falsity." *Id.*; *see also In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 757 F. Supp. 2d 260, 319-20 (S.D.N.Y. 2010) (applying same logic to Section 14(a)).

In short, because the Complaint disclaims a fraud theory, Plaintiff cannot as a matter of law plead subjective falsity.  His claim premised on Owlet's opinion statements regarding the Smart Sock's regulatory status must therefore be dismissed.

### 3.     Plaintiff Does Not Adequately Plead Subjective Falsity

Plaintiff fails to plead subjective falsity anyway.  The Opposition repeats the Complaint's errors regarding the FDA's regulatory process.  Plaintiff contends that the FDCA imposes "unambiguous requirements," Opp. at 16—a contention at odds with both Supreme Court precedent and the FDA's own guidance, both of which have recognized that determining whether a product qualifies as medical device entails a complex factual and legal judgment about a product's "intended use." *See Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 345 (2001); *see also* FDA, *Regulations Regarding "Intended Uses*," 86 Fed. Reg. 41383, 41386-88 (2021) (explaining that the FDA takes into account myriad factors in determining a product's "intended use").  In Plaintiff's view, it was obvious to anyone that the Smart Sock qualified as a medical device.  But Plaintiff fails to explain why the FDA then allowed Owlet to market the Smart Sock as a general wellness product for *six years*, and issued its Warning Letter only after lengthy correspondence with Owlet and a careful evaluation of the company's marketing claims.  *See* Compl. ¶ 120.

Plaintiff accuses Defendants of "incorrectly argu[ing] that *only* the content of Owlet's 'promotional claims' are relevant to the 'medical device' determination, not the Smart Sock's functionality."  Opp. at 17 (emphasis added).  That is wrong.  Defendants did not say that promotional claims and advertising are all that matter. *See* Mot. at 4, 11, 16.  The Motion instead explains that because advertising and promotional claims weigh heavily, two products with the same characteristics can

be classified differently—a reality that the FDA readily acknowledges when it comes to pulse oximeters, the very technology at issue here. *See id.* at 17. Even the FDA's Warning Letter explained that it reached its "determination" in 2021 regarding the Smart Sock after reviewing Owlet's "web site" as well as other "commercial websites," and highlighting language on four such websites. Compl. ¶¶ 120-21. If Plaintiff were right that the entire question simply turned on the Smart Sock's use of pulse oximeter technology, the FDA's years-long correspondence and most of the content of its Warning Letter were irrelevant.

Plaintiff turns to statements Kurt Workman made in 2013, Opp. at 16, but Plaintiff does not—and cannot—contend that his statements in 2013, predating the very existence of the FDA's general wellness guidance, bear at all on whether Owlet believed that the Smart Sock fit within that (then nonexistent) guidance.

At bottom, even if they were not expressly disclaimed, Plaintiff's subjective falsity allegations fail to grapple with both the FDA's well-established guidance and binding precedent governing whether products qualify as medical devices. *See* Mot. 15-18. The allegations instead show that Owlet was operating in an ever-changing regulatory framework, Compl. ¶ 58, understood that its marketing positions mattered, *id.* ¶¶ 75-79, and engaged in a multi-year correspondence with the FDA to land on the proper classification of the Smart Sock, *id.* ¶¶ 120-22. Plaintiff's attempt to spin Owlet's good faith efforts into a nefarious tale utterly fails.

### C.  Owlet's Statements Regarding Its Compliance with FDA Regulations Were Not Plausibly False or Misleading

Plaintiff challenges Owlet's statement that, "[s]ince January 1, 2018," the company had sold "all products . . . in compliance in all material respects with applicable FDA laws." Compl. ¶ 103 (emphasis omitted). Plaintiff claims that Defendants "do not address, and thus concede, the falsity of these misstatements." Opp. at 22. Not so. Defendants' Motion specifically cited paragraph 103 when addressing the Complaint's allegation that Owlet misled the market by claiming the

Smart Sock did not qualify as a medical device. Mot. at 14. These statements are two sides of the same coin, as Plaintiff contends that Owlet's opinion statement about its "compliance" was misleading because Owlet knew that the Smart Sock was a medical device. Compl. ¶ 112. And for the reasons explained in the Motion (at 14) and above, Plaintiff's theory is wrong as a matter of law.

### D. Owlet's Forward-Looking Projections Are Protected by the PSLRA's Safe Harbor and Were Not Misleading

The Complaint alleges that Owlet's forward-looking projections—which were clearly labeled as such—were false or misleading because they did not account for the FDA's later determination that the Smart Sock qualified as a medical device. Compl. ¶ 102. Plaintiff concedes, as he must, that the PSLRA's safe harbor would protect these statements and now attempts to recast this allegation to avoid that safe harbor, claiming that Owlet's statements "expressing a *current* belief in the accuracy of forecasts" are not protected. Opp. at 23. But the Complaint is clear: It challenges the *projections* themselves. Compl. ¶ 102 ("The projections, however, were both objectively and subjectively false."). The safe harbor applies. Mot. at 20.

## II.   PLAINTIFF'S RULE 7-3 ARGUMENTS ARE MERITLESS

Plaintiff contends that Defendants failed to comply with Local Rule 7-3. *See* Opp. at 24. Plaintiff provides no substantive basis to support this accusation. *See Markarian v. BMW of N. Am., LLC*, 2022 WL 16531959, at *2 n.1 (C.D. Cal. Oct. 28, 2022) (finding party forfeited Rule 7-3 argument by failing to "raise this issue in its [o]pposition"). And Plaintiff is wrong: Defendants conferred with Plaintiff regarding the Motion to Dismiss. Plaintiff never raised any substantive issue during the course of the parties' communications and conversations. Defendants also invited further discussion after the motion was filed, which Plaintiff declined. And Plaintiff nowhere states that he would change the pleadings or alter his arguments in light of Defendants' motion. *See Fin. Pac. Ins. Co. v. U.S. Fire Ins. Co.*, 2021 WL 9181462, at *2 (C.D. Cal. Dec. 29, 2021) (addressing merits of motion because the

other party did not argue prejudice).  Indeed, "the parties have fully briefed the issues in the subject Motion and Plaintiff does not request the court disregard certain arguments." *Sims v. Amazon.com, Inc.*, 2022 WL 739524, at *1 n.2 (C.D. Cal. Jan. 27, 2022).   If the Court believes further meet and confer would be fruitful, Defendants request that the Court permit the parties to meet and confer and refile the motion. *See Washington v. Wechsler*, 2023 WL 8114385, at *1 (C.D. Cal. Oct. 31, 2023).

Defendants' Motion to Dismiss should be granted.

Dated:  May 10, 2024

Respectfully submitted,

LATHAM & WATKINS LLP

By: */s/ Colleen C. Smith*
Colleen C. Smith

*Attorneys for Defendants Owlet, Inc. f/k/a Sandbridge Acquisition Corporation, Kurt Workman, and Kate Scolnick*

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Owlet, Inc. ("Owlet"), and Kurt Workman, and Kate Scolnick, certifies that this brief contains 3,689 words, which complies with the word limit of L.R. 11-6.1.

Dated: May 10, 2024                   */s/ Colleen C. Smith*
                                              Colleen C. Smith