Anne Johnson Palmer (CA Bar No. 302235)
Email: anne.johnsonpalmer@ropesgray.com
ROPES & GRAY LLP
Three Embarcadero Center
San Francisco, CA 94111-4006
Tel. (415) 315-6300
Fax (415) 315-6350

*Attorneys for Defendants Ken Suslow,*
*Richard Henry, Domenico De Sole,*
*Ramez Toubassy, Jamie Weinstein,*
*Krystal Kahler, and Michael F. Goss*

*Additional counsel listed on signature page*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| MICHAEL J. BUTALA, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> OWLET, INC. f/k/a SANDBRIDGE ACQUISITION CORPORATION, KURT WORKMAN, KATE SCOLNICK, KEN SUSLOW, RICHARD HENRY, DOMENICO DE SOLE, RAMEZ TOUBASSY, JAMIE WEINSTEIN, KRYSTAL KAHLER, and MICHAEL F. GOSS, <br><br> Defendants. | Case No. 2:21-cv-09016-FLA-JEM <br><br> Hon. Fernando L. Aenlle-Rocha <br><br> **SANDBRIDGE DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT** <br><br> DATE:  May 31, 2024 <br> TIME:   1:30 PM <br> CTRM:  6b <br> JUDGE: Hon. Fernando L. Aenlle-Rocha |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT.........................................................................................................2

    I.    The Sandbridge Defendants Are Not the Makers of the Challenged Statements and Thus Are Not Liable for Any Alleged Misstatements..........2

    II.    Plaintiff Does Not Plead Particularized Facts Creating a Strong Inference that Any Sandbridge Defendant Acted Negligently, as Required by the PSLRA..................................................................................................4

    III.    The Exculpation Provision in the Sandbridge Charter Shields the Sandbridge Director Defendants from Liability. ............................................6

    IV.    The Court Should Consider the Merits of the Sandbridge Motion, Consistent with the Local Rules..................................................................9

CONCLUSION ....................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Azar v. Blount Int'l, Inc.*,
   2017 WL 1055966 (D. Or. Mar. 20, 2017) ........................................................5

*Blockchain Innovation, LLC v. Franklin Res., Inc.*,
   2023 WL 2576314 (N.D. Cal. Mar. 20, 2023)................................................. 7, 8

*CarMax Auto Superstores California LLC v. Hernandez*,
   94 F.Supp.3d 1078 (C.D. Cal. April 30, 2015) ................................................. 10

*City of Birmingham Relief & Ret. Sys. V. Hastings*,
   2019 WL 3815722 (N.D. Cal. Feb. 13, 2019)..................................................... 6

*In re Crimson Exploration Inc. Stockholder Litig.*,
   2014 WL 5449419 (Del. Ch. Oct. 24, 2014)................................................... 7, 8

*Diaz v. Heredia Tarango*,
   2022 WL 17098646 (C.D. Cal. Aug. 15, 2022)....................................................3

*ECASH Techs., Inc. v. Guagliardo*,
   35 Fed.Appx. 498 (9th Cir. 2002) .................................................................... 10

*Foote v. Mehrotra*,
   2023 WL 7214728 (D. Del. Nov. 2, 2023) ..........................................................7

*Gesoff v. IIC Indus., Inc.*,
   902 A.2d 1130 (Del. Ch. 2006) .......................................................................... 8

*In re Hot Topic, Inc. Sec. Litig.*,
   2014 WL 7499375 (C.D. Cal. May 2, 2014) ................................................... 4, 5

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
   564 U.S. 135 (2011) ....................................................................................... 2, 4

*Knollenberg v. Harmonic, Inc.*,
   152 F. App'x 674 (9th Cir. 2005).........................................................................5

*In re McKesson HBOC, Inc. Sec. Litig.*,
   126 F. Supp. 2d 1248 (N.D. Cal. 2000) ...............................................................6

*Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*,
    2021 WL 1199035 (S.D.N.Y. Mar. 30, 2021) ......................................................4

*In re Nektar Therapeutics*,
    2020 WL 3962004 (N.D. Cal. July 13, 2020) ......................................................4

*N.Y.C. Emps.' Ret. Sys. v. Jobs*,
    593 F.3d 1018, 1022 (9th Cir.2010) ....................................................................5

*Shaev v. Baker*,
    2017 WL 1735573 (N.D. Cal., May 4, 2017) ..............................................7, 8, 9

*In re Zoran Corp. Derivative Litig.*,
    511 F. Supp. 2d 986 (N.D. Cal. 2007) .................................................................8

