**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
JENNIFER L. JOOST (Bar No. 296164)
jjoost@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94101
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

[Additional Counsel on signature page.]

*Counsel for Lead Plaintiff Dr. Thomas E. Tweito*
*Lead Counsel for the Section 10(b) Class*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| MICHAEL J. BUTALA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>OWLET, INC. f/k/a SANDBRIDGE ACQUISITION CORPORATION, and KURT WORKMAN,<br><br>Defendants. | Case No. 2:21-cv-09016 FLA (SSCx)<br><br>CLASS ACTION<br><br>**LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION**<br><br>Date:  September 20, 2024<br>Time:  1:30 p.m.<br>Crtrm.:  6B<br>Judge:  Hon. Fernando L. Aenlle-Rocha |

Case No. 2:21-cv-09016 FLA (SSCx)
LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION FOR RECONSIDERATION

## **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................................................. 1

II.  BACKGROUND .................................................................................................. 4

III.  ARGUMENT ........................................................................................................ 6

    A.  Legal Standard.......................................................................................... 6

    B.  *Lucid* Did Not Change the Law with Respect to Lead Plaintiff's Standing to Bring Section 10(b) Claims ......................................................... 7

    C.  Defendants Improperly Repeat Arguments They Made in Support of the MTD and Cite Case Law Already Available to Them in Support of the Reconsideration Motion ...................................................................... 10

IV.  CONCLUSION.................................................................................................... 12

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alamilla v. DeJoy*,
2024 U.S. Dist. LEXIS 54367 (C.D. Cal. Mar. 25, 2024)........................................2, 7

*Alter v. Gorsuch*,
2024 U.S. Dist. LEXIS 49879 (C.D. Cal. Mar. 19, 2024) ........................................11

*Blue Chip Stamps v. Manor Drug Stores*,
421 U.S. 723 (1975)...............................................................................................1, 8

*In re CarLotz, Inc. Sec. Litig.*,
667 F. Supp. 3d 71 (S.D.N.Y. 2023) .....................................................................2, 6

*In re CCIV/Lucid Motors Sec. Litig.*,
110 F.4th 1181 (9th Cir. Aug. 8, 2024) ...............................................................1, 8, 9

*Hen v. City of L.A.*,
244 F. App'x 794 (9th Cir. 2007) .............................................................................10

*Kona Enters., Inc. v. Estate of Bishop*,
229 F.3d 877 (9th Cir. 2000) .....................................................................................7

*Love v. Affinia Default Servs., L.L.C.*,
2024 U.S. Dist LEXIS 131923 (C.D. Cal. July 25, 2024)..........................................11

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
571 F.3d 873 (9th Cir. 2009) .....................................................................................7

*Menora Mivtachim Ins. v. Frutarom Inds.*,
54 F.4th 82 (2d Cir. 2022) .............................................................. 1, 5-6, 8, 9

*Ontario Pub. Serv. Emps. Union Pension Tr. Fund v. Nortel Networks Corp.*,
369 F.3d 27 (2d Cir. 2004) ................................................................ 1, 8-9

*Oxnard Manor LP v. Hallmark Specialty Ins. Co.*,
2024 WL 1813507 (C.D. Cal. Feb. 16, 2024) .................................................7, 10, 11

*Soper v. United Airlines, Inc.*,
2024 U.S. Dist. LEXIS 122309 (C.D. Cal. July 11, 2024)..........................................10

*Steenwyk v. Steenwyk*,
2024 WL 3221747 (C.D. Cal. June 3, 2024)..............................................................10

**Other Authorities**

Local Rule 7-18.................................................................................................*passim*

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

## I.    INTRODUCTION

The law governing whether Lead Plaintiff may bring Section 10(b) claims has not changed in nearly 50 years. Following the Supreme Court's adoption of the purchaser-seller rule in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975), a plaintiff has standing to bring Section 10(b) claims if he purchased or sold the securities about which the misrepresentations at issue were made. It is undisputed that the misrepresentations at issue in this action are about Owlet and that Lead Plaintiff only purchased Owlet common stock. Thus, Lead Plaintiff has standing under the purchaser-seller rule and there are no standing issues to adjudicate.

