UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MICHAEL BUTALA,

                 Plaintiff,

      v.

OWLET, INC., *et al.*,

                 Defendants.

Case No. 2:21-cv-09016-FLA (SSCx)

**ORDER GRANTING IN PART DEFENDANTS' MOTION FOR RECONSIDERATION [DKT. 127]**

1

**RULING**

Before the court is Defendants Owlet, Inc. and Kurt Workman's ("Owlet Defendants") Motion for Reconsideration ("Motion").  Dkt. 127 ("Mot.").  Lead Plaintiff Thomas Tweito ("Plaintiff") opposes the Motion.  Dkt. 132 ("Opp'n").  On September 18, 2024, the court found the matter appropriate for resolution without oral argument and vacated the hearing set for September 20, 2024. Dkt. 134; see Fed. R. Civ. P. 78(b); Local Rule 7-15.  For the reasons stated herein, the court GRANTS IN PART the Motion.

**BACKGROUND**

Plaintiff alleges the Owlet Defendants disseminated materially false and misleading statements regarding regulatory approval to market certain medical devices in the United States, in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Section 10(b)").  Dkt. 79 ("10(b) Compl.").[1]  The background facts giving rise to this action are set forth in the court's Order Denying the Owlet Defendants' Motion to Dismiss (Dkt. 124, "MTD Order").

As relevant to the instant Motion, on July 15, 2021, Owlet Baby Care, Inc. ("Owlet Baby Care") merged with Sandbridge Acquisition Corporation ("Sandbridge"), a special purpose acquisition company ("SPAC"), to become a public company called Owlet, Inc. ("Owlet").  10(b) Compl. ¶ 116.  Owlet common stock was traded publicly on the New York Stock Exchange, and on July 27 and August 12, 2021, Plaintiff purchased shares of Owlet common stock.  Dkt. 79-1.  Plaintiff's claims are premised on alleged misstatements made by Owlet in various SEC filings on March 31, June 21, and August 5, 2021.  10(b) Compl. ¶¶ 159–83.

---

[1] Two complaints were filed in the instant action.  Both complaints are premised on the same conduct but assert different causes of action under Section 10(b) of the Securities Exchange Act of 1934 ("Section 10(b)") (Dkt. 79, "10(b) Compl.") and Section 14(a) of the Securities Exchange Act of 1934 (Dkt. 80, "14(a) Compl.").  This Motion pertains only to the 10(b) Complaint.

The Owlet Defendants moved previously to dismiss the 10(b) Complaint ("MTD"). Dkt. 90. On August 5, 2024, the court denied the MTD, finding, in relevant part, Plaintiff identified sufficiently "several actionable misstatements or misrepresentations[.]" MTD Order. The Owlet Defendants now seek reconsideration of the MTD Order based on the Ninth Circuit's intervening decision in *In re: CCIV/Lucid Motors Securities Litigation*, 110 F.4th 1181 (9th Cir. 2024) ("*Lucid*"), issued three days after the MTD Order.

<b><u>DISCUSSION</u></b>

**I.      Legal Standard**

Pursuant to Local Rule 7-18, a party may seek reconsideration of a court order based on: "(a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered."

**II.     Analysis**

The Owlet Defendants argue the court should reconsider its MTD Order as to pre-merger statements challenged in the 10(b) Complaint, because, under *Lucid*, Plaintiff does not have standing to sue the Owlet Defendants for statements made about Owlet Baby Care prior to the merger with Sandbridge. Mot.

In *Lucid*, the Ninth Circuit addressed whether a plaintiff has standing to maintain a Section 10(b) action based on "alleged misstatements made in advance of an anticipated merger," and held, as a matter of first impression, standing to bring a claim under Section 10(b) is limited to purchasers and sellers of the security about which the misrepresentation is made. *Lucid*, 110 F.4th at 1185. Because "the Ninth Circuit had not yet spoken on the limits of Section 10(b) standing" (*id.*) when the

3

court issued its MTD Order, the *Lucid* opinion constitutes a change in applicable law that warrants reconsideration. *See* Local Rule 7-18.

The facts in *Lucid* are largely similar to those presented in the instant action. In *Lucid*, the defendant corporation Lucid Motors "was a private company in the business of manufacturing electric cars." *Lucid*, 110 F.4th at 1183. In February 2021, Lucid Motors was acquired by CCIV (a SPAC) and became a public corporation. *Id.* Prior to the acquisition, "it was widely speculated that CCIV would acquire Lucid [Motors]," and during this time, Lucid Motors' CEO "made misrepresentations" about the company's "ability to meet certain production targets." *Id.* The *Lucid* plaintiffs "purchased CCIV stock at various times" after these statements were made, but before the merger was finalized. *Id.* "Plaintiffs did not purchase or own any interest in Lucid [Motors], because Lucid [Motors] was a privately held company before the merger." *Id.* "On the day after the merger was announced," it was revealed Lucid Motors would not be able to reach its previously announced production goals. *Id.* The plaintiffs brought suit, alleging the "misrepresentations and corresponding effect on CCIV's stock price amounted to securities fraud actionable under Section 10(b)[.]" *Id.* The district court found the *Lucid* plaintiffs had standing to challenge statements by Lucid Motors prior to the acquisition. *Id.* at 1183–84. On appeal, however, the Ninth Circuit held the plaintiffs, who only acquired stock in CCIV, did not have standing to maintain a Section 10(b) action for alleged misstatements made by Lucid Motors and its CEO prior to the merger with CCIV. *Id.* at 1185–86.

