POMERANTZ LLP
Tamar A. Weinrib
600 Third Avenue, 20th floor
New York, New York 10016
Telephone: (646) 581-9973
taweinrib@pomlaw.com

*Lead Counsel for Plaintiffs*

**Additional Counsel on Signature Page**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| MICHAEL J. BUTALA, Individually and on Behalf of All Others Similarly Situated, | Case No.: 2:21-cv-09016-FLA-JEM |
| Plaintiff, | Honorable Fernando L. Aenlle-Rocha |
| v. | **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| OWLET, INC. f/k/a SANDBRIDGE ACQUISITION CORPORATION, KURT WORKMAN, KATE SCOLNICK, KEN SUSLOW, RICHARD HENRY, DOMENICO DE SOLE, RAMEZ TOUBASSY, JAMIE WEINSTEIN, KRYSTAL KAHLER, and MICHAEL F. GOSS, | Hearing Date: February 28, 2025<br>Hearing Time: 1:30 p.m.<br>Location: Courtroom 6B |
| Defendants. | |

# **<u>TABLE OF CONTENTS</u>**

I.   PRELIMINARY STATEMENT ........................................................................ 1

II.  SUMMARY OF LITIGATION .................................................................... 2

    A.   Nature of the Action............................................................................ 2

    B.   Procedural History ............................................................................. 3

III. STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)........ 4

IV. ARGUMENT ............................................................................................ 5

    A.   The Settlement Is Fair, Reasonable, and Adequate in Light of the
        Rule 23(e)(2) Factors and the Remaining *Hanlon* Factors ..................... 5

        1.   Lead Plaintiff and Lead Counsel Adequately Represented the
            Settlement Class.......................................................................... 5

        2.   The Settlement Is the Result of Arm's Length Negotiations ....... 6

        3.   The Settlement Is an Excellent Result for the Settlement
            Class in Light of the Benefits of the Settlement and the Risks
            of Continued Litigation.............................................................. 7

            (a)   The Strength of Plaintiffs' Case and Risk of Continued
                Litigation ......................................................................... 8

            (b)   Risks of Maintaining Class Action Status......................... 9

        4.   Rule 23(e)(2)(C)(ii)-(iv) ........................................................ 10

        5.   The Settlement Treats All Class Members Equitably Relative
            To Each Other........................................................................ 11

        6.   The Remaining *Hanlon* Factors Are Neutral Or Weigh In
            Favor Of Preliminary Approval.............................................. 12

    B.   Class Certification Is Appropriate for Settlement Purposes ................. 14

        1.   The Settlement Class Is Sufficiently Numerous......................... 16

        2.   Common Questions of Law or Fact Exist .................................. 16

3.    Plaintiffs' Claims Are Typical of Those of the Settlement
       Class ...................................................................................... 17

4.    Plaintiffs and Lead Counsel Adequately Represent the
       Settlement Class ................................................................... 17

5.    The Predominance and Superiority Requirements Are
       Satisfied ................................................................................ 18

6.    The Court Should Appoint Lead Counsel as Counsel for the
       Class ...................................................................................... 19

C.    The Court Should Approve the Proposed Form and Method of
       Notice ............................................................................................... 20

V.   PROPOSED SCHEDULE OF EVENTS ................................................ 21

VI.  CONCLUSION ....................................................................................... 21

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ........................................................................15, 18, 19

6

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
   133 S. Ct. 1184 (2013)............................................................................. 18

7

*Barnes v. AT&T Pension Benefit Plan*,
   270 F.R.D. 488 (N.D. Cal. 2010) ...................................................... 16

8

9

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976) ..................... 16

10

11

*Christine Asia Co. v. Yun Ma*,
   2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019), *appeal withdrawn sub
   nom. Tan Chao v. William*, 2020 WL 763277 (2d Cir. Jan. 2, 2020) ....11, 12, 20

12

13

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) .............................................................. 5

14

15

*Granados v. Hyatt Corp.*,
   2024 U.S. Dist. LEXIS 153064 (S.D. Cal. Aug. 26, 2024)........................... 11

16

17

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ..................................................*passim*

18

19

*Harris v. Palm Springs Alpine Estates, Inc.*,
   329 F.2d 909 (9th Cir. 1964) ............................................................ 16

20

21

*Hefler v. Wells Fargo & Co.*,
   2018 WL 4207245 (N.D. Cal. Sept. 4, 2018)...................................... 12

22

23

*In re Adobe Sys., Inc. Sec. Litig.*,
   139 F.R.D. 150 (N.D. Cal. 1991) ...................................................... 16

24

25

*In re BankAtlantic Bancorp, Inc.*,
   2011 WL 1585605 (S.D. Fla. Apr. 25, 2011), *aff'd*, *Hubbard v.
   BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) ................................ 9

26

27

28

*In re BofI Holding, Inc. Sec. Litig.*,
    2022 WL 9497235 (S.D. Cal. Oct. 14, 2022)......................................................12

*In re Bridgepoint Educ., Inc. Sec. Litig.*,
    2015 WL 224631 (S.D. Cal. Jan. 15, 2015) ......................................................17

*In re Cooper Cos. Sec. Litig.*,
    254 F.R.D. 628 (C.D. Cal. 2009).........................................................................16

*In re Diamond Foods, Inc.*,
    295 F.R.D. 240 (N.D. Cal. 2013) ........................................................................17

