KESSLER TOPAZ MELTZER
   & CHECK, LLP
JENNIFER L. JOOST (296164)
One Sansome Street, Suite 1850
San Francisco, CA  94104
Telephone:  415/400-3000
415/400-3001 (fax)
jjoost@ktmc.com

Counsel for Lead Plaintiff Dr. Thomas E. Tweito
and Lead Counsel for the Section 10(b) Class

ROBBINS GELLER RUDMAN
   & DOWD LLP
DEBRA J. WYMAN (190812)
ASHLEY M. PRICE (281797)
JUSTIN GARY OETTING (350807)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
debraw@rgrdlaw.com
aprice@rgrdlaw.com
joetting@rgrdlaw.com

Additional Counsel for Lead Plaintiff Dr. Thomas E. Tweito
and for the Section 10(b) Class

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL J. BUTALA, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>OWLET, INC., et al.,<br><br>　　　　　　　　Defendants. | Case No. 2:21-cv-09016-FLA(SSCx)<br><br>Consolidated with Case No. 2:21-cv-09293-FLA (JEMx)<br><br><u>CLASS ACTION</u><br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED 10(b) CLASS SETTLEMENT<br><br>Date:　　　February 28, 2025<br>Time:　　　1:30 p.m.<br>Judge: Hon. Fernando L. Aenlle-Rocha<br>Courtroom:  6B |

4921-3756-0338.v1

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION.................................................................................... 1

II.     OVERVIEW OF THE ACTION............................................................. 2

III.    THE SETTLEMENT TERMS ................................................................ 4

IV.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ........................................................................................... 6

        A.    Lead Plaintiff and His Counsel Have Adequately Represented the Settlement Class ......................................................................... 7

        B.    The Proposed Settlement Is the Result of Good Faith, Arm's-Length Negotiations by Informed, Experienced Counsel Who Were Aware of the Risks of the Litigation ......................................... 7

        C.    The Relief Provided to the Settlement Class Is Adequate .................. 8

              1.    The Substantial Benefits for the Settlement Class, Weighed Against the Costs, Risks, and Delay of Trial and Appeal Support Preliminary Approval ............................... 8

              2.    The Proposed Method for Distributing Relief Is Effective ...... 10

              3.    Attorneys' Fees................................................................. 11

              4.    Other Agreements Made in Connection with the Settlement of the Case ............................................................. 11

              5.    The Proposed Plan of Allocation Is Designed to Treat Settlement Class Members Equitably and Does Not Provide Any Preferential Treatment........................................ 12

        D.    The Remaining Ninth Circuit Factors Are Satisfied.......................... 12

              1.    Risk of Maintaining Class Action Status Through Trial .......... 12

              2.    Experience and Views of Counsel............................................. 13

V.      CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE .................................................................................... 14

        A.    Rule 23(a)'s Requirements Are Met.................................................... 14

              1.    Numerosity Is Satisfied ............................................................. 14

              2.    Commonality Is Satisfied .......................................................... 15

              3.    Typicality Is Satisfied ............................................................... 16

              4.    Adequacy Is Satisfied ............................................................... 17

- i -

|  | Page |
|---|---|
| B. Rule 23(b)(3)'s Requirements Are Met | 17 |
| 1. Common Legal and Factual Questions Predominate | 18 |
| 2. A Class Action Is Superior to Other Methods of Adjudication | 18 |
| VI. THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO THE SETTLEMENT CLASS ARE APPROPRIATE AND SATISFY FED. R. CIV. P. 23, THE PSLRA, AND DUE PROCESS | 19 |
| VII. PROPOSED SETTLEMENT SCHEDULE | 21 |
| VIII. CONCLUSION | 22 |

- ii -

4921-3756-0338.v1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997) ...................................................................................................18

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*,
  568 U.S. 455 (2013) ...................................................................................................18

*Baker v. SeaWorld Enter., Inc.*,
  2017 WL 5885542 (S.D. Cal. Nov. 29, 2017) .........................................................17

*Baron v. HyreCar Inc.*,
  2024 WL 3504234 (C.D. Cal. July 19, 2024) ......................................6, 8, 10, 18

*Ciuffitelli v. Deloitte & Touche LLP*,
  2019 WL 1441634 (D. Or. Mar. 19, 2019) .............................................................12

*Del. Cnty. Emps. Ret. Sys. v. AdaptHealth Corp.*,
  2024 WL 3360661 (E.D. Pa. July 10, 2024) ............................................................7

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ...................................................................................................20

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011) ...................................................................................................18

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)................................................................................6, 17

*Hatamian v. Advanced Micro Devices, Inc.*,
  2016 WL 1042502 (N.D. Cal. Mar. 16, 2016) ..................................................14, 16

*Hayes v. MagnaChip Semiconductor Corp.*,
  2016 WL 7406418 (N.D. Cal. Dec. 22, 2016) .......................................................14

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .............................................11, 13, 20

*In re Biolase, Inc. Sec. Litig.*,
  2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) .........................................................9

**Page**

*In re Cooper Cos Inc. Sec. Litig.*,
254 F.R.D. 628 (C.D. Cal. 2009) ...............................................................14, 18

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) .......................................................................... 6

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ...............................................................13

*In re Intuitive Surgical Sec. Litig.*,
2016 WL 7425926 (N.D. Cal. Dec. 22, 2016) ...................................................16

*In re Juniper Networks, Inc. Sec. Litig.*,
264 F.R.D. 584 (N.D. Cal. 2009) ...................................................................17

*In re LendingClub Sec. Litig.*,
282 F. Supp. 3d 1171 (N.D. Cal. 2017) ...........................................................16

*In re LinkedIn User Priv. Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015) ...................................................................19

*In re Lyft, Inc. Sec. Litig.*,
2022 WL 17740302 (N.D. Cal. Dec. 16, 2022) .................................................. 7

*In re MGM Mirage Sec. Litig.*,
708 F. App'x 894 (9th Cir. 2017)....................................................................20

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...........................................................13

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995).........................................................................11

*In re Twitter Inc. Sec. Litig.*,
326 F.R.D. 619 (N.D. Cal. 2018) ...................................................................16

*In re VeriSign, Inc. Sec. Litig.*,
2005 WL 7877645 (N.D. Cal. Jan. 13, 2005) ...............................................15, 19

