POMERANTZ LLP
Tamar A. Weinrib
600 Third Avenue, 20th floor
New York, New York 10016
Telephone: (646) 581-9973
taweinrib@pomlaw.com

*Lead Counsel for Plaintiffs*

**Additional Counsel on Signature Page**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| MICHAEL J. BUTALA, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> OWLET, INC. f/k/a SANDBRIDGE ACQUISITION CORPORATION, KURT WORKMAN, KATE SCOLNICK, KEN SUSLOW, RICHARD HENRY, DOMENICO DE SOLE, RAMEZ TOUBASSY, JAMIE WEINSTEIN, KRYSTAL KAHLER, and MICHAEL F. GOSS, <br><br> Defendants. | Case No.: 2:21-cv-09016-FLA-JEM <br><br> Honorable Fernando L. Aenlle-Rocha <br><br> **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> Hearing Date: February 6, 2026 <br> Hearing Time: 1:30 p.m. <br> Location: Courtroom 6B |

# **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ............................................................1

II.    BACKGROUND ...................................................................................2

    A.    Nature of the Action and Procedural History ...........................2

    B.    The Settlement ..........................................................................4

III.   LEGAL STANDARD............................................................................5

IV.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED AS A CLASS ........5

V.    THE SETTLEMENT WARRANTS FINAL APPROVAL .................7

    A.    The Settlement Satisfies the Standard for Judicial Approval ................9

        1.    Plaintiffs and Lead Counsel Adequately Represented the Class..........................................................................9

        2.    The Settlement Is the Product of Arm's-Length Negotiations ...............................................................11

        3.    The Settlement Affords Substantial Relief................................13

        4.    The Settlement Treats All Class Members Equitably ...............22

        5.    Application of the Remaining Hanlon Factors Supports Approval ......................................................................22

    B.    The Plan of Allocation Should Be Approved ......................................24

VI.   CONCLUSION......................................................................................25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5
*Ali v. Franklin Wireless Corp.*,
   2024 WL 5179910 (S.D. Cal. Dec. 19, 2024) ............................................. 12, 22, 24

6
7
*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................................ 6

8
9
*Baker v. SeaWorld Ent., Inc.*,
   2020 WL 4260712 (S.D. Cal. July 24, 2020) ...................................................... 16, 17

10
11
*Baron v. HyreCar Inc.*,
   2024 WL 3504234 (C.D. Cal. July 19, 2024) ................................................. *passim*

12
13
*Bernstein v. Ginkgo Bioworks Holdings, Inc.*,
   2024 WL 5112227 (N.D. Cal. Dec. 13, 2024) ........................................................ 24

14
15
*Brown v. Brewer*,
   2012 WL 12882380 (C.D. Cal. Jan. 18, 2012) ....................................................... 24

16
17
18
*Christine Asia Co. v. Yun Ma*,
   2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019),
   *appeal withdrawn sub nom. Tan Chao v. William*, 2020 WL 763277
   (2d Cir. Jan. 2, 2020) ............................................................................................. 21

19
20
*Davis v. Yelp, Inc.*,
   2022 WL 21748777 (N.D. Cal. Aug. 1, 2022) ....................................................... 9

21
22
*Delacruz v. CytoSport, Inc.*,
   2014 WL 12648451 (N.D. Cal. July 1, 2014) ....................................................... 22

23
*Derr v. Ra Med. Sys., Inc.*,
   2022 WL 21306534 (S.D. Cal. Sep. 23, 2022) ..................................................... 22

24
25
*Destefano v. Zynga, Inc.*,
   2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ..................................................... 13, 14

26
27
*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) .................................................................................. 9

28

*Espinosa v. Cal. Coll. of S.D., Inc.*,
    2018 WL 1705955 (S.D. Cal. Apr. 9, 2018) ........................................................ 15

*Farrar v. Workhorse Grp., Inc.*,
    2023 WL 5505981 (C.D. Cal. July 24, 2023) ..................................... 14, 17, 20, 21

*Fitzgerald v. Pollard*,
    2024 WL 4596401 (S.D. Cal. Oct. 28, 2024) ........................................................ 9

*Fleming v. Impax Lab'ys Inc.*,
    2021 WL 5447008 (N.D. Cal. Nov. 22, 2021) ..................................................... 20

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998), *overruled on other grounds*,
    *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................... *passim*

*Hardy v. Embark Tech., Inc.*,
    2024 WL 1354416 (N.D. Cal. Sep. 26, 2023) ................................................ 18, 23

*Hefler v. Wells Fargo & Co.*,
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2023),
    *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) ...................... 24

*Hessefort v. Super Micro Comput., Inc.*,
    2023 WL 7185778 (N.D. Cal. May 5, 2023) ........................................................ 20

*Hunt v. Bloom Energy Corp.*,
    2024 WL 1995840 (N.D. Cal. May 6, 2024) ........................................................ 17

*In re Am. Apparel, Inc. S'holder Litig.*,
    2014 WL 10212865 (C.D. Cal. July 28, 2014) ..................................................... 15

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) .............................................................................. 11

*In re BofI Holding, Inc. Sec. Litig.*,
    2022 WL 9497235 (S.D. Cal. Oct. 14, 2022) .................................... 7, 11, 12, 21

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
    2016 WL 4474366 (N.D. Cal. Aug. 25, 2016),
    *amended on other grounds*, 2016 WL 6091521 (N.D. Cal. Oct. 19, 2016) ........... 21

*In re Cheetah Mobile, Inc. Sec. Litig.*,
    2021 WL 99635 (C.D. Cal. Jan. 12, 2021) ......................................................... 12

iii

*In re Cooper Cos. Sec. Litig.*,
    254 F.R.D. 628 (C.D. Cal. 2009)...............................................................6

*In re Critical Path, Inc. Sec. Litig.*,
    2002 WL 32627559 (N.D. Cal. June 18, 2002) ....................................17

*In re Illumina, Inc. Sec. Litig.*,
    2021 WL 1017295 (S.D. Cal. Mar. 17, 2021) ........................................11

*In re ImmunityBio, Inc. Sec. Litig.*,
    2025 WL 1686263 (S.D. Cal. June 16, 2025) ........................................12

*In re Lyft Inc. Sec. Litig.*,
    2022 WL 17740302 (N.D. Cal. Dec. 16, 2022) .....................................11

*In re Lyft Inc. Sec. Litig.*,
    2023 WL 5068504 (N.D. Cal. Aug. 7, 2023) .........................................18

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) .............................................................9, 13

*In re MGM Mirage Sec. Litig.*,
    708 F. App'x 894 (9th Cir. 2017)...........................................................24

*In re Mullen Auto., Inc. Sec. Litig.*,
    2025 WL 2054253 (C.D. Cal. June 20, 2025) .........................................6

