POMERANTZ LLP
Tamar A. Weinrib
600 Third Avenue, 20th floor
New York, New York 10016
Telephone: (646) 581-9973
taweinrib@pomlaw.com

*Lead Counsel for Plaintiffs*

**Additional Counsel on Signature Page**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| MICHAEL J. BUTALA, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> OWLET, INC. f/k/a SANDBRIDGE ACQUISITION CORPORATION, KURT WORKMAN, KATE SCOLNICK, KEN SUSLOW, RICHARD HENRY, DOMENICO DE SOLE, RAMEZ TOUBASSY, JAMIE WEINSTEIN, KRYSTAL KAHLER, and MICHAEL F. GOSS, <br><br> Defendants. | Case No.: 2:21-cv-09016-FLA-JEM <br><br> Honorable Fernando L. Aenlle-Rocha <br><br> **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND COMPENSATORY AWARDS TO PLAINTIFFS** <br><br> Hearing Date: February 6, 2026 <br> Hearing Time: 1:30 p.m. <br> Location: Courtroom 6B |

## **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................1

II.     CASE BACKGROUND ..............................................................................4

III.    THE COURT SHOULD AWARD ATTORNEYS' FEES IN THE AMOUNT OF ONE-THIRD OF THE COMMON FUND ........................................................5

        A.    Lead Counsel is Entitled to a Fee Award from the Common Fund ..............5

        B.    The Court Should Award Lead Counsel a Reasonable Percentage of the Common Fund ........................................................6

        C.    The Requested Attorneys' Fees are Reasonable and Merited ......................8

              1.   Lead Counsel Achieved an Outstanding Result for the Settlement Class ...........................................................9

              2.   The Risks and Complexity of the Litigation Support the Requested Fee Amount ......................................................11

              3.   Lead Counsel Skillfully Managed This Case......................................14

              4.   Lead Counsel Undertook a Significant Financial Risk in Pursuing the Action .....................................................16

              5.   Fee Awards in Similar Cases Further Support an Award of One-Third of the Settlement ..................................................18

              6.   A Lodestar Crosscheck Supports the Reasonableness of the Requested Fee ..........................................................19

              7.   The Settlement Class's Reaction Supports the Requested Fee Award .............................................................21

IV.     LEAD COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARY TO ACHIEVE THE BENEFIT OBTAINED ............................23

V.      THE COURT SHOULD APPROVE THE AWARDS TO PLAINTIFFS .........24

VI.     CONCLUSION..........................................................................................26

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFFS, 2:21-cv-09016-FLA-JEM

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
    572 F.3d 221 (5th Cir. 2009) ................................................................................ 12, 13

*Atlas v. Accredited Home Lenders Holding Co.*,
    2009 WL 3698393 (S.D. Cal. Nov. 4, 2009) ............................................................. 9

*Bickley v. Schneider Nat'l Carriers, Inc.*,
    2016 WL 6910261 (N.D. Cal. Oct. 13, 2016) ......................................................... 10

*Blum v. Stenson*,
    465 U.S. 886 (1984) .................................................................................................. 6

*Brown v. China Integrated Energy Inc.*,
    2016 WL 11757878 (C.D. Cal. July 22, 2016) .................................................... 24, 25

*Cheng Jiangchen v. Rentech, Inc.*,
    2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ....................................... 8, 11, 14, 19

*City of Providence v. Aeropostale, Inc.*,
    2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot
    v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) ............................................................ 18

*Feller v. Transamerica Life Ins. Co.*,
    2019 WL 6605886 (C.D. Cal. Feb. 6, 2019) .......................................................... 21

*Fox v. Vice*,
    563 U.S. 826 (2011) ................................................................................................ 20

*Glass v. UBS Fin. Servs., Inc.*,
    331 F. App'x 452 (9th Cir. 2009) ............................................................................. 7

*Glickenhaus & Co. v. Household Int'l, Inc.*,
    787 F.3d 408 (7th Cir. 2015) ................................................................................ 17

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014) .................................................................................................. 5

ii

*Hashem v. NMC Health PLC*,
    2022 WL 3573145 (C.D. Cal. Apr. 8, 2022) ........................................................... 19

*Hefler v. Wells Fargo & Co.*,
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v.
    Pekoc*, 802 F. App'x 285 (9th Cir. 2020) ................................................................. 12

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ................................................................................................... 9

*In re Am. Apparel, Inc. S'holder Litig.*,
    2014 WL 10212865 (C.D. Cal. July 28, 2014) ..................................... 14, 18, 19, 22

*In re Amgen Inc. Sec. Litig.*,
    2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ................................................... 12, 13

*In re Apollo Grp. Inc. Sec. Litig.*,
    2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ........................................................... 20

*In re Banc of Cal. Sec. Litig.*,
    2020 WL 1283486 (C.D. Cal. Mar. 16, 2020) ...................................................... 8, 19

*In re Brooktree Sec. Litig.*,
    915 F. Supp. 193 (S.D. Cal. 1996) ............................................................................ 6

*In re Genworth Fin. Sec. Litig.*,
    210 F. Supp. 3d 837 (E.D. Va. 2016) ...................................................................... 20

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. June 10, 2005) ................................................. *passim*

*In re HP Inkjet Printer Litig.*,
    716 F.3d 1173 (9th Cir. 2013) ................................................................................... 9

*In re Illumina, Inc. Sec. Litig.*,
    2021 WL 1017295 (S.D. Cal. Mar. 17, 2021) ..................................................... 12, 24

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) .................................................................... 23

