POMERANTZ LLP
Tamar A. Weinrib
600 Third Avenue, 20th floor
New York, New York 10016
Telephone: (646) 581-9973
taweinrib@pomlaw.com

*Lead Counsel for Plaintiffs*

**Additional Counsel on Signature Page**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| MICHAEL J. BUTALA, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> OWLET, INC. f/k/a SANDBRIDGE ACQUISITION CORPORATION, KURT WORKMAN, KATE SCOLNICK, KEN SUSLOW, RICHARD HENRY, DOMENICO DE SOLE, RAMEZ TOUBASSY, JAMIE WEINSTEIN, KRYSTAL KAHLER, and MICHAEL F. GOSS, <br><br> Defendants. | Case No.: 2:21-cv-09016-FLA-JEM <br><br> Honorable Fernando L. Aenlle-Rocha <br><br> **DECLARATION OF TAMAR A. WEINRIB IN SUPPORT OF PLAINTIFFS' MOTIONS FOR: (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND (2) ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND COMPENSATORY AWARDS TO PLAINTIFFS** <br><br> Hearing Date: February 6, 2026 <br> Hearing Time: 1:30 p.m. <br> Location: Courtroom 6B |

I, Tamar A. Weinrib, hereby declare as follows:

1.    I am a member of the New York Bar admitted to practice *pro hac vice* before this Court and am a partner with the law firm of Pomerantz LLP ("Pomerantz" or the "Firm"). I am fully familiar with the matters below and make this declaration in support of Plaintiff's Unopposed Motions for: a) Final Approval of Class Action Settlement and Plan of Allocation, and b) Attorneys' Fees, Expense Reimbursement, and Compensatory Awards to Plaintiffs, filed concurrently herewith. I have personal knowledge of the matters set forth herein and, if called upon, I could and would testify thereto.[1]

2.    Attached hereto as Exhibit 1 is the Declaration of Margery Craig Concerning: (A) Mailing/Emailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Craig Decl.").

3.    Attached hereto as Exhibit 2 is a copy of the Pomerantz LLP resume.

4.    Attached hereto as Exhibit 3 is the Declaration of Lead Plaintiff Drew Conant.

5.    Attached hereto as Exhibit 4 is the Declaration of Plaintiff Eric Lee.

6.    The Settlement creates a gross settlement fund of $1,750,000 for the benefit of the Settlement Class consisting of all Persons that held Sandbridge Acquisition

---

[1] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the Stipulation of Settlement dated January 31, 2025 (the "Stipulation" or "Stip."), ECF No. 144-2. References herein to "Final Approval Motion" are to the Unopposed Motion for Final Approval of Class Action Settlement; references herein to the "Fee Motion" are to the Unopposed Motion for Attorneys' Fees, Reimbursement of Expenses, and Compensatory Awards to Plaintiffs.

Corporation ("Sandbridge") common stock as of June 1, 2021 and were eligible to vote at Sandbridge's special meeting on July 14, 2021. Excluded from the Settlement Class are: (i) Defendants; (ii) current and former officers and directors of the Company; (iii) members of the immediate family of each of the Individual Defendants; (iv) all subsidiaries and affiliates of the Company and the directors and officers of such subsidiaries or affiliates; (v) all persons, firms, trusts, corporations, officers, directors, and any other individual or entity in which any of the Defendants have a controlling interest; (vi) the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of all such excluded parties; and (vii) any persons or entities who properly exclude themselves by filing a valid and timely request for exclusion.

7.      This declaration, and the accompanying Final Approval Motion, demonstrate why the Settlement is fair, reasonable, and adequate and should be approved by the Court. Moreover, as indicated herein, the Plan of Allocation is based on consultations with Strategic Claims Services ("SCS"), an expert in financial markets and securities litigation, and also warrants final approval.

8.      This declaration, and the accompanying Fee Motion, set forth the work performed by Lead Counsel throughout the litigation, demonstrating that the litigation was vigorously prosecuted, that the Settlement was negotiated at arm's length by experienced and fully informed counsel, and that Lead Counsel's requests for attorneys' fees,

reimbursement of expenses, and compensatory awards to Plaintiffs are therefore reasonable and should be approved by the Court.

