KESSLER TOPAZ MELTZER
  & CHECK, LLP
JENNIFER L. JOOST (296164)
One Sansome Street, Suite 1850
San Francisco, CA  94104
Telephone:  415/400-3000
415/400-3001 (fax)
jjoost@ktmc.com

Counsel for Lead Plaintiff Dr. Thomas E. Tweito
and Lead Counsel for the Section 10(b) Class

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART (144892)
DEBRA J. WYMAN (190812)
ASHLEY M. PRICE (281797)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
debraw@rgrdlaw.com
aprice@rgrdlaw.com

Additional Counsel for Lead Plaintiff Dr. Thomas E. Tweito
and for the Section 10(b) Class

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL J. BUTALA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>OWLET, INC., et al.,<br><br>Defendants. | Case No. 2:21-cv-09016-FLA(SSCx)<br><br>Consolidated with Case No. 2:21-cv-09293-FLA (JEMx)<br><br>CLASS ACTION<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF PROPOSED SECTION 10(b) CLASS SETTLEMENT AND PLAN OF ALLOCATION<br><br>Date:        February 6, 2026<br>Time:        1:30 p.m.<br>Judge: Hon. Fernando L. Aenlle-Rocha<br>Courtroom:  6B |

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ...................................................................... 1

II.     THE SETTLEMENT WARRANTS FINAL APPROVAL ..................................... 3

        A.      Lead Plaintiff and His Counsel Have Adequately Represented the
                Settlement Class ...................................................................................... 5

        B.      The Settlement Was Negotiated at Arm's Length with the Assistance
                of an Experienced Mediator ................................................................... 6

        C.      The Settlement Provides Adequate Relief, Considering the Costs,
                Risks, and Delay of Litigation and the Other Rule 23(e)(2) Factors ............. 7

                1.      The Amount Offered in Settlement ....................................................... 7

                2.      The Risks of Continued Litigation......................................................... 8

                3.      The Complexity, Expense, and Duration of Continued Litigation ..... 11

                4.      The Risk of Obtaining Class Certification and/or Maintaining
                        Class Action Status ................................................................... 12

                5.      The Extent to Which Discovery Had Been Completed and the
                        Stage of Proceedings................................................................. 12

                6.      The Experience and Views of Counsel................................................. 13

                7.      Existence of a Governmental Investigation ....................................... 14

                8.      The Reaction of the Settlement Class to Date .................................... 14

        D.      The Remaining Rule 23(e)(2) Factors Also Support Final Approval ........... 14

III.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND
        WARRANTS FINAL APPROVAL ................................................................ 16

IV.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS...................... 17

V.      NOTICE OF THE SETTLEMENT SATISFIED THE REQUIREMENTS OF
        RULE 23, DUE PROCESS, AND THE PSLRA ............................................. 18

VI.     CONCLUSION............................................................................................ 20

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF
PROPOSED SECTION 10(b) CLASS SETTLEMENT AND PLAN OF ALLOCATION

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Amgen Inc. Sec. Litig.*,
  2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) .......................................................... 4, 16

*Ansell v. Laikin*,
  2012 WL 13034812 (C.D. Cal. July 11, 2012).............................................................. 17

*In re Apollo Grp., Inc. Sec. Litig.*,
  2010 WL 5927988 (9th Cir. June 23, 2010)..................................................................... 9

*In re Atossa Genetics Inc. Sec. Litig.*,
  868 F.3d 784 (9th Cir. 2017) ......................................................................................... 9

*In re Banc of Cal. Sec. Litig.*,
  2020 WL 1283486 (C.D. Cal. Mar. 16, 2020)................................................................ 15

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ......................................................................................... 7

*In re Broadcom Corp. Sec. Litig.*,
  2005 WL 8152913 (C.D. Cal. Sep. 12, 2005) ............................................................... 17

*Campbell v. Facebook, Inc.*,
  951 F.3d 1106 (9th Cir. 2020) ................................................................................... 4, 5

*In re Celera Corp. Sec. Litig.*,
  2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) .............................................................. 10

*In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices, & Prods.*
  *Liab. Litig.*,
  2019 WL 2554232 (N.D. Cal. May 3, 2019)................................................................... 5

*Churchill Vill., L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) .......................................................................... 4, 6, 7, 11

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ................................................................................ 4-5, 16

*de Rommerswael v. Auerbach*,
  2018 WL 6003560 (C.D. Cal. Nov. 5, 2018) ................................................................. 6

Case No. 2:21-cv-09016-FLA(SSCx)

*Destefano v. Zynga, Inc.*,
  2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ........................................................................ 7

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005) .......................................................................................................... 10, 11

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ............................................................................................................... 18

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ................................................................................................ 5-6

*Farrar v. Workhorse Grp.*,
  2023 WL 5505981 (C.D. Cal. July 24, 2023) ......................................................................... 8

*In re Google LLC St. View Elec. Commc'ns Litig.*,
  611 F. Supp. 3d 872 (N.D. Cal. 2020) .................................................................................. 14

*In re Google Location Hist. Litig.*,
  2024 WL 1975462 (N.D. Cal. May 3, 2024) ......................................................................... 14

*Hartless v. Clorox Co.*,
  273 F.R.D. 630 (S.D. Cal. 2011),
  *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012) ............................................................... 11-12

*Hefler v. Wells Fargo & Co.*,
  2018 WL 4207245 (N.D. Cal. Sep. 4, 2018) .................................................................... 16, 17

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ........................................................................ 5

*Hubbard v. BankAtlantic Bancorp, Inc.*,
  688 F. 3d 713 (11th Cir. 2012) ............................................................................................... 9

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) ............................................................................................... 3-4

*Jiangchen v. Rentech, Inc.*,
  2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) .................................................................... 8, 18

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ................................................................................................ 19

*In re Lendingclub Sec. Litig.*,
  282 F. Supp. 3d 1171 (N.D. Cal. 2017) .................................................................................. 5

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF
PROPOSED SECTION 10(b) CLASS SETTLEMENT AND PLAN OF ALLOCATION

*In re LinkedIn User Privacy Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015)..................................................................... 11, 14

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) ............................................................................. 12

*In re Lyft, Inc. Sec. Litig.*,
2023 WL 5068504 (N.D. Cal. Aug. 7, 2023) ...................................................... 6

*In re Mego Fin. Corp. Sec. Litig.*,
213 F. 3d 454 (9th Cir. 2000) .......................................................................... 12, 13