**Statutes**

15 U.S.C. § 78 ...........................................................................................................3, 4

Private Securities Litigation Reform Act .............................................................1, 4, 5, 6

**Other Authorities**

Fed. R. Civ. P. 12(b)....................................................................................................10

Local Rule 7-3 ..........................................................................................................9, 10

Local Rule 11-6.1 ....................................................................................................10, 11

## <u>PRELIMINARY STATEMENT</u>

The Owlet Defendants' moving papers and reply articulate the numerous reasons why Plaintiff has not pled any actionable false or misleading statement in the 14(a) Complaint to sustain a claim against *any* Defendant. The Sandbridge Defendants' opening brief, Dkt. 95 (the "Sandbridge Motion"), raised three additional arguments that are each independently sufficient to dismiss the 14(a) claims against the Sandbridge Defendants.[1] Plaintiff's Memorandum of Points and Authorities in Opposition to the Sandbridge Motion, Dkt. 111 (the "Opposition"), fails to meaningfully respond to any of those three arguments.

*First*, the Opposition does not directly address the argument that the Proxies attributed the challenged statements to the pre-Business Combination Old Owlet entity, not to the Sandbridge Defendants. The Opposition makes no attempt to address the case law cited in the Sandbridge Motion, which confirms that the Sandbridge Defendants cannot be held liable under Section 14(a) for statements attributed to others. Instead, Plaintiff broadly declares, without any case law support, that the Sandbridge Defendants are nonetheless liable simply because Sandbridge disseminated the Proxies. Section 14(a) does not sweep so broadly.

*Second*, the Opposition misstates the applicable pleading standard as mere Rule 8 notice pleading. But the very case law the Opposition cites makes clear that the 14(a) Complaint must meet the heightened standards of the Private Securities Litigation Reform Act (the "PSLRA"), which requires Plaintiff to plead negligence as to each Sandbridge Defendant with particularity. The 14(a) Complaint does not satisfy this standard.

*Third*, the Opposition contorts itself in a futile attempt to avoid application of the exculpation clause in the Sandbridge Charter. The 14(a) Complaint goes out of

---

[1] All capitalized defined terms have the same definitions used in the Sandbridge Motion unless otherwise specified.

SANDBRIDGE DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 2:21-cv-09016-FLA-JEM

its way to specify that its claims sound only in *negligence*, expressly disclaiming any allegation that the Sandbridge Defendants acted with scienter.  In the Opposition, however, Plaintiff reverses course, arguing that the exculpation clause does not apply because Plaintiff somehow pleads that the Sandbridge Defendants acted in bad faith and in breach of their fiduciary duty of loyalty—theories of liability that require the showing of scienter that the 14(a) Complaint expressly disclaims.

Finally, the Opposition attempts to distract from the substance of the Sandbridge Motion with misleading arguments claiming that Defendants' briefs did not comply with the Local Rules.  These arguments are without merit, and, in any event, the Opposition makes clear that Plaintiff cannot articulate any prejudice resulting from the issues it raises.  The Court should consider the Sandbridge Motion in its entirety.

## ARGUMENT

### I.   The Sandbridge Defendants Are Not the Makers of the Challenged Statements and Thus Are Not Liable for Any Alleged Misstatements.

The Sandbridge Motion detailed how each of the statements Plaintiff challenges in the 14(a) Complaint are expressly attributed to Old Owlet, not to any of the Sandbridge Defendants.  *See Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142–43 (2011) ("[A]ttribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by— and only by—the party to whom it is attributed.").  For example, the challenged statements concerning Old Owlet's pre-Business Combination operations, 14(a) Compl. ¶¶ 97-100, 113-14, are all framed in the first person "we," which is defined in the Proxies as referring to Old Owlet "prior to the [Business Combination]."  Ex.

7 at 34; Ex. 6 at 36.[2]  Similarly, the challenged citations to Old Owlet's financial projections, 14(a) Compl. ¶¶ 102 & 110, are identified as "prepared by, and [] the responsibility of [Old] Owlet's management"; the Proxies specify that such "[i]nformation provided by Owlet does not constitute any representation, estimate or projection of any other party."  Ex. 7 at 100, Ex. 6 at 103.  Finally, the 14(a) Complaint takes issue with statements that appear in Article 3 of the Business Combination Agreement (appended to the Proxies), 14(a) Compl. ¶¶ 6, 103, 111, which contains representations and warranties that "the Company [*i.e.,* Old Owlet]" made to Sandbridge.  Ex. 7 at A21 Ex. 6 at A21.