More recently, the Second and Ninth Circuits addressed a question posed by the Second Circuit in *Ontario Pub. Serv. Emps. Union Pension Tr. Fund v. Nortel Networks Corp.*, 369 F.3d 27 (2d Cir. 2004): in the merger context, does a purchaser of the acquiring company's securities have standing to bring Section 10(b) claims premised on misrepresentations about the target company? In *Menora Mivtachim Ins. v. Frutarom Inds.*, the Second Circuit answered this question in the negative, holding that in the context of the merger of two public companies, a purchaser of the ***acquiring company's securities*** had no standing to assert Section 10(b) claims based on ***misrepresentations about the target company***. 54 F.4th 82, 88-89 (2d Cir. 2022). The Ninth Circuit reached the same conclusion in the context of a merger resulting from a de-SPAC transaction in *In re CCIV/Lucid Motors Sec. Litig.* ("*Lucid*"), holding that a purchaser of the SPAC's common stock had no standing to bring Section 10(b) claims based on statements about the target company, Lucid. 110 F.4th 1181, 1186 (9th Cir. Aug. 8, 2024).[1]

Yet, ***both*** decisions make clear that Lead Plaintiff—a purchaser of Owlet common stock—has standing to bring the Section 10(b) claims alleged in the Complaint under the purchaser-seller rule because he purchased the "security about which the alleged

---

[1]    A SPAC is a publicly traded shell company whose sole purpose is to complete an acquisition of a private target company that has opted to go public—not by a traditional IPO—but by merging with the publicly traded SPAC in a de-SPAC transaction.

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

misrepresentations were made" (*id*. at 1185)—i.e., he purchased Owlet common stock following Defendants' misrepresentations about Owlet's primary product, the Smart Sock.

Undeterred, Defendants seek reconsideration (Dkt. 127, "Reconsideration Motion") of this Court's order denying the motion to dismiss ("MTD") in its entirety (Dkt. 124, "MTD Order") on the basis of the Ninth Circuit's ruling in *Lucid.* But, "[r]econsideration of a court's order is an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources" that "should not be granted, absent highly unusual circumstances." *Alamilla v. DeJoy*, 2024 U.S. Dist. LEXIS 54367, at *3 (C.D. Cal. Mar. 25, 2024) (Aenlle-Rocha, J.) (quotations omitted) (citations omitted). As a result, an order may only be reconsidered if, in the court's discretion, there is "newly discovered evidence, [the court] committed clear error, or if there is an intervening change in controlling law." *Id.* (citation omitted). The Ninth Circuit's decision in *Lucid*, however, does not present a change in the law as it applies to Lead Plaintiff; instead, it reiterates what has been true for the last 50 years—purchasers of Owlet common stock have standing to bring Section 10(b) claims based on misrepresentations about Owlet.

Perhaps recognizing that *Lucid* by itself does not provide a sufficient basis to reconsider the MTD Order, Defendants claim that an out-of-circuit district court opinion in *In re CarLotz, Inc. Sec. Litig.*, 667 F. Supp. 3d 71 (S.D.N.Y. 2023) also supports the Reconsideration Motion. However, Defendants cited *CarLotz* in support of the MTD, thus the decision already has been considered and rejected by the Court. More importantly, the *Lucid* panel did not opine on the fact pattern presented in *CarLotz*—i.e., whether the purchaser-seller rule stripped a plaintiff of standing to pursue Section 10(b) claims where that plaintiff purchased securities of the targeted company following the de-SPAC merger premised on pre-merger statements about the target company—or otherwise cite to *CarLotz*. *Lucid* also did not address the arguments Defendants advanced in support of the MTD based on the *CarLotz* decision. *See, e.g.*, Dkt. 116 at 12:20-23. Thus, there is no basis to reconsider arguments Defendants made in the MTD based on *CarLotz* in light of the *Lucid* decision.

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

*See, e.g.*, L.R. 7-18.