In so ruling, the Ninth Circuit agreed with and adopted the Second Circuit's reasoning in *Menora Mivtachim Insurance Ltd. v. Frutarom Industries, Ltd.*, 54 F.4th 82, 84 (2d Cir. 2022)[2] ("*Menora*"), which held "purchasers of a security of an

---

[2] Prior to *Lucid*, the Second Circuit was "the only circuit to have considered Section 10(b) standing in the context we [the Ninth Circuit] face today[.]" *Lucid*, 110 F.4th at 1185.

acquiring company do not have standing under Section 10(b) to sue the target company for alleged misstatements the target company made about itself prior to the merger between the two companies." *Lucid*, 110 F.4th at 1185 (citing *Menora*, 54 F.4th at 88)).  In accordance with *Menora*, the *Lucid* court articulated "a bright-line rule," which requires a court to determine only "whether Plaintiffs bought or sold the securities about which the misstatements were made." *Lucid*, 110 F.4th at 1186–87; *see also id.* at 1185 (endorsing and applying "the bright-line rule" that "standing depends on whether the plaintiff bought or sold the securities about which the misstatements were made") (cleaned up).

Applying this newly binding precedent to the facts at hand, it is clear Plaintiff, who only acquired stock in the post-merger, public entity Owlet, does not have standing to challenge statements made by and about Owlet Baby Care.  As in *Lucid*, prior to the merger, Owlet Baby Care was a privately held company with no publicly traded shares.  *See Lucid*, 110 F.4th at 1183 (noting plaintiffs did not "purchase or own any interest in Lucid, because Lucid was a privately held company before the merger").  Thus, to the extent Plaintiff challenges statements made about Owlet Baby Care prior to the merger, Plaintiff could not have "bought or sold the securities about which the misstatements were made." *Id.* at 1185 (cleaned up).

In opposition, Plaintiff maintains he has standing to bring this action because he "purchased Owlet common stock following [] misrepresentations about Owlet's primary product, the Smart Sock." *See* Opp'n at 5.  Plaintiff seeks impermissibly to establish standing based on the relationship between Owlet and Owlet Baby Care by arguing Owlet's common stock is necessarily affected by alleged misstatements regarding a product which Owlet later acquired.

*Lucid* expressly rejected this position.  *See Lucid*, 110 F.4th at 1186 (rejecting the plaintiffs' argument that "standing extends to any stockowner who claims that the misstatements of another person or company negatively affected the value of the owner's stock").  Under *Lucid*, the relevant inquiry is not whether Plaintiff purchased

a security that was *affected* by an alleged misrepresentation, but rather whether the purchased security was the *subject* of the misrepresentation. *Id.* (declining to adopt a "sufficiently connected" test, which would require courts to determine "whether the security plaintiff purchased is sufficiently *connected* to the misstatement") (emphasis in original); *see also Menora*, 54 F.4th at 88 ("Section 10(b) standing does not depend on the significance or directness of the relationship between two companies. Rather, the question is whether the plaintiff bought or sold the securities about which the misstatements were made."). At the time several of the alleged misstatements about the Smart Sock were made, the product was owned solely by Owlet Baby Care, and thus, Owlet Baby Care's securities were the subject of the misrepresentations. That Owlet later acquired the Smart Sock, and ultimately lost value based on prior misrepresentations by Owlet Baby Care regarding the Smart Sock, is insufficient to confer standing upon Plaintiff.

Plaintiff also attempts to differentiate *Lucid* by arguing the *Lucid* plaintiffs owned shares in the acquiring SPAC, rather than in the post-merger public company. Opp. at 5. As above, this is immaterial because the purchaser-seller rule draws no distinction between plaintiffs who purchased securities in an acquiring company prior to a merger or who later purchased securities in a post-merger public corporation. The purchaser-seller rule limits standing broadly to only those who have purchased shares in the specific security "about which" the allegedly misleading statements were made. Lucid, 110 F.4th at 1185–87 ("That CCIV later acquired Lucid does not change our analysis" because "[a]t the time of Defendants' alleged misrepresentations, CCIV and Lucid were two entirely separate companies."). Because Plaintiff did not acquire shares in Owlet Baby Care—the security about which several of the allegedly misleading statements were made—he does not have standing to bring a Section 10(b) action as to those statements.

///

///

6

**CONCLUSION**

Accordingly, the court GRANTS IN PART the Motion. The court GRANTS the Motion as to challenged pre-merger statements and DISMISSES WITHOUT LEAVE TO AMEND the claims in the 10(b) Complaint based upon statements made prior to the merger between Owlet Baby Care and Sandbridge. *See* 10(b) Compl. ¶¶ 159–77 (challenging statements in the Form S-4, filed March 31, 2021), ¶¶ 178–82 (challenging statements made on June 21, 2021). The court DENIES the Motion as to challenged post-merger statements made by and about Owlet. *See* 10(b) Compl. ¶ 183 (challenging statements made on August 5, 2021).[3] The MTD Order remains in effect as to those statements.

IT IS SO ORDERED.

Dated: September 26, 2024

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge

---

[3] The Owlet Defendants state erroneously the March 31, 2021 statements in the Form S-4 are "the only allegedly false or misleading statements that this Court identified as actionable in its" MTD Order. Mot. at 7. The 10(b) Complaint also identifies statements made by the Owlet Defendants on August 5, 2021, in a Registration Statement Form S-1, which "incorporates statements made in" the March 31, 2021 Form S-4. 10(b) Compl. ¶ 183. Because these statements were made after the merger and pertain to the post-merger entity (Owlet), these statements remain actionable for the reasons set forth in the MTD Order. MTD Order at 9–11.