*In re Lyft Inc. Sec. Litig.*,
    2022 U.S. Dist. LEXIS 226982 (N.D. Cal. Dec. 16, 2022) ................................7

*In re Omnivision Tech., Inc.*,
    559 F. Supp. 2d 1035 (N.D. Cal. 2008)..............................................................10

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ................................................................................11

*In re Priceline.com, Inc. Sec. Litig.*,
    2007 WL 2115592 (D. Conn. July 20, 2007)......................................................20

*In re QuantumScape Sec. Litig.*,
    2024 U.S. Dist. LEXIS 131568 (N.D. Cal. Jul. 18, 2024) ...............................7, 9

*In re Verisign, Inc. Sec. Litig.*,
    2005 WL 7877645 (N.D. Cal. Jan. 13, 2005) ....................................................16

*In re Vivendi Universal, S.A., Sec. Litig.*,
    2012 WL 362028 (S.D.N.Y. Feb. 6, 2012) ..........................................................8

*Jaffe v. Morgan Stanley & Co., Inc.*,
    2008 WL 346417 (N.D. Cal. Feb. 7, 2008).........................................................15

*Knapp v. Art.*
    *com, Inc.*, 283 F. Supp. 3d 823 (N.D. Cal. 2017)...............................................8

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
    2009 WL 4730185 (D.N.J. Dec. 4, 2009) ...........................................................8

*Mild v. PPG Indus., Inc.*,
    2019 WL 3345714 (C.D. Cal. July 25, 2019) .................................................6, 18

iv

*Officers for Justice v. Civ. Serv. Comm.*,
 688 F.2d 615 (N.D. Cal. 1982) ........................................................... 13

*Robbins v. Koger Props., Inc.*,
 116 F.3d 1441 (11th Cir. 1997) ............................................................ 9

*Rodriguez v. W. Publ'g Corp.*,
 563 F.3d 948 (9th Cir. 2009) ................................................................ 7

*Siemer v. Assocs. First Capital Corp.*,
 2001 WL 35948712 (D. Ariz. Mar. 30, 2001) ................................... 17

*Stewart v. Applied Materials, Inc.*,
 2017 WL 3670711 (N.D. Cal. Aug. 25, 2017) .................................. 14

*Vaccaro v. New Source Energy Partners L.P.*,
 2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ................................... 14

*Wolin v. Jaguar Land Rover N. Am., LLC*,
 617 F.3d 1168 (9th Cir. 2010) ............................................................ 15

*Wong v. Arlo Techs., Inc.*,
 2021 WL 1146042 (N.D. Cal. Mar. 25, 2021) ................................. 5, 7

*Zeidman v. J. Ray McDermott & Co.*,
 651 F.2d 1030 (5th Cir. 1981) ............................................................ 16

**Rules**

324 F.R.D. 904 ................................................................................................ 4

Fed. R. Civ. P. 23 .................................................................................... *passim*

**Other Authorities**

Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends
 in Securities Class Action Litigation: 2022 Full-Year Review*
 (NERA Jan. 24, 2023) ........................................................................ 13

MEMORANDUM IN SUPPORT OF MOTION

# I.     PRELIMINARY STATEMENT

Plaintiffs individually and on behalf of all Settlement Class Members[1], respectfully submit this memorandum of law in support of their unopposed motion pursuant to Rule 23(e), Fed. R. Civ. P., seeking preliminary approval of a $1.75 million non-reversionary cash settlement (the "Settlement") resolving all claims asserted in the Amended Consolidated Complaint for Violations of the Federal Securities Laws ("AC") on December 22, 2023 (ECF No. 80) against Defendants. Plaintiffs believe that the Settlement represents an excellent result for the Settlement Class given, *inter alia*, the risks, costs, and delays of continued litigation. In short, it is substantively fair, reasonable and adequate.

The Settlement also resulted from a procedurally fair process. By the time the Settlement was reached, Plaintiffs and their counsel were well informed regarding the strengths and weaknesses of their claims. The Stipulation setting forth the terms of the Settlement is the result of extensive arms' length negotiations between highly experienced counsel, and a mediator's recommendation from David M. Murphy, esq. of Phillips ADR Enterprises LLC ("PADRE") following a full day mediation. The involvement of a mediator of Mr. Murphy's caliber and the rigorous negotiations evidence the hard-fought nature of the litigation, zealous representation throughout mediation and ensuing negotiations, and a lack of collusion.

As set forth herein, Plaintiffs and their counsel believe that the proposed Settlement meets the standards for preliminary approval and is in the best interests of the Settlement Class. Accordingly, Plaintiffs respectfully request that the Court enter the accompanying [Proposed] Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order"), attached to the Stipulation

---

[1] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the Stipulation of Settlement dated January 31, 2025 (the "Stipulation"). A true and correct copy of the Stipulation and its exhibits are attached as Exhibit 1 to the Declaration of Tamar A. Weinrib in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Weinrib Decl.").

as Exhibit A: (1) preliminarily approving the proposed Settlement as set forth in the Stipulation; (2) appointing Strategic Claims Services ("SCS") as Claims Administrator; (3) approving the proposed form and manner of disseminating notice to the Settlement Class; (4) setting deadlines for the dissemination of notice, submission of proofs of claim, submission of requests for exclusion, submission of objections, the filing of Plaintiffs' motion for final approval of the Settlement, Lead Counsel's application for attorneys' fees and expenses, and Plaintiffs' application for a compensatory award; and (5) setting a date for the final approval hearing..