4921-3756-0338.v1

**Page**

*In re Vocera Comm's, Inc. Sec. Litig.*,
   2016 WL 8201593 (N.D. Cal. July 29, 2016) ..................................................... 11

*In re Zynga Inc. Sec. Litig.*,
   2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ..................................................... 12

*Kendall v. Odonate Therapeutics, Inc.*,
   2022 WL 1997530 (S.D. Cal. June 6, 2022) ....................................................... 7

*Lamartina v. VMware, Inc.*,
   2024 WL 3286059 (N.D. Cal. July 2, 2024) ....................................................... 18

*Low v. Trump Univ., LLC*,
   246 F. Supp. 3d 1295 (S.D. Cal. 2017) ............................................................... 9

*Morris v. Lifescan, Inc.*,
   54 F. App'x 663 (9th Cir. 2003)........................................................................... 11

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950) ............................................................................................. 21

*Norris v. Mazzola*,
   2017 WL 6493091 (N.D. Cal. Dec. 19, 2017) ................................................... 13

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) .......................................................................... 15, 16

*Redwen v. Sino Clean Energy, Inc.*,
   2013 WL 12129279 (C.D. Cal. Mar. 13, 2013) ................................................... 8

*Rihn v. Acadia Pharms. Inc.*,
   2018 WL 513448 (S.D. Cal. Jan. 22, 2018) ........................................................ 7

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .......................................................................... 6, 19

*Salazar v. Midwest Servicing Grp., Inc.*,
   2018 WL 3031503 (C.D. Cal. June 4, 2018)........................................................ 8

4921-3756-0338.v1

**Page**

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
   335 F.R.D. 276 (N.D. Cal. 2020) .......................................................... 15, 16, 17

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ............................................................................. 6

*Weeks v. Kellogg Co.*,
   2013 WL 6531177 (C.D. Cal. Nov. 23, 2013) ................................................... 9

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
   §78j(b) ....................................................................................................... 1, 3, 18
   §78n(a) ............................................................................................................... 3
   §78t(a) ................................................................................................................ 3
   §78u-4 ................................................................................................................ 2
   §78u-4(a)(4) ....................................................................................................... 5

Federal Rules of Civil Procedure
   Rule 23 ............................................................................................................. 20
   Rule 23(a) .............................................................................................. 14, 16, 19
   Rule 23(a)(1) .................................................................................................... 14
   Rule 23(a)(2) .................................................................................................... 15
   Rule 23(a)(3) .................................................................................................... 16
   Rule 23(a)(4) .................................................................................................... 17
   Rule 23(b)(3) ........................................................................................ 14, 17, 18, 19
   Rule 23(c)(2)(B) ............................................................................................... 19
   Rule 23(e) .......................................................................................................... 6
   Rule 23(e)(1) ...................................................................................................... 6
   Rule 23(e)(1)(B) ......................................................................................... 14, 19
   Rule 23(e)(2) ................................................................................................. 6, 13
   Rule 23(e)(2)(A) ................................................................................................ 7
   Rule 23(e)(2)(B) ................................................................................................ 7
   Rule 23(e)(2)(C)(i) ............................................................................................ 8
   Rule 23(e)(2)(C)(ii) ......................................................................................... 10
   Rule 23(e)(2)(C)(iii) ........................................................................................ 11
   Rule 23(e)(2)(D) ............................................................................................... 12
   Rule 23(h)(1) .................................................................................................... 21

4921-3756-0338.v1

**Page**

**LEGISLATIVE HISTORY**

Private Securities Litigation Reform Act of 1995
Pub. L. No. 104-67, 109 Stat. 737 (1995) ........................................2, 19, 20, 21

4921-3756-0338.v1

## I.   INTRODUCTION

After three years of hard-fought litigation, the Parties have reached a proposed Settlement of the Sections 10(b) and 20(a) violations alleged in this securities class action ("Action") brought pursuant to the Securities Exchange Act of 1934 ("Exchange Act"), in exchange for a $3,500,000 cash payment for the benefit of the Section 10(b) Settlement Class.[1]  Lead Plaintiff now requests the Court preliminarily approve the proposed Settlement, which is the product of good-faith, arm's-length negotiations between experienced counsel, under the supervision of David M. Murphy, Esq. of Phillips ADR Enterprises, a highly respected mediation firm that has extensive experience in complex securities litigation.  In a case facing complex issues of liability and a highly uncertain outcome, the Settlement is a very good result for the Settlement Class – representing a substantial portion of the Settlement Class's estimated damages for the claims remaining in the case at the time of settlement.

Lead Plaintiff reached the Settlement only after gaining a thorough appreciation for the strengths and weaknesses of the case.  Lead Plaintiff: (i) engaged in an extensive investigation; (ii) filed the detailed Consolidated Complaint for Violations of the Federal Securities Laws (ECF 79) ("Complaint"); (iii) successfully defeated Defendants' motion to dismiss the Complaint; (iv) opposed Defendants' motion for reconsideration of the order denying the motion to dismiss; (v) obtained documents from the Food & Drug Administration by making a request pursuant to the Freedom of Information Act; (vi) commenced discovery; and (vii) participated in a full-day mediation with an experienced mediator.  Against this background and considering the risks and delays entailed with further litigation, the Settlement provides a certain, near-term, and significant recovery to the Settlement Class.

---

[1]   Unless otherwise indicated herein, all capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement for the 10(b) Class dated January 31, 2025 ("Stipulation").

- 1 -

4921-3756-0338.v1

Lead Plaintiff also requests certification of the Settlement Class for settlement purposes, and appointment of Dr. Thomas E. Tweito as class representative and Lead Counsel as class counsel.

Additionally, Lead Plaintiff seeks approval of the form and substance of the Postcard Notice, Notice, Summary Notice, and Claim Form, appended as Exhibits A-1 through A-4 to the Stipulation.  Lead Plaintiff also seeks the Court's approval of Strategic Claims Services ("SCS") as Claims Administrator and the means and methods for disseminating notice of the Settlement to the Settlement Class, and a finding that such notice comports with due process and the PSLRA, 15 U.S.C. §78u-4, *et seq.*

Accordingly, Lead Plaintiff respectfully submits that the Settlement meets the standards for preliminary approval because it is in the best interests of the Settlement Class and represents a significant recovery.  By granting preliminary approval, Lead Plaintiff will be able to notify the Settlement Class and solicit claims, requests for exclusion, and objections, after which the Court will be able to consider whether to finally approve the Settlement.