*In re Netflix Privacy Litig.*,
    2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) .......................................16

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008).............................7, 15, 22, 24

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ...................................................................12

*In re Petrobras Sec. Litig.*,
    312 F.R.D. 354 (S.D.N.Y. 2016),
     *aff'd in part, vacated in part on other grounds*,
    862 F.3d 250 (2d Cir. 2017) ..................................................................12

*In re Portal Software, Inc. Sec. Litig.*,
    2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ......................................19

iv

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT, 2:21-cv-09016-FLA-JEM

*In re QuantumScape Sec. Litig.*,
    2024 WL 3491039 (N.D. Cal. July 18, 2024) ........................................................11

*In re Stable Rd. Acquisition Corp. Sec. Litig.*,
    2024 WL 3643393 (C.D. Cal. Apr. 23, 2024)............................................15, 19, 23

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ..........................................................................5

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007)....................................................13

*In re Wireless Facilities, Inc. Sec. Litig. II*,
    253 F.R.D. 607 (S.D. Cal. 2008) ..............................................10, 11, 15

*Kendall v. Odonate Therapeutics, Inc.*,
    2022 WL 1997530 (S.D. Cal. June 6, 2022) ............................14, 18, 22

*Knapp v. Art.*
    *com, Inc.*, 283 F. Supp. 3d 823 (N.D. Cal. 2017)............................15

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ........................................................23

*Mandalevy v. BofI Holding, Inc.*,
    2022 WL 4474263 (S.D. Cal. Sep. 26, 2022) ................................*passim*

*Mauss v. NuVasive, Inc.*,
    2018 WL 6421623 (S.D. Cal. Dec. 6, 2018) ................................24, 25

*Middlesex Cnty. Ret. Sys. v. Semtech Corp.*,
    2010 WL 11507255 (C.D. Cal. Aug. 27, 2010) ......................................6

*Moreno v. Beacon Roofing Supply, Inc.*,
    2020 WL 3960481 (S.D. Cal. July 13, 2020)........................................11

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004).................................................15, 22

*Officers for Justice v. Civ. Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ......................................................13

v

*Raffin v. Medicredit, Inc.*,
    2018 WL 8621204 (C.D. Cal. Nov. 30, 2018) ........................................................ 20

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ............................................................................ 11, 19

*Schneider v. Champignon Brands Inc.*,
    2023 WL 11944374 (C.D. Cal. Feb. 28, 2023) .................................................. 6, 20

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
    2022 WL 409702 (N.D. Cal. Feb. 10, 2022) .......................................................... 20

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ............................................................................... 5, 6

*Sypherd v. Lazy Dog Rests., LLC*,
    2023 WL 1931319 (C.D. Cal. Feb. 10, 2023) ............................................ 7, 20, 22

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ..................................................................................... 9

*Vaccaro v. New Source Energy Partners L.P.*,
    2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ....................................................... 23

**Statutes**

15 U.S.C. §78u-4 ................................................................................................... 19

**Rules**

Fed. R. Civ. P. 23 .......................................................................................... *passim*

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT, 2:21-cv-09016-FLA-JEM

## I.      PRELIMINARY STATEMENT

Plaintiffs individually and on behalf of all Settlement Class Members[1], respectfully submit this memorandum of law in support of their unopposed motion pursuant to Fed. R. Civ. P. 23(e), seeking final approval of a $1.75 million non-reversionary cash settlement (the "Settlement") that recovers 19.4% of estimated maximum recoverable damages (or over 100% of maximum recoverable damages under the Defendants' Damages Theory, defined *infra*). This is an excellent result for the Settlement Class in light of the significant risks inherent in this complex securities class action litigation.

The Settlement is the product of Lead Counsel's extensive investigation concerning the claims asserted in the Action and vigorous prosecution of the litigation on behalf of the Settlement Class. Lead Counsel: (i) conducted an extensive investigation of the alleged wrongdoing; (ii) drafted the Amended Consolidated Complaint for Violations of the Federal Securities Laws ("AC"), ECF No. 80; (iii) survived the Owlet Defendants' motion to dismiss despite the PSLRA's heightened pleading standard and automatic stay of discovery; (iv) pursued fact discovery; (v) conducted extensive consultations with experts to evaluate potential damages; (vi) drafted a detailed mediation statement, addressing liability and damages; (vii)

---

[1] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the Stipulation of Settlement dated January 31, 2025 (the "Stipulation" or "Stip."), ECF No. 144-2. Internal citations and quotations are omitted and emphasis is added unless otherwise noted. Citations to the "Weinrib Decl." are to the Declaration of Tamar A. Weinrib in Support of Plaintiffs' Motions For: (1) Final Approval of Class Action Settlement; and (2) Attorneys' Fees, Reimbursement of Expenses, and Compensatory Awards to Plaintiffs, filed herewith. Citations to the "Craig Decl." are to the Declaration of Margery Craig Concerning: (A) Mailing/Emailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections, attached as Exhibit 1 to the Weinrib Decl. Citations to the "Fee Brief" are to Plaintiffs' Memorandum of Law in Support of Motion for Attorneys' Fees, Reimbursement of Expenses, and Compensatory Awards to Plaintiffs, filed herewith.

participated in a formal full day in-person mediation session before Mr. Murphy to obtain a favorable settlement for Plaintiffs and the Settlement Class; (viii) engaged in negotiations regarding the terms of the proposed Settlement; and (ix) worked with a financial damages expert to craft a plan of allocation that treats Plaintiffs and all other Settlement Class Members fairly.

While Plaintiffs and Lead Counsel believe that Plaintiffs' claims are meritorious, they recognize the substantial challenges to establishing liability, proving damages, and achieving (and collecting upon) a greater recovery. Defendants have and would continue to contest each element of Plaintiffs' claims. Moreover, discovery would have been time-consuming and expensive.

The Settlement is fair, reasonable, and adequate under the governing standards in this Circuit. The $1,750,000 Settlement falls well within the range of settlements in comparable securities fraud cases and eliminates the significant costs and risks of continuing litigation through summary judgment, trial and the inevitable appeals. Additionally, as of the date of this filing, no Settlement Class Members have objected to any aspect of the Settlement nor have any Settlement Class Members requested exclusion from the settlement. Likewise, the proposed Plan of Allocation is eminently fair and reasonable, as it equitably allocates the Net Settlement Fund to those Settlement Class Members who submit valid claims.

For these reasons, and those set forth below, Plaintiffs respectfully submit that the Settlement and Plan of Allocation are in the best interests of the Settlement Class and merit final approval. Additionally, the Court should grant final certification of the proposed Settlement Class for settlement purposes only.