*In re K12 Inc. Sec. Litig.*,
    2019 WL 3766420 (N.D. Cal. July 10, 2019) ........................................................ 9, 19

iii

*In re LJ Int'l, Inc. Sec. Litig.*,
   2009 WL 10669955 (C.D. Cal. Oct. 19, 2009) ........................................................ 11

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) .............................................................*passim*

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ..................................................................................... 8

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) .................................................................................. 8, 11

*In re Petrobras Sec. Litig.*,
   312 F.R.D. 354 (S.D.N.Y. 2016), *aff'd in part, vacated in part on other
   grounds sub nom. In re Petrobras Sec.*, 862 F.3d 250 (2d Cir. 2017) ..................... 14

*In re Petrobras Sec. Litig.*,
   317 F. Supp. 3d 858 (S.D.N.Y. 2018) ...................................................................... 15

*In re Stable Rd. Acquisition Corp.*,
   2024 WL 3643393 (C.D. Cal. Apr. 23, 2024) .......................................... 6, 10, 13, 24

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
   535 F. Supp. 2d 249 (D.N.H. 2007) ......................................................................... 20

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ............................................................................ 5, 6, 16

*In re Zynga Inc. Sec. Litig.*,
   2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) .......................................................... 15

*Jenson v. First Tr. Corp.*,
   2008 WL 11338161 (C.D. Cal. June 9, 2008) .......................................................... 10

*Johnson v. US Auto Parts Network, Inc.*,
   2008 WL 11343481 (C.D. Cal. Oct. 9, 2008) .......................................................... 11

*Katz v. China Century Dragon Media, Inc.*,
   2013 WL 11237202 (C.D. Cal. Oct. 10, 2013) ........................................................ 23

*Lopez v. Youngblood*,
   2011 WL 10483569 (E.D. Cal. Sep. 2, 2011) ............................................................ 7

iv

*Nat'l Fed'n of the Blind v. Target Corp.*,
2009 WL 2390261 (N.D. Cal. Aug. 3, 2009) ............................................................ 16

*Ontiveros v. Zamora*,
303 F.R.D. 356 (E.D. Cal. 2014) ............................................................................. 23

*Paul, Johnson, Alston & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989) ................................................................................. 5, 8

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ............................................................................... 18

*Romero v. Producers Dairy Foods, Inc.*,
2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) .......................................................... 19

*Singer v. Becton Dickinson & Co.*,
2010 WL 2196104 (S.D. Cal. June 1, 2010) .......................................................... 8, 19

*Spann v. J.C. Penney Corp.*,
211 F. Supp. 3d 1244 (C.D. Cal. 2016) ................................................................... 21

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007)................................................................................................... 5

*Todd v. STAAR Surgical Co.*,
2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) .......................................................... 25

*Union Asset Mgmt. Holding A.G. v. Dell*, *Inc.*,
669 F.3d 632 (5th Cir. 2012) .................................................................................... 7

*Vedachalam v. Tata Consultancy Servs., Ltd.*,
2013 WL 3941319 (N.D. Cal. July 18, 2013) ............................................................ 9

*Vincent v. Hughes Air W., Inc.*,
557 F.2d 759 (9th Cir. 1977) .................................................................................... 5

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ........................................................................*passim*

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005), *superseded on other grounds*, *as*
*recognized in Moses v. N.Y. Times Co.*, 79 F.4th 235 (2d Cir. 2023) ...................... 6

v

**Statutes**

15 U.S.C. § 78u-4...........................................................................................................7, 24

Private Securities Litigation Reform Act of 1995 ....................................................*passim*

**Other Authorities**

H.R. Rep. No. 104-369 (1995)........................................................................................24

Plaintiffs individually and on behalf of all Settlement Class Members[1] respectfully submit this memorandum in support of their motion for attorneys' fees, reimbursement of litigation expenses, and awards to Plaintiffs.

## I.    INTRODUCTION

Following their diligent and effective litigation of this Action, Lead Counsel secured a Settlement that recovers $1,750,000 for the Settlement Class, which represents 19.4% of estimated aggregate damages (or 100% under Defendants' Damages Theory, defined *infra*). Weinrib Decl. ¶22. Lead Counsel have not received any compensation to date in this Action even as they risked substantial amounts of time and money. *Id.* ¶45. Plaintiffs respectfully request that the Court award Lead Counsel: (i) attorneys' fees in the amount of one-third of the Settlement Amount, or $583,333.33, and (ii) reimbursement of their out-of-pocket litigation expenses incurred in prosecuting this Action, in the amount of $60,582.48, plus any interest earned on both of these amounts

---

[1] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the Stipulation of Settlement dated January 31, 2025 (the "Stipulation" or "Stip."), ECF No. 144-2. Internal citations and quotations are omitted and emphasis is added unless otherwise noted. Citations to the "Weinrib Decl." are to the Declaration of Tamar A. Weinrib in Support of Plaintiffs' Motions For: (1) Final Approval of Class Action Settlement; and (2) Attorneys' Fees, Reimbursement of Expenses, and Compensatory Awards to Plaintiffs, filed herewith. Citations to the "Craig Decl." are to the Declaration of Margery Craig Concerning: (A) Mailing/Emailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections, attached as Exhibit 1 to the Weinrib Decl. Citations to the "Final Approval Brief" are to Plaintiffs' Memorandum of Law in Support of Unopposed Motion for Final Approval of Class Action Settlement, filed herewith.

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND COMPENSATORY AWARDS TO PLAINTIFFS, 2:21-cv-09016-FLA-JEM

at the same rate as earned by the Settlement Fund, for reaching this favorable result. Finally, Plaintiffs request an award of $10,000 for Lead Plaintiff Drew Conant and $3,000 for named Plaintiff Eric Lee, for a total of $13,000 in compensatory awards.