9.      Lead Counsel and their professionals have spent, in the aggregate, 578.69 hours in the prosecution of this case against Defendants, with a market value or "lodestar" of $604,966.50 at current billing rates. *See infra*. The fee sought in this case, equal to $583,333.33, would therefore result in a modest multiplier of 0.96.

10.      Moreover, the compensatory awards of $10,000 to Lead Plaintiff Drew Conant and $3,000 to Plaintiff Eric Lee, are supported by their ongoing and consistent supervision and diligent participation in this case, as set forth herein and in the accompanying Fee Motion.

## I.      RELEVANT BACKGROUND AND PROCEDURAL HISTORY

11.      This Action was commenced on November 17, 2021, asserting claims on behalf of a putative class of investors pursuant to §§14(a) and 20(a) of the Securities Exchange Act of 1934 ("1934 Act") against Defendants Owlet, Inc. f/k/a Sandbridge Acquisition Corporation, Kurt Workman, and Kate Scolnick (collectively, "Owlet Defendants"), Defendants Ken Suslow, Richard Henry, Domenico De Sole, Ramez Toubassy, Jamie Weinstein, Krystal Kahler, and Michael F. Goss (collectively, "Sandbridge Defendants," and together with the Owlet Defendants, "Defendants"). ECF No. 1.

4

12.     On September 8, 2023, the Court appointed Lead Plaintiff for the Section 14(a) claim and approved Pomerantz LLP as Lead Counsel. ECF No. 63. Thereafter, Lead Counsel conducted a comprehensive investigation into Defendants' allegedly wrongful acts, which included, among other things: (i) reviewing and analyzing (a) Sandbridge and Owlet's filings with the U.S. Securities and Exchange Commission ("SEC"), (b) public reports, press releases, blog posts, and news articles concerning Sandbridge and Owlet, (c) Sandbridge and Owlet investor call transcripts; (ii) the retention of a private investigator; and (iii) consultation with experts. Based on the foregoing investigation, Lead Plaintiff filed the Amended Consolidated Complaint for Violations of the Federal Securities Laws ("AC") on December 22, 2023 against Defendants. ECF No. 80.

13.     The AC alleges that Defendants negligently disseminated a Proxy Statement to solicit shareholder approval of the de-SPAC merger between Owlet Baby Care Inc. and Sandbridge Acquisition Corporation wherein they falsely stated that their flagship product, the Smart Sock, was not a medical device for which they needed FDA authorization, that it was only possible rather than certain that the FDA would conclude that the Smart Sock was a medical device requiring authorization, that Owlet complied with all relevant FDA regulations, and that Owlet could achieve over a billion dollars in revenue by 2025 based on the premise that it could continue selling the Smart Sock unimpeded without FDA authorization.

14. From the outset of the litigation, Defendants have consistently denied any wrongdoing, liability, or damages. On February 9, 2024, the Owlet Defendants and Sandbridge Defendants separately moved to dismiss the AC. ECF Nos. 92, 94, 95. Lead Plaintiff filed briefs in opposition on March 22, 2024, ECF Nos. 109, 111, and on May 10, 2024, Defendants filed their replies, ECF Nos. 117, 120.

15. On August 5, 2024, the Court denied the Owlet Defendants' motion to dismiss in its entirety, ruling that the AC adequately alleges that they negligently disseminated the Proxy with false and misleading statements given that the FDA had unequivocally communicated to Owlet since 2016 that the Smart Sock is a medical device. ECF No. 124. The Court granted the Sandbridge Defendants' motion to dismiss. *Id.*

16. On August 19, 2024, the Owlet Defendants filed their answers and affirmative defenses to the AC, ECF No. 125. Thereafter, discovery commenced. On September 20, 2024, the Parties filed a Joint Rule 26(f) Discovery Plan. ECF No. 135. Both Parties served discovery requests and both Parties served responses and objections thereto.