*In re MGM Mirage Sec. Litig.*,
708 F. App'x 894 (9th Cir. 2017) .................................................................... 18, 19

*Mild v. PPG Indus., Inc.*,
2019 WL 3345714 (C.D. Cal. July 25, 2019)....................................................... 6, 8

*Morris v. Lifescan, Inc.*,
54 F. App'x 663 (9th Cir. 2003) ............................................................................ 15

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950)............................................................................................... 18

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004)........................................................................... 14

*Nguyen v. Radient Pharm. Corp.*,
2014 WL 1802293 (C.D. Cal. May 6, 2014).................................................... 16, 17

*Nobles v. MBNA Corp.*,
2009 WL 1854965 (N.D. Cal. June 29, 2009).................................................... 9, 11

*Officers of Justice v. Civil Serv. Com'n of City and Cty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982) ...............................................................................7-8

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015)............................................................................................9-10

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal 2008)................................................................... 12

*In re Oracle Sec. Litig.*,
1994 WL 502054 (N.D. Cal. June 18, 1994).......................................................... 16

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF
PROPOSED SECTION 10(b) CLASS SETTLEMENT AND PLAN OF ALLOCATION

*In re Philip Morris Int'l Inc. Sec. Litig.*,
    89 F.4th 408 (2d Cir. 2023) ............................................................................... 10

*In re Portal Software, Inc. Sec. Litig.*,
    2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ................................................... 11

*In re Rambus Inc. Derivative Litig.*,
    2009 WL 166689 (N.D. Cal. Jan. 20, 2009)....................................................... 12

*Rodriguez v. Nike Retail Servs., Inc.*,
    2022 WL 254349 (N.D. Cal. Jan. 27, 2022).................................................13-14

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ............................................................................. 13

*In re Sanofi Sec. Litig.*,
    87 F. Supp. 3d 510 (S.D.N.Y. 2015) ................................................................... 9

*Sheikh v. Tesla, Inc.*,
    2018 WL 5794532 (N.D. Cal. Nov. 2, 2018) ..................................................... 13

*Silber v. Mabon*,
    18 F.3d 1449 (9th Cir. 1994) ............................................................................. 18

*In re Snap, Inc. Sec. Litig.*,
    2021 WL 667590 (C.D. Cal. Feb. 18, 2021) ....................................................... 8

*Spann v. J.C. Penney Corp.*,
    314 F.R.D. 312 (C.D. Cal. 2016)....................................................................... 19

*Todd v. STAAR Surgical Co.*,
    2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) ..................................................... 6

*Velazquez v. Int'l Marine & Indus. Applicators, LLC*,
    2018 WL 828199 (S.D. Cal. Feb. 9, 2018)....................................................8-9, 14

*In re Vocera Comm's, Inc. Sec. Litig.*,
    2016 WL 8201593 (N.D. Cal. July 29, 2016) ................................................... 15

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
    2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) ................................................... 12

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
    895 F.3d 597 (9th Cir. 2018) ............................................................................... 3

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF
PROPOSED SECTION 10(b) CLASS SETTLEMENT AND PLAN OF ALLOCATION

*Yaron v. Intersect ENT, Inc.*,
    2021 WL 5184290 (N.D. Cal. Nov. 5, 2021) ........................................................... 19-20

*Young v. LG Chem., Ltd.*,
    783 F. App'x 727 (9th Cir. 2019) ...................................................................... 19

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ........................................................................ 10

**Statutes**

15 U.S.C. § 78u-4(a)(7) ...................................................................................... 19

15 U.S.C. § 78u-4(e)(1) ...................................................................................... 17

**Other Authorities**

Fed. R. Civ. P. 23(c)(1)(C) ................................................................................. 12

Fed. R. Civ. P. 23(c)(2)(B) .......................................................................... 18, 19

Fed. R. Civ. P. 23(e)(1)(B) ................................................................................ 18

Fed. R. Civ. P. 23(e)(2) ....................................................................................... 4

Fed. R. Civ. P. 23(e)(2) advisory committee's notes to 2018 amendment ........................... 7

Fed. R. Civ. P. 23(e)(2)(A) ................................................................................. 5

Fed. R. Civ. P. 23(e)(2)(C)(i) ........................................................................ 9, 11

Fed. R. Civ. P. 23(e)(2)(C)(ii) ................................................................... 14, 15, 17

Fed. R. Civ. P. 23(e)(2)(C)(iii) ..................................................................... 14, 15

Fed. R. Civ. P. 23(e)(2)(C)(iv) .................................................................. 14, 15, 16

Fed. R. Civ. P. 23(e)(2)(D) ..................................................................... 14, 15, 17

Edward Flores & Svetlana Starykh, *Recent Trends in Securities Class Action
    Litigation: 2024 Full-Year Review*, NERA Economic Consulting (Jan. 22,
    2025), https://www.nera.com/content/dam/nera/publications/ 2025/
    PUB_2024_Full-Year_Sec_Trends_0122.pdf............................................................. 2

Court-appointed Lead Plaintiff Dr. Thomas E. Tweito ("Lead Plaintiff"), on behalf of himself and the Settlement Class, submits this Memorandum of Points and Authorities in support of his Motion, pursuant to Federal Rule of Civil Procedure ("Rule") 23, for: (i) final approval of the proposed settlement of this class action on the terms set forth in the Stipulation and Agreement of Settlement for the Section 10(b) Class dated January 31, 2025 (ECF 147) ("Stipulation"); (ii) certification of the Settlement Class for purposes of settlement; and (iii) approval of the proposed plan for allocating the net Settlement proceeds to the Settlement Class ("Plan of Allocation" or "Plan").[1]

## I.    PRELIMINARY STATEMENT

After three years of litigation and arm's-length negotiations facilitated by an experienced mediator, Lead Plaintiff and his counsel have succeeded in securing a common-fund recovery of $3,500,000 for the Settlement Class. Subject to the Court's final approval, this Settlement will resolve Lead Plaintiff's §§ 10(b) and 20(a) claims brought pursuant to the Securities Exchange Act of 1934 ("Exchange Act") against Owlet, Inc. ("Owlet") and Kurt Workman (together, "Defendants") and the other Defendant Releasees.[2] The Settlement provides a favorable result for the Settlement Class and readily satisfies the standards for final approval under Rule 23(e)(2).