The Opposition fails to address the substance of this argument, that the Proxies on their face make clear that the challenged statements were not made by any Sandbridge Defendant.  Plaintiff does not contest, and thereby concedes, that the Proxies expressly attribute each of the challenged statements to Old Owlet, not to any Sandbridge Defendant.  *See, e.g., Diaz v. Heredia Tarango*, 2022 WL 17098646, at *5 (C.D. Cal. Aug. 15, 2022) ("[W]here a non-moving party fails to address an argument raised by the moving party in the opposition brief, the Court may consider any arguments unaddressed by the non-moving party as waived") (internal citation omitted)).

Rather than responding to this dispositive pleading failure, Plaintiff retreats to the language of Section 14(a) that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l].

---

[2] All exhibits cited herein are appended to the Declaration of Colleen C. Smith in Support of the Owlet Motion, Dkt. 92, and are designated "Ex. __" unless otherwise indicated.

Opp. at 11 (citing 15 U.S.C. § 78n).  From there, the Opposition leaps to the conclusion that "[a]ny defendant that negligently prepared, reviewed, and/or disseminated a false and misleading Proxy Statement is liable under §14(a)."  Opp. at 11-12.  However, the Sandbridge Motion cites to case law which directly contradicts Plaintiff's argument: the mere fact that a defendant "approved, reviewed, [or] ratified" certain statements is insufficient to make that defendant liable as the "maker" of those statements when the statements are "expressly attributed to other individuals."  *Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*, 2021 WL 1199035, at *28 n. 29 (S.D.N.Y. Mar. 30, 2021); *see also Janus*, 564 U.S. at 142–43.  The Opposition does not even attempt to grapple with these holdings, much less to offer any case law support for Plaintiff's sweeping assertion that because the Sandbridge Defendants signed the Proxies, they "are thus liable for every misstatement contained in the Proxy."  *Compare* Dkt. 95 at 4-7 *with* Opp. at 12.

As set forth in the Sandbridge Motion, Dkt. 95 at 4-7, because the Sandbridge Defendants were not the makers of the challenged statements, the 14(a) claims against them must be dismissed.  *In re Nektar Therapeutics*, 2020 WL 3962004, at *9 (N.D. Cal. July 13, 2020).

**II.    Plaintiff Does Not Plead Particularized Facts Creating a Strong Inference that Any Sandbridge Defendant Acted Negligently, as Required by the PSLRA.**

The Sandbridge Motion demonstrated that Plaintiff's claims also fail because the 14(a) Complaint does not plead that the Sandbridge Defendants acted with the required culpability under Section 14(a).

In response, the Opposition fails out of the gate when it asserts that Rule 8(a) notice pleading standards apply.  Opp. at 11.  Plaintiff's cited cases directly contradict its position.  As the court explained in *In re Hot Topic, Inc. Sec. Litig.*, "private plaintiffs must meet the heightened pleading standards of the [PSLRA]."

2014 WL 7499375, at *4 (C.D. Cal. May 2, 2014) (citing *N.Y.C. Emps.' Ret. Sys. v. Jobs*, 593 F.3d 1018, 1022 (9th Cir.2010)). Specifically, the "PSLRA requires private plaintiffs bringing suit under the 1934 Act to plead 'facts giving rise to a strong inference' that the misstatements or omission were made with the proper state of mind." *Hot Topic*, 2014 WL 7499375 at *10 (quoting 15 U.S.C. § 78u-4(b)(2)). For a Section 14(a) claim, Plaintiff must plead particularized facts alleging a "strong inference of negligence." *Knollenberg v. Harmonic, Inc.*, 152 F. App'x 674, 683 (9th Cir. 2005) (internal citation omitted).

Plaintiff does not (and cannot) identify any particularized allegations in the 14(a) Complaint that would demonstrate negligence on the part of any of the Sandbridge Defendants. Instead, Plaintiff baldly asserts that "[e]ither the Sandbridge Defendants conducted adequate diligence [and therefore] acted negligently in disseminating the Proxy" because they allegedly knew of the purported misrepresentations, or "[i]f the Sandbridge Defendants did not do adequate diligence . . . then their dissemination of the Proxy recommending shareholder approval of the de-SPAC Merger was negligent." Opp. at 13-14. This framing distorts Section 14(a), transforming it into a strict liability statute. Plaintiff asks the Court to accept that *if* there were false or misleading statements in the Proxies, the Sandbridge Defendants *must have been* at least negligent in signing the Proxies. The Opposition seeks to excuse Plaintiff from pleading negligence at all, much less with the particularity requirements of the PSLRA.