There also is no basis to reconsider arguments Defendants made in the MTD because the MTD Order does not specifically address *CarLotz*. The Court denied the MTD in its entirety and Defendants cannot "in any manner repeat any . . . written argument made in support of . . . the original [MTD]" in a reconsideration motion. *Id.* There likewise is no basis to reconsider the MTD based on the existence of additional out-of-circuit district court authority applying *CarLotz* cited in the Reconsideration Motion. Each of these cases was available to Defendants prior to the MTD Order and none of them represents a change in the law within the Ninth Circuit. *Id.*

Finally, Defendants have no basis—and indeed, do not attempt—to seek dismissal of Lead Plaintiff's Section 10(b) claims based on Owlet's post-merger statements via the Reconsideration Motion. In denying the MTD in its entirety, the Court held that Lead Plaintiff adequately alleged all of the claims set forth in the Complaint, including claims premised upon statements the Court analyzed in the MTD Order (*see* Complaint, ¶¶ 159, 162) that Owlet made or otherwise incorporated by reference into its post-merger SEC filings (*see id.*, ¶¶ 164, 168, 172, 175, 179). To the extent Defendants are asserting that the misrepresentations sustained by the Court in the MTD Order are not about the company that issued the securities Lead Plaintiff and the Class purchased, the Court already has rejected this argument. Moreover, Owlet was required to make and in fact made all of the misrepresentations alleged in the Complaint and sustained by the Court on behalf of itself after the Merger closed. Thus, the fact that the Merger Agreement was attached to, and these misrepresentations otherwise first appeared in, the Form S-4 prior to the Merger does not extinguish Defendants' liability under Section 10(b).

Accordingly, because *Lucid* does not change the law as to the standing of Lead Plaintiff and L.R. 7-18 bars Defendants from repeating arguments they previously made or citing case law to which they had access during the pendency of the MTD, the Reconsideration Motion should be denied.

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

## II.    BACKGROUND

On July 15, 2021, Sandbridge Acquisition Corporation ("Sandbridge") combined with Owlet Baby Care Inc. to create Owlet, Inc. ("Owlet"). After that date, Owlet's common stock traded publicly on the New York Stock Exchange under the ticker OWLT. On July 27, 2021 and August 12, 2021, Lead Plaintiff purchased 1,000 shares and 500 shares of Owlet common stock, respectively. Defendants do not dispute these facts.

On December 22, 2023, Lead Plaintiff, on behalf of himself and persons or entities that purchased or otherwise acquired Owlet common stock (the "Class"), filed a consolidated complaint (the "Complaint") asserting claims under Section 10(b) and Rule 10b-5(b) against Defendants Owlet and Workman. These claims are premised in part on statements that Owlet and Workman made about Owlet in the February 15, 2021 merger agreement with Sandbridge (the "Merger Agreement"), signed by Defendant Workman as CEO of Defendant Owlet. MTD Order at 5, 9-11. The Merger Agreement was publicly filed as an exhibit to or expressly incorporated by reference in SEC filings dated March 31, 2021, June 21, 2021, and August 5, 2021. Complaint, ¶¶ 159, 178-79, 183; *see also* Declaration of Jennifer L. Joost ("Joost Decl." or "Joost Declaration"), Ex. 2.[2] The Merger Agreement likewise was attached as an exhibit to the following additional SEC filings: (i) Form 8-K, dated July 21, 2021; (ii) Form 8-K/A, dated July 21, 2021; (iii) Form 10-Q, dated August 16, 2021; and (iv) Form S-1/A, dated August 19, 2021. *See id.*, Exs. 3-6, respectively.[3]

Defendants Owlet and Workman also stated that Owlet's only product, the Smart Sock, was "a consumer product and not a medical device" and made additional statements

---

[2]    Without citation, Defendants claimed in their reply brief in support of the MTD that the August 5, 2021 Form S-1 "did not incorporate the statements alleged in paragraph 159 of the Complaint." Dkt. 116 at 12 n.7. This is wrong. As Plaintiffs accurately alleged in the Complaint, the Form S-1 expressly incorporated by reference the Merger Agreement that included each of the statement alleged in paragraph 159 of the Complaint. Joost Decl., Ex. 2.

[3]    Lead Plaintiff respectfully seeks judicial notice of Exs. 1-6 to the Joost Declaration. *See generally* Lead Plaintiff's Request for Judicial Notice ("RJN"), filed concurrently herewith.