## II.    SUMMARY OF LITIGATION

### A.    Nature of the Action

Plaintiffs assert claims on behalf of a putative class of investors pursuant to §§14(a) and 20(a) of the Securities Exchange Act of 1934 ("1934 Act") against Defendants Owlet, Inc. f/k/a Sandbridge Acquisition Corporation, Kurt Workman, and Kate Scolnick (collectively, "Owlet Defendants"), Defendants Ken Suslow, Richard Henry, Domenico De Sole, Ramez Toubassy, Jamie Weinstein, Krystal Kahler, and Michael F. Goss (collectively, "Sandbridge Defendants," and together with the Owlet Defendants, "Defendants").

Plaintiffs allege that Defendants negligently disseminated a Proxy Statement to solicit shareholder approval of the de-SPAC merger between Owlet Baby Care Inc. and Sandbridge Acquisition Corporation wherein they falsely stated that their flagship product, the Smart Sock, was not a medical device for which they needed FDA authorization, that it was only possible rather than certain that the FDA would conclude that the Smart Sock was a medical device requiring authorization, that Owlet complied with all relevant FDA regulations, and that Owlet could achieve over a billion dollars in revenue by 2025 based on the premise that it could continue selling the Smart Sock unimpeded without FDA authorization.  Defendants deny these allegations and the Settlement, as proposed, is entered into by Defendants without any admission of wrongdoing.

### B.    Procedural History

This action was commenced on November 17, 2021. ECF No. 1. On September 8, 2023, the Court appointed Lead Plaintiff for the Section 14(a) claim and approved Pomerantz LLP as Lead Counsel. ECF No. 63.

Thereafter, Lead Counsel conducted a comprehensive investigation into Defendants' allegedly wrongful acts, which included, among other things: (1) reviewing and analyzing (a) Sandbridge and Owlet's filings with the U.S. Securities and Exchange Commission ("SEC"), (b) public reports, press releases, blog posts, and news articles concerning Sandbridge and Owlet, (c) Sandbridge and Owlet investor call transcripts; (2) the retention of a private investigator; and (3) consultation with experts.  Based on the foregoing investigation, Lead Plaintiff filed the Amended Consolidated Complaint for Violations of the Federal Securities Laws ("AC") on December 22, 2023 against Defendants.  ECF No. 80.

On February 9, 2024, the Owlet Defendants and Sandbridge Defendants separately moved to dismiss the AC.  ECF Nos. 92, 94, 95.  Lead Plaintiff filed briefs in opposition on March 22, 2024, ECF Nos. 109, 111, and on May 10, 2024, Defendants filed their reply, ECF Nos. 117. 230.

On August 5, 2024, the Court denied the Owlet Defendants' motion to dismiss in its entirety, ruling that the AC adequately alleges that they negligently disseminated the Proxy with false and misleading statements given that the FDA had unequivocally communicated to Owlet since 2016 that the Smart Sock is a medical device. ECF No. 124. The Court granted the Sandbridge Defendants' motion to dismiss. *Id.*

On August 19, 2024, the Owlet Defendants filed their answers and affirmative defenses to the AC, ECF No. 125. Thereafter, discovery commenced. On September 20, 2024, the Parties filed a Joint Rule 26(f) Discovery Plan.  ECF No. 135. Both Parties served discovery requests and both Parties served responses and objections thereto.

On November 25, 2024, the Parties voluntarily participated in a full-day mediation session before David M. Murphy, esq. of PADRE.  Though the mediation did not result in settlement, thereafter the Parties agreed to a mediator's recommendation and negotiated the terms of the settlement. On December 27, 2024, the Parties notified the Court that they had reached an agreement to settle the claims in the AC. ECF No. 142. On January 6, 2025, the Court entered an Order vacating the case deadlines and setting a January 31, 2025 deadline for Plaintiffs to file a Motion for Preliminary Approval of the settlement. ECF No. 143.

### III.   STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)

Rule 23(e)(1) provides that courts should grant preliminary approval and direct notice if the parties show "that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal" Rule 23(e)(2)—which governs final approval—requires courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)   have the class representatives and class counsel adequately represented the class;
(B)   was the proposal negotiated at arm's length;
(C)   is the relief provided for the class adequate, taking into account:
    (i)   the costs, risks, and delay of trial and appeal;
    (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii)   the terms of any proposed award of attorneys' fees, including timing of payment; and
    (iv)   any agreement required to be identified under Rule 23(e)(3); and
(D)   does the proposal treat class members equitably relative to each other.

These factors—added to the Federal Rules in 2018—are not exclusive, nor intended to displace any factor previously adopted by the courts.  *See* Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904, at 919).  Thus, the factors the Ninth Circuit traditionally utilizes to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)) are still relevant:

> (1) strength of the plaintiff's case; (2) risk, expense, complexity, and likely duration of further litigation; (3) risk of maintaining class action status throughout the trial; (4) amount offered in settlement; (5) extent of discovery completed and stage of the proceeding; (6) experience and views of counsel; (7) presence of a government participant; and (8) reaction of class members to the proposed settlement.[2]

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *accord Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also Wong v. Arlo Techs., Inc.*, 2021 WL 1146042, at *6 (N.D. Cal. Mar. 25, 2021) (recognizing Rule 23(e)'s considerations "overlap with certain *Hanlon* factors.").[3]  As explained *infra*, the proposed Settlement satisfies both Rule 23(e)(2) and the relevant *Hanlon* factors.