## II.    OVERVIEW OF THE ACTION

The initial complaint in this class action was filed on November 17, 2021, asserting violations of the federal securities laws against Owlet, Inc. ("Owlet") and certain of its executives.  ECF 1.  On January 18, 2022, Dr. Tweito and three other putative class members moved for appointment as lead plaintiff and for consolidation of this action with another securities fraud class action brought against Owlet and its executives.  ECF 10, 13, 17, 21.  By Order dated September 29, 2022, the Court consolidated the cases into this Action and requested additional briefing on the motions seeking lead plaintiff appointment, which Dr. Tweito filed on October 13, 2022.  ECF 55, 58.  On September 8, 2023, the Court appointed Dr. Tweito as Lead

- 2 -

Plaintiff for the Section 10(b) class and approved his selection of Kessler Topaz Meltzer & Check, LLP as Lead Counsel for the Section 10(b) class.  ECF 63.[2]

On December 22, 2023, Lead Plaintiff filed the Complaint on behalf of all persons and entities who purchased or otherwise acquired securities of Owlet between March 31, 2021 and October 4, 2021, both dates inclusive ("Class Period"), and who were damaged thereby.  ECF 79.  Lead Plaintiff asserted: (i) claims under Section 10(b) of the Exchange Act against Owlet and Kurt Workman; and (ii) claims under Section 20(a) of the Exchange Act against Workman.  Lead Plaintiff alleged that, during the Class Period, Defendants made materially false and misleading statements regarding Owlet's regulatory approval to market its flagship product, the Smart Sock, which was a baby monitor allowing parents to track an infant's oxygen levels, heart rate, and sleep trends in real time.  Lead Plaintiff alleged that the price of Owlet securities was artificially inflated as a result of Defendants' allegedly false and misleading statements, and declined when the truth was revealed.

On February 9, 2024, Defendants moved to dismiss the Complaint and filed a request for judicial notice.  ECF 90, 91.  On March 22, 2024, Lead Plaintiff opposed Defendants' motion and judicial notice request.  ECF 114, 115.  On May 10, 2024, Defendants filed replies.  ECF 116, 118.  On August 5, 2024, the Court denied Defendants' motion to dismiss the Complaint.  ECF 124.

Defendants answered the Complaint on August 19, 2024, but on the same day, Defendants filed a motion for reconsideration of the Court's motion to dismiss ruling.  ECF 126, 127.  Briefing on that motion concluded on September 6, 2024.  ECF 132, 133.  On September 26, 2024, the Court granted in part and denied in part Defendants' motion for reconsideration.  ECF 139.  More specifically, the Court: (i) granted

---

[2]    By the same Order, the Court appointed Drew Conant as lead plaintiff for the class asserting claims under Section 14(a) of the Exchange Act ("14(a) Class") and approved his selection of Pomerantz LLP as Lead Counsel for the 14(a) Class. *Id*. The portion of the case asserting Section 14(a) claims has also settled.  The terms of the 14(a) Class Settlement were negotiated separately from this Settlement.

- 3 -

Defendants' motion as to challenged pre-merger statements and dismissed without leave to amend claims based upon statements made prior to the merger between Owlet and Sandbridge Acquisition Corporation ("Sandbridge"); and (ii) denied Defendants' motion as to challenged post-merger statements made by and about Owlet. *Id.*

While Defendants' motion for reconsideration was pending, the Parties filed a Joint Report and Discovery Plan Pursuant to Federal Rule of Civil Procedure 26(f) on September 20, 2024. ECF 135. The Parties also served document requests and Lead Plaintiff drafted agreements governing the Parties' production of confidential and electronically stored information.

Following the Court's ruling on Defendants' motion for reconsideration, the Parties agreed to participate in a private mediation before David M. Murphy, Esq. On November 15, 2024, the Parties exchanged and submitted to Mr. Murphy detailed mediation statements with exhibits. The Parties held a full-day, in-person mediation session with Mr. Murphy on November 25, 2024, where they rigorously negotiated a settlement and ultimately agreed to resolve the claims asserted in the Complaint for $3.5 million.

## III.   THE SETTLEMENT TERMS

This Settlement requires Defendants to pay, or cause to be paid, $3.5 million in cash into the Escrow Account, which amount with any accrued interest while held in the Escrow Account comprises the Settlement Fund.

Notice to the Settlement Class and the cost of settlement administration ("Notice and Administration Costs") will be paid by the Settlement Fund. Stipulation, ¶14. Lead Plaintiff proposes the retention of a nationally recognized class action settlement administrator, SCS, to disseminate notice and administer the Settlement subject to the Court's approval.[3] The proposed notice plan and plan for claims

---

[3] SCS is a highly experienced notice and administration firm that has successfully administered numerous securities class action settlements throughout the country. *See* www.strategicclaims.net/.

- 4 -

4921-3756-0338.v1

processing is discussed below in §VI. To maximize the efficiencies in the administration of the 10(b) and 14(a) Class Settlements, Lead Counsel and counsel for the 14(a) Settlement Class have agreed to jointly administer certain aspects of notice and administration.

The Notice provides that Lead Counsel will move for final approval of the Settlement and: (a) an award of attorneys' fees in the amount of no more than 33⅓% of the Settlement Amount; (b) payment of expenses or charges resulting from the prosecution of the Action in an amount not to exceed $180,000, which may include a request by Lead Plaintiff for costs directly related to his representation of the Settlement Class in accordance with 15 U.S.C. §78u-4(a)(4); and (c) any interest on such amounts at the same rate and for the same period as earned by the Settlement Fund. The Notice explains that such fees and expenses shall be paid from the Settlement Fund.