## II.     BACKGROUND

### A.     Nature of the Action and Procedural History

This Action was commenced on November 17, 2021, asserting claims on behalf of a putative class of investors pursuant to §§14(a) and 20(a) of the Securities

Exchange Act of 1934 ("1934 Act") against Defendants Owlet, Inc. f/k/a Sandbridge Acquisition Corporation, Kurt Workman, and Kate Scolnick (collectively, "Owlet Defendants"), Defendants Ken Suslow, Richard Henry, Domenico De Sole, Ramez Toubassy, Jamie Weinstein, Krystal Kahler, and Michael F. Goss (collectively, "Sandbridge Defendants," and together with the Owlet Defendants, "Defendants"). ECF No. 1.

On September 8, 2023, the Court appointed Lead Plaintiff for the Section 14(a) claim and approved Pomerantz LLP as Lead Counsel. ECF No. 63. Thereafter, Lead Counsel conducted a comprehensive investigation into Defendants' allegedly wrongful acts, which included, among other things: (i) reviewing and analyzing (a) Sandbridge and Owlet's filings with the U.S. Securities and Exchange Commission ("SEC"), (b) public reports, press releases, blog posts, and news articles concerning Sandbridge and Owlet, (c) Sandbridge and Owlet investor call transcripts; (ii) the retention of a private investigator; and (iii) consultation with experts. Based on the foregoing investigation, Lead Plaintiff filed the Amended Consolidated Complaint for Violations of the Federal Securities Laws ("AC") on December 22, 2023 against Defendants. ECF No. 80.

The AC alleges that Defendants negligently disseminated a Proxy Statement to solicit shareholder approval of the de-SPAC merger between Owlet Baby Care Inc. and Sandbridge Acquisition Corporation wherein they falsely stated that their flagship product, the Smart Sock, was not a medical device for which they needed FDA authorization, that it was only possible rather than certain that the FDA would conclude that the Smart Sock was a medical device requiring authorization, that Owlet complied with all relevant FDA regulations, and that Owlet could achieve over a billion dollars in revenue by 2025 based on the premise that it could continue selling the Smart Sock unimpeded without FDA authorization.

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, 2:21-cv-09016-FLA-JEM

On February 9, 2024, the Owlet Defendants and Sandbridge Defendants separately moved to dismiss the AC. ECF Nos. 92, 94, 95. Lead Plaintiff filed briefs in opposition on March 22, 2024, ECF Nos. 109, 111, and on May 10, 2024, Defendants filed their replies, ECF Nos. 117, 120.

On August 5, 2024, the Court denied the Owlet Defendants' motion to dismiss in its entirety, ruling that the AC adequately alleges that they negligently disseminated the Proxy with false and misleading statements given that the FDA had unequivocally communicated to Owlet since 2016 that the Smart Sock is a medical device. ECF No. 124. The Court granted the Sandbridge Defendants' motion to dismiss. *Id.*

On August 19, 2024, the Owlet Defendants filed their answers and affirmative defenses to the AC, ECF No. 125. Thereafter, discovery commenced. On September 20, 2024, the Parties filed a Joint Rule 26(f) Discovery Plan. ECF No. 135. Both Parties served discovery requests and both Parties served responses and objections thereto.

### B.    The Settlement

On November 25, 2024, the Parties voluntarily participated in a full-day mediation session before David M. Murphy, esq. of PADRE. Though the mediation did not result in settlement, thereafter the Parties agreed to a mediator's recommendation and negotiated the terms of the settlement. Defendants deny the allegations asserted in the AC and the Settlement is entered into by Defendants without any admission of wrongdoing. On December 27, 2024, the Parties notified the Court that they had reached an agreement to settle the claims in the AC. ECF No. 142. On January 6, 2025, the Court entered an Order vacating the case deadlines and setting a January 31, 2025 deadline for Plaintiffs to file a Motion for Preliminary Approval of the settlement. ECF No. 143.

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, 2:21-cv-09016-FLA-JEM

On January 31, 2025, Plaintiffs filed an Unopposed Motion for Preliminary Approval of Class Action Settlement, together with supporting papers, including a fully executed copy of the Stipulation and all exhibits thereto. ECF Nos. 144, 144-2.

On September 15, 2025, the Court entered an order granting preliminary approval of the Settlement, provisionally certifying the Settlement Class for purposes of the Settlement and authorizing the form and manner of providing notice of the Settlement to potential Settlement Class members ("Preliminary Approval Order"). ECF No. 153.

Pursuant to the Court's Preliminary Approval Order, 47,605 notices were disseminated to potential Settlement Class Members and nominees. *See* Craig Decl., ¶¶ 5-9. To date, no Settlement Class Members have objected to the settlement nor have any Settlement Class Members opted out. Craig Decl. ¶¶ 14-15. The deadline to seek exclusion from the Settlement or to object to the Settlement is January 16, 2026. *Id.*

For these reasons and those set forth below, Plaintiffs respectfully submit that the Court should approve the Settlement because it is fair, reasonable and adequate.

## III.   LEGAL STANDARD

The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *see also Mandalevy v. BofI Holding, Inc.*, 2022 WL 4474263, at *6 (S.D. Cal. Sep. 26, 2022). When parties settle a putative class action before a class is formally certified, the Court must assess if (1) the proposed settlement class meets all requirements for class certification; and (2) the settlement satisfies all requirements of Rule 23(e). *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). As explained below, there is ample support for both here.

## IV.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED AS A CLASS

As provided in the Stipulation, to implement the terms of the Settlement,

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, 2:21-cv-09016-FLA-JEM

Plaintiff seek certification of a Settlement Class consists of all Persons that held Sandbridge Acquisition Corporation ("Sandbridge") common stock as of June 1, 2021 and were eligible to vote at Sandbridge's special meeting on July 14, 2021. Stip. ¶ 1.40. Excluded from the Settlement Class are:

> (i) Defendants; (ii) current and former officers and directors of the Company; (iii) members of the immediate family of each of the Individual Defendants; (iv) all subsidiaries and affiliates of the Company and the directors and officers of such subsidiaries or affiliates; (v) all persons, firms, trusts, corporations, officers, directors, and any other individual or entity in which any of the Defendants have a controlling interest; (vi) the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of all such excluded parties; and (vii) any persons or entities who properly exclude themselves by filing a valid and timely request for exclusion.

*Id.* All requirements are satisfied to maintain the Settlement Class for purposes of the Settlement.

Courts in the Ninth Circuit routinely certify class actions alleging securities fraud for settlement purposes. *See In re Mullen Auto., Inc. Sec. Litig.*, 2025 WL 2054253, at *2 (C.D. Cal. June 20, 2025) (certifying settlement class for final approval of the settlement); *see also Schneider v. Champignon Brands Inc.*, 2023 WL 11944374, at *6 (C.D. Cal. Feb. 28, 2023) (same). Certification of a settlement class is appropriate where, as here, the proposed class and class representatives meet the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. *See* Fed. R. Civ. P. 23(a); ECF No. 144 at 14-18 (Preliminary Settlement Approval Brief).