The fee request is fully warranted under the circumstances. Lead Counsel prosecuted this Action on a wholly contingent basis without any guarantee of remuneration. Despite the risk, Lead Counsel advanced over approximately 580 hours of professional time to the prosecution of this matter, representing $604,966.50 in legal services. As compensation for their efforts, Lead Counsel request an award of attorneys' fees in the amount of one-third of the gross Settlement Fund, totaling $583,333.33. The requested fee amount is justified by the significant expertise that Lead Counsel brought to bear in this matter. Indeed, Lead Counsel vigorously prosecuted this case for over three years on behalf of Plaintiffs, and at the time of Settlement had already: (i) conducted an extensive investigation of the alleged wrongdoing; (ii) drafted the Amended Consolidated Complaint for Violations of the Federal Securities Laws ("AC"), ECF No. 80; (iii) survived the Owlet Defendants' motion to dismiss despite the PSLRA's heightened pleading standard and automatic stay of discovery; (iv) pursued fact discovery; (v) conducted extensive consultations with experts to evaluate potential damages; (vi) drafted a detailed mediation statement, addressing liability and damages; (vii) participated in a formal full day in-person mediation session before Mr. Murphy to obtain a favorable

2

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND COMPENSATORY AWARDS TO PLAINTIFFS, 2:21-cv-09016-FLA-JEM

settlement for Plaintiffs and the Settlement Class; (viii) engaged in negotiations regarding the terms of the proposed Settlement; and (ix) worked with a financial damages expert to craft a plan of allocation that treats Plaintiffs and all other Settlement Class Members fairly. The requested fee amount is also squarely within the typical range of attorneys' fees awarded in similar securities class actions in the Ninth Circuit and justified by a lodestar cross-check. Indeed, a cross-check against the lodestar yields a *0.96 lodestar multiplier*, thus confirming that the fee request is reasonable.

Lead Counsel also seeks reimbursement for $60,582.48 in out-of-pocket expenses Lead Counsel incurred in connection with the prosecution of the claims in this Action. As detailed more fully herein, these expenses were reasonable and necessary for the successful prosecution of this Action and are of the kind regularly reimbursed by courts within this Circuit.

Plaintiffs similarly requests compensatory awards in the amounts of $10,000 for Lead Plaintiff Drew Conant, and $3,000 for Plaintiff Eric Lee, for their personal time and effort dedicated to the successful prosecution of this Action for the benefit of the Settlement Class. Among other things, Plaintiffs' efforts have included consultations with counsel regarding their roles as representatives of the Class, reviewing and approving court filings, keeping abreast of case developments, participating in discovery, and approving the Settlement. These types of efforts are regularly compensated by courts in

this Circuit.

Notably, these requests appear to enjoy unanimous support from the Settlement Class. Following the Court's preliminary approval of the Settlement on September 15, 2025, Postcard Notice was sent to almost 33,000 potential Settlement Class Members. The Notice posted to the Claims Administrator's website informed Settlement Class Members that Lead Counsel intended to apply for an award of attorney fees in an amount not to exceed one-third of the Settlement Amount; reimbursement of litigation expenses; and compensatory awards to Plaintiffs in an amount not to exceed $13,000 ($10,000 for Lead Plaintiff and $3,000 for Plaintiff Eric Lee). The Notice also explained that Settlement Class members had the right to object to any part of the proposed Settlement or exclude themselves from the Settlement. To date, Settlement Class members have not filed *any* objections to these requests, or *any* requests to be excluded, providing strong evidence that the requests are reasonable under the circumstances.

Thus, Plaintiffs and Lead Counsel respectfully request that the Court grant the Motion in full.

## II.    CASE BACKGROUND

A detailed description of the procedural history, settlement negotiations, and the considerations leading to the Settlement is set forth in the Final Approval Brief, filed concurrently herewith and incorporated by reference herein.

4

## III.    THE COURT SHOULD AWARD ATTORNEYS' FEES IN THE AMOUNT OF ONE-THIRD OF THE COMMON FUND

### A.    Lead Counsel is Entitled to a Fee Award from the Common Fund

"[A] private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The purpose of this doctrine is to avoid unjust enrichment. "[T]hose who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*"). "The amount of such a reward is that which is deemed 'reasonable' under the circumstances." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989). Reasonable fee awards are necessary in securities class actions. The Supreme Court has "long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought [] by the Department of Justice and the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007); Brief for the United States as Amicus Curiae Supporting Respondent, at 1-2, *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014) (No. 13-317), 2014 WL 466853, at *1. *Tellabs* and *Halliburton* were both class actions alleging securities fraud. Attorneys' fee awards were necessary to provide

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND COMPENSATORY AWARDS TO PLAINTIFFS, 2:21-cv-09016-FLA-JEM

incentives for private lawyers to file those actions, and one is similarly necessary here.

### B. The Court Should Award Lead Counsel a Reasonable Percentage of the Common Fund

Under the "common fund doctrine" a reasonable fee may be based on "a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). District courts in the Ninth Circuit have discretion to award fees in common fund cases based on either the "lodestar/multiplier" method or the percentage-of-the-fund method. *WPPSS*, 19 F.3d at 1295-96. "Despite this discretion, use of the percentage method in common fund cases appears to be dominant." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008); *In re Stable Rd. Acquisition Corp.*, 2024 WL 3643393, at *11 (C.D. Cal. Apr. 23, 2024) ("[W]here there is an easily quantifiable benefit to the class—such as a cash common fund—the percentage-of-the-fund approach is the prevailing method.").