17. On November 25, 2024, the Parties voluntarily participated in a full-day mediation session before David M. Murphy, esq. of PADRE. Though the mediation did not result in settlement, thereafter the Parties agreed to a mediator's recommendation and negotiated the terms of the Settlement. Defendants deny the allegations asserted in the AC and the Settlement is entered into by Defendants without any admission of wrongdoing. On December 27, 2024, the Parties notified the Court that they had reached an agreement

6

to settle the claims in the AC. ECF No. 142. On January 6, 2025, the Court entered an Order vacating the case deadlines and setting a January 31, 2025 deadline for Plaintiffs to file a Motion for Preliminary Approval of the settlement. ECF No. 143.

18.     On January 31, 2025, Plaintiffs filed an Unopposed Motion for Preliminary Approval of Class Action Settlement, together with supporting papers, including a fully executed copy of the Stipulation and all exhibits thereto. ECF Nos. 144, 144-2.

19.     On September 15, 2025, the Court entered an order granting preliminary approval of the Settlement, provisionally certifying the Settlement Class for purposes of the Settlement and authorizing the form and manner of providing notice of the Settlement to potential Settlement Class members ("Preliminary Approval Order"). ECF No. 153.

20.     Pursuant to the Court's Preliminary Approval Order, 47,605 notices were disseminated to potential Settlement Class Members and nominees. *See* Craig Decl., ¶¶ 5-9. To date, no Settlement Class Members have objected to the settlement nor have any Settlement Class Members opted out. Craig Decl. ¶¶ 14-15. The deadline to seek exclusion from the Settlement or to object to the Settlement is January 16, 2026. *Id.*

## II.     THE FINAL APPROVAL AND FEE REQUESTS

21.     The Settlement is fair, reasonable, adequate and a strong result for the Settlement Class. The Settlement confers a certain and immediate benefit on the Settlement Class, eliminating the risk of continued litigation which would have included certifying a class, defeating Defendants' anticipated summary judgment motion, proving their claims

at trial, establishing damages greater than the Settlement Amount (or establishing damages at all), and defending a verdict on appeal.

22.     The $1.75 million Settlement Amount represents approximately 19.4% of the total maximum damages of $9 million under their best-case scenario as estimated by Plaintiffs' damages expert (per share damages equal to the $10 redemption price minus the closing price following the corrective disclosure). However, Defendants undoubtedly would have vigorously disputed Plaintiffs' damages estimates and, argued that damages per share only equal the Company-specific decline in the price of Owlet stock in response to the alleged corrective disclosure. Under that scenario, damages would equal approximately $1.1 million and the Settlement would thus represent more than 100% of damages.

23.     Moreover, even if Plaintiffs achieved a judgment equating to the full amount of damages under any damage scenarios, they faced substantial risks regarding collectability given that, since inception, the Company has incurred recurring operating losses, generated negative cash flows from operations, and has a wasting insurance policy.

24.     A lump sum settlement involving a certain cash payment in the face of the numerous challenges set forth herein and in the accompanying Final Approval Motion and Fee Motion, is a favorable outcome. Additionally, the Plan of Allocation is a fair and reasonable method for distributing the Settlement proceeds to Settlement Class Members.

25.     In light of these circumstances, and especially given that the Settlement is the product of comprehensive legal and factual investigation and arm's-length negotiations between experienced counsel and overseen by a well-respected mediator, there is ample support for a finding that the Settlement is fair, reasonable, and adequate, thus warranting final approval of the Settlement and Plan of Allocation.

26.     For litigating this case on a contingency basis and negotiating this settlement, Lead Counsel requests a fee of one third of the Settlement, or $$583,333.33 plus interest earned thereon, and reimbursement of litigation expenses totaling $60,582.48. As explained in the Fee Motion, this fee request is within the reasonable range of percentages typically awarded to Lead Counsel in securities class actions in the Ninth Circuit.

27.     The favorable reaction of the members of the Settlement Class also supports the reasonableness of the Settlement and the fee/award requests. Pursuant to the Notice, the deadline to object to the Settlement and the fee/award requests is January 16, 2026. To date, there have been no objections to the Settlement. Craig Decl., ¶15.