As set forth herein, not only does the Settlement provide a certain recovery for the Settlement Class in a case that presented numerous risks and the potential for years of additional litigation—through the completion of discovery, class certification, summary judgment and trial, but it also represents a significant percentage, approximately 38%, of the Settlement Class's total estimated recoverable losses for the claims remaining in the

---

[1] All capitalized terms not defined herein have the meanings ascribed in the Stipulation and in the Declaration of Jennifer L. Joost ("Joost Declaration" or "Joost Decl."), filed herewith. Citations to "¶" herein refer to paragraphs in the Joost Declaration and citations to "Ex." herein refer to exhibits to the Joost Declaration. Unless otherwise noted, all internal quotation marks, citations, or other punctuation are omitted, and all emphasis is added.

[2] The Action's Section 14(a) Exchange Act claims have settled separately. *See* ECF 144-2.

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF PROPOSED SECTION 10(b) CLASS SETTLEMENT AND PLAN OF ALLOCATION

case at the time of settlement. This recovery far exceeds the median percentage recovery in comparable cases.[3]

While Lead Plaintiff believes his claims are meritorious, he also recognizes that he faced substantial risks to obtaining a better result for the Settlement Class through further litigation. Indeed, at the time of settlement, the Court, in ruling on Defendants' motion for reconsideration, had dismissed without leave to amend claims based upon statements made prior to the merger between Owlet and Sandbridge—essentially shortening the Class Period (and reducing potentially recoverable damages) and leaving Lead Plaintiff with only appellate rights for the dismissed claims.

Had the Action not resolved, Defendants would continue to aggressively litigate their arguments and defenses at class certification, summary judgment, and trial. An adverse ruling for Lead Plaintiff at any of these stages could have precluded *any* recovery for the Settlement Class, let alone a recovery greater than the Settlement Amount. The Settlement avoids this risk—as well as the delay and expense of continued litigation—while providing a substantial and certain near-term benefit to the Settlement Class. Moreover, the Settlement is not "claims-made," and all Settlement proceeds, after deducting Court-approved fees and costs, will be distributed to Settlement Class Members who submit valid Claims.

As detailed in the Joost Declaration, based on their prosecution of the Settlement Class's claims, Lead Plaintiff and his counsel were well-informed of the strengths and weaknesses of their case prior to engaging in settlement discussions with Defendants.[4] The Settlement is the product of hard-fought, arm's-length negotiations between the Parties. These negotiations included a formal mediation session before David M. Murphy, Esq. of

---

[3] *See* Edward Flores & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review* at 26, NERA Economic Consulting (Jan. 22, 2025), https://www.nera.com/content/dam/nera/publications/2025/PUB_2024_Full-Year_Sec_Trends_0122.pdf, (reporting for years 2015 through 2024, the median settlement value represented approximately 24% of aggregate investor losses in securities class actions with losses of less than $20 million). *See also* II.C.1 *infra*.

[4] The Joost Declaration provides additional details regarding the claims asserted, the procedural history of the Action, the Settlement negotiations, the risks of continued litigation, compliance with the Court-approved notice plan, and the Plan of Allocation.

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF PROPOSED SECTION 10(b) CLASS SETTLEMENT AND PLAN OF ALLOCATION

Phillips ADR Enterprises on November 25, 2024, and, at Mr. Murphy's direction, the exchange of comprehensive mediation statements. ¶ 33. The mediation culminated in the Parties' agreement to resolve the §§ 10(b) and 20(a) Exchange Act claims for $3.5 million.[5]

In September 2025, the Court preliminarily approved the Settlement, finding it would "likely be able to approve the Settlement … subject to final consideration at the Settlement Hearing." ECF 155, ¶ 4. The Settlement has the full support of Lead Plaintiff who took an active role in supervising the litigation, and the reaction of the Settlement Class to date has been positive. While the objection deadline has not yet passed, following the extensive notice campaign, there have been no objections.[6]

Given the foregoing considerations and the factors addressed below, Lead Plaintiff and Lead Counsel respectfully submit that: (i) the Settlement meets the standards for final approval under Rule 23, and is a fair, reasonable, and adequate result for the Settlement Class; (ii) the Settlement Class warrants final certification for purposes of effectuating the Settlement; and (iii) the Plan of Allocation is a fair and reasonable method for equitably distributing the Net Settlement Fund.

## II.     THE SETTLEMENT WARRANTS FINAL APPROVAL

Rule 23(e)(2) requires judicial approval of any class action settlement. Whether to grant such approval lies within the district court's sound discretion. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018) ("Deciding whether a settlement is fair is ultimately an amalgam of delicate balancing, gross approximations and rough justice, … best left to the district judge, who has … a firsthand grasp of the claims, the class, the evidence, and the course of the proceedings."). Such discretion should be guided by this Circuit's "strong judicial policy

---

[5] The Section 14(a) Plaintiffs also took part in the November 2024 mediation and resolved their claims for $1.75 million. In negotiating the settlement terms, Lead Counsel, counsel for the Section 14(a) Plaintiffs, and Defendants agreed to jointly notice and administer the two Settlements, including using a common Claims Administrator, Strategic Claims Services ("SCS"), in order to maximize efficiencies for the benefit of the classes.

[6] Any objections received after this submission will be addressed in Lead Plaintiff's reply to be filed on January 23, 2026.

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF PROPOSED SECTION 10(b) CLASS SETTLEMENT AND PLAN OF ALLOCATION

that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *2 (C.D. Cal. Oct. 25, 2016).

"Under [Rule] 23(e)(2), a district court may approve a class action settlement only after finding that the settlement is fair, reasonable, and adequate." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1120-21 (9th Cir. 2020). In making that determination, Rule 23(e)(2) provides that a court should consider whether:

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:

(i)   the costs, risks, and delay of trial and appeal;

(ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)   the terms of any proposed award of attorney's fees, including timing of payment;

(iv)   any agreement required to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each other.

Consistent with Rule 23(e)(2)'s guidance, the Ninth Circuit has identified similar factors for courts to consider in deciding whether to approve a class action settlement:

(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).[7] In approving a settlement, a court "need not reach any ultimate conclusions on the contested issues of fact

---

[7] The "goal" of the 2018 amendments to Rule 23(e)(2) was "not to displace" any of the factors historically articulated by the various Circuits, "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision

and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

At the preliminary approval stage, this Court considered the Rule 23(e)(2) factors and found the Settlement to be fair, reasonable, and adequate, subject to further evaluation at the Settlement Hearing. ECF 155, ¶ 4. Nothing has changed to alter the Court's previous analysis, and the factors supporting preliminary approval apply equally now. *See, e.g.*, *In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) ("[C]onclusions [made in granting preliminary approval] stand and counsel equally in favor of final approval now."). Accordingly, the Settlement is fair, reasonable, and adequate and warrants final approval under the Rule 23(e)(2) factors and Ninth Circuit law.