As demonstrated in the Sandbridge Motion, the 14(a) Complaint is bereft of facts alleging *how* any of the Sandbridge Defendants acted negligently. Dkt. 95 at 8-9. Plaintiff cites to *Azar v. Blount Int'l, Inc.*, but in *Azar*, the complaint contained "*specific factual allegations*" regarding defendants' individual roles and direct involvement in preparing and reviewing the proxy, and their reliance on allegedly conflicted advisors. 2017 WL 1055966 at *10 (D. Or. Mar. 20, 2017) (emphasis added). In contrast, here Plaintiff relies entirely on statements in the Proxies that

merely indicate that the Sandbridge Defendants conducted diligence. Opp. at 14. Nowhere does the Opposition identify any particularized allegations specific to any of the Sandbridge Defendants. The absence of any such particularized facts about the conduct of any of the individual Sandbridge Defendants is fatal to the Plaintiff's pleading under the PSLRA. *See, e.g.*, *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1267 (N.D. Cal. 2000) (finding 14(a) claims insufficient under the PSLRA where "Lead Plaintiff pleads no specific facts that would tend to show culpable conduct of any sort. To the contrary, the Complaint simply alleges that the Section 14(a) defendants 'acted negligently and without due care in distributing, or causing to be distributed, the Joint Proxy Statement containing the false and misleading statements [and] omissions.'").

**III.    The Exculpation Provision in the Sandbridge Charter Shields the Sandbridge Director Defendants from Liability.**

Plaintiff's 14(a) claims against Sandbridge's directors are also exculpated by the exculpation clause contained in the Sandbridge Charter (the "Exculpation Provision"). Dkt. 95 at 9 (citing Decl. of Anne Johnson Palmer, Dkt. 96, Ex. 1 at § 8.1). The Exculpation Provision exempts the directors from liability for "breach of fiduciary duty as a director. . . unless they violated their duty of loyalty to the Corporation or its stockholders, acted in bad faith, knowingly or intentionally violated the law." Dkt. 96, Ex. 1 at § 8.1.

As the Opposition concedes, in order to survive the Exculpation Provision, the 14(a) Complaint would need to plead that the Sandbridge directors acted in bad faith or in a manner that breached their duties of loyalty to Sandbridge. But the Opposition entirely ignores that to state a claim for bad faith or a breach of the duty of loyalty, Plaintiff must allege that the Sandbridge directors acted with scienter. *See, e.g., City of Birmingham Relief & Ret. Sys. V. Hastings*, 2019 WL 3815722, at *9 (N.D. Cal. Feb. 13, 2019) (where company has adopted a DGCL 102(b)(7) exculpation provision, a 14(a) plaintiff "must plead particularized factual

allegations that 'support the inference that the disclosure violation was made in bad faith, knowingly or intentionally'" (citation omitted)); *Shaev v. Baker*, 2017 U.S. 2017 WL 1735573 at *10 (N.D. Cal., May 4, 2017) ("Plaintiffs must allege scienter here for an additional reason: Wells Fargo's charter exculpates its Directors from liability unless the directors breached their duty of loyalty or the conduct involved bad faith, intentional misconduct, or a knowing violation of the law.").

Unfortunately for Plaintiff, the 14(a) Complaint expressly disclaims any such allegations. Indeed, the very first paragraph of the 14(a) Complaint emphasizes: "These claims arise from Defendants' negligence, and *do not assert that Defendants acted with scienter*." 14(a) Compl. ¶ 1 (emphasis added). The analysis ends there— Plaintiff's self-contradictory allegations defeat the 14(a) claims against the Sandbridge directors. *See, e.g.*, *Foote v. Mehrotra*, 2023 WL 7214728, at *10 (D. Del. Nov. 2, 2023) (finding that the exculpation clause applied where "the Complaint [] specifically states that the Section 14(a) claim is based solely on negligence.").