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

regarding Owlet's interactions with the FDA with respect to the Smart Sock under the heading titled, "Risk Factors." Complaint, ¶¶ 164, 168, 172, 175, 179. These statements were included in the March 31, 2021, June 21, 2021, and August 5, 2021 SEC filings. Some or all of these statements also were included in the following SEC filings: (i) Form 8-K filed on July 21, 2021;[4] and (ii) Form 10-Q filed on August 16, 2021.[5] *See* Joost Decl., Exs. 3, 5, respectively.

On February 9, 2024, Defendants Owlet and Workman moved to dismiss the Complaint, arguing that Lead Plaintiff had failed to state a claim with respect to each of the misrepresentations alleged in the Complaint. As is relevant to the Reconsideration Motion, Defendants asserted that "[b]ecause [Lead] Plaintiff alleges only misstatements and omissions by and about Owlet *prior* to its merger with Sandbridge, he cannot bring claims under Section 10(b), which requires that a plaintiff have purchased shares in the entity about which the misstatements were made." Dkt. 90 at 20. In support of that argument, Defendants cited two cases, *Menora* and *CarLotz*, both of which addressed the "purchaser-seller rule."[6]

The Supreme Court first applied the purchaser-seller rule to Section 10(b) claims in 1975. The purchaser-seller rule limits standing to bring Section 10(b) claims to those investors who purchased or sold the securities about which the statements at issue were

---

[4]   Specifically, the July 21, 2021 Form 8-K stated that "Owlet's business is described in the Proxy Statement/Prospectus in the section titled '*Information Related to Owlet*' beginning on page 174, which is incorporated herein by reference." Joost Decl., Ex. 3. Owlet's assertion that the Smart Sock was "a consumer product" and "not a medical device" appeared on page 180 in the Proxy Statement/Prospectus. *Id.*, Ex. 1. Likewise, the Form 8-K stated "[t]he risks associated with Owlet's business are described in the Proxy Statement/Prospectus in the section titled '*Risk Factors*' beginning on page 36 and are incorporated herein by reference." *Id.*, Exs. 1, 3.

[5]   The August 16, 2021 Form 10-Q specifically referred investors to "the section entitled "Risk Factors" in the final prospectus and definitive proxy statement, filed with the SEC on June 21, 2021, as updated by the risk factors disclosed in the section titled "Risk Factors" in our Registration Statement on Form S-1 (File No. 333-258506), filed with the SEC on August 5, 2021." Joost Decl., Ex. 5.

[6]   Although Defendants claimed that "decision*s* in the Southern and Eastern Districts of New York" were "persuasive," they only cited one district court decision in support of their argument. Dkt. 90 at 21.

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

made. Prior to *Menora*, the Second Circuit had not applied the purchaser-seller rule in the context of a merger. 54 F.4th at 88. Thus, in *Menora*, the Second Circuit applied the purchaser-seller rule to the merger context and held that anyone that **purchased the acquiring company's shares** did not have standing to bring Section 10(b) claims premised upon **statements about the target company**. *Id.* Thereafter, a New York district court applied the purchaser-seller rule in *CarLotz* to deprive a plaintiff that purchased the target company's common stock following a de-SPAC merger transaction standing to pursue misstatements made pre-merger about the target company. 667 F. Supp. 3d at 78-79. To date, no appellate court or district court outside of the Second Circuit has applied the purchaser-seller rule in this manner.

On August 5, 2024, the Court denied the MTD. In the MTD Order, the Court specifically analyzed six of 11 statements alleged in the Complaint, finding that the Complaint adequately alleged falsity and scienter with respect to statements in the Merger Agreement, as well as Defendants' assertion that the Smart Sock was "a consumer product" and "not a medical device." *Id.* at 9-11. The Court otherwise denied the MTD. Because the misrepresentations alleged in ¶¶ 159 and 162 of the Complaint, as well as the other misrepresentations alleged in ¶¶ 164, 168, 172, 175, and 179 of the Complaint, were either expressly incorporated by reference or repeated in at least three SEC filings dated March 31, 2021, June 21, 2021, and August 5, 2021, the Court has sustained claims premised upon **both** pre- and post-Merger statements. Moreover, the Court's denial of Defendants' MTD in its entirety was sufficient to address any arguments or case law raised by Defendants but not directly referenced in the decision and otherwise preclude Defendants from filing a motion for reconsideration. *See, e.g.*, L.R. 7-18.