## IV.  ARGUMENT

### A.  The Settlement Is Fair, Reasonable, and Adequate in Light of the Rule 23(e)(2) Factors and the Remaining *Hanlon* Factors

#### 1.  Plaintiffs and Lead Counsel Adequately Represented the Settlement Class

Fed. R. Civ. P. 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Here, Plaintiffs and Lead Counsel adequately represented the proposed Settlement Class throughout the course of the litigation and its settlement.  Plaintiffs' claims are typical of and coextensive with the claims of the Settlement Class, and they have no antagonistic interests; rather, Plaintiffs' interest in obtaining the largest

---

[2] The Court does not yet have the benefit of the Settlement Class's reaction, as notice of the proposed Settlement has not yet been provided to the Settlement Class.  There is no government participant.

[3] Unless otherwise indicated, all emphasis is added and citations and quotations are omitted.

possible recovery in this Action is aligned with the other Settlement Class Members. *Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members."). Additionally, Lead Plaintiff worked closely with Lead Counsel throughout the pendency of this Action to achieve the best possible result for themselves and the Settlement Class.

Lead Plaintiff also retained counsel who are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases. Lead Counsel have successfully prosecuted securities class actions and complex litigation in federal and state courts throughout the country. *See* Weinrib Decl., Ex. 2. Additionally, Lead Counsel vigorously prosecuted the Settlement Class's claims throughout this litigation by, among other things: (i) conducting an extensive investigation of the alleged wrongdoing; (ii) drafting the AC; (iii) surviving the Owlet Defendants' motion to dismiss despite the PSLRA's heightened pleading standard and automatic stay of discovery; (iv) pursuing fact discovery; (v) conducting extensive consultations with experts to evaluate potential damages; (vi) drafting a detailed mediation statement, addressing liability and damages; (vii) participating in a formal full day in-person mediation session before Mr. Murphy to obtain a favorable settlement for Plaintiffs and the Settlement Class; (viii) engaging in negotiations regarding the terms of the proposed Settlement; and (ix) working with a financial damages expert to craft a plan of allocation that treats Plaintiffs and all other Settlement Class Members fairly.

### 2. The Settlement Is the Result of Arm's Length Negotiations

Rule 23(e)(2)(B) requires procedural fairness: that "the proposal was

negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B).[4]  The Ninth Circuit, as well as courts in this District, "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).  Here, the Parties participated in a full-day mediation session with Mr. Murphy, which did not result in a settlement.  Following the mediation, Mr. Murphy made a proposal to settle the action for $1.75 million, which all Parties ultimately accepted.  The arm's length nature of the extensive settlement negotiations and the involvement of a mediator with substantial experience mediating securities class actions support the conclusion that the Settlement is fair and was achieved free of collusion.  *In re QuantumScape Sec. Litig.*, 2024 U.S. Dist. LEXIS 131568, **5, 38 (N.D. Cal. Jul. 18, 2024)(preliminarily approving settlement achieved with the assistance of Mr. Muprhy); *In re Lyft Inc. Sec. Litig.*, 2022 U.S. Dist. LEXIS 226982, **4, 13, 17 (N.D. Cal. Dec. 16, 2022)(same).

### 3. The Settlement Is an Excellent Result for the Settlement Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C).[5]  As discussed below, each of these factors supports the Settlement's approval.

---

[4] Rule 23(e)(2)(A)-(B)'s considerations overlap with certain *Hanlon* factors, "such as the non-collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings." *Arlo*, 2021 WL 1146042, at *6 (citing *Hanlon*, 150 F.3d at 1026).

[5] Rule 23(e)(2)(C)(i) essentially incorporates three of the traditional *Hanlon* factors: the strength of plaintiff's case (first factor); the risk, expense, complexity, and likely duration of further litigation (second factor) and; the risks of maintaining class action status through the trial (third factor). *Arlo*, 2021 WL 1146042, at *8 (citing *Hanlon*, 150 F.3d at 1026).

MEMORANDUM IN SUPPORT OF MOTION

**(a)** **The Strength of Plaintiffs' Case and Risk of Continued Litigation**

In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of a recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017). Plaintiffs believe that the claims asserted in the AC are meritorious and that the evidence developed to date supports their claims. However, Plaintiffs also acknowledge that continuing the Action poses significant risks and additional costs. Indeed, this Court has already dismissed the Action against the Sandbridge Defendants.

Further, while Plaintiffs' claims against the Owlet Defendants survived the pleading stage, there is no guarantee that the claims would survive summary judgment or trial. Indeed, the only certainty is that continued litigation would have been costly, risky, and drawn out. This is because "securities class actions are inherently complex" (*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 2009 WL 4730185, at *8 (D.N.J. Dec. 4, 2009)), and frequently take a long time to litigate, in part because they often involve significant post-trial motions and appeals. *See*, *e.g.*, *In re Vivendi Universal, S.A., Sec. Litig.*, 2012 WL 362028, at *1 (S.D.N.Y. Feb. 6, 2012) (noting that, two years after jury verdict in plaintiffs' favor and ten years after the case was filed, shareholders had still received no recovery).