Once Notice and Administration Costs, Taxes, and Court-approved attorneys' fees and expenses have been paid from the Settlement Fund, the remaining amount, the Net Settlement Fund, shall be distributed pursuant to the Court-approved Plan of Allocation to Authorized Claimants who are entitled to a distribution of at least $10. Any amount remaining following the distribution shall be redistributed in an economically feasible manner. The Plan of Allocation treats all Settlement Class Members equitably based on the timing of their transactions in Owlet securities (*i.e.*, common stock and/or warrants). Moreover, the Settlement is non-reversionary, *i.e.*, if approved, Defendants will have no right to the return of any portion of the Settlement Fund.

In exchange for the benefits provided under the Stipulation, Settlement Class Members shall be deemed to have, and by operation of law and of the judgment shall have, settled, released, and discharged each and every Released Plaintiff's Claim against Defendants and the other Defendants' Releasees, and shall forever be barred

- 5 -

4921-3756-0338.v1

and enjoined from prosecuting any or all of the Released Plaintiff's Claims directly or indirectly against any of the Defendants' Releasees. *Id.*, ¶5.

## IV.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Courts recognize that public policy strongly favors settlements to resolve disputes, "'particularly where complex class action litigation is concerned.'" *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019).[4]  Moreover, courts should defer to "the private consensual decision of the parties" to settle and advance the "'overriding public interest in settling and quieting litigation.'" *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) and *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

Federal Rule of Civil Procedure 23(e) requires judicial approval for a settlement of claims brought as a class action.  Pursuant to Rule 23(e)(1), the issue at preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  In addition, the Ninth Circuit uses the following factors for preliminary approval, some of which overlap with Rule 23(e)(2): "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Baron v. HyreCar Inc.*, 2024 WL 3504234, at *2-*3 (C.D. Cal. July 19, 2024).

As discussed below, the proposed Settlement easily satisfies each of the factors identified under Rule 23(e)(2), as well as the applicable Ninth Circuit factors, such

---

[4]   All citations are omitted unless otherwise noted.

- 6 -

4921-3756-0338.v1

that Notice of the proposed Settlement should be sent to the Settlement Class in advance of the final Settlement Hearing.

### A. Lead Plaintiff and His Counsel Have Adequately Represented the Settlement Class

As explained above, Lead Plaintiff and his counsel have adequately represented the Settlement Class as required by Rule 23(e)(2)(A) by diligently prosecuting this Action for three years, including, among other things, investigating and drafting the Complaint; successfully opposing Defendants' motion to dismiss; partially defeating Defendants' motion for reconsideration; and engaging in mediation with Mr. Murphy. Thus, there is no question that Lead Plaintiff and Lead Counsel have adequately represented the Settlement Class. *See Kendall v. Odonate Therapeutics, Inc.*, 2022 WL 1997530, at *5 (S.D. Cal. June 6, 2022) (finally approving settlement after finding that "the parties engaged in significant investigation and substantive briefing"); *Rihn v. Acadia Pharms. Inc.*, 2018 WL 513448, at *4 (S.D. Cal. Jan. 22, 2018) (finally approving settlement after finding that lead plaintiffs had conducted an extensive investigation and the Court had denied defendants' motion to dismiss); *In re Lyft, Inc. Sec. Litig.*, 2022 WL 17740302, at *1, *4 (N.D. Cal. Dec. 16, 2022) (preliminarily approving settlement reached after two-and-a-half years of litigation and with the assistance of Mr. Murphy, "an experienced mediator").

### B. The Proposed Settlement Is the Result of Good Faith, Arm's-Length Negotiations by Informed, Experienced Counsel Who Were Aware of the Risks of the Litigation

The Rule 23(e)(2)(B) factor is a procedural one, asking whether "the [settlement] proposal was negotiated at arm's length." The use of an experienced mediator, like Mr. Murphy, weighs in favor of this factor. *See Lyft*, 2022 WL 17740302, at *1, *4; *see also Del. Cnty. Emps. Ret. Sys. v. AdaptHealth Corp.*, 2024 WL 3360661, at *3 (E.D. Pa. July 10, 2024) (involvement of David Murphy, "a mediator with experience in securities class actions" "demonstrates that these negotiations were conducted at arm's length"). As noted above, the proposed

- 7 -

Settlement follows years-long litigation and rigorous, arm's-length negotiations. The Settlement was achieved only after a full-day, in-person mediation with Mr. Murphy, in advance of which the Parties prepared detailed submissions. The negotiations were at all times adversarial, and produced a result that is in the Settlement Class's best interests.

### C.  The Relief Provided to the Settlement Class Is Adequate

#### 1.  The Substantial Benefits for the Settlement Class, Weighed Against the Costs, Risks, and Delay of Trial and Appeal Support Preliminary Approval

Rule 23(e)(2)(C)(i) and the Ninth Circuit's factors concerning the "strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation"; and "the amount offered in settlement," are also satisfied because the $3.5 million recovery provides a significant, near-term benefit to the Settlement Class, especially in light of the costs, risks, and delay posed by continued litigation. *Baron*, 2024 WL 3504234, at *8 ("courts have repeatedly recognized that securities litigation presents complex legal issues and problems of proof").

While Lead Plaintiff remains confident in his ability to ultimately prove his claims, further litigation – including a trial – is always a risky proposition. *See, e.g.*, *Salazar v. Midwest Servicing Grp., Inc.*, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018) (a settlement agreement's elimination of risk, delay, and further expenses weighs in favor of approval). Further, complex securities fraud class actions such as this one present a myriad of risks that a plaintiff must overcome to ultimately secure a recovery. *See, e.g.*, *Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12129279, at *5 (C.D. Cal. Mar. 13, 2013) (noting courts "'routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear'"). While Lead Plaintiff would be required to prove all elements of his claims to prevail, Defendants need only succeed on one defense to potentially defeat the entire Action.

Here, Defendants advanced several arguments disputing both liability and damages. For instance, Defendants raised numerous challenges disputing the falsity

- 8 -

4921-3756-0338.v1

of their alleged misstatements and challenged scienter.  Specifically, Defendants contended that they had appropriately warned investors that the FDA "may" not agree with their assessment as to whether the Smart Sock qualified as a consumer product rather than a medical device.  Defendants also argued that the alleged misstatements were inactionable opinions, and that their "corporate optimism" regarding the Smart Sock's classification as a wellness product did not amount to fraudulent intent.