Moreover, class certification is warranted where common questions of law or fact predominate over any individual question and a class action is superior to other available means of adjudication. Fed. R. Civ. P. 23(b)(3); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 607 (1997). This standard is easily met here, as it is in most securities class actions. The root of the Action – whether Defendants made

1  public misrepresentations of material facts in the Proxy Statement to solicit
2  shareholder approval of the de-SPAC merger– is the central issue and predominates
3  over any theoretical individual issue that may arise. The common resolution of these
4  issues supports a finding of predominance. *Middlesex Cnty. Ret. Sys. v. Semtech*
5  *Corp.*, 2010 WL 11507255, at *7 (C.D. Cal. Aug. 27, 2010); *In re Cooper Cos. Sec.*
6  *Litig.*, 254 F.R.D. 628, 632 (C.D. Cal. 2009) ("The common questions of whether
7  misrepresentations were made and whether Defendants had the requisite scienter
8  predominate over any individual questions of reliance and damages.").

9        In the Preliminary Approval Order, the Court provisionally found that the
10  requirements of Rules 23(a) and 23(b)(3) were satisfied. ECF No. 153, ¶¶2-3.
11  "Nothing has changed since the conditional certification, and likewise, there is no
12  basis to revisit the court's order and analysis." *Sypherd v. Lazy Dog Rests., LLC*, 2023
13  WL 1931319, at *3 (C.D. Cal. Feb. 10, 2023) (Aenlle-Rocha, J.). *See Mandalevy*,
14  2022 WL 4474263, at *3 (granting final certification of settlement class when "no
15  material changes have occurred since this Court's preliminary approval" order).

16  **V.    THE SETTLEMENT WARRANTS FINAL APPROVAL**

17        Rule 23(e) requires judicial approval of any compromise to settle claims in a
18  class action. The Court may do so only upon a finding, after holding a hearing, that
19  the compromise is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The
20  decision to approve a proposed class action settlement rests in the sound discretion
21  of the district court, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998),
22  *overruled on other grounds*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011),
23  and must be "made in the context of a 'strong judicial policy'" that favors the
24  settlement of class actions, *In re BofI Holding, Inc. Sec. Litig.*, 2022 WL 9497235, at
25  *4 (S.D. Cal. Oct. 14, 2022) (quoting *Syncor ERISA Litig.*, 516 F.3d at 1101); *see*
26  *also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008)

27

28

("[T]he court must also be mindful of the Ninth Circuit's policy favoring settlement . . . in class action lawsuits.").

Rule 23(e)(2) was amended in 2018 to create uniformity among federal courts on the primary considerations they must weigh to determine if a proposed class action settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2), advisory committee notes (2018 amendments). As amended, Rule 23(e)(2) directs courts to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i)   the costs, risks, and delay of trial and appeal;
>>
>> (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv)  any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The first two factors focus on "procedural" concerns, whereas the final two focus on the "substantive" terms of the settlement. Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendments. These points of inquiry overlap with the *Hanlon* factors that traditionally guided the fairness analysis:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience

and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026. The 2018 amendments to Rule 23(e) make clear that the considerations identified therein were not designed to "displace" any factor previously used by courts to evaluate settlements, but rather to "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendments. Thus, courts may still consider additional *Hanlon* factors in the exercise of discretion. *See, e.g.*, *Fitzgerald v. Pollard*, 2024 WL 4596401, at *5-8 (S.D. Cal. Oct. 28, 2024). Ultimately, "[a] settlement should be approved if it is fundamentally fair, adequate and reasonable." *Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1375 (9th Cir. 1993); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (similar).

Given the above, Plaintiffs will address the fairness, reasonableness, and adequacy of the Settlement principally in relation to the factors set forth in Rule 23(e)(2) but will also address the application of relevant, non-duplicative *Hanlon* factors as well. As detailed below, each of these factors strongly supports final approval of the Settlement.

## A. The Settlement Satisfies the Standard for Judicial Approval

### 1. Plaintiffs and Lead Counsel Adequately Represented the Class

The first Rule 23(e)(2) consideration is whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). As this Court has recognized, this analysis is "redundant of the requirements of Rule 23(a)(4)," *Mandalevy*, 2022 WL 4474263, at * 6 (quoting 4 William B. Rubenstein, Newberg on Class Actions § 13:48 (5th ed. 2020)), which asks "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on

9

behalf of the class?" *Hanlon*, 150 F.3d at 1020; *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (same).

Rule 23(e)(2)(A) is satisfied for the same reasons that Rule 23(a)(4) is satisfied. As holders of Sandbridge common stock as of June 1, 2021 that were eligible to vote at Sandbridge's special meeting on July 14, 2021, Plaintiffs' claims are typical of those of the Settlement Class; their interests are thus fully aligned with the Settlement Class to maximize the potential recovery. *See Davis v. Yelp, Inc.*, 2022 WL 21748777, at *2 (N.D. Cal. Aug. 1, 2022) (party with claims that are "typical" with absent class members shares "interest in obtaining the largest possible recovery in this Action"). Similarly, by working on a contingency basis, "Plaintiff's counsel has incentive to litigate for the best possible recovery for the entire proposed Settlement Class." *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 612 (S.D. Cal. 2008). As such, Plaintiffs and Lead Counsel have aggressively and skillfully prosecuted the claims asserted and engaged in extensive settlement negotiations, zealously pushing for the greatest recovery possible. Lead Counsel has expended considerable time, effort, and resources pursuing a favorable recovery, which efforts have included (i) conducted an extensive investigation of the alleged wrongdoing; (ii) drafted the Amended Consolidated Complaint for Violations of the Federal Securities Laws ("AC"), ECF No. 80; (iii) survived the Owlet Defendants' motion to dismiss despite the PSLRA's heightened pleading standard and automatic stay of discovery; (iv) pursued fact discovery; (v) conducted extensive consultations with experts to evaluate potential damages; (vi) drafted a detailed mediation statement, addressing liability and damages; (vii) participated in a formal full day in-person mediation session before Mr. Murphy to obtain a favorable settlement for Plaintiffs and the Settlement Class; (viii) engaged in negotiations regarding the terms of the proposed Settlement; and (ix) worked with a financial damages expert to craft a plan of allocation that treats Plaintiffs and all other Settlement Class Members fairly. *See* Weinrib Decl. ¶¶ 36, 46.