Among other benefits, the percentage-of-the-fund method "aligns the interests of class counsel and the class, rather than rewarding attorneys for hours spent on cases, as the lodestar method does." *In re Brooktree Sec. Litig.*, 915 F. Supp. 193, 196 (S.D. Cal. 1996); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002) (affirming 28% fee, representing 3.65 multiplier, disfavoring lodestar for incentivizing lawyers to generate more hours and not to settle early). The percentage method "provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart*

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND COMPENSATORY AWARDS TO PLAINTIFFS, 2:21-cv-09016-FLA-JEM

*Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005), *superseded on other grounds*, Fed. R. Civ. P. 23(e)(2), *as recognized in Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023). The percentage method also preserves judicial resources by sidestepping time-consuming lodestar analysis while saving the Settlement Class from the delays necessitated by the Court's review. *Lopez v. Youngblood*, 2011 WL 10483569, at *4 (E.D. Cal. Sep. 2, 2011) ("[T]he lodestar method is difficult to apply [and] time consuming to administer . . . .").

Finally, the PSLRA provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a *reasonable percentage* of the amount" recovered for the class. 15 U.S.C. §78u-4(a)(6). "Part of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation." *Union Asset Mgmt. Holding A.G. v. Dell*, *Inc.*, 669 F.3d 632, 643 (5th Cir. 2012).

For these reasons the Court should award attorneys' fees based on the percentage-of-recovery method. The Court should use an informal lodestar cross-check only to assess the reasonableness of the percentage award. *See Vizcaino*, 290 F.3d at 1050 n.5 (using lodestar as "a cross-check on the reasonableness of a percentage figure"); *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456 (9th Cir. 2009) ("[T]he district court properly performed an informal lodestar cross-check . . . .").

7

**C.     The Requested Attorneys' Fees are Reasonable and Merited**

In the Ninth Circuit, 25% is the "benchmark" award for attorneys' fees. *See, e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015); *Paul, Johnson*, 886 F.2d at 273. Nonetheless, a court "may adjust the benchmark when special circumstances indicate a higher or lower percentage would be appropriate." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming a one-third percentage fee award). "[I]n most common fund cases, the award exceeds that benchmark." *Omnivision*, 559 F. Supp. 2d at 1047-49 (collecting authority); *accord In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 & n.14 (C.D. Cal. June 10, 2005) (noting that "courts in this circuit, as well as other circuits, have awarded attorneys' fees of 30% or more in complex class actions" and granting fees of one-third of the settlement fund).

Indeed, courts in this Circuit have not hesitated to award one-third of the settlement fund as attorneys' fees in securities class actions. *See, e.g.*, *Heritage*, 2005 WL 1594403, at *19 (awarding one-third of the fund, and collecting cases awarding one-third of the fund); *Singer v. Becton Dickinson & Co.*, 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (awarding 33.33% of common fund, and collecting cases, noting that "the request for attorneys' fees in the amount of 33.33% of the common fund falls within the typical range of 20% to 50% awarded in similar cases"); *see also In re Banc of Cal. Sec. Litig.*, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (awarding 33% fee request); *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *7 (C.D. Cal. Oct. 10, 2019) (approving

8

one-third fee award); *In re K12 Inc. Sec. Litig.*, 2019 WL 3766420, at *1 (N.D. Cal. July 10, 2019) (approving 33% attorneys' fees).

In the Ninth Circuit, factors that courts use to determine whether the requested fee percentage is fair and reasonable include: (1) the results achieved; (2) the risk and complexity of the litigation; (3) the skill required to achieve the settlement; (4) the quality of work performed; (5) the contingent nature of the fee and the financial burden; (6) awards made in similar cases; (7) the reaction of the class; and (8) the lodestar cross-check. *See Vedachalam v. Tata Consultancy Servs., Ltd.,* 2013 WL 3941319, at *1 (N.D. Cal. July 18, 2013); *Omnivision*, 559 F. Supp. 2d at 1046 (similar). Of course, "[t]he relative degree of importance to be attached to any particular factor will depend upon the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Atlas v. Accredited Home Lenders Holding Co.*, 2009 WL 3698393, at *3 (S.D. Cal. Nov. 4, 2009). Here, each of these factors supports awarding attorneys' fees of 33% of the common fund.

### 1.    Lead Counsel Achieved an Outstanding Result for the Settlement Class

Courts have consistently recognized that the ultimate result achieved is a major factor to be considered in making a fee award. *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (the "most critical factor is the degree of success obtained" when awarding attorneys' fees); *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir.

2013) (tethering fee award "to the value of the class recovery"); *Bickley v. Schneider Nat'l Carriers, Inc.*, 2016 WL 6910261, at \*4 (N.D. Cal. Oct. 13, 2016) (awarding one-third for attorneys' fees for "substantial monetary recovery"); *Jenson v. First Tr. Corp.*, 2008 WL 11338161, at \*12, \*16 (C.D. Cal. June 9, 2008) (awarding one-third fee request where counsel achieved "highly-favorable outcome"); *Heritage*, 2005 WL 1594403, at \*19 ("significant results achieved" weighed "strongly in favor" of one-third fee award).