28.     Pursuant to the Notice, the deadline to request exclusion from the Settlement is January 16, 2026. To date, there have been no requests for exclusion received by the Claims Administrator. *Id*., ¶14.

## III.     NOTICE PROCEDURES

29.     At Lead Counsel's direction, and pursuant to the Preliminary Approval Order, the Claims Administrator established a dedicated webpage for the Settlement containing

information related to the current status of the case and the Settlements, including important dates and deadlines such as the date of the Settlement Hearing and the deadlines for requesting exclusion, filing objections, and submitting claims. The webpage also contains the online claim filing link (through which a potential Settlement Class Member can submit a claim) and important case documents such as downloadable versions of the long-form Notices, the joint Claim Form, the joint Postcard Notice, the Preliminary Approval Order, and the Stipulation. *Id.*, ¶13.

30.    Also at Lead Counsel's direction, and pursuant to the Preliminary Approval Order, the Claims Administrator published the Summary Notice electronically on *Investor's Business Daily* and transmitted it over *GlobeNewswire* on October 27, 2025. *Id.* ¶11, Ex. D.

31.    Pursuant to the Court's Preliminary Approval Order, 47,605 notices were disseminated to potential Settlement Class Members and nominees. *See* Craig Decl., ¶9.

## IV.    PLAN OF ALLOCATION

32.    The Notice fully described the proposed Plan of Allocation, which Lead Counsel created after consulting with Plaintiffs' expert and the Claims Administrator, designing it to reimburse Settlement Class Members in a fair and reasonable manner.

33.    Pursuant to the Preliminary Approval Order and as set forth in the Notice, all members of the Settlement Class who wish to participate in the distribution of the Net Settlement Fund had to submit a valid, timely Proof of Claim and all required information

10

by no later than December 12, 2025. As provided in the Stipulation, after deducting all appropriate taxes, administrative costs, attorneys' fees and expenses, the remainder of the Settlement Fund, i.e., the Net Settlement Fund, shall be distributed among Class Members who submit timely and valid Proofs of Claim ("Authorized Claimants") according to the Plan of Allocation.

34. The Plan of Allocation is set forth in detail in the Notice and provides that Authorized Claimants will receive a pro rata share of the Net Settlement Fund based on their respective economic losses as a result of the alleged misstatements and omissions that were at issue in this Action utilizing the Recognized Loss formula described in the Notice.

35. If approved, the Plan of Allocation will govern how the proceeds of the Net Settlement Fund will be distributed among Authorized Claimants. To the extent there are sufficient funds in the Net Settlement Fund, each Authorized Claimant will receive an amount equal to the value of the Authorized Claimant's recognized claim. If, however, as is more likely, the amount in the Net Settlement Fund is not sufficient to permit payment of the total recognized claim of each Authorized Claimant, then each Authorized Claimant shall be paid the percentage of the Net Settlement Fund that each Authorized Claimant's claim bears to the total of the recognized claims of all Authorized Claimants.

## V. THE FAIRNESS AND REASONABLENESS OF THE SETTLEMENT

36. The proposed Settlement is the culmination of careful and efficient litigation followed by protracted arms' length settlement negotiations. The Parties reached the

11

Settlement after three years of litigation during which Lead Counsel had thoroughly investigated the claims and consulted with multiple experts, including a financial economist to calculate estimated damages. Indeed, at the time of Settlement, Lead Counsel had already, *inter alia*: (i) conducted an extensive investigation of the alleged wrongdoing; (ii) drafted the Amended Consolidated Complaint for Violations of the Federal Securities Laws ("AC"), ECF No. 80; (iii) survived the Owlet Defendants' motion to dismiss despite the PSLRA's heightened pleading standard and automatic stay of discovery; (iv) pursued fact discovery; (v) conducted extensive consultations with experts to evaluate potential damages; (vi) drafted a detailed mediation statement, addressing liability and damages; (vii) participated in a formal full day in-person mediation session before Mr. Murphy to obtain a favorable settlement for Plaintiffs and the Settlement Class; (viii) engaged in negotiations regarding the terms of the proposed Settlement; and (ix) worked with a financial damages expert to craft a plan of allocation that treats Plaintiffs and all other Settlement Class Members fairly.