### A.    Lead Plaintiff and His Counsel Have Adequately Represented the Settlement Class

In determining whether to approve a class action settlement, the Court should first consider whether Lead Plaintiff and Lead Counsel "have adequately represented the class." Rule 23(e)(2)(A). To determine adequacy, "courts consider two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members[,] and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *See, e.g.*, *In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171, 1182 (N.D. Cal. 2017). This factor supports the Settlement.

Lead Plaintiff's claims, which are based on a common course of alleged wrongdoing by Defendants, are typical of other Settlement Class Members and Lead Plaintiff has no interests antagonistic to the Settlement Class. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (adequacy of representation depends on "an absence of

---

whether to approve the proposal." *Campbell*, 951 F.3d at 1121 n.10. "Accordingly, the Court [should] appl[y] the framework set forth in Rule 23, while continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018).

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF PROPOSED SECTION 10(b) CLASS SETTLEMENT AND PLAN OF ALLOCATION

antagonism" and "a sharing of interest" between representatives and absent class members). In addition, Lead Plaintiff—like all other Settlement Class Members—has an interest in obtaining the largest possible recovery from Defendants. *See Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019). Lead Plaintiff actively participated in the Action—consulting with counsel, reviewing significant filings and orders, and evaluating the Settlement—and worked closely with his counsel to obtain the best possible result for the Settlement Class. ¶ 90; *see also* Declaration of Dr. Thomas E. Tweito (Ex. 1), ¶ 5.

Likewise, Lead Plaintiff retained counsel who are highly experienced in securities class action litigation.[8] Lead Counsel, along with Lead Plaintiff's additional counsel, actively pursued the claims asserted in the Action on behalf of the Settlement Class and negotiated a favorable Settlement through mediation. *See Churchill*, 361 F.3d at 576-77 (instructing courts to consider "*experience and views of counsel*") (emphasis in original).

### B. The Settlement Was Negotiated at Arm's Length with the Assistance of an Experienced Mediator

In the Ninth Circuit, a "strong presumption of fairness" attaches to a class action settlement reached through arm's-length negotiations between "experienced and well-informed counsel." *de Rommerswael v. Auerbach*, 2018 WL 6003560, at *3 (C.D. Cal. Nov. 5, 2018). This presumption is further supported where a neutral mediator is involved. *See Todd v. STAAR Surgical Co.*, 2017 WL 4877417, at *2 (C.D. Cal. Oct. 24, 2017) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). Here, the Settlement is the product of a hard-fought, arm's-length negotiations facilitated by an experienced mediator and the preparation and exchange of mediation briefing. ¶ 33; *see In re Lyft, Inc. Sec. Litig.*, 2023 WL 5068504, at *2, *10 (N.D. Cal. Aug. 7, 2023) (approving settlement reached with assistance of David Murphy, "an experienced third-party neutral").

---

[8] *See* Ex. 3-E (Kessler Topaz resume), Ex. 4-E (Robbins Geller resume).

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF PROPOSED SECTION 10(b) CLASS SETTLEMENT AND PLAN OF ALLOCATION

In addition, as noted above, Lead Plaintiff and his counsel possessed a thorough understanding of the strengths and weaknesses of the case before reaching the Settlement. Lead Counsel conducted an extensive investigation into the claims asserted, prepared the detailed Complaint, and opposed Defendants' motion to dismiss and subsequent motion for reconsideration. ¶¶ 6, 20-29. The Parties' negotiations further informed the Parties of the strength of each side's arguments. ¶ 33.

Finally, the Settlement has none of the indicia of possible collusion identified by the Ninth Circuit, such as a "clear-sailing" fee agreement or a provision that would allow settlement proceeds to revert to Defendants.[9] *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). In short, the Settlement was reached after arm's-length negotiations supervised by an experienced mediator and conducted by well-informed counsel, and was not a product of fraud, overreaching, or collusion among the Parties. This factor favors the Settlement.

### C. The Settlement Provides Adequate Relief, Considering the Costs, Risks, and Delay of Litigation and the Other Rule 23(e)(2) Factors

The remaining Rule 23(e)(2) factors overlap considerably with those articulated by the Ninth Circuit, and entail "a 'substantive' review of the terms of the proposed settlement" that evaluate the fairness of the "relief that the settlement is expected to provide" to the Classes. Rule 23(e)(2) advisory comm.'s notes to 2018 amendment; *see also Churchill*, 361 F.3d at 575-77. As discussed below, these factors support the Settlement.

#### 1. The Amount Offered in Settlement

"The critical component of any settlement is the amount of relief obtained by the class." *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016) (amount of settlement is "generally considered the most important" factor). By definition, a settlement "embodies a compromise; in exchange for the saving of cost and elimination

---

[9] *See* Stip. ¶ 16 ("Lead Counsel's application for attorneys' fees and/or Litigation Expenses is not the subject of any agreement between Defendants and Lead Plaintiff other than what is set forth in this Stipulation."); *id.* at ¶ 13 ("The Settlement is not a claims-made settlement.").

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF PROPOSED SECTION 10(b) CLASS SETTLEMENT AND PLAN OF ALLOCATION

of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers of Justice v. Civil Serv. Com'n of City and Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982); *see also Mild*, 2019 WL 3345714, at *6 ("Based on the significant risks of continued litigation and the Settlement amount, the Court finds that the amount offered for settlement is fair.").