Moreover, the 14(a) Complaint fails to plead any factual allegations that could support a claim for bad faith or a breach of the duty of loyalty. To meet this standard, a plaintiff must "plead[] facts showing that 'the fiduciary *intentionally act[ed]* with a purpose other than that of advancing the best interests of the corporation' or '*intentionally fail[ed]* to act in the face of a known duty to act, demonstrating a conscious disregard for his duties.'" *Blockchain Innovation, LLC v. Franklin Res., Inc.*, 2023 WL 2576314, at *6 (N.D. Cal. Mar. 20, 2023) (citing *In re Crimson Exploration Inc. Stockholder Litig.*, 2014 WL 5449419, at *22 (Del. Ch. Oct. 24, 2014)). Despite the Opposition's attempt at revisionist history, the 14(a) Complaint fails to allege any intentional act by the Sandbridge directors for any purpose outside the best interests of Sandbridge; nor does it allege facts suggesting that any Sandbridge director consciously disregarded his or her duties to Sandbridge. Instead, throughout the 14(a) Complaint, Plaintiff makes clear the

allegations are based only in negligence. *See, e.g.*, 14(a) Compl. ¶¶ 1, 89 ("each Defendant *negligently signed* the Proxy Statement" (emphasis added)). Allegations of mere negligence do not support a claim bad faith or a breach of the duty of loyalty. *See Gesoff v. IIC Indus., Inc.*, 902 A.2d 1130, 1167 (Del. Ch. 2006) ("[N]egligent or even gross negligent conduct does not equate to disloyalty or bad faith" (internal citation omitted)).

Contrary to the Opposition's arguments, the Sandbridge directors are not arguing that the Court should require a "smoking gun" standard. Opp. at n.13. But "[b]ad faith is not a light pleading standard. Even gross negligence, without more, does not constitute bad faith . . . . Allegations that directors failed to do all they should have state merely a violation of the duty of care." *In re Crimson Exploration Inc. Stockholder Litig.*, 2014 WL 5449419, at *23 (Del. Ch. Oct. 24, 2014). Plaintiff's conclusory assertions that the Sandbridge directors should have known of the alleged misstatements based on statements in the Proxies about access to a data room does not meet this high standard. *See, e.g.*, 14(a) Compl. ¶¶ 87-88. Plaintiff's own cases are instructive in this regard, as each presented well-pled allegations of intentional and self-interested conduct that could constitute bad faith or a breach of a duty of loyalty. *See* Opp. at 16-17. For example, in *In re Zoran Corp. Derivative Litig.*, the plaintiff "alleged that the directors authorized the grant of backdated options to themselves." 511 F. Supp. 2d 986, 1017 (N.D. Cal. 2007). Similarly, in *Blockchain Innovation, LLC*, the court found that the plaintiff adequately alleged "a course of conduct in which Defendants were *intentionally taking actions* to damage [the company], *based on their own self-interest*." 2023 WL 2576314 at *19 (emphasis added). Finally, in *Shaev v. Baker*, the complaint included detailed allegations demonstrating that a majority of the board had received information explicitly and directly warning of illegal activity but failed to take action, and testimony to Congress corroborated that the "board was made aware" of the activity through periodic internal investigation reports dating back

years prior to the complaint. 2017 WL 1735573 at *10-15. Such factual allegations are absent here and thus the claims against the Sandbridge directors are exculpated and must be dismissed.

## IV. The Court Should Consider the Merits of the Sandbridge Motion, Consistent with the Local Rules.

Finally, the Opposition distorts the events preceding the filing of Defendants' motions in an attempt to avoid the fatal pleading deficiencies those motions identified in the 14(a) Complaint. The Sandbridge Defendants did not violate the Local Rules, and Plaintiff's arguments are without merit.

*First*, the Opposition claims that counsel for the Sandbridge Defendants did not participate in communications with Plaintiff's counsel until February 7, 2024. Opp. at 18. Not so. Counsel from Latham & Watkins filed notices of appearance on behalf of *all* defendants, including the Sandbridge Defendants, on February 25, 2022. Dkt. 38, 39, 41. On January 31, 2024 (nine days before Defendants were due to move to dismiss), attorneys from Latham & Watkins contacted Plaintiff's counsel on behalf of all Defendants. Thereafter, Latham & Watkins (on behalf of all Defendants) and Plaintiff's counsel engaged in dialogue about Defendants' contemplated motions to dismiss. On February 6, 2024, counsel from Ropes & Gray and Latham & Watkins jointly notified Plaintiff's counsel that Ropes & Gray would be representing the Sandbridge Defendants. Counsel for all parties then joined a meet and confer videoconference to discuss the motions to dismiss that Defendants intended to file and the associated page limits. The Sandbridge Defendants' Local Rule 7-3 certification accurately summarizes these multiple communications with Plaintiff's counsel. It is in no way false or inaccurate as the Opposition wrongly asserts.