Nevertheless, on August 19, 2024, Defendants filed the Reconsideration Motion.

## III.   ARGUMENT

### A.   Legal Standard

"A motion for reconsideration of an order on any motion . . . may be made only" if

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

there is (a) "a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered," or (b) "the emergence of new material facts or a change in the law occurring after the Order was entered," or (c) "a manifest showing of a failure to consider material facts presented to the Court before the order was entered." L.R. 7-18. Critically, "[n]o motion for reconsideration may in any manner repeat any . . . written argument made in support of, or in opposition to, the original motion." *Id.*

"Reconsideration of a court's order is an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" *Alamilla*, 2024 U.S. Dist. LEXIS 54367, at *3 (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)). "A motion for reconsideration 'should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in controlling law.'" *Id.* (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009)). "Whether to grant a motion for reconsideration under Local Rule 7-18 is a matter within the [C]ourt's discretion" and "[t]he moving party bears the burden of proving that reconsideration is proper." *Oxnard Manor LP v. Hallmark Specialty Ins. Co.*, 2024 WL 1813507, at *2 (C.D. Cal. Feb. 16, 2024) (citations omitted). To that end, "[u]nhappiness with the outcome [of a motion] is not included within the rule; unless the moving party shows that one of the stated grounds for reconsideration exists, the Court will not grant a reconsideration." *Id.* (citation omitted).

## B.    *Lucid* Did Not Change the Law with Respect to Lead Plaintiff's Standing to Bring Section 10(b) Claims

Defendants ask the Court to reconsider its well-reasoned MTD Order with respect to Owlet's statements in the March 31 and June 21, 2021 SEC filings based on the Ninth Circuit's *Lucid* decision. But the *Lucid* decision does ***not*** represent an intervening change in the law controlling whether Lead Plaintiff has standing to bring Section 10(b) claims,

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

does *not* address the arguments Defendants made in support of the MTD based on *CarLotz* and, thus, provides no legitimate basis to reconsider the MTD Order.

The purchaser-seller rule—namely, that a plaintiff has standing under Section 10(b) if the plaintiff purchased or sold the securities about which the representations at issue were made—has applied to Section 10(b) claims in the Ninth Circuit since the Supreme Court adopted the rule in its opinion in *Blue Chip Stamps* in 1975. *Lucid*, 110 F.4th at 1185. Here, "[i]t is undisputed that the securities about which Defendants allegedly made misrepresentations were those of [Owlet]." *Id.* at 1187. To satisfy the purchaser-seller rule, Lead "Plaintiff[] would need to have purchased or sold [Owlet] stock to have standing to bring this action under Section 10(b)." *Id.* As set forth in the Complaint and in his certification, Lead Plaintiff only purchased publicly traded securities of Owlet (Complaint, ¶ 29; Dkt. 10-3), and thus, has standing to pursue Section 10(b) claims under the purchaser-seller rule *Blue Chip Stamps*, 421 U.S. at 747.

In stark contrast to the allegations regarding Lead Plaintiff's standing in this action, *Lucid* held that purchasers of the ***acquiring company's securities*** prior to a de-SPAC transaction did not have standing to bring Section 10(b) claims when those claims were premised upon ***statements about the target company*** made before the de-SPAC transaction was announced, let alone registered via the filing of a public Form S-4 with the SEC. Notably, Defendants fail to point out this material distinction between the facts concerning Lead Plaintiff's purchase of Owlet stock alleged here (***which they do not dispute***) and the fact pattern considered in *Lucid*. Nor do Defendants offer any argument as to why *Lucid*'s holding applies regardless of these distinguishable facts.

According to the Second Circuit, after *Blue Chip Stamps*, it was an open question whether "a potential merger might require a different outcome" under the purchaser-seller rule for anyone who had purchased the acquiring company's securities and sought to assert Section 10(b) claims premised upon statements by and about the target company. *Menora*, 54 F.4th at 88 (citing dicta from *Nortel* leaving to "another day" the question of whether "a

merger creates a far more significant relationship between two companies" for purposes of the purchaser-seller rule). The Second Circuit answered the question left open by *Nortel* in *Menora*, a case cited by Defendants in support of the MTD, holding that the purchaser-seller rule applies even in the merger context. *Id.* ("[W]e now answer that question by holding that purchasers of a security of an acquiring company do not have standing under Section 10(b) to sue the target company for alleged misstatements the target company made about itself prior to the merger between the two companies."). Thus, the *Menora* "[p]laintiffs [] lack[ed] statutory standing to sue Frutarom [the target company] based on alleged misstatements about Frutarom because they bought shares of IFF [the acquiring company], not Frutarom." *Id.* at 86.