In order to prevail at summary judgment motion and trial, Plaintiffs would have to *prove*, *inter alia*, that Defendants negligently disseminated the Proxy with false and misleading statements, which Defendants have vigorously disputed and would undoubtedly continue to dispute at summary judgment and trial. For example, Defendants have argued that their statements that the FDA may disagree with Owlet's view that the Smart Sock is not a medical device were not false or misleading given the nature of the FDA's communications with Owlet and because Defendants

reasonably held the opinion that the Smart Sock qualified as a wellness product. Further, even if Lead Plaintiffs were able to prove liability, Defendants would have asserted that Plaintiffs could only establish minimal damages. Specifically, the Owlet Defendants undoubtedly would have argued that Plaintiffs could only claim the $1.29 per share decline on October 4, 2021 following revelation of the Warning Letter as damages, rather than the $5.81 per share difference in price between the option to redeem Sandbridge securities ($10.00) and the Owlet stock price following the disclosure of the Warning Letter ($4.19).

Although Plaintiffs believe they have meritorious arguments in response to Defendants' assertions, there is risk in continued litigation. *In re QuantumScape Sec. Litig.*, 2024 U.S. Dist. LEXIS 131568, **29, 30. Even if Plaintiffs prevailed on liability and the Settlement Class was awarded damages, Defendants likely would appeal the verdict and award.  The appeals process would likely span several years, during which the Settlement Class would receive no distribution of any damage award.  In addition, an appeal of any judgment would carry the risk of reversal, in which case the Settlement Class would receive no recovery.[6] Moreover, Owlet has experienced recurring operating losses and generated negative cash flows from operations since inception and its continued litigation would deplete its insurance, raising a substantial risk to collectability of any judgment.

**(b)    Risks of Maintaining Class Action Status**

While Plaintiffs and Lead Counsel are confident that the Settlement Class meets the requirements for certification, the class has not yet been certified, and Plaintiffs are aware that there is a risk the Court could disagree.  Even if the Court

---

[6] *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) ($81 million jury verdict for plaintiffs reversed on appeal on loss causation grounds and judgment entered for defendant); *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605, at *20-*22 (S.D. Fla. Apr. 25, 2011) (following a jury verdict for plaintiffs on liability, the district court granted defendants' motion for judgment as a matter of law), *aff'd*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

were to certify the class, there is always a risk that the class could be decertified at a later stage in the proceedings. *See, e.g.*, *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1035, 1041 (N.D. Cal. 2008) (even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class"). Thus, the risks and uncertainty surrounding class certification also support approval of the Settlement.

### 4. Rule 23(e)(2)(C)(ii)-(iv)

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). These factors weigh in support of the Settlement.

**Rule 23 (e)(2)(C)(ii):** The method for processing Settlement Class Members' claims and distributing relief to eligible claimants is well-established and effective. Here, subject to Court approval, Strategic Claims Services ("SCS"), will process claims under the guidance of Lead Counsel, allow Claimants an opportunity to cure any Claim deficiencies or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval. Claims processing, like the method proposed here, is standard in securities class action settlements. It has been long found to be effective, as well as necessary, insofar as neither Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[7] Moreover, subject to Court approval, for logistical and cost efficiency, Lead Counsel for the Section 14(a) claim and the Section 10(b) claim are utilizing the same claims administrator, a joint postcard notice, joint summary notice, and joint claim form.

---

[7] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation, ¶2.2.

MEMORANDUM IN SUPPORT OF MOTION

**Rule 23(e)(2)(C)(iii):**  As disclosed in the Notice, Lead Counsel will apply for a percentage of the common fund fee award in an amount not to exceed 33⅓% to compensate them for the services rendered on behalf of the Settlement Class.  A proposed attorneys' fee of up to 33⅓% of the Settlement Fund (which includes interest earned on the Settlement Amount) is reasonable in light of the work performed on a contingent basis and the results obtained.  It is also consistent with awards in similar complex class action cases.  *See In re Pac. Enters. Sec. Litig*., 47 F.3d 373, 379 (9th Cir. 1995) (approving fee equal to 33% percent of a $12 million settlement fund); *Granados v. Hyatt Corp*., 2024 U.S. Dist. LEXIS 153064, *26 (S.D. Cal. Aug. 26, 2024) (approving fee equal to 33.3% of a $325,000 settlement fund).  More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees.  *See* Stipulation, ¶7.2.

**Rule 23(e)(2)(C)(iv):**  The Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members totaling a certain percentage of the outstanding shares of Sandbridge common stock as of the close of business on June 1, 2021 request exclusion (or "opt out") from the Settlement.  "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement."  *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *1 (S.D.N.Y. Oct. 16, 2019), *appeal withdrawn sub nom. Tan Chao v. William*, 2020 WL 763277 (2d Cir. Jan. 2, 2020).

### 5.    The Settlement Treats All Class Members Equitably Relative To Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another.  The Settlement easily satisfies this standard.  Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund.  Specifically, an

Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. *See In re BofI Holding, Inc. Sec. Litig.*, 2022 WL 9497235, at \*7–8 (S.D. Cal. Oct. 14, 2022) (finding *pro rata* distribution of settlement constituted equitable treatment of class members); *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at \*14 (S.D.N.Y. Oct. 16, 2019) (*pro rata* distribution method of distributing relief "is standard in securities and class actions and is effective").