Defendants also brought a motion for reconsideration, which the Court granted as to statements made prior to the merger between Owlet and Sandbridge, essentially shortening the class period to August 5, 2021 through October 4, 2021.  Lead Plaintiff anticipated Defendants would bring further challenges at class certification and summary judgment, including challenges to loss causation and damages.  These issues would present further significant and expensive hurdles for Lead Plaintiff to clear.  *See, e.g.*, *Weeks v. Kellogg Co.*, 2013 WL 6531177, at *13 (C.D. Cal. Nov. 23, 2013).

Moreover, for Lead Plaintiff to prevail at summary judgment, pretrial motions, trial, and any subsequent appeals, the litigation could possibly extend for years.  Settlement is favored where, as here, the case is "'complex and likely to be expensive and lengthy to try,'" and presents numerous risks beyond the "'inherent risks of litigation.'" *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1301 (S.D. Cal. 2017).

Considering the risks of continued litigation and the time and expense that would be incurred to prosecute the Action through fact and expert discovery, a motion for class certification, summary judgment, and a trial, the $3.5 million Settlement provides a meaningful recovery to the Settlement Class and is in its best interests.  Indeed, the Settlement represents approximately 38% of the Settlement Class's total estimated recoverable damages for the claims remaining in the case at the time of settlement and on which the proposed Plan of Allocation is based.  *See generally In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (finding settlement recovering 8% of estimated damages "equals or surpasses the recovery in many other securities class actions").

- 9 -

4921-3756-0338.v1

## 2.    The Proposed Method for Distributing Relief Is Effective

As demonstrated below in §VI, the methods of proposed notice and claims administration process (Rule 23(e)(2)(C)(ii)) are effective.  The notice plan includes direct mail of a postcard notice to all those set forth in the records to be provided by Defendants' transfer agent or who can be otherwise identified with reasonable effort,[5] supplemented by publication of the Summary Notice in *Investor's Business Daily* and over *GlobeNewswire*.  In addition, a Settlement-specific website will be created where key documents will be posted, including the Complaint, Stipulation, Notice, Claim Form, and Preliminary Approval Order.  This is substantially similar to the notice plan proposed and approved in *Baron*, 2024 WL 3504234, at *16.

The claims process is also effective and includes a standard claim form that requests the information necessary to calculate a Claimant's losses pursuant to the Plan of Allocation ("Plan").  The Plan, set forth in Appendix A to the Notice, will govern how Settlement Class Members' Claims will be calculated and, ultimately, how the Settlement proceeds will be distributed to Authorized Claimants.[6]  The Plan was prepared with the assistance of Lead Plaintiff's damages consultant and is based primarily on the consultant's event study and analysis estimating the amount of alleged artificial inflation in the price of Owlet common stock and warrants during the Class Period.  The Claims Administrator will conduct a thorough review of all Claims received and work with Claimants to cure any deficiencies.

---

[5]  SCS will utilize its proprietary list of banks, brokerage firms, and nominees ("Nominees") to facilitate the dissemination of notice.  SCS will send notice to all Nominees on its list.  Nominees who purchased or otherwise acquired Owlet securities during the Class Period on behalf of other beneficial owners will be required to either mail the Postcard Notice to their customers or provide the names and addresses of the beneficial owners to SCS, which will then promptly send the Postcard Notice by first-class mail (or email, if provided) to such identified beneficial owners.

[6]  As explained in the proposed Claim Form, attached as Exhibit A-4 to the Stipulation, Claims submitted for this Settlement will also be processed in accordance with the plan of allocation for the 14(a) Class Settlement and Settlement Class Members may be eligible to receive additional proceeds from the 14(a) Class Settlement as well without reducing their recovery in this Action.

- 10 -

4921-3756-0338.v1

### 3.  Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment."  As discussed above (*supra* §III), Lead Counsel intends to seek an award of attorneys' fees of no more than 33⅓% of the Settlement Amount and expenses in an amount not to exceed $180,000, plus interest on both amounts.  This fee request reflects the successful result achieved for the Settlement Class, and is in line with other fee awards in the Ninth Circuit.  *See, e.g.*, *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming fee of 33% of $14.8 million settlement); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (approving fee of one-third of $12 million settlement fund).  In addition, Lead Counsel will request that any award of fees and expenses be paid at the time the Court makes its award.  *See In re Vocera Comm's, Inc. Sec. Litig.*, 2016 WL 8201593, at *1 (N.D. Cal. July 29, 2016) (fees to be paid "immediately upon entry of this Order. . . .").

### 4.  Other Agreements Made in Connection with the Settlement of the Case

In addition to the Stipulation, the Parties have entered into a standard supplemental agreement which provides that if Settlement Class Members opt out of the Settlement Class such that the amount of Owlet securities represented by such opt outs equals or exceeds a certain amount, Owlet shall have the option to terminate the Settlement. Stipulation, ¶38.  Such agreements are common and do not undermine the propriety of the Settlement.  *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *7 (N.D. Cal. Dec. 18, 2018).  While the Supplemental Agreement is identified in the Stipulation and Notice, and the nature of the agreement is explained in the Stipulation and here, the terms are properly kept confidential.  In addition, as set forth in the Stipulation, Lead Counsel and counsel for the 14(a) Settlement Class have agreed on a procedure for joint notice and administration of the 10(b) and 14(a) Class Settlements.

- 11 -

4921-3756-0338.v1

**5.      The Proposed Plan of Allocation Is Designed to Treat Settlement Class Members Equitably and Does Not Provide Any Preferential Treatment**

Rule 23(e)(2)(D) asks whether the proposed Plan treats class members equitably relative to each other.  Drafted with the assistance of Lead Plaintiff's damages consultant, the Plan here is fair, reasonable, and adequate because it does not treat Lead Plaintiff or any other Settlement Class Member preferentially.  *See In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *10 (N.D. Cal. Oct. 27, 2015).  The Plan, which is set out in the Notice, explains how the net Settlement proceeds will be distributed among Authorized Claimants.  Specifically, the Plan provides formulas for calculating the losses of each Settlement Class Member, based on the timing/price of each Settlement Class Member's purchases and/or acquisitions of Owlet securities (*i.e.*, common stock and warrants) on the open market during the Class Period and when and if they sold such securities.