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, 2:21-cv-09016-FLA-JEM

Plaintiffs oversaw and assisted with the prosecution of the claim, and Lead Plaintiff answered extensive discovery propounded upon him by Defendants. *Id.* ¶¶ 67-69, Exs. 3-4. These facts strongly indicate that Plaintiffs will continue to vigorously prosecute the Action for the benefit of the Settlement Class.

## 2. The Settlement Is the Product of Arm's-Length Negotiations

Rule 23(e)(2)(B) requires the Court to consider whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Courts in the Ninth Circuit "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). As a result, settlements that result from non-collusive, procedurally fair negotiations are presumed fair. *See Wireless Facilities*, 253 F.R.D. at 610.

Here, the Parties participated in a full-day mediation session with Mr. Murphy, which did not result in a settlement. Weinrib Decl., at 17. Following the mediation, Mr. Murphy made a proposal to settle the action for $1.75 million, which all Parties ultimately accepted. *Id.* The arm's length nature of the extensive settlement negotiations and the involvement of a mediator with substantial experience mediating securities class actions support the conclusion that the Settlement is fair and was achieved free of collusion. *In re QuantumScape Sec. Litig.*, 2024 WL 3491039, at *1, *10 (N.D. Cal. July 18, 2024) (preliminarily approving settlement achieved with the assistance of Mr. Murphy); *In re Lyft Inc. Sec. Litig.*, 2022 WL 17740302, at *1, *4, *6 (N.D. Cal. Dec. 16, 2022) (same); *see also In re Illumina, Inc. Sec. Litig.*, 2021 WL 1017295, at *3 (S.D. Cal. Mar. 17, 2021) (settlement reached after a "full day" mediation "with the mediator's assistance" supporting finding the settlement was the product of arm's-length negotiations for purposes of final approval).

To be sure, the Settlement does not display any of the usual hallmarks of a collusive agreement. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Here, the total cash recovery of $1.75 million was put into an interest-

11

bearing escrow account, from which Lead Counsel is seeking an award of fees and expenses. The Settlement does not include a clear sailing provision, and any remaining funds in the Settlement fund are to be distributed to Settlement Class Members without revision to Defendants. *See BofI Holding*, 2022 WL 9497235, at *5 (no hallmarks of collusion when settlement was "non-reversionary"); *Moreno v. Beacon Roofing Supply, Inc.*, 2020 WL 3960481, at *5 (S.D. Cal. July 13, 2020) (Curiel, J.) (same when "no money will revert back to Defendant"). In addition, as explained more fully *infra*, the Plan of Allocation treats all Settlement Class members the same based on their proportionate losses.

Notably, the Settlement was the result of *counseled* negotiation. The endorsement of experienced counsel is yet another factor that "weigh[s] in favor of approval." *BofI Holding*, 2022 WL 9497235, at *5; *see also Ali v. Franklin Wireless Corp.*, 2024 WL 5179910, at *8 (S.D. Cal. Dec. 19, 2024) (entry into settlement by parties represented by "experienced counsel" is accorded "a great deal of weight"). This makes sense; counsel—especially counsel with relevant subject matter experience—is "most closely acquainted with the facts of the underlying litigation." *Mandalevy*, 2022 WL 4474263, at *7; *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."). Counsel for the Parties are experienced and sophisticated litigators who specialize in securities class actions of this type, and forcefully advocated on their clients' behalf. *See In re ImmunityBio, Inc. Sec. Litig.*, 2025 WL 1686263, at *5 (S.D. Cal. June 16, 2025) ("Pomerantz … are experienced securities litigators who have litigated numerous securities class actions on behalf of stakeholders in district courts throughout the country."); *In re Cheetah Mobile, Inc. Sec. Litig.*, 2021 WL 99635, at *4 (C.D. Cal. Jan. 12, 2021) ("Pomerantz [has] extensive experience prosecuting complex securities class actions such as this one,

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, 2:21-cv-09016-FLA-JEM

and are well qualified to represent the putative Class."); *In re Petrobras Sec. Litig.*, 312 F.R.D. 354, 362 (S.D.N.Y. 2016) (Pomerantz is "qualified, experienced and able to conduct the litigation"), *aff'd in part, vacated in part on other grounds*, 862 F.3d 250 (2d Cir. 2017). Their independent judgement that the Settlement is a fair and advantageous result provides further evidence that the Settlement warrants final approval.

### 3.  The Settlement Affords Substantial Relief

The determination of what constitutes a "reasonable" settlement is not susceptible to a mathematical formula. Because "[s]ettlement is the offspring of compromise[,] the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice v. Civ. Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982). Under Rule 23(e)(2)(C), the Court must consider whether "the relief provided for the class is adequate," taking into account four factors enumerated therein. Fed. R. Civ. P. 23(e)(2)(C). As discussed below, each of these factors supports a finding that this recovery provides an excellent outcome for the Settlement Class under the circumstances.

**The Relief Afforded by the Settlement**. The amount of a settlement "is generally considered the most important, because the critical component of any settlement is the amount of relief obtained by the class." *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016). Courts generally consider the "expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). Importantly, a settlement need not compensate class members for the maximum

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT, 2:21-cv-09016-FLA-JEM

potential value of their claims and there is no fixed percentage of the potential recovery that renders a settlement reasonable. Indeed, it has long been the law that "a cash settlement amounting to only a fraction of the potential recovery" may be fair under the circumstances. *See Mego*, 213 F.3d at 459. As explained below, considered in context, the Settlement represents an excellent recovery.

The Settlement here provides the Settlement Class with the certainty of $1.75 million in cash. Plaintiffs' damages expert estimates that if the Settlement Class fully prevailed at trial, if the Court and jury accepted Plaintiffs' damages theory, and the jury verdict survived the inevitable appeals, the total maximum aggregate damages would be approximately $9 million (per share damages equal to the $10 redemption price minus the closing price following the corrective disclosure). Thus, the Settlement Amount represents approximately 19.4% of the total maximum damages potentially available in this Action. This recovery is well above the median recovery of 1.8% in securities class actions settled in 2022, as well as the median recovery of 2.4% in securities class actions with damages of a similar magnitude.[2] However, undoubtedly, even if Plaintiffs prevailed in full on liability, Defendants would have argued that damages per share only equal the Company-specific decline in the price of Owlet stock in response to the alleged corrective disclosure ("Defendants' Damages Theory"). Under that theory, damages would equal approximately $1.1 million, and the Settlement Amount would amount to more than ***100% of damages***. *See Baron v. HyreCar Inc.*, 2024 WL 3504234, at *8 (C.D. Cal. July 19, 2024) (settlement of approximately 2% of total damages is "in line with percentage

---

[2] *See* Janeen McIntosh, Svetlana Starykh, and Edward Flores, Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review (NERA Jan. 24, 2023) at 18 (Fig. 19) (median recovery in securities class actions in 2022 was approximately 1.8% of estimated damages); *Id*. at 17 (Fig. 18) (median recovery in securities class actions that settled between December 2011-December 2022 was 2.4% where estimated damages were between $200-399 million).