The proposed $1.75 million all cash, non-reversionary Settlement is an outstanding result for the Settlement Class, both quantitatively and when weighed against the risk of a lesser (or no) recovery if the case proceeded through class certification, summary judgment, and trial. Plaintiffs' damages expert estimates that if Plaintiffs had *fully prevailed* at the pleading stage, summary judgment, and after a jury trial, and if the Court and jury accepted Plaintiffs' damages theory—*i.e.*, Plaintiffs' *best-case scenario*—the total *maximum* damages would be approximately $9 million (per share damages equal to the $10 redemption price minus the closing price following the corrective disclosure). As a percentage of estimated damages, the Settlement Amount is *significantly* higher than the 2024 median recovery in securities class action settlements of 1.2%, according to a recent study conducted by NERA Economic Consulting, and falls within the range of approval. *See* Edward Flores & Svetlana Starykh, Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review, at 27 (NERA Jan. 22, 2025); *Stable Rd.*, 2024

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND COMPENSATORY AWARDS TO PLAINTIFFS, 2:21-cv-09016-FLA-JEM

WL 3643393, at *8 (approving final settlement of $8.5 million representing approximately 10.5% of the estimated maximum damages); *Rentech, Inc.*, 2019 WL 5173771, at *7 (approving final settlement of $2.05 million representing approximately 10% of the estimated maximum damages potentially available); *In re LJ Int'l, Inc. Sec. Litig.*, 2009 WL 10669955, at *4, *8 (C.D. Cal. Oct. 19, 2009) (approving final settlement of $2 million representing approximately 4.5% of the maximum recovery of $44 million). Thus, a recovery of over 19% is an excellent result, especially when compared to the risks of continued litigation. Moreover, under Defendants' Damages Theory (as defined in the Final Approval Brief), the Settlement Amount represents a recovery of ***more than 100%*** of maximum recoverable damages.

### 2. The Risks and Complexity of the Litigation Support the Requested Fee Amount

The requested fee is reasonable because Lead Counsel obtained a favorable result even though it faced substantial risks. *See Pac. Enters.*, 47 F.3d at 379 (fees were justified "because of the complexity of the issues and the risks"); *Vizcaino*, 290 F.3d at 1048 ("Risk is a relevant circumstance."). Securities class actions are complex, difficult to prove, and risky. *Heritage*, 2005 WL 1594389, at *6. As courts in this District have noted, "a number of courts have commented on the difficulty and uncertainty of maintaining a securities class action." *Johnson v. US Auto Parts Network, Inc.*, 2008 WL 11343481, at *3 (C.D. Cal. Oct. 9, 2008) (collecting cases). "To be successful, a securities class-action

plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009).

This case was no exception. From the outset, Lead Counsel understood it was embarking on a complex, expensive, and likely lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require. As detailed in the Final Approval Brief at 14-18, there were many substantial challenges to succeeding in this litigation and to obtaining a common fund recovery.

Though Plaintiffs successfully defeated the Owlet Defendants' motion to dismiss, this Court dismissed Plaintiffs' claims against the Sandbridge Defendants. Weinrib Decl. at 15. Indeed, Plaintiffs faced a "strong possibility" of dismissal because securities fraud cases trigger the "heightened pleading requirements of the [PSLRA]." *In re Illumina, Inc. Sec. Litig.*, 2021 WL 1017295, at *7 (S.D. Cal. Mar. 17, 2021); *see also In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) ("[T]he risks of litigation were real and substantial, given the strict requirements imposed by the PSLRA . . . ."); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018) ("Plaintiffs' Counsel faced substantial risks in pursuing this litigation, given the inherent uncertainties of trying securities fraud cases and the demanding pleading standards of the PSLRA."), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020). As one

12

court put it, "[t]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Flowserve*, 572 F.3d at 235; *see also Stable Rd.*, 2024 WL 3643393, at *12 ("post-PSLRA rulings and empirical studies make it clear that the risk of no recovery has increased significantly" in securities cases since 1995).

Moreover, Plaintiffs still faced significant obstacles and risks in certifying a class, defeating Defendants' anticipated summary judgment motion, proving their claims at trial, establishing damages greater than the Settlement Amount (or establishing damages at all), defending the verdict on appeal, and collecting any judgment given that Owlet has experienced recurring operating losses and generated negative cash flows from operations since inception and continued litigation would have depleted its insurance. Weinrib Decl., at 23. *See, e.g.*, *Omnivision*, 559 F. Supp. at 1047 (highlighting statistic that plaintiffs prevailed in only three jury trials on securities claims between 1996 and 2008); *see also Amgen*, 2016 WL 10571773, at *9 (risk of continued litigation heightened by "highly technical and complex claims involved").

In sum, the obstacles faced by Plaintiffs and Lead Counsel in seeking to recover against the Defendants in this securities class action were significant. Recovering $1.75 million in cash, representing over 19.4% of Plaintiffs' estimated damages (or over 100% under Defendants' Damages Theory), in the face of these substantial risks, fully supports

13

the requested fee award in the amount of one-third of the Settlement Amount.

### 3. Lead Counsel Skillfully Managed This Case

The skill required to litigate this Action and the quality of work performed support the requested attorneys' fee award. "The prosecution and management of a complex national class action requires unique legal skills and abilities. This is particularly true in securities cases because the Private Securities Litigation Reform Act makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Rentech, Inc.*, 2019 WL 5173771, at *10; *see also In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014) (similar).

Here, Court-appointed Lead Counsel Pomerantz LLP ("Pomerantz") is among the most experienced and skilled practitioners in the securities litigation field, and has a long and successful track record in securities cases throughout the country, including within this Circuit. *See* Weinrib Decl. Ex. 2 (Pomerantz Firm Resume). Lead Counsel's reputation as experienced counsel in complex securities class actions, and their persistent efforts and thorough investigation greatly enhanced Lead Counsel's ability to negotiate the Settlement. Pomerantz amassed the skills and experience needed to prosecute this case through decades of experience litigating and successfully settling securities class actions. *See, e.g.*, *In re Petrobras Sec. Litig.*, 312 F.R.D. 354, 362 (S.D.N.Y. 2016) (Pomerantz is "qualified, experienced and able to conduct the litigation"), *aff'd in part, vacated in part on other grounds sub nom. In re Petrobras Sec.*, 862 F.3d 250 (2d Cir.