37.    Lead Counsel, experienced securities class action attorneys, evaluated the prospects of obtaining a better result if the case continued forward, considering the risks of this case surviving on the pleadings, at summary judgment, at the class certification stage, and at trial; as well as significant ability-to-pay risks arising from Owlet's precarious financial position. As discussed below and in the Final Approval Motion, Plaintiffs would have faced multiple procedural hurdles and significant merit-based risks if litigation

continued, which would also entail significant additional expenses and delay. Lead Counsel carefully considered each of these risks before agreeing to the Settlement.

38. Although Lead Counsel believes Plaintiffs' claims are meritorious and sufficiently plead, there is no certainty that Plaintiffs would be able to certify a class, defeat Defendants' anticipated motion for summary judgment, prevail at trial, or any subsequent appeals. Defendants have, and would have continued to, vigorously challenge whether Plaintiffs had adequately alleged falsity, loss causation, and damages. Establishing loss causation and damages would have likely involved a battle of the experts with no guarantee as to which expert the Court, and a jury, would credit.

39. Moreover, if the Court did not certify the class, it is unlikely that any individual investor or group of investors would have filed individual claims to recover damages as it would be uneconomical.

40. At summary judgment and trial, Plaintiffs faced the risk that the Court would find that Defendants' statements were not actionably false or misleading. For example, Defendants argued in their motion dismiss that they adequately disclosed the risks associated with its regulatory assessment of the Smart Sock and that they had a reasonable basis for their statements that the Smart Sock did not qualify as a medical device. Moreover, Defendants would have vigorously challenged Plaintiffs' damages theory, and argued that damages per share only equal the Company-specific decline in the price of

Owlet stock in response to the alleged corrective disclosure rather than the $10 redemption price minus the closing price following the corrective disclosure.

41.     Additionally, even if Plaintiffs achieved a judgment at trial and successfully litigated through any appeal, the risk of collecting on that judgment was considerable. Since inception, Owlet has incurred recurring operating losses and generated negative cash flows from operations. According to Owlet's Form 10-Q filed on November 13, 2025, the Company had only $23,760,000 in cash and cash equivalents as of September 30, 2025 but had $113,464,000 in total liabilities. Moreover, continued litigation would have further exhausted Owlet's limited and wasting insurance policy.

42.     In sum, in light of these significant risks, Plaintiffs believe that the proposed Settlement is a very favorable outcome for the Settlement Class.

## VI.     THE FEE APPLICATION IS FAIR AND REASONABLE

43.     The Notice informed Settlement Class Members of Lead Counsel's intent to apply for an award of attorneys' fees in an amount not to exceed one third of the Settlement Fund, plus interest, and for reimbursement of counsel's litigation expenses. Craig Decl., Ex. A. As set forth in the Fee Motion, 33.3% of the common fund that Lead Counsel's efforts created is merited here and is in line with similar awards that courts in the Ninth Circuit have granted in securities class actions, due to the unique characteristics and challenges posed in such cases.

14

44.     Lead Counsel achieved a highly favorable result for the Settlement Class at risk and expense to themselves. Throughout this litigation, Lead Counsel committed to the interests of the Settlement Class, investing the time and resources necessary to resolve the Settlement Class's claims. As a result of Lead Counsel's efforts, Settlement Class Members will receive compensation they would not have sought individually and avoid the risk of no recovery at all.

***Lead Counsel's Work and Experience***

45.     Lead Counsel took this case on a contingency basis, spending over 578.69 hours litigating the case with no assurance of success or receiving any compensation.