Here, the $3.5 million Settlement is a favorable result for the Settlement Class. The recovery provides a near-term, tangible cash benefit to the Settlement Class and eliminates the substantial risk that the Settlement Class could recover less, or nothing at all, if the Action continued. In addition, the Settlement Amount represents approximately 38% of the Settlement Class's total estimated recoverable damages for the claims remaining in the case at the time of settlement—a recovery that compares very favorably to damage recoveries in other securities class actions. ¶ 68. *See supra* footnote 3 (noting median securities class action recovery in cases with estimated damages of less than $20 million was approximately 24% in years 2015 through 2024); *see also, e.g.*, *Farrar v. Workhorse Grp.*, 2023 WL 5505981, at *7 (C.D. Cal. July 24, 2023) (approving settlement representing 3% of estimated damages); *In re Snap, Inc. Sec. Litig.*, 2021 WL 667590, at *1 (C.D. Cal. Feb. 18, 2021) (approving settlement representing "approximately 7.8% of the class's maximum potential aggregate damages, which is similar to the percent recovered in other court-approved securities settlements"); *Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *9 (C.D. Cal. Oct. 10, 2019) (finding settlement was a "favorable outcome" where settlement represented 10% of total maximum damages). If Defendants prevailed on any of their arguments at summary judgment or trial on the remaining claims, recoverable damages would be lowered or potentially eliminated. ¶¶ 40, 42-46. Thus, the Settlement provides a substantial recovery given the risks of further litigation and this strongly supports approval.

### 2. The Risks of Continued Litigation

"To determine whether the proposed settlement is fair, reasonable, and adequate, the Court must balance the continuing risks of litigation (including the strengths and weaknesses of [Lead Plaintiff's] case), with the benefits afforded to members of the Class,

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF PROPOSED SECTION 10(b) CLASS SETTLEMENT AND PLAN OF ALLOCATION

and the immediacy and certainty of a substantial recovery." *Velazquez v. Int'l Marine & Indus. Applicators, LLC*, 2018 WL 828199, at *4 (S.D. Cal. Feb. 9, 2018); Rule 23(e)(2)(C)(i). While Lead Plaintiff believes his claims are meritorious, he recognizes the numerous risks and uncertainties of further litigation. This uncertainty was heightened just prior to settlement with the Court's Reconsideration Order, which dismissed with prejudice the alleged pre-merger misstatements—essentially shortening the Class Period to two months (i.e., to span only from August 5, 2021 to October 4, 2021, inclusive) and leaving Lead Plaintiff with only appellate rights for the dismissed claims. ¶ 39. *See generally Nobles v. MBNA Corp.*, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009) (noting that, although "[p]laintiff's claim has survived a motion to dismiss, … success is not guaranteed if this matter were to proceed to jury trial").[10] Aside from the risks for the dismissed claims, Lead Plaintiff also faced risks to establishing liability and damages for the remaining claims.

*First*, Defendants would vigorously assert, as they did at the motion to dismiss stage, that the statements at issue were not materially false or misleading when made. Defendants would contend that they had accurately represented the regulatory status of the Smart Sock and appropriately warned investors that the FDA "may" not agree with their assessment as to whether the Smart Sock qualified as a consumer product rather than a medical device. ¶ 43; *see also In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d 784, 800 (9th Cir. 2017) (finding manufacturers are "not obligated to disclose each and every step" they take "when interacting with regulators"); *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 542 (S.D.N.Y. 2015) (reasoning that "interim FDA feedback is not material"). Defendants would further contend that the alleged misstatements were inactionable opinions, and that their "corporate optimism" regarding the Smart Sock's classification as a wellness product did not amount to fraudulent intent. ¶ 43. *See, e.g., Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186-87 (2015) (statement considered opinion when it is

---

[10] *See also, e.g., Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F. 3d 713 (11th Cir. 2012) (overturning jury verdict and award in favor of plaintiff on loss causation grounds); *In re Apollo Grp., Inc. Sec. Litig.*, 2010 WL 5927988 (9th Cir. June 23, 2010) (granting judgment to defendants and nullifying an unanimous jury verdict for plaintiff following trial).

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF PROPOSED SECTION 10(b) CLASS SETTLEMENT AND PLAN OF ALLOCATION

"inherently subjective" and necessarily entails "some lack of certainty"); *In re Philip Morris Int'l Inc. Sec. Litig.*, 89 F.4th 408, 418 (2d Cir. 2023) ("[L]anguage like we believe or we think is sufficient—not necessary—to render a statement one of opinion rather than fact.").

*Second*, Defendants would assert that they did not act with the requisite scienter. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009) (to establish scienter, plaintiff must show defendants "made false or misleading statements either intentionally or with deliberate recklessness"). In support of their position, Defendants would point to, among other things, the lack of whistleblowers/confidential witnesses and/or insider sales, as well as their ongoing dialogue with the FDA to show that they believed the Smart Sock did not require marketing authorization. ¶ 44.[11]

*Finally*, Lead Plaintiff also faced significant risks in proving loss causation and damages. Lead Plaintiff would have to prove that the alleged disclosure of the fraud on October 4, 2021 proximately caused the decline in the price of Owlet Securities. ¶ 46.[12] Defendants would likely argue that the decline in price was caused by factors unrelated to any of the issues in this case. *Id*. Because the determination of damages is a complicated process requiring expert testimony, the jury's assessments of the expert's evidence could vary substantially at trial, reducing this crucial element to an uncertain "battle of experts." *In re Celera Corp. Sec. Litig.*, 2015 WL 7351449, at *6 (N.D. Cal. Nov. 20, 2015) (risks related to "battle of the experts" favored of settlement approval).

Lead Counsel carefully analyzed each of Defendants' arguments and related risks prior to agreeing to settle. If realized, any of these risks could have resulted in no recovery for the Settlement Class. In contrast, Lead Plaintiff have guaranteed the Settlement Class

---

[11] If Defendants were able to convince the Court or a jury either that Defendants' statements were factually true or that Defendants did not act with the requisite scienter, Lead Plaintiff's Section 20(a) claims against Workman would be foreclosed as well, as these claims require Lead Plaintiff to prove a primary violation of the Exchange Act. ¶ 45.

[12] *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiff bears burden of proving "that the defendant's misrepresentations caused the loss for which the plaintiff seeks to recover").

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF PROPOSED SECTION 10(b) CLASS SETTLEMENT AND PLAN OF ALLOCATION

$3.5 million and a meaningful portion of their potential recoverable damages. This factor strongly supports the Settlement.

### 3.    The Complexity, Expense, and Duration of Continued Litigation

In addition to the risk of continued litigation, in evaluating the fairness of the Settlement, the "expense, complexity, and likely duration of further litigation," *Churchill*, 361 F.3d at 576, or "delay of trial and appeal" should be taken into account, Rule 23(e)(2)(C)(i). "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015). These factors further underscore the fairness of the Settlement.