The Court should also reject Plaintiff's arguments that Defendants failed to satisfy L.R. 7-3's meet-and-confer requirement because there is no indication that the issues being briefed would have been resolved short of Defendants moving to

dismiss and Plaintiff can identify no prejudice it has suffered as a result. As courts in the Central District of California have emphasized, a "[f]ailure to comply with the Local Rules does not automatically require the denial of a party's motion [] particularly where the non-moving party has suffered no apparent prejudice as a result of the failure to comply." *CarMax Auto Superstores California LLC v. Hernandez*, 94 F.Supp.3d 1078. 1088 (C.D. Cal, April 30, 2015); *see also ECASH Techs., Inc. v. Guagliardo*, 35 Fed.Appx. 498, 500 (9th Cir. 2002) ("The Central District of California's local rules do not require dismissal of appellee's motions for failure to satisfy the meet-and confer requirements" (citations omitted)).

Here, Plaintiff has not been prejudiced by any failure to meet and confer, as the record plainly demonstrates that further pre-motion discussions would have been futile. The Opposition identifies no proposed amendments to the 14(a) Complaint, nor has Plaintiff even requested leave to amend. In short, Plaintiff has provided no indication that a further meet and confer to discuss the substance of Defendants' motions would obviate the need for the Court to rule on them.

Finally, the Opposition offers a last-ditch argument that the word counts of the briefs filed by the Owlet and Sandbridge Defendants in support of their motions to dismiss the 14(a) Complaint should be viewed cumulatively and therefore the briefs are over the word limit provided for in Local Rule 11-6.1. Opp. at 18-19. But each individual defendant is entitled to file its own motion to dismiss and memorandum in support. *See* Fed. R. Civ. P. 12(b) ("***a party*** may assert the following defenses by motion" (emphasis added)). The fact that arguments applicable to the two groups of Defendants overlap does not somehow attribute the word count in the Owlet Motion to the Sandbridge Motion. The Local Rules address the maximum word count for a single "memorandum of points and authorities, pretrial brief, trial brief, or posttrial brief" and do not provide for a collective total word count for multiple co-defendants filing separate motions. L.R. 11-6.1. Plaintiff's word count arguments should be disregarded.

## CONCLUSION

For all of the foregoing reasons, as well as those set forth in the Sandbridge Motion, the Sandbridge Defendants respectfully request that the Court dismiss all counts against them for failure to state a claim under Rule 12(b)(6).

Dated: May 10, 2024                    Respectfully submitted,

By: _/s/ Anne Johnson Palmer_
Anne Johnson Palmer (CA Bar No. 302235)
ROPES & GRAY LLP
Three Embarcadero Center
San Francisco, CA 94111-4006
Tel. (415) 315-6300
Fax (415) 315-6350
Email: anne.johnsonpalmer@ropesgray.com

Peter Welsh (*admitted pro hac vice*)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Tel: (617) 951-7000
Fax: (617) 951-4888
Email: peter.welsh@ropesgray.com

Mark S. Gaioni (CA Bar No. 339118)
ROPES & GRAY LLP
10250 Constellation Blvd
Los Angeles, CA 90067
Tel: (310) 975-3300
Fax: (310) 975-3400
Email: mark.gaioni@ropesgray.com

*Attorneys for Defendants Ken Suslow, Richard Henry, Domenico De Sole, Ramez Toubassy, Jamie Weinstein, Krystal Kahler, and Michael F. Goss*

-11-

## <u>CERTIFICATE RE WORD COUNT</u>

The undersigned, counsel of record for Sandbridge Defendants, certifies that this brief contains approximately 3,288 words, as calculated by Microsoft Word Word Count (exclusive of the caption, the table of contents, the table of authorities, the signature block, and this certification required by L.R. 11-6.2), which complies with the 4,200 word limit of Judge Aenlle-Rocha's Initial Standing Order.

Executed on May 10, 2024, at San Francisco, California.


*/s/ Anne Johnson Palmer*
Anne Johnson Palmer

SANDBRIDGE DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 2:21-cv-09016-FLA-JEM

## <u>CERTIFICATE OF SERVICE</u>

**BY CM/ECF TRANSMISSION:**  In accordance with the Electronic Case Filing Administrative Policies and Procedures Manual for the United States District Court, Central District of California, the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic filing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 10, 2024, at San Francisco, California.

<em>/s/ Anne Johnson Palmer</em><br>
Anne Johnson Palmer

-13-