The Ninth Circuit similarly answered this question in *Lucid*, holding that the purchaser-seller rule applies in the merger context, and specifically, in the context of a de-SPAC transaction. 110 F.4th at 1185 ("We now address that issue and agree with the Second Circuit that the [purchaser-seller rule] limit[s] Section 10(b) standing to purchasers and sellers of the security about which the alleged misrepresentations were made."). The Ninth Circuit held that because the alleged misrepresentations were about the target company, Lucid, while the plaintiffs had purchased only the SPAC's stock and "their complaint does not allege that anyone made misrepresentations about [the SPAC's] stock," the plaintiffs lacked standing under Section 10(b). *Lucid*, 110 F.4th at 1187. However, *Lucid*'s holding is irrelevant to Lead Plaintiff's standing to bring Section 10(b) claims because Lead Plaintiff purchased Owlet stock and alleged misrepresentations about Owlet. It also failed to address the arguments Defendants made in support of the MTD based on the *CarLotz* decision. *See* Dkt. 116 at 12. As such, there is no basis to reconsider the MTD Order.

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

**C.    Defendants Improperly Repeat Arguments They Made in Support of the MTD and Cite Case Law Already Available to Them in Support of the Reconsideration Motion**

The Reconsideration Motion also ignores L.R. 7-18's express prohibition of the inclusion of "written argument made in support of . . . the original motion." "[A] motion for reconsideration is not a means to reargue a previous position[.]" *Hen v. City of L.A.*, 244 F. App'x 794, 797 (9th Cir. 2007); *Soper v. United Airlines, Inc.*, 2024 U.S. Dist. LEXIS 122309, at *3-4 (C.D. Cal. July 11, 2024) ("In asking for a motion for reconsideration, a party may not merely urge the court to reconsider past arguments[.]"). Nevertheless, Defendants again ask this Court to follow the out-of-circuit district court's decision in *CarLotz* to expand the application of the purchaser-seller rule beyond *Menora* and deprive a plaintiff that purchased securities of the target company of standing to bring Section 10(b) claims based on pre-merger statements about the target company. *Compare* Dkt. 90 at 20, *with* Dkt. 127-1 at 6. However, in denying the MTD in its entirety, the Court already has rejected this argument. And, as this Court has previously held in denying a reconsideration motion premised upon the Court's purported failure to "read or consider[]" arguments made by defendants, "[i]t is unclear why [d]efendants believe the absence of an express statement" about the arguments in the order "warrants reconsideration." *Steenwyk v. Steenwyk*, 2024 WL 3221747, at *4 (C.D. Cal. June 3, 2024) (Aenlle-Rocha, J.).

Additionally, the *CarLotz* decision, as well as all of the other out-of-circuit district court decisions cited in the Reconsideration Motion were issued before Defendants filed their briefs in support of the MTD. "A mere attempt by the moving party to reargue its position by directing [the] Court to additional case law . . . which it clearly could have made earlier, but did not[,] is not the purpose of motions for reconsideration under Local Rule 7-18." *Oxnard*, 2024 WL 1813507, at *2 (brackets in original). Thus, in addition to improperly repeating arguments made in support of the MTD, Defendants have failed to identify "a material difference in . . . law from that presented to the Court . . . [that] could not have been known to the party moving for reconsideration at the time the Order was