### 6. The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of Preliminary Approval

*Hanlon* also outlined several factors that are not coextensive with Rule 23(e)(2)'s new factors.[8]  These factors, viewed in light of the Rule 23(e)(2) factors identified above, support preliminary approval.

**The Amount Offered in Settlement:** "To evaluate the adequacy of the settlement amount, courts primarily consider plaintiffs' expected recovery against the value of the settlement offer." *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at \*9 (N.D. Cal. Sept. 4, 2018).  Here, the $1.75 million Settlement Amount constitutes a meaningful percentage of the maximum possible recovery for the Settlement Class, and is eminently reasonable when taking into account the uncertainty, risks, and costs associated with any attempt to obtain a greater amount.

Plaintiffs' damages expert estimates that if the Settlement Class fully prevailed at trial, if the Court and jury accepted Plaintiffs' damages theory, and the jury verdict survived the inevitable appeals, the ***total maximum aggregate damages*** would be approximately $9 million (per share damages equal to the $10 redemption price minus the closing price following the corrective disclosure).  Thus, the Settlement Amount

---

[8] Although courts within the Ninth Circuit have recognized that Rule 23(e)(2)(A)-(B)'s considerations overlap with certain *Hanlon* factors, such as the extent of discovery completed and the experience and view of counsel, these factors are briefed below for thoroughness.

represents approximately 19.4% of the total **maximum** damages **potentially** available in this Action.  This recovery is well above the median recovery of 1.8% in securities class actions settled in 2022, as well as the median recovery of 2.4% in securities class actions with damages of a similar magnitude.[9]   However, undoubtedly, even if Plaintiffs prevailed in full on liability, Defendants would have argued that damages per share only equal the Company-specific decline in the price of Owlet stock in response to the alleged corrective disclosure. Under that theory, damages would equal approximately $1.1 million, and the Settlement Amount would amount to more than 100% of damages.

In the light of the risks of continued litigation, the substantial percentage of recovery is fair, reasonable and adequate.  Indeed, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers for Justice v. Civ. Serv. Comm.*, 688 F.2d 615, 628 (N.D. Cal. 1982).

**The Stage of the Proceedings and Extent of Discovery Completed:** The fact that formal discovery was in its early stages does not weigh against preliminary approval.  *E.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, WL 6248426, at *13-*14 (N.D. Cal. Oct. 25, 2016) (formal discovery is "not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement").  Here, Lead Plaintiffs conducted an extensive investigation of Sandbridge and Owlet, including interviewing former employees and analyzing numerous publicly available documents.  Moreover, Plaintiffs engaged in substantial briefing on the motion to

---

[9] *See* Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA Jan. 24, 2023) at 18 (Fig. 19) (median recovery in securities class actions in 2022 was approximately 1.8% of estimated damages); *Id.* at 17 (Fig. 18) (median recovery in securities class actions that settled between December 2011-December 2022 was 2.4% where estimated damages were between $200-399 million).

dismiss, consulted with experts, the Parties exchanged detailed mediation briefs, and participated in a mediation process in conjunction with an experienced mediator. *Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at *5 (S.D.N.Y. Dec. 14, 2017) ("Although the action did not proceed to formal discovery, Lead Plaintiffs (i) reviewed vast amounts of publicly available information, (ii) conducted interviews of numerous individuals, and (iii) consulted experts on the ... industry. The Court finds that Lead Plaintiffs were well-informed to gauge the strengths and weaknesses of their claims and the adequacy of the settlement."). Therefore, Plaintiffs and their counsel had a thorough understanding of the strengths and weaknesses of the Action at the time of settlement.

**The Experience and Views of Counsel:** Courts also give weight to the opinion of experienced and informed counsel supporting the settlement. *See, e.g.*, *Stewart v. Applied Materials, Inc.*, 2017 WL 3670711, at *6 (N.D. Cal. Aug. 25, 2017). Here, Lead Counsel has extensive experience in securities litigation and has obtained a thorough understanding of the merits and risks of the Action. Lead Counsel's belief in the fairness and reasonableness of this Settlement supports preliminary approval. Defendants have been vigorously represented by Latham & Watkins and Ropes & Gray LLP throughout the Action and settlement negotiations. Counsel for Defendants is equally well-informed regarding the case, and their representation of Defendants was just as rigorous as Lead Counsel's representation of the Settlement Class. Because the Settlement is the product of serious, informed, and non-collusive negotiations among experienced counsel and a highly qualified mediator, preliminary approval is warranted.

**B.    Class Certification Is Appropriate for Settlement Purposes**

At the Final Approval Hearing, Plaintiffs will ask the Court to grant final approval of the Settlement on behalf of the Settlement Class. Thus, it is appropriate for the Court to consider, at the preliminary approval stage and solely for purpose of the Settlement, whether the certification of the Settlement Class appears appropriate.

*Hanlon*, 150 F.3d at 1019.    Rule 23(a) sets forth four prerequisites to class certification: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation.  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010).  In addition, the Court must find that at least one of the three conditions Rule 23(b) is satisfied. *Id.*  Under subsection (b)(3), the Court must find the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Id.*; *Jaffe v. Morgan Stanley & Co., Inc.*, 2008 WL 346417, at \*7 (N.D. Cal. Feb. 7, 2008).

The proposed Settlement Class consists of all Persons, other than Defendants, that held Sandbridge common stock as of June 1, 2021 and were eligible to vote at Sandbridge's special meeting on July 14, 2021 (the "Settlement Class"). *See* Stipulation, ¶1.40.[10]    Plaintiffs believe this Action satisfies all the factors for certification of a Settlement Class.[11]  The Ninth Circuit and numerous courts within the Ninth Circuit have held that class actions are generally favored in securities fraud

---

[10] Excluded from the Settlement Class are (i) Defendants; (ii) current and former officers and directors of the Company; (iii) members of the immediate family of each of the Individual Defendants; (iv) all subsidiaries and affiliates of the Company and the directors and officers of such subsidiaries or affiliates; (v) all persons, firms, trusts, corporations, officers, directors, and any other individual or entity in which any of the Defendants has a controlling interest; (vi) the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of all such excluded parties; and (vii) any persons or entities who properly exclude themselves by filing a valid and timely request for exclusion.

[11] "Whether trial would present intractable management problems, *see* Rule 23(b)(3)(D), is not a consideration when settlement-only certification is requested, for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997).

actions. *See, e.g.*, *Blackie v. Barrack*, 524 F.2d 891, 902-03 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976).[12]

### 1. The Settlement Class Is Sufficiently Numerous

To meet the requirement of numerosity, one need only show that it is impracticable to join all members of the class. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). Impracticable does not mean impossible, only that it would be difficult or inconvenient to join all members of the class. *Id.* Lead Counsel estimates that there were thousands of people or entities that held Sandbridge common stock as of June 1, 2021 and were eligible to vote at Sandbridge's special meeting on July 14, 2021. The threshold presumption of impracticability of joinder is thus easily exceeded. *See, e.g. Barnes v. AT&T Pension Benefit Plan*, 270 F.R.D. 488, 493 (N.D. Cal. 2010) ("As a general rule, classes numbering greater than forty individuals satisfy the numerosity requirement."); *see also Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1039 (5th Cir. 1981) ("The [numerosity] prerequisite . . . is generally assumed to have been met in class action suits involving nationally traded securities.").

### 2. Common Questions of Law or Fact Exist

In order to maintain a class action, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied if there is one issue common to the class members. *Hanlon*, 150 F.3d at 1019. Generally, courts

---

[12] "[T]he Ninth Circuit and courts in this district hold a liberal view of class actions in securities litigation." *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 152-53 (N.D. Cal. 1991); *see also In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009) ("'Rule 23 is . . . liberally construed in a securities fraud context because class actions are particularly effective in serving as private policing weapons against corporate wrongdoing.'"); *In re Verisign, Inc. Sec. Litig.*, 2005 WL 7877645, at *9 (N.D. Cal. Jan. 13, 2005) ("Class actions are particularly well-suited in the context of securities litigation, wherein geographically dispersed shareholders with relatively small holdings would otherwise have difficulty in challenging wealthy corporate defendants.").

have liberally construed the commonality prerequisite, requiring only that "the named plaintiffs share at least one question of fact or law with the grievances of the proposed class." *Siemer v. Assocs. First Capital Corp.*, 2001 WL 35948712, at *14 (D. Ariz. Mar. 30, 2001). Not all questions of fact and law need be common to satisfy Rule 23(a)(2). *Hanlon*, 150 F.3d at 1019. This factor is "construed permissively, and '[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.'" *Id.* at 1019. Rule 23(a)(2) is satisfied here. Plaintiffs' claims that Defendants violated the federal securities laws by negligently disseminating a Proxy with false and misleading statements unquestionably raise issues of common interest to the Settlement Class.

### 3. Plaintiffs' Claims Are Typical of Those of the Settlement Class

Like other Settlement Class Members, Plaintiffs allege that they held Sandbridge common stock as of June 1, 2021, were eligible to vote at Sandbridge's special meeting on July 14, 2021, and were damaged due to Defendants' alleged misconduct. Because Plaintiffs and the other members of the Settlement Class were allegedly affected by the same events and conduct, the typicality requirement is met. *In re Bridgepoint Educ., Inc. Sec. Litig.*, 2015 WL 224631, at *5 (S.D. Cal. Jan. 15, 2015) ("Here, Plaintiffs' claims arise from the same events and conduct that gave rise to the claims of other class members. They are, therefore, typical of the class.").

### 4. Plaintiffs and Lead Counsel Adequately Represent the Settlement Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The two key inquiries are (1) whether there are conflicts within the class; and (2) whether plaintiffs and counsel will vigorously fulfill their duties to the class. The adequacy inquiry also factors in competency and conflicts of class counsel." *In re Diamond Foods, Inc.*, 295 F.R.D. 240, 252 (N.D. Cal. 2013).

Plaintiffs and Lead Counsel are adequate representatives.  First, Plaintiffs and the other Settlement Class Members were all injured by Defendants' allegedly materially false statements.  If Plaintiffs succeeded in proving their claims at trial, they would also prove the Settlement Class's claims.  *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013) (investor class "will prevail or fail in unison" because claims are based on common misrepresentations). Accordingly, the interests of Plaintiffs and other Settlement Class Members are aligned, as they share the common objective of maximizing their recovery from Defendants.  *PPG*, 2019 WL 3345714, at *3 ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members.").

Second, Plaintiffs have demonstrated their commitment to this litigation by retaining qualified counsel.  Lead Counsel have extensive experience and expertise litigating securities class actions.  *See* Weinrib Decl., Ex. 2.

### 5.  The Predominance and Superiority Requirements Are Satisfied

Under Rule 23(b)(3), a class may be certified if a court finds that common questions of law or fact predominate over individual questions, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Here, issues related to Defendants' alleged violations of the federal securities laws present numerous issues of law and fact that predominate over any questions affecting individual members.  These include, *inter alia*, whether: (i) Defendants' statements or omissions violated the Exchange Act; (ii) Defendants' statements and omissions in the Proxy were materially false and/or misleading; (iii) Defendants disseminated the Proxy negligently; and (iv) members of the Settlement Class sustained damages as a result of the alleged misconduct, and, if so, the proper measure thereof.  *See Amchem*, 521 U.S. at 625 ("Predominance is a test readily met

in certain cases alleging securities fraud.").

Finally, "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Indeed, the damages suffered by members of the Settlement Class are not sufficient to make it economical to prosecute separate actions in order to recover individual losses sustained as a result of Defendants' alleged violations of the securities laws. *Amchem Prods.*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action. . . . A class action solves this problem[.]"). Accordingly, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Class certification for settlement purposes is, therefore, appropriate.

### 6. The Court Should Appoint Lead Counsel as Counsel for the Class

A court that certifies a class must also appoint class counsel. *See* Fed. R. Civ. P. 23(g). In making this appointment, the Federal Rules direct courts to consider: "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

The Court appointed Pomerantz as Lead Counsel for the Section 14(a) claim in September 2023. Since that time, Pomerantz has devoted substantial time, effort, and resources to identifying, investigating, litigating and settling the claims in this matter. Moreover, as explained in Sec. IV.A.1, *supra*, Pomerantz has substantial experience prosecuting securities class actions. For these reasons, among others, Plaintiffs respectfully request that the Court appoint Lead Counsel to serve as Class Counsel.

### C.    The Court Should Approve the Proposed Form and Method of Notice

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval, the Claims Administrator will mail the Notice and Proof of Claim Form (Exhibits B and E to Exhibit 1, the Settlement Stipulation) to all Settlement Class Members who can be identified with reasonable effort.[13]  The Claims Administrator will also utilize a proprietary list of the largest and most common U.S. banks, brokerage firms, and nominees that purchase securities on behalf of beneficial owners to facilitate the dissemination of notice.  The Notice will advise Settlement Class Members of, *inter alia*: (i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's application for attorneys' fees and expenses.  The Notice also will provide specifics on the date, time and place of the Final Approval Hearing and set forth the procedures for objecting to the Settlement, the proposed Plan of Allocation and/or the application for attorneys' fees and expenses, and the procedure for requesting exclusion from the Settlement Class.  In addition to the mailing of the Notice and Claim Form, the Summary Notice will be published electronically once on the *GlobeNewswire* and in print once in the *Investor's Business Daily*.

The proposed form and manner of providing notice to the Settlement Class satisfy the requirements of due process, Rule 23, and the PSLRA.

---

[13] Plaintiffs request that the Court approve retention of Strategic Claims Services ("SCS") as the claims administrator for both the Section 14(a) and Section 10(b) claims.  SCS has successfully administered numerous complex securities class action settlements.  *See Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *14 (S.D.N.Y. Oct. 16, 2019)  (SCS served as claims administrator in $250 million securities class action settlement); *In re Priceline.com, Inc. Sec. Litig.*, 2007 WL 2115592, at *3 (D. Conn. July 20, 2007) (SCS served as claims administrator for $80 million settlement).

## V.    PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for mailing the Notice and publication of the Summary Notice, and deadlines for submitting claims or for opting out of, or objecting to, the Settlement.  The Parties respectfully propose the following schedule for the Court's consideration, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order ("Prelim. Appr. Order"):

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Postcard Notice to Settlement Class Members (which date shall be the "Notice Date") (Prelim. Appr. Order ¶11) | Not later than 20 business days after entry of Prelim. Appr. Order |
| Deadline for publishing the Summary Notice (Prelim. Appr. Order ¶18) | Not later than 10 business days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses (Prelim. Appr. Order ¶29) | Not later than 35 calendar days prior to the Final Approval Hearing |
| Deadline for receipt of exclusion requests and objections (Prelim. Appr. Order ¶¶22, 26) | Not later than 21 calendar days prior to the Final Approval Hearing |
| Deadline for filing reply papers (Prelim. Approval Order ¶¶16, 18, 30) | 7 calendar days prior to the Final Approval Hearing |
| Deadline for submitting Claim Forms (Prelim. Appr. Order ¶20(a)) | Postmarked no later than 90 calendar days after the Notice Date |
| Final Approval Hearing | Not earlier than 120 calendar days after entry of the Prelim. Appr. Order, or at the Court's earliest convenience thereafter |

Plaintiffs request that the Court schedule the Final Approval Hearing for a date 120 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.  As this motion is unopposed, Plaintiffs request that the Court consider this motion for preliminary approval on the papers at this time.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the unopposed motion.

21
MEMORANDUM IN SUPPORT OF MOTION

Dated: January 31, 2025

**POMERANTZ LLP**

By: *Tamar A. Weinrib*
Jeremy A. Lieberman
Tamar A. Weinrib
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
taweinrib@pomlaw.com

*Lead Counsel for Plaintiffs*

MEMORANDUM IN SUPPORT OF MOTION