Each Authorized Claimant, including Lead Plaintiff, will receive a *pro rata* distribution pursuant to the Plan.  Lead Plaintiff, just like all other Settlement Class Members, will be subject to the same formulas for distribution.  *See Ciuffitelli v. Deloitte & Touche LLP*, 2019 WL 1441634, at *18 (D. Or. Mar. 19, 2019) (finding "[t]he Proposed Settlement does not provide preferential treatment to Plaintiffs or segments of the class" where "the proposed Plan of Allocation compensates all Class Members and Class Representatives equally in that they will receive a *pro rata* distribution based of the Settlement Fund based on their net losses").

**D.      The Remaining Ninth Circuit Factors Are Satisfied**

**1.      Risk of Maintaining Class Action Status Through Trial**

The issue of class certification had yet to be briefed when the Settlement was reached, but Lead Plaintiff believes that Defendants would have opposed Lead Plaintiff's motion to certify the class.  If Lead Plaintiff was able to successfully obtain class certification, Defendants could have moved to decertify the class or further

- 12 -

4921-3756-0338.v1

shorten the class period. *See, e.g.*, *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007). Accordingly, this factor supports preliminary approval.

### 2. Experience and Views of Counsel

The opinion of experienced counsel supporting a class settlement after arm's-length negotiations is entitled to considerable weight. *Norris v. Mazzola*, 2017 WL 6493091, at *8 (N.D. Cal. Dec. 19, 2017); *see also Hefler*, 2018 WL 6619983, at *9 ("That counsel advocate in favor of this Settlement weighs in favor of its approval."). Lead Counsel has significant experience in securities and other complex class action litigation and has negotiated numerous class action settlements throughout the country. *See* www.ktmc.com. Here, "[t]here is nothing to counter the presumption that Lead Counsel's recommendation is reasonable." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).

Lead Plaintiff actively litigated this case since being appointed by this Court. His counsel conducted an exhaustive investigation to draft the Complaint, defeated Defendants' motion to dismiss, and responded to Defendants' motion for reconsideration. By the time settlement discussions began, Lead Counsel had a firm understanding of the strengths and weaknesses of the claims, both factually and legally. In connection with settlement negotiations, Lead Counsel consulted with sophisticated experts who assisted Lead Plaintiff in preparing for settlement discussions and developing the Plan.

In sum, each factor identified under Rule 23(e)(2) and by the Ninth Circuit is satisfied. Given the litigation risks involved, the complexity of the underlying issues and the skill of defense counsel, the $3.5 million recovery is significant. The Settlement is fair, adequate, and reasonable, and meets each of the applicable factors such that notice of the Settlement should be provided to the Settlement Class and the final Settlement Hearing scheduled.

- 13 -

4921-3756-0338.v1

## V.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE

When determining whether a settlement should be preliminarily approved, courts also consider whether they will "likely be able to" certify the class for settlement purposes.  Fed. R. Civ. P. 23(e)(1)(B).  The proposed Settlement Class, which has been stipulated to by the Parties, consists of:

> all persons and entities who purchased or otherwise acquired securities of Owlet (*i.e.*, common stock and/or warrants) between March 31, 2021 and October 4, 2021, both dates inclusive, and who were damaged thereby.[7]

Because all of Rule 23(a)'s and 23(b)(3)'s requirements are satisfied, the Court will "likely be able to" certify the Settlement Class at final approval.  Fed. R. Civ. P. 23(e)(1)(B).

### A.    Rule 23(a)'s Requirements Are Met

#### 1.    Numerosity Is Satisfied

The numerosity requirement is met where the party seeking certification shows the class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "While no specific minimum number of potential class members exists, a 'proposed class of at least forty members presumptively satisfies the numerosity requirement.'"  *Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 1042502, at *4 (N.D. Cal. Mar. 16, 2016).  In assessing numerosity, "'[t]he Court certainly may infer that, when a corporation has millions of shares trading on a national exchange,' the requirement is met."  *Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 7406418, at *3 (N.D. Cal. Dec. 22, 2016); *In re Cooper Cos Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) (same).

---

[7]    Excluded from the Settlement Class are Defendants, the officers and directors of Owlet, members of their immediate families and their legal representatives, heirs, agents, affiliates, successors or assigns, Defendants' liability insurance carriers, and any affiliates or subsidiaries thereof, and any entity in which Defendants or their immediate families have or had a controlling interest.  Also excluded from the Settlement Class are any persons and entities who or which submit a request for exclusion from the Settlement Class that is accepted by the Court.

- 14 -

4921-3756-0338.v1

Owlet common stock and warrants trade globally on the New York Stock Exchange under the symbols "OWLT" and "OWLT WS," respectively. As of August 11, 2021, there were approximately 112,750,800 shares of Owlet common stock outstanding. 2Q21 Form 10-Q. This easily establishes numerosity. *See SEB Inv. Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276, 282-83 (N.D. Cal. 2020) (numerosity satisfied with "over six-hundred thousand outstanding shares of Symantec common stock during the class period").

### 2.    Commonality Is Satisfied

Rule 23(a)(2) requires a showing that there are "questions of law or fact common to the class." Lead Plaintiff "need not show . . . that 'every question in the case, or even a preponderance of questions, is capable of class wide resolution. So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2).'" *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014). "Commonality, like numerosity, is a prerequisite which plaintiffs generally, and which [Lead Plaintiff] here, satisf[ies] very easily." *In re VeriSign, Inc. Sec. Litig.*, 2005 WL 7877645, at *5 (N.D. Cal. Jan. 13, 2005).

Here, Settlement Class Members have suffered a common injury – losses on their investments in Owlet securities – and their claims depend upon numerous common issues capable of class-wide resolution, including: (i) whether Defendants' alleged misrepresentations and omissions violated the Exchange Act; (ii) whether Defendants' alleged misrepresentations and omissions were materially false and misleading; (iii) whether Defendants acted knowingly or recklessly (*i.e.*, with scienter); (iv) whether Defendant Workman controlled Owlet and its violations of the securities laws; (v) whether the market prices of Owlet securities were artificially inflated as a result of Defendants' alleged misrepresentations and omissions; (vi) whether Defendants' misrepresentations and omissions caused Settlement Class Members to suffer a compensable loss; and (vii) whether Settlement Class Members have sustained damages, and the proper measure of damages.

- 15 -

As the Ninth Circuit has "recognize[d,] . . . public disclosures alleged to contain material misrepresentations and omissions, like those at issue here, present common questions of law and fact." *Hatamian*, 2016 WL 1042502, at *4. Thus, these issues provide more than sufficient commonality. *E.g.*, *SEB*, 335 F.R.D. at 283 ("plaintiff's allegations that investors were defrauded by the same misrepresentations . . . over the same period of time, and suffered similar losses as a result are sufficient to fulfill Rule 23(a)'s commonality requirement"); *In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 619, 626 (N.D. Cal. 2018) (holding similarly). Accordingly, commonality is satisfied.

### 3.    Typicality Is Satisfied

Rule 23(a)(3) requires that the proposed class representative's claims be "typical" of the claims of the class. The typicality requirement "imposes only a modest burden." *In re LendingClub Sec. Litig.*, 282 F. Supp. 3d 1171, 1182 (N.D. Cal. 2017). "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Parsons*, 754 F.3d at 685. "The purpose of the typicality requirement is to 'assure that the interest of the named representative aligns with the interests of the class.'" *In re Intuitive Surgical Sec. Litig.*, 2016 WL 7425926, at *5 (N.D. Cal. Dec. 22, 2016). "'Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Parsons*, 754 F.3d at 685.

Here, Lead Plaintiff's claims are "typical" of other Settlement Class Members' claims because they arise out of the same alleged course of conduct and, like other members of the Settlement Class, they all allege that they purchased Owlet securities during the Class Period at artificially inflated prices due to Defendants' material misstatements and omissions, and were damaged when the truth emerged. Thus, Lead Plaintiff and the Settlement Class assert the same legal claims, which relate to the

- 16 -

4921-3756-0338.v1

adequacy of such public statements and will rely on the same facts and legal theories to establish liability.

### 4.    Adequacy Is Satisfied

Under Rule 23(a)(4), the parties representing the class must "fairly and adequately protect the interests of the class." The adequacy prerequisite is concerned with two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members[,] and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *SEB*, 335 F.R.D. at 284-85 (citing *Hanlon*, 150 F.3d at 1020).

Lead Plaintiff and Lead Counsel readily satisfy adequacy. First, based upon his purchases of Owlet securities during the Class Period and the losses suffered as a result of Defendants' alleged misconduct, Lead Plaintiff's interests are directly aligned with – rather than "antagonistic" to – the interests of other Settlement Class Members, who were injured by the same alleged conduct as Lead Plaintiff. Second, there is no evidence of conflicts between Lead Plaintiff and the Settlement Class. *See In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584, 590 (N.D. Cal. 2009).

Lead Plaintiff has also retained counsel who satisfy this adequacy requirement. *See Baker v. SeaWorld Enter., Inc.*, 2017 WL 5885542, at *8 (S.D. Cal. Nov. 29, 2017) (finding Lead Counsel qualified to represent the proposed class). As its actions in this case and others demonstrate, Lead Counsel has committed, and was willing to commit, considerable resources to prosecuting this Action, and has vigorously represented the Settlement Class's interests in this Action to date. Thus, the adequacy requirement is satisfied.

### B.    Rule 23(b)(3)'s Requirements Are Met

Lead Plaintiff seeks to certify the Settlement Class pursuant to Rule 23(b)(3), under which certification is appropriate where: (1) questions of law or fact common to class members predominate over questions affecting only individual members; and (2)

- 17 -

4921-3756-0338.v1

a class action is superior to other available methods for the fair and efficient adjudication of the controversy. These requirements are readily satisfied here.

### 1. Common Legal and Factual Questions Predominate

The predominance inquiry of Rule 23(b)(3) asks whether "questions of law or fact common to class members predominate over any questions affecting only individual members." The predominance inquiry "'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Baron*, 2024 WL 3504234, at \*14. As the Supreme Court has explained, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997).

This securities fraud action is no different. Here, the common questions identified in §V.A.2. above clearly predominate over individual questions. *See Lamartina v. VMware, Inc.*, 2024 WL 3286059, at \*5 (N.D. Cal. July 2, 2024) (finding common questions predominate where same operative facts apply to each class member). Virtually all of the elements under Section 10(b) involve common questions of law and fact that predominate over individualized issues. *See Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460-61 (2013) (materiality); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813 (2011) (loss causation); *see also Cooper*, 254 F.R.D. at 640 (all elements). Indeed, "when 'a common nucleus of misrepresentations, material omissions and market manipulations [exists], the common questions predominate over any differences between individual class members with respect to damages, causation or reliance.'" *Cooper*, 254 F.R.D. at 639-40. Thus, this Action satisfies the predominance inquiry.

### 2. A Class Action Is Superior to Other Methods of Adjudication

The superiority element of Rule 23(b)(3) asks whether class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy." In cases like this one, where "recovery on an individual basis would be

- 18 -

dwarfed by the cost of litigating on an individual basis," a class action is the superior method of adjudication. *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 585 (N.D. Cal. 2015); *see also VeriSign*, 2005 WL 7877645, at *9 ("Class actions are particularly well-suited in the context of securities litigation, wherein geographically dispersed shareholders with relatively small holdings would otherwise have difficulty in challenging wealthy corporate defendants."). Moreover, Lead Plaintiff is not aware of any other pending actions seeking similar relief for claims of Sections 10(b) and 20(a) violations.

In sum, all of the requirements of Rules 23(a) and (b)(3) are satisfied, and there are no issues that would prevent the Court from certifying the Settlement Class for settlement purposes, appointing Dr. Tweito as class representative, and appointing Lead Counsel as class counsel pursuant to Rule 23(g).

## VI. THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO THE SETTLEMENT CLASS ARE APPROPRIATE AND SATISFY FED. R. CIV. P. 23, THE PSLRA, AND DUE PROCESS

Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See also* Fed. R. Civ. P. 23(e)(1)(B) ("The court must direct notice in a reasonable manner to all class members who would be bound by the propos[ed settlement]."). Courts evaluating proposed notice documents have held that "[n]otice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Rodriguez*, 563 F.3d at 962.

As noted above, to maximize the efficiencies in the administration of the 10(b) and 14(a) Class Settlements, and simplify a Settlement Class Member's participation in the settlements, Lead Counsel and counsel for the 14(a) Plaintiffs have agreed on a procedure for joint notice and administration of the settlements, including the retention of a single administrator, SCS. This protocol will ensure that Settlement

- 19 -

Class Members will receive just a single, mailed notice informing them of both the 10(b) Class Settlement and 14(a) Class Settlement, through the joint Postcard Notice attached as Exhibit A-1 to the Stipulation, along with the single, joint Summary Notice attached as Exhibit A-3 to the Stipulation. These notices will direct recipients to a common, shared website, www.strategicclaims.net/owlet ("Settlement Website"). Likewise, there will be a single Claim Form for the 10(b) and 14(a) Class Settlements, and Settlement Class Members will need to complete and submit *only one* Claim Form to be potentially eligible to receive payment from both settlements. In light of the differences in the claims and the terms of the respective settlements, separate long-form notices for the 10(b) Class Settlement and 14(a) Class Settlement will be posted on the Settlement Website.

The Parties propose to mail, by first class mail, postage prepaid, or email, a Postcard Notice to all those Settlement Class Members who can reasonably be identified and located. In addition, the Summary Notice will be published in *Investor's Business Daily* and over a national newswire service.[8] The proposed methods of providing notice satisfy the requirements of Rule 23, the PSLRA, and due process. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 896 (9th Cir. 2017); *Hefler*, 2018 WL 6619983, at *5.

The proposed Notice to be posted on the Settlement Website provides detailed information in plain English. It includes all of the information required by the PSLRA, Federal Rules of Civil Procedure, and Due Process. The proposed Notice describes the proposed Settlement and sets forth, among other things: (1) the nature, history, and status of the Action; (2) the definition of the Settlement Class and who is excluded; (3) the reasons the Parties have proposed the Settlement; (4) the amount of the Settlement Amount; (5) the estimated average distribution per damaged security;

---

[8]   The Notice and Summary Notice are annexed as Exhibits A-2 and A-3 to the Stipulation.

- 20 -

(6) the Settlement Class's claims and issues; (7) the Parties' disagreement over damages and liability; (8) the maximum amount of attorneys' fees and expenses that Lead Counsel intends to seek in connection with final Settlement approval; (9) the plan for allocating the Settlement proceeds to the Settlement Class; and (10) the date, time, and place of the Settlement Hearing.  The content of the proposed notices is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner."  The proposed notices satisfy the requirements of Rule 23(h)(1), as they collectively notify Settlement Class Members that Lead Counsel will apply to the Court for an award of attorneys' fees in an amount not to exceed 33⅓% of the Settlement Amount and Litigation Expenses not to exceed $180,000 (which amount may include reimbursement to Lead Plaintiff for his representation of the Settlement Class), to be paid from the Settlement Fund.

In sum, the notice program proposed in connection with the Settlement and the form and content of the notices satisfies all applicable requirements of both the Federal Rules of Civil Procedure and the PSLRA.  Accordingly, in granting preliminary approval, the Court should also approve the proposed forms and method of giving notice to the Settlement Class.

## VII.    PROPOSED SETTLEMENT SCHEDULE

Lead Plaintiff proposes the following schedule for notice, the Settlement Hearing, and other Settlement-related dates:

| Event | Deadline for Compliance |
|---|---|
| Deadline to commence mailing Postcard Notice to potential Settlement Class Members and Notice and Claim Form to Nominees ("Notice Date") | No later than 20 business days following entry of the Preliminary Approval Order (Preliminary Approval Order, ¶7.b) |

- 21 -

4921-3756-0338.v1

| Event | Deadline for Compliance |
|---|---|
| Publication of the Summary Notice | No later than 10 business days following the Notice Date (Preliminary Approval Order, ¶7.d) |
| Deadline for filing papers in support of the Settlement, the Plan, and application for attorneys' fees and expenses | 35 calendar days prior to the Settlement Hearing (Preliminary Approval Order, ¶28) |
| Deadline for requests for exclusion or objections | 21 calendar days prior to the Settlement Hearing (Preliminary Approval Order, ¶¶15, 18) |
| Deadline for filing reply papers in support of the Settlement, the Plan, and application for attorneys' fees and expenses | 7 calendar days prior to the Settlement Hearing (Preliminary Approval Order, ¶28) |
| Claim submission deadline | 90 calendar days after the Notice Date (Preliminary Approval Order, ¶11) |
| Date for the Settlement Hearing | At least 100 days after entry of the Preliminary Approval Order (Preliminary Approval Order, ¶5) |

## VIII.  CONCLUSION

Lead Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement and enter the accompanying Preliminary Approval Order.

DATED:  January 31, 2025

Respectfully submitted,

KESSLER TOPAZ MELTZER
 & CHECK, LLP
JENNIFER L. JOOST (296164)

s/ Jennifer L. Joost
JENNIFER L. JOOST

One Sansome Street, Suite 1850
San Francisco, CA  94104
Telephone:  415/400-3000
415/400-3001 (fax)
jjoost@ktmc.com

Counsel for Lead Plaintiff Dr. Thomas E. Tweito and Lead Counsel for the Section 10(b) Class

- 22 -

4921-3756-0338.v1

ROBBINS GELLER RUDMAN
  & DOWD LLP
DEBRA J. WYMAN
ASHLEY M. PRICE
JUSTIN GARY OETTING
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
debraw@rgrdlaw.com
aprice@rgrdlaw.com
joetting@rgrdlaw.com

Additional Counsel for Lead Plaintiff Dr. Thomas E. Tweito and for the Section 10(b) Class

SCHALL LAW FIRM
BRIAN SCHALL (290685)
1880 Century Park East, Suite 404
Los Angeles, CA  90067
Telephone:  310/301-3335
310/338-0192 (fax)
brian@schallfirm.com

Additional Counsel

## LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Lead Plaintiff Dr. Thomas E. Tweito and Lead Counsel for the Section 10(b) Class, certifies that this brief contains 6,971 words, which complies with the word limit of L.R. 11-6.1.

DATED:  January 31, 2025

s/ Jennifer L. Joost
JENNIFER L. JOOST

- 23 -

4921-3756-0338.v1