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, 2:21-cv-09016-FLA-JEM

recoveries" in other securities class actions); *Farrar v. Workhorse Grp., Inc.*, 2023 WL 5505981, at *7 (C.D. Cal. July 24, 2023) (collecting cases recognizing that average recovery in securities class actions is between 2% to 3% of maximum damages); *Kendall v. Odonate Therapeutics, Inc.*, 2022 WL 1997530, at *5 (S.D. Cal. June 6, 2022) (settlement of 3.49% of maximum damages is "higher than the 2021 median recovery in securities class actions of 1.8%").

**Cost, Risks, and Delay of Continued Litigation**. Rule 23(e)(2)(C)(i) requires the Court to weigh the recovery provided by the Settlement against "the costs, risks, and delay of trial and appeal." In doing so, the Court "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017). Thus, the relief "must be judged 'not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case'" if it continued. *In re Stable Rd. Acquisition Corp. Sec. Litig.*, 2024 WL 3643393, at *8 (C.D. Cal. Apr. 23, 2024) (quoting *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014)). All else being equal, an immediate cash recovery is "preferable to lengthy and expensive litigation with uncertain results," unless the settlement amount is "clearly inadequate." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

While the case has real strengths, there were myriad risks that continued litigation would yield limited or no relief at all. For example, Plaintiffs and Lead Counsel are confident that the Settlement Class meets the requirements for certification but the class has not yet been certified, and Plaintiffs are aware that there is a risk the Court could disagree. *See Espinosa v. Cal. Coll. of S.D., Inc.*, 2018 WL 1705955, at *6 (S.D. Cal. Apr. 9, 2018) (the "risk that the Class would . . . not be certified" favors approval of settlement when defendants planned to "vigorously

oppose" class certification if the case continued). Further, even if Lead Plaintiff prevailed and secured class certification, there is "no guarantee the certification would survive through trial," as Defendants retain the right to decertify or modify the class. *Omnivision*, 559 F. Supp. 2d at 1041. That Defendants could adduce new evidence during the course of discovery to seek such relief further weighs in favor of approving the settlement. *See In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *11 (C.D. Cal. July 28, 2014) (risk that "subsequent facts adduced through discovery might have led to decertification . . . favors approval of the settlement" and collecting cases); *see also Wireless Facilities*, 2008 WL 11338455, at *5 ("The avoidance of risk of maintaining class action certification through[] trial favors settlement of this action"); *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.")

Similarly, Plaintiffs faced significant uncertainty establishing liability on the merits at summary judgment and then trial. Indeed, this Court has already dismissed the Action against the Sandbridge Defendants. Courts regularly recognize that "securities litigation presents complex legal issues and problems of proof." *Baron*, 2024 WL 3504234, at *8 (collecting cases). In order to prevail at summary judgment and trial, Plaintiffs would have to prove, inter alia, that Defendants negligently disseminated the Proxy with false and misleading statements, which Defendants have vigorously disputed and would undoubtedly continue to dispute at summary judgment and trial. For example, Defendants have argued that their statements that the FDA may disagree with Owlet's view that the Smart Sock is not a medical device were not false or misleading given the nature of the FDA's communications with Owlet and because Defendants reasonably held the opinion that the Smart Sock qualified as a wellness product. Further, even if Plaintiffs successfully proved liability, Defendants would have asserted that Plaintiffs could only establish minimal

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT, 2:21-cv-09016-FLA-JEM

damages. Specifically, the Owlet Defendants undoubtedly would have argued that Plaintiffs could only claim the $1.29 per share decline on October 4, 2021 following revelation of the Warning Letter as damages, rather than the $5.81 per share difference in price between the option to redeem Sandbridge securities ($10.00) and the Owlet stock price following the disclosure of the Warning Letter ($4.19).

Regardless of the ultimate outcome, there is no question that further litigation would be exceptionally expensive and time-consuming. It is widely accepted that "securities fraud class actions are notably complex, lengthy, and expensive cases to litigate." *Baker v. SeaWorld Ent., Inc.*, 2020 WL 4260712, at *7 (S.D. Cal. July 24, 2020). Here, discovery costs would only escalate due to additional document productions, disputes concerning the scope of discovery, the need for testimony from an array of experts, and taking and defending numerous fact and expert depositions. *See Farrar*, 2023 WL 5505981, at *7 (costs associated with "[n]umerous depositions and document and other written discovery . . . if the case continued" favors approval). Defendants disputed nearly every aspect of Plaintiffs' claim, and there is no question they would raise every available argument to avoid an adverse judgment if litigation had continued. Thus, there would also be "significant costs and risks associated with class certification, summary judgment, and trial." *Baron*, 2024 WL 3504234, at *8. And even if Lead Plaintiff prevailed at trial, Defendants would undoubtedly engage in "vigorous post-trial motion practice . . . and likely appeals to the Ninth Circuit— delaying any recovery for years." *Baker*, 2020 WL 4260712, at *7; *see also Baron*, 2024 WL 3504234, at *8 (difficulties of proof and costs of litigating securities fraud class action through trial "weigh heavily in favor of approving the Proposed Settlement Agreement"). The Settlement spares the Settlement Class from the substantial cost and delay associated with further litigation. *See Farrar*, 2023 WL 5505981, at *7 (elimination of "costs, risks, and delay strongly suggests the Settlement's adequacy").

---

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, 2:21-cv-09016-FLA-JEM

It is exceedingly difficult to compare the Settlement to any theoretical amount that the Settlement Class could have potentially obtained from Defendants given the uncertainties outlined above. "Through protracted litigation, the settlement class could conceivably extract more, but at a plausible risk of getting nothing." *In re Critical Path, Inc. Sec. Litig.*, 2002 WL 32627559, at *7 (N.D. Cal. June 18, 2002). Thus, the immediate and substantial recovery offered by the Settlement appropriately accounts for the not insubstantial risk that Plaintiffs could receive much less, or nothing at all, if the case continued on. Indeed, because of the inherent risk, cost, and delay of successfully litigating securities class action lawsuits through trial and appeal, courts regularly approve securities settlements that provide a similar, or even lower, recovery. *See, e.g.*, *Hunt v. Bloom Energy Corp.*, 2024 WL 1995840, at *6 (N.D. Cal. May 6, 2024) (settlement for 5.2% of total damages supported final approval); *Hardy v. Embark Tech., Inc.*, 2024 WL 1354416, at *5 (N.D. Cal. Sep. 26, 2023) (same for 1% of damages); *In re Lyft Inc. Sec. Litig.*, 2023 WL 5068504, at *6 (N.D. Cal. Aug. 7, 2023) (same for 3.2% of damages); *Kendall*, 2022 WL 1997530, at *5 (same for 3.49% of damages).

Moreover, Owlet has experienced recurring operating losses and generated negative cash flows from operations since inception and its continued litigation would deplete its insurance, raising a substantial risk to collectability of any judgment.

As such, the Settlement provides a fair and reasonable recovery at any stage of the litigation, but particularly here because costs remained relatively low and significant uncertainty remained on a multitude of issues yet to be litigated.

**Effectiveness of Proposed Method for Distributing Relief**. Rule 23(e)(2)(C)(ii) calls for the court to weigh to potential relief against "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." This analysis requires the court to

"scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims" without being "unduly demanding." Fed. R. Civ. P. 23(e)(2), advisory committee's note to 2018 amendments.

The Court's Preliminary Approval Order established a plan to provide notice to Settlement Class Members, which Plaintiffs and the Claims Administrator duly followed. As the Court directed in the Preliminary Approval Order, the Claims Administrator mailed the Postcard Notice to all those who could be identified with reasonable effort, supplemented by the online publication of the Summary Notice on *Investor's Business Daily* and transmission to *GlobeNewswire* on October 27, 2025. Craig Decl. ¶11. The Claims Administrator estimates successful delivery of 47,307 out of the 47,605 notices disseminated to potential Settlement Class Members, an approximately 99% success rate. *Id.* ¶¶5-10. The Postcard Notice notified Settlement Class Members of the Settlement and directed them to a case-specific website where the Claims Administrator posted key documents including the Stipulation, Notice, Postcard Notice, joint Claim Form, Preliminary Approval Order, and Stipulation. *Id.* ¶13. The website has received 4,697 pageviews from 2,199 unique users. *Id.*

The Notice provides all necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. It "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez*, 563 F.3d at 962. The Notice gave Settlement Class Members all the necessary information they needed to decide whether to opt-out, object, or file a claim. The Notice discloses, among other things: (1) the amount of the Settlement; (2) why the Parties propose the Settlement; (3) the estimated average recovery per damaged share; (4) the maximum amount of attorneys' fees and expenses that Lead Counsel would seek; (5) Lead Counsel's contact information; (6) that Settlement Class Members could object to the Settlement or exclude themselves from the Settlement Class, and the

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, 2:21-cv-09016-FLA-JEM

consequences thereof; and (7) the dates and deadlines for certain Settlement-related events. *See* 15 U.S.C. §78u-4(a)(7). The Notice further explains that the Net Settlement Fund would be distributed to eligible Settlement Class Members who submit valid Proof of Claim forms under the Plan of Allocation as described in the Notice. In sum, the Notice fairly apprises Settlement Class Members of their rights, is the best notice practicable under the circumstances, and complies with the Court's Preliminary Approval Order, Federal Rule of Civil Procedure 23, the PSLRA, and due process. *See, e.g.*, *Stable Rd.*, 2024 WL 3643393, at *11 ("The Notice provides all the necessary information required by Rule 23(c)(2)(B) and satisfies the requirements of the PSLRA, 15 U.S.C. § 78u-4(a)(7).… As such, the notice program has fairly apprised Settlement Class Members of their rights with respect to the Settlement, and is the best notice practicable under the circumstances."); *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *1 (N.D. Cal. Nov. 26, 2007) (approving similar notice program).

These procedures are necessary insofar as neither Plaintiffs nor Defendants possess the trading data necessary for a claims-free process and are regularly held to be "effective" in securities class actions. *See, e.g.*, *Baron*, 2024 WL 3504234, at *9 (finding nearly identical procedures "effective" for preliminary approval in securities class action); *accord Farrar*, 2023 WL 5505981, at *7; *Hessefort v. Super Micro Comput., Inc.*, 2023 WL 7185778, at *5 (N.D. Cal. May 5, 2023); *Schneider*, 2023 WL 11944374, at *8.

**<u>Proposed Award of Attorneys' Fees</u>**. Rule 23(e)(2)(C)(iii) requires the Court to account for "the terms of any proposed award of attorney's fees." Lead Counsel is applying for a fee award of one-third of the Settlement Amount. As explained more fully in the accompanying motion for award of attorneys' fees, the requested award is reasonable considering the work performed and results obtained. Moreover, the Settlement is not contingent on any ruling with respect to attorneys' fees (Stip. ¶¶7.2,

20

8.0), which further supports final approval. *See SEB Inv. Mgmt. AB v. Symantec Corp.*, 2022 WL 409702, at *8 (N.D. Cal. Feb. 10, 2022) (settlement raises no "red flags" for purposes of Rule 23(e)(2)(C)(iii) when it is "not conditioned upon any award of attorney's fees").

Plaintiffs also request a service award of $13,000 ($10,000 for Lead Plaintiff Drew Conant and $3,000 for additional Plaintiff Eric Lee). It is not uncommon for courts to approve service awards to plaintiffs. *See Sypherd*, 2023 WL 1931319, at *6 (granting incentive awards of $10,000 to each Named Plaintiff); *Fleming v. Impax Lab'ys Inc.*, 2021 WL 5447008, at *10 (N.D. Cal. Nov. 22, 2021) (award of $15,000 in securities case "not per se unreasonable" for preliminary approval); *Raffin v. Medicredit, Inc.*, 2018 WL 8621204, at *7 (C.D. Cal. Nov. 30, 2018) (granting $15,000 award to representative who produced documents, sat for deposition, and participated in various motion and settlement discussions); *see also Mandalevy*, 2022 WL 4474263, at *11 (award comprising .27% of settlement amount was reasonable).

**Rule 23(e) Agreements**. Finally, the court must consider "any agreement required to be identified under Rule 23(e)(3)," Fed. R. Civ. P. 23(e)(2)(C)(iv), that is, "any agreement made in connection with the proposal," Fed. R. Civ. P. 23(e)(3). The Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members totaling a certain percentage of the outstanding shares of Sandbridge common stock as of the close of business on June 1, 2021 request exclusion (or "opt out") from the Settlement. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019), *appeal withdrawn sub nom. Tan Chao v. William*, 2020 WL 763277 (2d Cir. Jan. 2, 2020). Its terms are confidential "to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts" for themselves at the

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, 2:21-cv-09016-FLA-JEM

expense of other Settlement Class members. *Farrar*, 2023 WL 5505981, at *10; *see also In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) ("[O]pt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest."), *amended on other grounds*, 2016 WL 6091521 (N.D. Cal. Oct. 19, 2016).

### 4. The Settlement Treats All Class Members Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Such is the case here. Specifically, an Authorized Claimant's pro rata share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. *See BofI Holding*, 2022 WL 9497235, at *7–8 (finding pro rata distribution of settlement constituted equitable treatment of class members); *Christine Asia Co.*, 2019 WL 5257534, at *14 (pro rata distribution method of distributing relief "is standard in securities and other class actions and is effective").

### 5. Application of the Remaining *Hanlon* Factors Supports Approval

Many of the *Hanlon* factors are already addressed above. Consideration of the remaining *Hanlon* factors further confirms that final approval is warranted.

**Reaction of the Settlement Class**. The reaction of the class to the proposed settlement is a "significant factor" weighing on its adequacy. *Delacruz v. CytoSport, Inc.*, 2014 WL 12648451, at *7 (N.D. Cal. July 1, 2014). Indeed, "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms . . . are favorable to the class members." *Omnivision*, 559 F. Supp. 2d at 1043. Pursuant to the Preliminary Approval Order, SCS has sent more than 47,000 copies of the Postcard Notice to potential Settlement Class members or nominees, with a 99% successful delivery rate. *See* Craig Decl. ¶¶5-10. The lack of

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT, 2:21-cv-09016-FLA-JEM

objections or opt-outs with such a high notification rate, indicate a favorable settlement. *Sypherd*, 2023 WL 1931319, at *4.

While the deadline set by the Court for Settlement Class members to lodge objections (January 16, 2026) has not yet passed, the fact that there have been no objections to the Settlement or requests to be excluded from the Settlement to date, is strong evidence that it is fair, reasonable, and adequate, if not highly favorable. *See Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529 ("[t]he complete absence of Class Member objections to the Proposed Settlement speaks volumes with respect to the overwhelming degree of support" and "is compelling evidence that the Proposed Settlement is fair, just, reasonable, and adequate"); *see also, e.g.*, *Ali*, 2024 WL 5179910, at *8 (lack of objections or exclusions in securities settlement "weighs in favor of settlement"); *Derr v. Ra Med. Sys., Inc.*, 2022 WL 21306534, at *5 (S.D. Cal. Sep. 23, 2022) (similar); *Kendall*, 2022 WL 1997530, at *6 (similar). To the extent there are any objections to the Settlement lodged after this filing, they will be addressed in Plaintiffs' reply, due January 30, 2026.

**<u>Discovery Conducted to Date and Stage of Proceedings</u>**. The focus of this inquiry is whether the parties "carefully investigated the claims before reaching a resolution." *Hardy*, 2024 WL 1354416, at *5. As the Ninth Circuit has held, "formal discovery is not a necessary ticket to the bargaining table" where the parties have sufficient information to make an informed decision about settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). Thus, "[t]he fact that formal discovery was in its early stages does not weigh against final approval." *Stable Rd.*, 2024 WL 3643393, at *9. On the contrary, the exchange of initial information can further support a finding that counsel's assessment of the claims was "well-informed." *Id.*

Here, Lead Plaintiffs conducted an extensive investigation of Sandbridge and Owlet, including interviewing former employees and analyzing numerous publicly

available documents. Moreover, Plaintiffs engaged in substantial briefing on the motion to dismiss, consulted with experts, the Parties exchanged detailed mediation briefs, and participated in a mediation process in conjunction with an experienced mediator. *Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at *5 (S.D.N.Y. Dec. 14, 2017) ("Although the action did not proceed to formal discovery, Lead Plaintiffs (i) reviewed vast amounts of publicly available information, (ii) conducted interviews of numerous individuals, and (iii) consulted experts on the . . . industry. The Court finds that Lead Plaintiffs were well-informed to gauge the strengths and weaknesses of their claims and the adequacy of the settlement.").

Indeed, Plaintiffs secured the Settlement at a uniquely advantageous stage of the proceedings, having accumulated sufficient information to make an informed decision but before bearing the substantial costs associated with class certification and/or completing merits discovery.

### B. The Plan of Allocation Should Be Approved

As set forth in the long-form Notice, the Net Settlement Fund will be divided among Settlement Class members who submit timely and valid Claims in accordance with the Plan of Allocation described therein. ECF No. 144-2, at 75-78 of 118. A plan for allocating settlement proceeds, like the settlement itself, should be approved if it is "fair, reasonable and adequate." *Omnivision*, 559 F. Supp. 2d at 1045. A plan of allocation "need not be perfect." *Brown v. Brewer*, 2012 WL 12882380, at *1 (C.D. Cal. Jan. 18, 2012). Rather, an allocation formula that has a "reasonable, rational basis" satisfies the requirement, "particularly if recommended by competent class counsel." *Id.* Generally, a plan of allocation that reimburses class members based on the extent of their injuries is reasonable. *Mauss v. NuVasive, Inc.*, 2018 WL 6421623, at *4 (S.D. Cal. Dec. 6, 2018).

As described in the Notice, the Plan of Allocation was developed with the assistance of Plaintiffs' damages expert and designed to equitably distribute the Net

24

Settlement Fund to Authorized Claimants based on their respective economic losses as a result of the alleged fraud, as opposed to market-wide factors, industry-wide factors, or company-specific factors unrelated to the alleged fraud. *See* ECF No. 144-2, at 76 of 118. The Net Settlement Fund will be distributed to each Authorized Claimant on *pro rata* basis based on the amount of their Recognized Loss relative to the total Net Settlement Fund. *Id.* If the Recognized Loss is less than $10.00, then no distribution will be made. *Id.* at 77 of 118. Courts have found nearly identical allocation plans to be fair, reasonable, and adequate in other securities class action settlements. *See, e.g.*, *Ali*, 2024 WL 5179910, at *9 (collecting cases). Indeed, plans of this type are "customary" and "standard" in securities class action settlements. *Bernstein v. Ginkgo Bioworks Holdings, Inc.*, 2024 WL 5112227, at *5 (N.D. Cal. Dec. 13, 2024). The fairness of the plan is not disturbed by the provision not to pay *de minimis* claims less than $10. Such small checks are frequently discarded by recipients and "cause a disproportionate administrative expense to the fund," and, thus, other Settlement Class members. *In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 897 (9th Cir. 2017). For this reason, courts regularly approve plans with similar minimum thresholds. *Id.*; *see also Baron*, 2024 WL 3504234, at *11; *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *11 (N.D. Cal. Dec. 18, 2023), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).

Moreover, the lack of any objections to the Plan of Allocation after distributing the Notice provides further evidence that it is fair. *See Mauss*, 2018 WL 6421623, at *4.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the unopposed motion for final approval of the Section 14(a) class action settlement.

Dated: January 2, 2026    **POMERANTZ LLP**

By: *Tamar A. Weinrib*

25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Jeremy A. Lieberman
Tamar A. Weinrib
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
taweinrib@pomlaw.com

*Lead Counsel for Plaintiffs*

MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT, 2:21-cv-09016-FLA-JEM