14

2017). In 2018, Pomerantz, as sole Lead Counsel, achieved a historic $3 billion settlement, the largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer. *See In re Petrobras Sec. Litig.*, 317 F. Supp. 3d 858, 862 (S.D.N.Y. 2018).

Lead Counsel participated in vigorous arm's-length settlement negotiations. the Parties participated in a full-day mediation session with Mr. Murphy, which did not result in a settlement. Weinrib Decl., at 17. Following the mediation, Mr. Murphy made a proposal to settle the action for $1.75 million, which all Parties ultimately accepted. *Id.* After three years of vigorous litigation, Plaintiffs and Lead Counsel acquired "fulsome understandings" of the Parties' respective positions on the legal and factual issues in the case during the arm's-length settlement negotiations. *See In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015). Indeed, Plaintiffs and Lead Counsel were sufficiently informed at this stage of the litigation to negotiate a favorable Settlement. Lead Counsel's extensive efforts and skill leading to the Settlement strongly support the requested fee. Weinrib Decl. ¶¶36, 46.

"[T]he quality of opposing counsel is [also] important in evaluating the quality of Plaintiff's counsel's work." *Heritage*, 2005 WL 1594403, at *20. Throughout the litigation and settlement negotiations, the Defendants were represented by attorneys from Latham & Watkins LLP ("Latham"), which staffed the case with lawyers who advocated

15

zealously for their clients. Weinrib Decl. ¶55. Latham is a highly respected law firm with substantial securities litigation experience and resources. *Id.* In the face of this opposition, Plaintiffs and Lead Counsel were nevertheless able to develop a case that was sufficiently strong to persuade Defendants to settle on terms that were favorable to the Settlement Class. Weinrib Decl. ¶56. That Lead Counsel achieved a favorable Settlement in the face of such formidable opposition weighs in favor of the requested fee.

### 4.    Lead Counsel Undertook a Significant Financial Risk in Pursuing the Action

The risk of receiving little or no recovery is a significant factor in awarding attorneys' fees. *See WPPSS*, 19 F.3d at 1299; *Heritage*, 2005 WL 1594389, at *14 ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award.").

Unlike counsel for Defendants, who are typically paid an hourly rate and paid for their expenses on a regular basis, Lead Counsel has not been compensated for any time or expense since this Action's inception. Courts have consistently recognized that the risk of receiving little or no recovery is a significant factor in considering an award of attorneys' fees. For example, in awarding attorneys' fees in *Nat'l Fed'n of the Blind v. Target Corp.*, 2009 WL 2390261, at *7 (N.D. Cal. Aug. 3, 2009), the court noted the risks that plaintiffs' counsel had taken:

> Risk of non-payment is also an issue to be considered. A contingent fee must be higher than a fee for the same legal services paid as they

16

are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. . . . The purpose of a fee enhancement, or so-called multiplier, for contingent risk is to bring the financial incentives for attorneys enforcing important constitutional rights into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis.

While securities cases have always been complex and difficult to prosecute, the PSLRA has only increased the difficulty in successfully prosecuting a securities class action. The risk of no recovery in complex cases of this type is very real. A study of securities class actions filed between 2015 and 2024 found that among the cases in which a decision was reached, 61% of motions to dismiss were granted in defendants' favor. *See* Flores & Starykh, *supra* p. 10, at 17.

The risks Plaintiffs face do not end at the motion to dismiss stage. There are numerous contingent fee cases where plaintiffs' counsel, after the expenditure of thousands of hours, have received no compensation. Even plaintiffs who get past summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 433 (7th Cir. 2015) (ordering new trial on issues relating to loss causation in phase one of bifurcated trial after years of litigation in which plaintiffs prevailed in both phases at trial). In fact, even when a plaintiff is successful at trial, payment is not guaranteed. *See Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND COMPENSATORY AWARDS TO PLAINTIFFS, 2:21-cv-09016-FLA-JEM

verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant).

The risks in this case were no different. Lead Counsel's fees were contingent, so the only certainty was that there would be no fee without a successful result achieved after significant amounts of time, effort and expense had been expended. *See* Weinrib Decl. ¶¶57-60. Lead Counsel risked non-payment of 578.69 hours of professional time, as well as cash expenses of $60,582.48, for almost three years to bring this case to a successful conclusion. *See* Weinrib Decl., ¶¶51, 63-66. "This type of substantial outlay, when there is a risk that no money will be recovered, further supports the award of the requested fees." *Am. Apparel*, 2014 WL 10212865, at *22; *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *14 (S.D.N.Y. May 9, 2014) ("[T]he financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis."), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

### 5. Fee Awards in Similar Cases Further Support an Award of One-Third of the Settlement

Courts often look to fees awarded in comparable cases to determine if the fee requested is reasonable. *See Vizcaino*, 290 F.3d at 1050 n.4. "[I]n most common fund cases, the award exceeds [the] benchmark." *Omnivision*, 559 F. Supp. 2d at 1047. "This is particularly true in securities class actions . . . ." *Am. Apparel*, 2014 WL 10212865, at *23; *see also Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841, at *4 (E.D.

18

Cal. Nov. 14, 2007) (approving a fee award of 33% of the common fund, and noting that "[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery"). Courts in the Ninth Circuit commonly award fees of one-third of the settlement funds. *See, e.g.*, *Heritage*, 2005 WL 1594403, at *19 (awarding one-third of the fund, and collecting cases awarding one-third of the fund); *see also Singer*, 2010 WL 2196104, at *8 (awarding 33.33% of common fund, and collecting cases, noting that "the request for attorneys' fees in the amount of 33.33% of the common fund falls within the typical range of 20% to 50% awarded in similar case").[2] Lead Counsel's fee request is therefore consistent with fee award percentages awarded in this Circuit.

### 6. A Lodestar Crosscheck Supports the Reasonableness of the Requested Fee

"In cases where courts apply the percentage-of-the-fund method to calculate fees, they should use a rough calculation of the lodestar as a cross-check to assess the reasonableness of the percentage award." *Am. Apparel*, 2014 WL 10212865, at *20; *Vizcaino*, 290 F.3d at 1050 ("[T]he lodestar may provide a useful perspective on the reasonableness of a given percentage award."). Courts calculate lodestar by assessing

---

[2] *See Hashem v. NMC Health PLC*, 2022 WL 3573145, at *1-3 (C.D. Cal. Apr. 8, 2022) (approving 33% fee request); *Banc of Cal.*, 2020 WL 1283486, at *1 (awarding 33% fee request); *Rentech, Inc.*, 2019 WL 5173771, at *7 (approving one-third fee award); *K12 Inc.*, 2019 WL 3766420, at *1 (approving 33% attorneys' fees).

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND COMPENSATORY AWARDS TO PLAINTIFFS, 2:21-cv-09016-FLA-JEM

attorneys' hourly rates for reasonableness and multiplying the rates by the number of hours reasonably spent, and then cross-checking the resulting number against the fee award. *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 845 (E.D. Va. 2016). "In securities class actions, it is common for a counsel's [lodestar] figure to be adjusted upward by some multiplier reflecting a variety of factors such as the effort expended by counsel, the complexity of the case, and the risks assumed by counsel." *Heritage*, 2005 WL 1594403, at *22.

When using the lodestar to calculate attorney fee awards, "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). When the lodestar is merely used as a cross-check, "the focus is not on the necessity and reasonableness of every hour of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007). Thus, "an itemized statement of legal services is not necessary for an appropriate lodestar cross-check." *In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at *7 n.2 (D. Ariz. Apr. 20, 2012). Here, the lodestar method – whether used directly or as a "cross-check" on the percentage method – strongly supports the reasonableness of the fee.

Here, Lead Counsel dedicated 578.69 hours of professional time prosecuting this

20

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND COMPENSATORY AWARDS TO PLAINTIFFS, 2:21-cv-09016-FLA-JEM

Action from its inception.[3] Weinrib Decl., ¶¶9, 49. Lead Counsel's total lodestar, based on its attorneys' rates, is $604,966.50. *Id.* Accordingly, the requested fee of one-third of the Settlement Amount, which equates to $583,333.33, represents approximately a 0.96 multiplier. Weinrib Decl. ¶¶9, 52. This is well within the multiplier range frequently used as a crosscheck. *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016). Given the excellent result achieved in this securities action, Lead Counsel's 578.69 hours support the reasonableness of the fee request. *See, e.g.*, *id.* ("Counsel's lodestar yields a 3.07 multiplier, which is well within the range for reasonable multipliers."); *Feller v. Transamerica Life Ins. Co.*, 2019 WL 6605886, at *13 (C.D. Cal. Feb. 6, 2019) (finding a 2.97 multiplier is "well-within the range of appropriate multipliers recognized by this Court and by other courts within the Ninth Circuit"). The lodestar crosscheck, therefore, supports the request for 33% in attorneys' fees from the common fund.

### 7.    The Settlement Class's Reaction Supports the Requested Fee Award

"The existence or absence of objectors to the requested attorneys' fee is a factor [in] determining the appropriate fee award." *Heritage,* 2005 WL 1594403, at *2. The Claims Administrator disseminated 47,605 notices to potential Settlement Class

---

[3] This does not include time spent drafting this Motion or the Final Approval Motion. In addition, Lead Counsel will spend additional time preparing Plaintiffs' reply in support of final approval, preparing for and attending the final approval hearing, directing the claims administration process, and filing a motion for final distribution, but will not seek further compensation. Weinrib Decl. ¶54.

21

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND COMPENSATORY AWARDS TO PLAINTIFFS, 2:21-cv-09016-FLA-JEM

Members and nominees. *See* Craig Decl. ¶¶5-9. The Claims Administrator also published the Summary Notice on *Investor's Business Daily* and transmitted it over *GlobeNewswire*. *Id.* ¶11. The Postcard Notice and Summary Notice each directed potential Settlement Class Members to the Settlement-specific website where documents with relevant Settlement information were posted. The Notice posted to the website informed Settlement Class Members that Lead Counsel would seek attorneys' fees of up to one-third of the Settlement Amount (plus interest), reimbursement of litigation expenses (plus interest), and compensatory awards for Plaintiffs not to exceed $13,000 (or $10,000 for Lead Plaintiff and $3,000 for Plaintiff Eric Lee). ECF No. 144-2, at 65 and 72 of 118. The Notices advised Settlement Class Members of their right to object to any of these requests for relief or request exclusion from the Settlement and explained how to do so. *Id.* at 70-71 and 82 of 118.

The deadline for potential Settlement Class Members to submit objections and requests for exclusion is January 16, 2026. To date, no Settlement Class Member has objected to the requested attorneys' fees, reimbursement of expenses, or awards to Plaintiffs, and no Settlement Class Member has requested exclusion. Craig Decl. ¶¶14-15. The positive reaction of the Settlement Class strongly supports the requests made herein. *Am. Apparel*, 2014 WL 10212865, at *21 (holding that no objections to the fee request and only one class member requesting exclusion supports the attorneys' fee

22

award); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) ("[T]he lack of objection from any Class Member supports the attorneys' fees award.").

## IV.   LEAD COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

"[A]n attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014). Lead Counsel requests reimbursement of $60,582.48 in expenses, which are routinely charged to fee-paying clients. Weinrib Decl., ¶¶26, 51. *See also Immune Response*, 497 F. Supp. 2d at 1177.

Lead Counsel pursued this litigation knowing that it could only recover its expenses if Plaintiffs prevailed at trial and survived on appeal or reached a settlement. Weinrib Decl., ¶64. Lead Counsel had no incentive to incur, and did not incur, unnecessary expenses. *Id.* All of Lead Counsel's expenses were reasonably incurred and necessary for the prosecution of this litigation. *Id.* ¶66. Substantial expenses incurred include: (1) fees for an expert retained to analyze damages and help formulate the Plan of Allocation, (2) investigation fees incurred in connection with preparing the complaints, (3) online legal research fees, (4) mediation fees, and (6) court filing fees. *Id.*, ¶51.The expenses incurred are reflected in Lead Counsel's books and records and were reasonable and necessary to achieve the Settlement. *Id.* Courts have held that these types of expenses are properly charged to the Settlement Class. *See Katz v. China Century Dragon Media,*

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND COMPENSATORY AWARDS TO PLAINTIFFS, 2:21-cv-09016-FLA-JEM

*Inc.*, 2013 WL 11237202, at \*8 (C.D. Cal. Oct. 10, 2013). The categories of expenses for which Lead Counsel here seek reimbursement are the type routinely billed to hourly clients and, therefore, should be paid out of the common fund.

## V.   THE COURT SHOULD APPROVE THE AWARDS TO PLAINTIFFS

The Court should award $10,000 to Lead Plaintiff Drew Conant and $3,000 to Plaintiff Eric Lee, for the time they spent representing the Class. The PSLRA permits "the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4); H.R. Rep. No. 104-369, at 35 (1995) (Conf. Rep.) ("The Conference Committee recognizes that lead plaintiffs should be reimbursed for reasonable costs and expenses associated with service as lead plaintiff, including lost wages, and grants the courts discretion to award fees accordingly."). Class representative "awards are designed to compensate class representatives for work done on behalf of the class, to make up for financial . . . risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Brown v. China Integrated Energy Inc.*, 2016 WL 11757878, at \*13 (C.D. Cal. July 22, 2016). Courts in this district have regularly approved of awards of $10,000 or more to those who perform similar activities for the benefit of absent class members. *See, e.g.*, *Illumina*, 2021 WL 1017295, at \*8 (awarding $25,000 in incentive award to one plaintiff and $27,000 total); *see also Stable Rd.*, 2024 WL 3643393, at \*16 (granting $10,000 award to lead plaintiff

24

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND COMPENSATORY AWARDS TO PLAINTIFFS, 2:21-cv-09016-FLA-JEM

or similar work); *Davis*, 2023 WL 3063823, at *2 (awarding $15,000 for sole lead plaintiff); *Todd v. STAAR Surgical Co.*, 2017 WL 4877417, at *6 (C.D. Cal. Oct. 24, 2017) (awarding $10,000 to lead plaintiff collecting cases).

Plaintiffs performed their duties with attentiveness and diligence, spending time on tasks that include reviewing pleadings, reviewing motion briefing, participating in discovery, keeping abreast of case developments, and corresponding with counsel regarding the litigation and settlement. *See* Weinrib Decl., ¶¶67-69, Exhibits 3-4 ("Plaintiffs' Declarations"). Plaintiffs' Declarations, attached to the Weinrib Decl. as Exhibits 3 and 4, describe Plaintiffs' respective contributions to this litigation, which warrant compensation for their time and efforts expended on the Class's behalf.

The Notice informed Settlement Class Members that Plaintiffs would seek compensatory awards totaling no more than $13,000. ECF No. 144-2, at 65 and 72 of 118. As stated above, to date, no objections have been raised in response to these requests. Craig Decl. ¶15; Weinrib Decl. ¶¶20, 27, 62. Courts in this Circuit routinely award representative plaintiffs similar or greater amounts. *See, e.g.*, *Brown*, 2016 WL 11757878, at *14 (granting awards of $10,000 for each of the two lead plaintiffs).

Plaintiffs dedicated their valuable time, faithfully representing the Settlement Class. Thus, the requested awards to Plaintiffs are reasonable and the Court should award $10,000 to Lead Plaintiff Drew Conant and $3,000 to Plaintiff Eric Lee ($3,000 in total).

25

## VI.    CONCLUSION

For the foregoing reasons, the Court should grant Lead Counsel's application for an award of attorneys' fees, reimbursement of reasonable expenses, and awards to Plaintiffs for services rendered to the Settlement Class.

Dated: January 2, 2026

**POMERANTZ LLP**

By: *Tamar A. Weinrib*
Jeremy A. Lieberman
Tamar A. Weinrib
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
taweinrib@pomlaw.com

*Lead Counsel for Plaintiffs*

26

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 2, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

*/s/ Tamar A. Weinrib*
Tamar A. Weinrib