46.     As a result of these efforts, Lead Counsel secured a non-reversionary $1.75 million cash Settlement for the Class after three years of extensive investigation, during which Lead Counsel: (i) conducted an extensive investigation of the alleged wrongdoing; (ii) drafted the Amended Consolidated Complaint for Violations of the Federal Securities Laws ("AC"), ECF No. 80; (iii) survived the Owlet Defendants' motion to dismiss despite the PSLRA's heightened pleading standard and automatic stay of discovery; (iv) pursued fact discovery; (v) conducted extensive consultations with experts to evaluate potential damages; (vi) drafted a detailed mediation statement, addressing liability and damages; (vii) participated in a formal full day in-person mediation session before Mr. Murphy to obtain a favorable settlement for Plaintiffs and the Settlement Class; (viii) engaged in negotiations regarding the terms of the proposed Settlement; and (ix) worked with a

15

financial damages expert to craft a plan of allocation that treats Plaintiffs and all other Settlement Class Members fairly.

47.     The Settlement is an excellent result for Settlement Class Members given the considerable risks of continued litigation and Owlet's deteriorating financial condition.

48.     As a result of these efforts, Plaintiffs and Lead Counsel thoroughly understood the claims, merits, and weaknesses of the Action when they decided to agree to the proposed Settlement.

49.     The chart below contains a summary of time expended by the attorneys and professional staff of Lead Counsel on the Action, and the lodestar calculation based on their current hourly rates. The chart was prepared from contemporaneous, daily time records regularly prepared and maintained by the Firm.

| Professional (position)* | Rate | Hours | Lodestar |
|---|---|---|---|
| Jeremy A. Lieberman (P) | $1,325 | 9.00 | $12,375.00 |
| Tamar A. Weinrib (P) | $1,100 | 458.05 | $526,757.50 |
| Alex Hood (P) | $1,050 | 11.40 | $11,970.00 |
| James LoPiano (A) | $600 | .54 | $324.00 |
| Thomas Pryzblowski (A) | $650 | 16.50 | $10,725.00 |
| Elina Rakhlin (A) | $500 | 67.00 | $33,500.00 |
| Jared Rabinowitz (A) | $575 | 16.20 | $9,315.00 |
| **Total** | | **578.69** | **$604,966.50** |

*Partner (P), Associate (A); Staff Attorney (SA); Project Associate (PA); Paralegal/Other (PL)

50.     Lead Counsel's lodestar figures are based upon the Firm's hourly rates, which do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in the Firm's hourly rates.

51. The chart below is a summary of the unreimbursed expenses Lead Counsel incurred in connection with the prosecution of the Action. The expenses set forth below are reflected in the Firm's books and records. These books and records are prepared from expense vouchers, check records, and financial statements prepared in the normal course of business for Lead Counsel and are an accurate record of the expenses incurred in the prosecution of the Action.

| Expenses | Amount |
|---|---|
| Clerk Filing Fees | $1,442.00 |
| Online Computer Legal Research | $3,419.71 |
| Expert Fees | $21,795.62 |
| Investigator Fees | $13,817.42 |
| Meals and Conference Expenses | $83.11 |
| Mediator Fees | $16,250.00 |
| Overtime-Clerical | $739.32 |
| Photocopying Expenses | $115.50 |
| Postage and Overnight Mail | $149.42 |
| Press Releases and Newswires Fees | $2,559.20 |
| Travel- Local | $211.18 |
| **Total Expenses** | **$60,582.48** |

52. If Lead Counsel's request for attorneys' fees of 33.3% of the Settlement Fund is granted, Lead Counsel would receive a fee of $583,333.33, plus interest earned thereon at the same rate as the Settlement Fund. This fee award would represent a lodestar multiplier of approximately 0.96. This multiplier is well within the range of multipliers that courts in this Circuit have typically awarded in securities class actions.

53. As reflected in the Pomerantz Firm resume, attached hereto as Exhibit 2, Lead Counsel are experienced and skilled practitioners in the securities litigation field and have

a successful track record in such securities, shareholder and other complex class action cases.

54.    Moreover, in addition to the time expended to date, Lead Counsel will expend additional time preparing Plaintiffs' reply in support of final approval, preparing for and attending the final approval hearing, directing the claims administration process, and filing a motion for final distribution. Lead Counsel will not seek additional compensation for this work.

***The Caliber of Opposing Counsel***

55.    Defendants' Counsel, experienced and highly-skilled lawyers from Latham & Watkins LLP, vigorously represented their clients. Latham & Watkins LLP is a highly respected defense firm with substantial securities litigation experience and resources.

56.    In the face of this opposition, Plaintiffs and Lead Counsel were nevertheless able to develop a case that was sufficiently strong to persuade Defendants to settle on terms favorable to the Settlement Class.

***The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High Risk, Contingent Securities Cases***

57.    Lead Counsel undertook this class action on a contingency fee basis. As summarized *supra* and further described in the Final Approval and Fee Motions, Lead Counsel assumed significant risks to bring these claims to a successful conclusion. Those risks are relevant to an award of attorneys' fees.

58. From the outset, Lead Counsel understood that they were embarking on a complex, expensive, and lengthy litigation with no guarantee of compensation for the investment of time and money that the case required. Lead Counsel have received no compensation during the course of their involvement in this litigation.

59. The commencement of a class action does not guarantee a settlement. To the contrary. It takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint and to take a case to trial. Only as a result of such efforts will sophisticated defendants engage in serious settlement negotiations at meaningful levels.

60. As a result of persistent efforts in the face of substantial risks and uncertainties, Lead Counsel achieved a fair, adequate, and reasonable recovery for the Settlement Class. In consideration of Lead Counsel's efforts and the favorable result achieved, a 33.3% fee is reasonable and in line with attorneys' fee awards in similar cases in this Circuit.

***The Reaction of the Settlement Class to the Requested Fee***

61. As noted above, 47,605 notices were disseminated to potential Settlement Class Members and nominees. Craig Decl., ¶9.

62. The deadline for potential Settlement Class Members to submit objections and requests for exclusion is January 16, 2026. To date, no Settlement Class Member has

19

objected to the requested attorneys' fees, reimbursement of expenses, or awards to Plaintiffs, and no Settlement Class Member has requested exclusion. Craig Decl. ¶¶14-15.

## VII.  REIMBURSEMENT OF EXPENSES IS FAIR AND REASONABLE

63.  As detailed *supra*, Lead Counsel has incurred $60,582.48 in litigation expenses in connection with the prosecution of the Action.

64.  From the outset, Lead Counsel knew they might not recover any of their expenses, and, at minimum, would not recover anything until achieving a successful resolution of the case. Lead Counsel also understood that, even assuming a successful resolution, reimbursement for expenses would not compensate them for the lost use of the funds they advanced to prosecute this action. Thus, Lead Counsel took significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the case.

65.  A categorized list of the expenses Lead Counsel incurred, compiled from the Firm's regularly maintained records, are set forth in the chart *supra*.

66.  In light of the relatively complex nature of securities class action litigation and the difficulties in pleading and ultimately proving liability, as well as proving loss causation and damages at trial, the litigation expenses incurred were reasonable and necessary to pursue the interests of the Settlement Class.

## VIII.    COMPENSATORY AWARDS TO PLAINTIFFS ARE WARRANTED

67.    Plaintiffs seek an award totaling $13,000 ($10,000 for Lead Plaintiff Drew Conant and $3,000 for Plaintiff Eric Lee) for their time and effort overseeing this action. The work that Plaintiffs performed on behalf of the Settlement Class is summarized in their attached declarations, and directly contributed to the achievement of the favorable Settlement. *See* Exs. 3-4. Plaintiffs have been actively involved and put the concerns of the Settlement Class at the forefront.

68.    As explained in the Fee Motion, awards of similar magnitude are commonly awarded to plaintiffs in securities class actions. They are necessary to ensure that these plaintiffs are not made worse off for their service to the class.

69.    Plaintiffs previously filed a [Proposed] Order and Final Judgment (ECF No. 144-2, Ex. F, at 105-18 of 118) providing for the relief requested in the Final Approval Motion and Fee Motion. For the Court's convenience, a copy of the [Proposed] Final Judgment Approving Class Action Settlement[2] is attached to the Weinrib Decl. as Exhibit 5 and filed herewith.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 2nd day of January 2026, at New York, New York.

By:    _/s/ Tamar A. Weinrib_
Tamar A. Weinrib

---

[2] As revised to remove the Exhibit header and to reflect the current year.