Class action litigation is inherently complex. *See Nobles*, 2009 WL 1854965, at *2 (finding settlement proper "given the inherent difficulty of prevailing in class action litigation"). This securities class action, prosecuted under the more restrictive provisions of the PSLRA, is no exception.[13] The Court's Reconsideration Order likewise demonstrated the risk of bringing a class action asserting securities fraud claims. ¶ 39.

Continued litigation presented numerous risks to Lead Plaintiff's ability to establish liability and damages. ¶¶ 38-49. Lead Plaintiff would be required to complete fact discovery (in only the initial stages at the time of settlement and still requiring significant time and resources to gather documentary evidence and conduct depositions), expert discovery, class certification briefing, dispositive motion practice, pre-trial preparation, trial, and post-trial appeals—efforts that would impose substantial additional costs on the Settlement Class and possibly delay its ability to recover for additional years. In contrast, the Settlement avoids the risk, expense, and delay of continued litigation while providing a certain, near-term recovery for the Settlement Class. *See Hartless v. Clorox Co.*, 273 F.R.D. 630, 640 (S.D. Cal. 2011), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012) ("Considering these risks,

---

[13] Indeed, "the heightened pleading requirement of the PSLRA and the application of *Dura*, 544 U.S. 336, which poses significant risks to plaintiffs' ability to survive … summary judgment and prevailing at trial, suggest that settlement here is prudent." *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007).

expenses and delays, an immediate and certain recovery for class members . . . favors settlement of this action."). These factors favor approval.

### 4. The Risk of Obtaining Class Certification and/or Maintaining Class Action Status

Given the posture of the case at settlement, Lead Plaintiff had not yet moved for class certification. While Lead Plaintiff believes he would have ultimately obtained certification of a class, the Settlement removes this uncertainty (especially with respect to purchasers of Owlet Securities during the portion of the Class Period dismissed by the Reconsideration Order). *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041-42 (N.D. Cal 2008) ("If the Court were to refuse certification, the unrepresented potential plaintiffs would likely lose their chance at recovery entirely. . . . As Defendants agree to the class certification for the purposes of the Settlement, there is much less risk of anyone who may have actually been injured going away empty-handed."). This factor supports the Settlement.[14]

### 5. The Extent to Which Discovery Had Been Completed and the Stage of Proceedings

In assessing a settlement, courts should consider the stage of the proceedings and the amount of information available to the parties to assess the strengths and weaknesses of their case. *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F. 3d 454, 459 (9th Cir. 2000); *In re Rambus Inc. Derivative Litig.*, 2009 WL 166689, at *2 (N.D. Cal. Jan. 20, 2009). Moreover, "[i]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). Instead, "courts look for indications [that] the parties carefully investigated the claims before reaching a resolution." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2016 WL 6248426, at *13 (N.D. Cal. Oct. 25, 2016).

---

[14] This factor would support the Settlement even if Lead Plaintiff had obtained class certification, as the Court may exercise its discretion to re-evaluate the appropriateness of class certification at any time. Rule 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF PROPOSED SECTION 10(b) CLASS SETTLEMENT AND PLAN OF ALLOCATION

Settlements reached in the early stages of a case are approved where an informed decision is made after a thorough investigation. *See, e.g.*, *Mego Fin.*, 213 F.3d at 459 (class counsel's significant investigation and research supported settlement approval); *Sheikh v. Tesla, Inc.*, 2018 WL 5794532, at *5 (N.D. Cal. Nov. 2, 2018) ("Little formal discovery had been completed at the time of settlement[.]").

During the course of the Action, Plaintiff's Counsel spent significant time and resources analyzing and litigating the legal and factual issues of this case. These efforts included: (i) conducting an extensive investigation; (ii) reviewing materials obtained from the FDA; (iii) researching and preparing the detailed Complaint; (iv) opposing Defendants' motion to dismiss the Complaint; (v) opposing Defendants' motion for reconsideration of the Court's ruling on their motion to dismiss; (vi) commencing discovery efforts; (vii) consulting with a damages expert; and (viii) preparing for and engaging in settlement negotiations with Defendants, including a full-day formal mediation session. ¶¶ 6, 20-33. As a result, Lead Plaintiff and his counsel were both sufficiently familiar with the strengths and weaknesses of the case to make an informed decision regarding settlement. *See Mego Fin.*, 213 F.3d at 459 (finding even absent extensive formal discovery, class counsel's significant investigation and research supported settlement approval). This factor weighs in favor of final approval.

### 6.   The Experience and Views of Counsel

The Ninth Circuit recognizes that parties "represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009). Thus, courts accord great weight to the recommendations of experienced counsel. *See Rodriguez v. Nike Retail Servs., Inc.*, 2022 WL 254349, at *4 (N.D. Cal. Jan. 27, 2022) (noting "the experience and views of counsel—favors approving the settlement" and highlighting counsel's "thorough understanding of the strengths and weaknesses of th[e] case and their extensive experience litigating prior … class action cases").

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF PROPOSED SECTION 10(b) CLASS SETTLEMENT AND PLAN OF ALLOCATION

As noted above, Plaintiff's Counsel have extensive experience in securities and other complex class action litigation and have negotiated numerous settlements of these actions. As a result of this experience, and with the assistance of a sophisticated damages consultant, Lead Counsel possessed a firm understanding of the strengths and weaknesses of the claims at the time of settlement, and based on this understanding, Lead Counsel concluded that the Settlement is a favorable result. *See In re Google Location Hist. Litig.*, 2024 WL 1975462, at \*8 (N.D. Cal. May 3, 2024) (recommendation of experienced class counsel favors approval of settlement).

### 7.    Existence of a Governmental Investigation

There was no governmental investigation in this Action. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. at 523, 528 (C.D. Cal. 2004) ("There is no governmental participant in this Class Action. As a result, this factor does not apply to the Court's analysis."). Also, pursuant to the Class Action Fairness Act ("CAFA"), Defendants provided notice of the Settlement to appropriate state and federal officials. ¶ 54 n.16. To date, none of these officials have raised any concerns. *LinkedIn*, 309 F.R.D. at 589 (finding no objections favored settlement).

### 8.    The Reaction of the Settlement Class to Date

"In addition to the enumerated fairness factors of Rule 23(e)(2), courts within the Ninth Circuit typically consider the reaction of the class members to the proposed settlement." *In re Google LLC St. View Elec. Commc'ns Litig.*, 611 F. Supp. 3d 872, 896 (N.D. Cal. 2020). "The absence of a large number of objectors supports the fairness, reasonableness, and adequacy of the settlement." *Velazquez*, 2018 WL 828199, at \*6. To date, there have been no objections to the Settlement. ¶ 11. Moreover, Lead Plaintiff supports the Settlement. Tweito Decl., ¶ 8.

### D.    The Remaining Rule 23(e)(2) Factors Also Support Final Approval

Rule 23(e)(2) instructs courts to also consider: (i) the effectiveness of the proposed method of distributing the relief provided to the class, including the method of processing class member claims; (ii) the terms of any proposed award of attorney's fees, including the

timing of payment; (iii) any other agreement made in connection with the proposed settlement; and (iv) whether class members are treated equitably relative to each other. Rule 23(e)(2)(C)(ii)-(iv), (e)(2)(D). These factors also support approval of the Settlement.

*First*, the proposed method of distribution and claims processing ensures equitable treatment of Settlement Class Members. *See* Rule 23(e)(2)(C)(ii), (e)(2)(D). Claims will be processed and the Net Settlement Fund distributed pursuant to a standard method routinely approved in securities class actions. SCS will process all Claims, provide Claimants with an opportunity to cure any deficiency or request judicial review of the denial of their Claims, if applicable, and will ultimately mail/wire Authorized Claimants their *pro rata* share of the Net Settlement Fund, as calculated under the Plan. *See infra* Section III; ¶¶ 57-65. None of the Settlement proceeds will revert to Defendants. *See* Stip., ¶ 13.

*Second*, the Settlement Amount remains adequate upon consideration of the proposed award of attorneys' fees and expenses, including the timing of any such Court-approved payments. *See* Rule 23(e)(2)(C)(iii). The requested 33⅓% fee reflects Plaintiff's Counsel's efforts over the past three years and the successful result achieved for the Settlement Class. A 33⅓% fee is also in line with awards in the Ninth Circuit. *See, e.g.*, *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming 33% of $14.8 million settlement); *In re Banc of Cal. Sec. Litig.*, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (awarding one-third fee of $19.75 million settlement).[15] Lead Counsel requests any award of fees and expenses be paid at the time of award.[16]

*Lastly*, as previously disclosed, the confidential Supplemental Agreement is the only agreement in addition to the initial Term Sheet and the Stipulation entered into by the Parties in connection with the Settlement. *See* Stip., ¶ 38; *see also* Rule 23(e)(2)(C)(iv). The Supplemental Agreement provides Owlet with the option to terminate the Settlement in the

---

[15] Lead Counsel also seeks payment of Plaintiff's Counsel's expenses in the total amount of $116,541.89 and reimbursement of Lead Plaintiff's costs in the amount of $5,000. ¶ 66.

[16] Courts routinely approve payment of attorneys' fees upon award. *See, e.g.*, *In re Vocera Comm's, Inc. Sec. Litig.*, 2016 WL 8201593, at *1 (N.D. Cal. July 29, 2016) (fees to be paid "immediately upon entry of this Order[.]").

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF PROPOSED SECTION 10(b) CLASS SETTLEMENT AND PLAN OF ALLOCATION

event requests for exclusion meet certain conditions. Stip., ¶ 38. This type of agreement is standard in securities class actions and has no negative impact on the fairness of the Settlement. *See, e.g., Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *11 (N.D. Cal. Sep. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").

\*       \*       \*

For the reasons set forth above and in the Joost Declaration, the Settlement is fair, reasonable, and adequate when evaluated under any standard or set of factors and, therefore, warrants the Court's final approval.

## III.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND WARRANTS FINAL APPROVAL

A plan for allocating settlement proceeds under Rule 23 is evaluated under the same standard of review applicable to the settlement—the plan must be fair and reasonable. *See, e.g., Class Plaintiffs*, 955 F.2d at 1284; *Amgen*, 2016 WL 10571773, at *7. An allocation formula need only have a "reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014). Further, "[a] plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *In re Oracle Sec. Litig.*, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994).

Here, the Plan (Appendix A to the Notice) was developed by Lead Counsel in consultation with Lead Plaintiff's damages consultants at Peregrine Economics. ¶ 59. The Plan is designed to equitably distribute the Net Settlement Fund among Settlement Class Members who submit Claims demonstrating economic losses from the alleged federal securities law violations set forth in the Complaint. *Id*.

The Plan is based upon the estimated amount of alleged artificial inflation in the price of Owlet Securities over the Class Period. ¶ 59. To have a loss pursuant to the Plan, a Claimant must have purchased/acquired Owlet Securities during the Class Period and held such securities through the alleged corrective disclosure on October 4, 2021 that removed

the alleged artificial inflation related to that information. ¶ 60. A Claimant's loss under the Plan will depend upon several factors, including the type of security purchased, purchase date(s), and whether such securities were sold (including date(s)/sale price(s)). *Id*. Also, in light of the Court's Reconsideration Order, which dismissed alleged misstatements prior to August 5, 2021, losses for Owlet Securities purchased from March 31, 2021 through August 4, 2021, will be discounted by 90% (i.e., the Recognized Loss Amount multiplied by 0.10) to account for the unlikelihood of prevailing on an appeal of the dismissed statements.[17]

Authorized Claimants will recover their "pro rata" share of the Net Settlement Fund based on their calculated loss as a percentage of total calculated losses for all Authorized Claimants. *See In re Broadcom Corp. Sec. Litig.*, 2005 WL 8152913, at *5 (C.D. Cal. Sep. 12, 2005) (approving pro rata allocation across class). As noted in the Plan, Settlement Class Members can also recover under the 14(a) Class Settlement. Pursuant to the 14(a) Plan of Allocation, losses will be calculated for Sandbridge common stock owned as of the close of business on June 1, 2021 and held through July 14, 2021.[18]

The structure of the Plan is similar to plans in other securities class actions.[19] The Plan was fully disclosed in the Notice and, to date, no objections to the Plan have been received. ¶ 65. Accordingly, Lead Plaintiff and his counsel believe the Plan is fair and reasonable and should be approved. Rule 23(e)(2)(C)(ii), (e)(2)(D).

## IV.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

As set forth in Lead Plaintiff's Preliminary Approval Motion, the Settlement Class satisfies all of the requirements of Rules 23(a) and (b)(3). ECF 146 at 14-18; Preliminary Approval Order, ¶ 2 (finding the Court "will likely be able to certify the Settlement Class for purposes of the proposed Settlement"). None of the facts supporting certification of the

---

[17] Loss calculations also take into account the PSLRA's statutory limitation on recoverable damages. *See* 15 U.S.C. § 78u-4(e)(1).

[18] *See* www.strategicclaims.net/wp-content/uploads/2025/10/Owlet-Final-Notice-14a.pdf.

[19] *See, e.g., Hefler*, 2018 WL 4207245, at *11; *Nguyen*, 2014 WL 1802293, at *5; *Ansell v. Laikin*, 2012 WL 13034812, at *9 (C.D. Cal. July 11, 2012).

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF PROPOSED SECTION 10(b) CLASS SETTLEMENT AND PLAN OF ALLOCATION

Settlement Class have changed. Accordingly, Lead Plaintiff respectfully requests that the Court certify the Settlement Class under Rules 23(a) and (b)(3) for purposes of settlement.

## V.   NOTICE OF THE SETTLEMENT SATISFIED THE REQUIREMENTS OF RULE 23, DUE PROCESS, AND THE PSLRA

Lead Plaintiff has provided the Settlement Class with adequate notice of the Settlement. Here, notice satisfied both: (i) Rule 23, as it was "the best notice … practicable under the circumstances" and directed "in a reasonable manner to all class members who would be bound by the" Settlement. Rule 23(c)(2)(B) & (e)(1)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974); *In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 896 (9th Cir. 2017); and (ii) due process, as it was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).

As noted above, in order to maximize the efficiencies in the administration of the 10(b) and 14(a) Class Settlements, and simplify participation in the Settlements, the Parties agreed on a procedure for joint notice and administration. Specifically, the Settlements utilize joint Postcard and Summary Notices directing recipients to a shared website, www.strategicclaims.net/owlet, for information pertaining to both Settlements, including important dates and downloadable versions of the detailed notices.[20] The Settlements also utilize a joint Claim Form, and all Claims received for the Settlement will be processed for (and eligible to receive a payment from) both the 10(b) and 14(a) Class Settlements.

SCS has mailed/emailed over 47,600 notices to potential Settlement Class Members.[21] *See* Declaration of Margery Craig (Ex. 3), ¶ 9. SCS also caused the Summary Notice to be published in *Investor's Business Daily* and transmitted over *GlobeNewswire* on October 27, 2025. *See id.* at ¶ 11. Defendants also issued CAFA notice. ¶ 54 n.16.

---

[20] In light of the differences in the claims and the terms of the Settlements, long-form notices for each settlement are available on the Settlement Website.

[21] "Individual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort." *Jianchen,* 2019 WL 5173771, at *8.

Collectively, the notices apprise receipts of, *inter alia*: (i) the Settlement Amount; (ii) the reasons for the Settlement; (iii) the Settlement Class definition and exclusions; (iv) the estimated average recovery per affected Owlet Security; (v) the maximum amount of attorneys' fees and expenses; (vi) Lead Counsel's contact information; (vii) the right of Settlement Class Members to object to the Settlement; (viii) the right of Settlement Class Members to request exclusion; (ix) the binding effect of a judgment; (x) the dates/deadlines for certain Settlement-related events; and (xi) the ways to obtain additional information by contacting Lead Counsel, the Claims Administrator, or visiting the Settlement Website. *See* Rule 23(c)(2)(B); 15 U.S.C. § 78u-4(a)(7). The Notice also contains the Plan of Allocation and advises on how to submit a Claim to receive a payment from the Settlement. *See* Craig Decl., Ex. A. The content disseminated through this notice campaign was more than adequate, as it "generally describe[d] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Young v. LG Chem., Ltd.*, 783 F. App'x 727, 736 (9th Cir. 2019); *see also Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 330 (C.D. Cal. 2016) ("Settlement notices must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.").

In sum, the notice campaign provided sufficient information for Settlement Class Members to make informed decisions regarding the Settlement, fairly apprised them of their rights with respect to the Settlement, represented the best notice practicable under the circumstances, and complied with the Preliminary Approval Order, Rule 23, the PSLRA, and due process. *See, e.g.*, *Young*, 783 F. App'x at 736; *MGM Mirage*, 708 F. App'x at 896; *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012). Comparable notice programs are routinely approved in this Circuit. *See, e.g.*, *Yaron v. Intersect ENT, Inc.*, 2021 WL 5184290, at *2 (N.D. Cal. Nov. 5, 2021) (finding "dissemination of the Postcard Notice, the online posting of the Notice, and the publication of the Summary Notice … constituted the best notice practicable under the circumstances; … [and] satisfied the requirements of

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF PROPOSED SECTION 10(b) CLASS SETTLEMENT AND PLAN OF ALLOCATION

Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the [PSLRA], and all other applicable law and rules").

## VI. CONCLUSION

Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement, approve the Plan of Allocation, and grant final certification of the Settlement Class for settlement purposes.

DATED:  January 2, 2026

Respectfully submitted,

KESSLER TOPAZ MELTZER
 & CHECK, LLP
JENNIFER L. JOOST (296164)

/s/ Jennifer L. Joost
JENNIFER L. JOOST

One Sansome Street, Suite 1850
San Francisco, CA  94104
Telephone:  415/400-3000
415/400-3001 (fax)
jjoost@ktmc.com

*Counsel for Lead Plaintiff Dr. Thomas E. Tweito and Lead Counsel for the Section 10(b) Class*

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART
DEBRA J. WYMAN
ASHLEY M. PRICE
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
debraw@rgrdlaw.com
aprice@rgrdlaw.com

*Additional Counsel for Lead Plaintiff Dr. Thomas E. Tweito and for the Section 10(b) Class*

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF PROPOSED SECTION 10(b) CLASS SETTLEMENT AND PLAN OF ALLOCATION

SCHALL LAW FIRM
BRIAN SCHALL (290685)
1880 Century Park East, Suite 404
Los Angeles, CA  90067
Telephone:  310/301-3335
310/338-0192 (fax)
brian@schallfirm.com

*Additional Counsel*

## LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Lead Plaintiff Dr. Thomas E. Tweito and Lead Counsel for the Section 10(b) Settlement Class, certifies that this brief contains 6,961 words, which complies with the word limit of L.R. 11-6.1.

DATED: January 2, 2026

/s/ Jennifer L. Joost
JENNIFER L. JOOST

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF PROPOSED SECTION 10(b) CLASS SETTLEMENT AND PLAN OF ALLOCATION