entered." *Oxnard*, 2024 WL 1813507, at *2; *see also id.* at *3 (denying reconsideration motion where defendant included "previously-uncited caselaw in support of its position" because "it is well settled that a party may not use a motion for reconsideration . . . to refine and rehash its original arguments"). Defendants likewise fail to identify a "manifest showing of a failure to consider material facts" by the Court. L.R. 7-18. Instead, they appear to take issue with the fact that the Court denied the MTD without specifically addressing each argument or case cited therein. But this is not a basis to seek reconsideration. *See Love v. Affinia Default Servs., L.L.C.*, 2024 U.S. Dist LEXIS 131923, at *4 (C.D. Cal. July 25, 2024) (Aenlle-Rocha, J.) (denying reconsideration motion where "[p]laintiff did not identify a material difference in fact or law from that presented to the court"); *Alter v. Gorsuch*, 2024 U.S. Dist. LEXIS 49879, at *2 (C.D. Cal. Mar. 19, 2024) (Aenlle-Rocha, J.) (denying reconsideration motion where "[p]laintiff fail[ed] to . . . identify any materially different or new law or evidence which was not originally before the court").

Even if the Court was willing to give Defendants a second bite of the apple in contravention of L.R. 7-18, their arguments would still fail. The *Lucid* decision only addressed the standing of investors who purchased the acquiring company's (the SPAC's) securities to bring Section 10(b) claims based on statements about the target company made *before* a merger was even announced—not, as is the case here, where Lead Plaintiff purchased the target company's common stock based on misrepresentations about the target company, including specifically, statements made by Defendants Owlet and Workman in the Merger Agreement that was publicly filed with the SEC as part of a Form S-4 nearly *six weeks after* Sandbridge and Owlet jointly announced the merger. Any re-evaluation of standing before the close of the de-SPAC merger, which is unwarranted for the reasons explained above, still results in Lead Plaintiff having standing to bring Section 10(b) claims based on misstatements about Owlet made before July 15, 2021, and, as Defendants cannot contest, standing to sue on Owlet's misstatements made after July 15, 2021.

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

Further, to the extent Defendants repeat the argument that the statements made in March and June 2021 are not about the company that issued the securities Lead Plaintiff and the Class purchased, SEC regulations required Owlet to "disclose the information that would be required" of Owlet if it was "filing a general form for registration of securities" and thus Owlet made all of the false and misleading statements alleged in the Complaint and sustained by the Court in the MTD Order on July 21, 2021 on behalf of itself "after the consummation of the" merger in connection with the purchase or sale of Owlet common stock. Joost Decl., Ex. 3. There can be no question, therefore, that these statements were made about Owlet and that Lead Plaintiff and the Class purchased Owlet common stock. As a result, under *Lucid*, they have standing to bring the Section 10(b) claims alleged in the Complaint.

## IV.   CONCLUSION

The Reconsideration Motion should be denied.

Dated: August 30, 2024                              Respectfully submitted,

                                                    **KESSLER TOPAZ
                                                      MELTZER & CHECK, LLP**

                                                    */s/ Jennifer L. Joost*
                                                    JENNIFER L. JOOST (Bar No. 296164)
                                                    jjoost@ktmc.com
                                                    One Sansome Street, Suite 1850
                                                    San Francisco, CA 94101
                                                    Telephone: (415) 400-3000
                                                    Facsimile: (415) 400-3001

                                                    *Counsel for Lead Plaintiff Dr. Thomas E. Tweito Lead Counsel for the Section 10(b) Class*

                                                    **ROBBINS GELLER RUDMAN
                                                      & DOWD LLP**
                                                    DEBRA J. WYMAN (Bar No. 190812)
                                                    debraw@rgrdlaw.com
                                                    ASHLEY M. PRICE (Bar No. 281797)
                                                    aprice@rgrdlaw.com

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

JUSTIN G. OETTING (Bar No. 350807)
joetting@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423

*Additional Counsel for the
Section 10(b) Class*

**THE SCHALL LAW FIRM**
BRIAN J. SCHALL (Bar No. 290685)
brian@schallfirm.com
1880 Century Park E, Suite 404
Los Angeles, CA 90067-1604
Telephone: (310) 301-3335
Facsimile: (310) 388-0192

*Additional Counsel*

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, lead counsel of record for Lead Plaintiff Dr. Thomas E. Tweito, certifies that this brief contains 4,183 words, which [choose one]:

   X   complies with the word limit of L.R. 11-6.1.

       complies with the word limit set by court order.


Dated: August 30, 2024                 */s/ Jennifer L. Joost*
                                        Jennifer L. Joost

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION