KESSLER TOPAZ MELTZER
  & CHECK, LLP
JENNIFER L. JOOST (296164)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: 415/400-3000
415/400-3001 (fax)
jjoost@ktmc.com

Counsel for Lead Plaintiff Dr. Thomas E. Tweito
and Lead Counsel for the Section 10(b) Class

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART (144892)
DEBRA J. WYMAN (190812)
ASHLEY M. PRICE (281797)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
debraw@rgrdlaw.com
aprice@rgrdlaw.com

Additional Counsel for Lead Plaintiff Dr. Thomas E. Tweito
and for the Section 10(b) Class

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL J. BUTALA, Individually and on Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>   vs.<br><br>OWLET, INC., et al.,<br><br>               Defendants. | Case No. 2:21-cv-09016-FLA(SSCx)<br><br>Consolidated with Case No. 2:21-cv-09293-FLA (JEMx)<br><br><u>CLASS ACTION</u><br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES<br><br>Date: February 6, 2026<br>Time: 1:30 p.m.<br>Judge: Hon. Fernando L. Aenlle-Rocha<br>Courtroom: 6B |

MEMORANDUM OF POINTS AND AUTHORITIES ISO LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES

# TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ................................................................................. 1

II.  THE COURT SHOULD APPROVE THE REQUESTED FEE AWARD .............. 4

    A.  Lead Counsel Are Entitled to a Reasonable Fee from the Common Fund Created by the Settlement ................................................................. 4

    B.  The Court Should Calculate the Fee Award as a Percentage of the Common Fund ................................................................................................ 5

    C.  Lead Counsel's 33⅓% Fee Request Is Warranted ........................................... 6

        1.  Plaintiff's Counsel Achieved a Substantial Result for the Settlement Class ................................................................................. 7

        2.  Plaintiff's Counsel Undertook Substantial Risk in the Action ............. 8

        3.  Skill Required and Quality of Work ...................................................... 10

        4.  Plaintiff's Counsel Litigated the Action on a Contingent Basis ......... 11

        5.  The Requested Fee Is in Line With Fee Awards in this Circuit ......... 12

    D.  A Lodestar Cross-Check Confirms Reasonableness of Requested Fee ........ 13

        1.  The Number of Hours Devoted to the Action Was Reasonable ......... 14

        2.  Plaintiff's Counsel's Hourly Rates Are Reasonable ........................... 14

        3.  The Requested Fee Reflects a Negative Multiplier and Thus a Substantial Discount on Plaintiff's Counsel's Lodestar ..................... 15

III.  PLAINTIFF'S COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND SHOULD BE APPROVED ................................................ 16

IV.  LEAD PLAINTIFF SHOULD BE AWARDED HIS REASONABLE COSTS UNDER THE PSLRA .......................................................................... 18

V.  CONCLUSION ................................................................................................... 19

MEMORANDUM OF POINTS AND AUTHORITIES ISO LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Activision Sec. Litig.*,
    723 F. Supp. 1373 (N.D. Cal. 1989)........................................................................5

*AdTrader, Inc. v. Google LLC*,
    2022 WL 16579324 (N.D. Cal. Nov. 1, 2022) ........................................................8

*Ali v. Franklin Wireless Corp.*,
    2024 WL 5179910 (S.D. Cal. Dec. 19, 2024) .....................................................8, 12

*In re Amgen Inc. Sec. Litig.*,
    2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ............................................5, 15, 16

*In re Apple Inc. Device Performance Litig.*,
    2021 WL 1022866 (N.D. Cal. Mar. 17, 2021) ......................................................11

*In re Apple Inc. Device Performance Litig.*,
    50 F.4th 769 (9th Cir. 2022) ...................................................................................5

*Atlas v. Accredited Home Lenders Holding Co.*,
    2009 WL 3698393 (S.D. Cal. Nov. 4, 2009)...........................................................6

*In re Banc of Cal. Sec. Litig.*,
    2020 WL 1283486 (C.D. Cal. Mar. 16, 2020)........................................................13

*Barbosa v. Cargill Meat Sols. Corp.*,
    297 F.R.D. 431 (E.D. Cal. 2013) ...........................................................................11

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980).................................................................................................4

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ..................................................................................10

*In re Charles Schwab Sec. Litig.*,
    2011 WL 1481424 (N.D. Cal. Apr. 19, 2011)..........................................................5

*Ching v. Siemens Indus., Inc.*,
    2014 WL 2926210 (N.D. Cal. June 27, 2014)........................................................11

*Davis v. Yelp*,
2023 WL 3063823 (N.D. Cal. Jan. 27, 2023)................................................12-13, 16, 19

*Destefano v. Zynga, Inc.*,
2016 WL 537946 (N.D. Cal. Feb. 11, 2026) ...............................................................8, 17

*Ellison v. Steven Madden, Ltd.*,
2013 WL 12124432 (C.D. Cal. May 7, 2013) ...................................................................5

*In re Extreme Networks, Inc. Sec. Litig.*,
2019 WL 3290770 (N.D. Cal. July 22, 2019) ..................................................................15

*Farrell v. Bank of Am. Corp., N.A.*,
827 F. App'x 628 (9th Cir. 2020) ...................................................................................13

*Farrar v. Workhorse Grp.*,
2023 WL 5505981 (C.D. Cal. July 24, 2023).............................................................1-2, 7

*Ferreira v. Funko, Inc.*,
2022 WL 22877154 (C.D. Cal. Dec. 13, 2022)...............................................................19

*Fischel v. Equitable Life Assurance Soc'y of the U.S.*,
307 F.3d 997 (9th Cir. Oct. 3, 2002) ................................................................................8

*Fleming v. Impax Lab'ys, Inc.*,
2022 WL 2789496 (N.D. Cal. July 15, 2022) .................................................................17

*Fosbre v. Las Vegas Sands Corp.*,
2017 WL 55878 (D. Nev. Jan. 3, 2017), *aff'd sub nom. Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*, 732 F. App'x 543 (9th Cir. 2018).....................................................................................12

*Fowler v. Wells Fargo Bank, N.A.*,
2019 WL 330910 (N.D. Cal. Jan. 25, 2019)...................................................................14

*Glass v. UBS Fin. Servs., Inc.*,
331 F. App'x 452 (9th Cir. 2009) .....................................................................................5

*Gunter v. Ridgewood Energy Corp.*,
223 F.3d 190 (3d Cir. 2000) .........................................................................................4-5

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) .............................................................................................17

MEMORANDUM OF POINTS AND AUTHORITIES ISO LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)......................................................................................................... 7

*In re Heritage Bond Litig.*,
2005 WL 1594389 (C.D. Cal. June 10, 2005)................................................................ 10

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005)................................................................ 13

*Hernandez v. Dutton Ranch Corp.*,
2021 WL 5053476 (N.D. Cal. Sep. 10, 2021) ............................................................. 2, 6

*In re Honest Co., Inc. Sec. Litig.*,
2025 WL 2205810 (C.D. Cal. July 29, 2025)................................................................ 19

*Hope Med. Enters., Inc. v. Fagrgon Compounding Serv., LLC*,
2022 WL 826903 (C.D. Cal. Mar. 14, 2022)................................................................. 15

*In re ImmunityBio, Inc. Sec. Litig.*,
2025 WL 1686263 (S.D. Cal. June 16, 2025) ............................................................... 19

*In re Initial Pub. Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009) ........................................................................... 16

*Jiangchen v. Rentech, Inc.*,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ........................................................... 2, 7-8

*Jiangchen v. Rentech, Inc.*,
2019 WL 6001562 (C.D. Cal. Nov. 8, 2019) ................................................................ 13

*In re K12 Inc. Sec. Litig.*,
2019 WL 3766420 (N.D. Cal. July 10, 2019) ............................................................... 13

*Kendall v. Odonate Therapeutics, Inc.*,
2022 WL 1997530 (S.D. Cal. June 6, 2022) ............................................................. 8, 13

*Khoja v. Orexigen Therapeutics, Inc.*,
2021 WL 5632673 (S.D. Cal. Nov. 30, 2021)................................................... 13, 16, 19

*In re Lidoderm Antitrust Litig.*,
2018 WL 4620695 (N.D. Cal. Sep. 20, 2018)...................................................... 6, 7, 13

*Martinelli v. Johnson & Johnson*,
2022 WL 4123874 (E.D. Cal. Sep. 9, 2022) ................................................................. 12

MEMORANDUM OF POINTS AND AUTHORITIES ISO LEAD COUNSEL'S MOTION FOR
AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES

*Missouri v. Jenkins*,
491 U.S. 274 (1989)...........................................................................................14

*Nguyen v. Radient Pharms. Corp.*,
2014 WL 1802293 (C.D. Cal. May 6, 2014)............................................5, 10

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008)..................................................6, 10

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ................................................................6

*In re Oracle Corp. Sec. Litig.*,
2009 WL 1709050 (N.D. Cal. June 19, 2009)......................................12

*Parkinson v. Hyundai Motor Am.*,
796 F. Supp. 2d 1160 (C.D. Cal. 2010) ..............................................15

*Paul, Johnson, Alston & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989) ..............................................................6

*In re Portal Software, Inc. Sec. Litig.*,
2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ....................................9

*Rodman v. Safeway Inc.*,
2018 WL 4030558 (N.D. Cal. Aug. 23, 2018) ....................................7

*In re Stable Road Acquisition Corp.*,
2024 WL 3643393 (C.D. Cal. Apr. 23, 2024) ....................................18

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ..............................................................5

*Sypherd v. Lazy Dog Rests., LLC*,
2023 WL 1931319 (C.D. Cal. Feb. 10, 2023) (Aenlle-Rocha, J.)................12

*In re Tesla, Inc. Sec. Litig.*,
2022 WL 1497559 (N.D. Cal. Apr. 1, 2022)......................................12

*Todd v. STAAR Surgical Co.*,
2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) ....................................19

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007).....................................................13

Case No. 2:21-cv-09016-FLA(SSCx)
MEMORANDUM OF POINTS AND AUTHORITIES ISO LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES

*Vincent v. Hughes Air W., Inc.*,
  557 F.2d 759 (9th Cir. 1977) .................................................................................... 4

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ...................................................................*passim*

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) .............................................. 15

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ............................................................... 4, 11

*White v. Experian Info. Solutions, Inc.*,
  2018 WL 1989514 (C.D. Cal. Apr. 6, 2018), *aff'd in part*, *rev'd in part*
  *sub nom.*, *Radcliffe v. Hernandez*, 794 F. App'x 605 (9th Cir. 2019) ......................... 14

**Statutes**

15 U.S.C. § 78u-4(a)(4) .................................................................................... 18

**Other Authorities**

Edward Flores & Svetlana Starykh, *Recent Trends in Securities Class Action
  Litigation: 2024 Full-Year Review*, NERA Economic Consulting (Jan. 22,
  2025), https://www.nera.com/content/dam/nera/publications/2025/
  PUB_2024_Full-Year_Sec_Trends_0122.pdf................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ISO LEAD COUNSEL'S MOTION FOR
AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES

Pursuant to Federal Rule of Civil Procedure ("Rule") 23(h), Court-appointed Lead Counsel Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz" or "Lead Counsel"), on behalf of Plaintiff's Counsel,[1] respectfully submits this Memorandum of Points and Authorities in support of its motion for: (i) an award of attorneys' fees for Plaintiff's Counsel in the amount of 33⅓% of the Settlement Fund; (ii) payment of $116,541.89 for expenses reasonably and necessarily incurred by Plaintiff's Counsel in prosecuting and resolving the Action; and (iii) reimbursement of $5,000 to Court-appointed Lead Plaintiff Dr. Thomas E. Tweito ("Lead Plaintiff") for his costs directly related to representing the Settlement Class in the Action, as authorized by the Private Securities Litigation Reform Act of 1995 ("PSLRA").[2]

## I. PRELIMINARY STATEMENT

Following three years of litigation efforts, Lead Counsel successfully negotiated a settlement of the Action with Defendants. The Settlement, if approved by the Court, will resolve Lead Plaintiff's Section 10(b) and 20(a) claims brought pursuant to the Securities Exchange Act of 1934 ("Exchange Act") in exchange for Defendants' cash payment of $3.5 million.[3] The Settlement represents a favorable result for the Settlement Class by securing a significant portion—approximately 38%—of the Settlement Class's total estimated recoverable damages for the claims remaining in the case at the time of settlement.[4]

---

[1] Plaintiff's Counsel refers collectively to Kessler Topaz and additional counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and the Schall Law Firm ("Schall Law"). Stip., ¶ 1(gg).

[2] All capitalized terms not defined herein have the meanings ascribed in the Stipulation and in the Declaration of Jennifer L. Joost ("Joost Declaration" or "Joost Decl.") filed herewith. Citations to "¶" herein refer to paragraphs in the Joost Declaration and citations to "Ex." herein refer to exhibits to the Joost Declaration. Unless otherwise noted, all internal quotation marks, citations, or other punctuation are omitted, and all emphasis is added.

[3] The Action's Section 14(a) Exchange Act claims have settled separately. *See* ECF 144-2.

[4] While each securities class action reflects its own unique risks, the recovery obtained in this Action compares very favorably to recoveries obtained in other securities cases and approved by courts. *See* Edward Flores & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review* at 26, NERA Economic Consulting (Jan. 22, 2025), https://www.nera.com/content/dam/nera/publications/2025/PUB_2024_Full-Year_Sec_Trends_0122.pdf, (reporting for years 2015 through 2024, the median settlement value represented approximately 24% of aggregate investor losses in securities class actions with losses of less than $20 million); *see also Farrar v. Workhorse Grp.*, 2023 WL 5505981,

MEMORANDUM OF POINTS AND AUTHORITIES ISO LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES

Moreover, it eliminates the risks of continued litigation—including overcoming Defendants' challenges to liability and establishing the Settlement Class's full-amount of damages at trial, as well as the uncertainty, delay, and expense of litigating the Action through the completion of fact and expert discovery, class certification, summary judgment, trial, and post-trial appeals.

To achieve this recovery, Lead Counsel undertook substantial efforts, pursuing this Action against a highly-reputable defense firm on a fully contingent basis for three years. As detailed in the Joost Declaration,[5] the Settlement was reached only after Plaintiff's Counsel conducted an extensive investigation, drafted the detailed Complaint, successfully opposed Defendants' motion to dismiss the Complaint; partially defeated Defendants' motion for reconsideration of the Court's ruling on Defendants' motion to dismiss; and commenced discovery. Lead Counsel also engaged in hard-fought settlement negotiations with Defendants, including the exchange of mediation briefing and participation in a formal mediation session with David M. Murphy, Esq. of Phillips ADR Enterprises, P.C., an experienced and highly respected mediator. This dedicated effort resulted in a great result for the Settlement Class.

As compensation for these efforts and the commitment to bringing the Action to a successful conclusion, as well as the significant risk of prosecuting and funding this Action with no guarantee of recovery, Lead Counsel, on behalf of Plaintiff's Counsel, seeks attorneys' fees in the amount of 33⅓% of the Settlement Fund. "District Courts within this circuit . . . routinely award attorneys' fees that are one-third of the total settlement fund," and "[s]uch awards are routinely upheld by the Ninth Circuit." *Hernandez v. Dutton Ranch Corp.*, 2021 WL 5053476, at *6 (N.D. Cal. Sep. 10, 2021). And, while the requested fee

---

at *7 (C.D. Cal. July 24, 2023) (approving settlement representing 3% of estimated damages); *Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *9 (C.D. Cal. Oct. 10, 2019) (finding settlement was a "favorable outcome" where settlement represented 10% of total maximum damages).

[5] Lead Counsel respectfully refers the Court to the Joost Declaration for a detailed description of, *inter alia*: the history of the Action and Plaintiff's Counsel's litigation efforts (¶¶ 12-32); the Parties' settlement negotiations (¶¶ 33-37); and the risks of continued litigation (¶¶ 38-49).

MEMORANDUM OF POINTS AND AUTHORITIES ISO LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES

exceeds the 25% "benchmark" used as a "starting point" by courts in this Circuit, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th Cir. 2002), Plaintiff's Counsel's efforts here (more than 2,400 hours) and the results obtained for the Settlement Class (recovery of approximately 38% of the Settlement Class's potentially recoverable damages) warrant an upward adjustment to the benchmark. Notably, if the Court performs a lodestar cross-check, a 33⅓% fee would result in a *negative* multiplier of counsel's time of approximately 0.65. Thus, despite the fact that courts often apply positive multipliers in class actions with a contingency risk like this case,[6] the requested fee here represents a discount of roughly 35% to the value of the time Plaintiff's Counsel dedicated to the Action.

Lead Counsel also requests payment from the Settlement Fund of $121,541.89 in Litigation Expenses, which amount *includes* the $5,000 requested by Lead Plaintiff for his time in representing the Settlement Class in the Action.

Lead Counsel's fee and expense request has the full support of Lead Plaintiff who actively supervised the prosecution and resolution of the Action.[7] The reaction of the Settlement Class to date also supports Lead Counsel's fee and expense request. Pursuant to the Court's Preliminary Approval Order, over 47,600 notices have been disseminated to potential Settlement Class Members.[8] These notices advised that Lead Counsel would be applying for attorneys' fees in an amount not to exceed 33⅓% of the Settlement Fund, plus Litigation Expenses in an amount not to exceed $180,000. Craig Decl., Exs. A-D. While the January 16, 2026 objection deadline has not yet passed, to date, there have been no objections to the fee and expense amounts set forth in the notices. ¶ 66.

In light of the recovery obtained for the Settlement Class, the time and effort devoted by Plaintiff's Counsel, the skill and expertise required, the quality of the work performed, the wholly contingent nature of the representation, and the considerable risks involved in

---

[6] *See Vizcaino*, 290 F.3d at 1051 n.6 (noting multipliers ranging from 1 to 4 are common).

[7] *See* Declaration of Dr. Thomas E. Tweito ("Tweito Decl.") (Ex. 1), ¶¶ 5, 10.

[8] *See* Declaration of Margery Craig ("Craig Decl.") submitted on behalf of the Court-authorized Claims Administrator Strategic Claims Services ("SCS") (Ex. 2), ¶ 9.

MEMORANDUM OF POINTS AND AUTHORITIES ISO LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES

litigating the Settlement Class's claims, Lead Counsel respectfully submits that its requested fee is fair and reasonable under the applicable legal standards. Lead Counsel also respectfully submits that the Litigation Expenses for which it seeks payment were reasonable and necessary for the successful prosecution of the Action and that the request pursuant to the PSLRA for reimbursement to Lead Plaintiff for the time he dedicated on behalf of the Settlement Class is likewise reasonable and appropriate. Accordingly, Lead Counsel requests that its Motion be granted in full.

## II.    THE COURT SHOULD APPROVE THE REQUESTED FEE AWARD

Plaintiff's Counsel pursued this Action in the face of significant risks for three years and negotiated a resolution that provides a non-reversionary $3.5 million cash Settlement for the benefit of the Settlement Class. In consideration of those efforts, Lead Counsel respectfully submits that an award of attorneys' fees in the amount of 33⅓% of the Settlement Fund—which represents a *negative* multiplier of approximately 0.65 on Plaintiff's Counsel's lodestar—is fair and reasonable and warrants the Court's approval.

### A.    Lead Counsel Are Entitled to a Reasonable Fee from the Common Fund Created by the Settlement

Courts have long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977) ("[A] private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees"). The policy rationale for awarding attorneys' fees from a common fund is that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994). In addition to providing just compensation, an award of fair attorneys' fees from a common fund ensures that

MEMORANDUM OF POINTS AND AUTHORITIES ISO LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES

"competent counsel continue to be willing to undertake risky, complex, and novel litigation." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000).

### B.    The Court Should Calculate the Fee Award as a Percentage of the Common Fund

"[A] court must ensure that attorney's fees . . . awarded to class counsel are fair, reasonable, and adequate." *In re Charles Schwab Sec. Litig.*, 2011 WL 1481424, at *7 (N.D. Cal. Apr. 19, 2011); *Staton v. Boeing Co.*, 327 F.3d 938, 963-64 (9th Cir. 2003). In awarding attorneys' fees, courts in this Circuit have discretion to employ either the percentage-of-recovery method or the lodestar method. *See Vizcaino*, 290 F.3d at 1047. Notwithstanding that discretion, the percentage-of-recovery method has become the prevailing method used in this Circuit. *See, e.g.*, *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456-57 (9th Cir. 2009) (affirming district court's use of percentage-of-recovery method in awarding fees); *Ellison v. Steven Madden, Ltd.*, 2013 WL 12124432, at *8 (C.D. Cal. May 7, 2013) (finding "use of the percentage method" to be the "dominant approach in common fund cases").

Additionally, courts have found the percentage-of-recovery method to be preferable in cases with a common fund because it: (i) parallels the use of percentage-based contingency fee contracts, which are the norm in private litigation; (ii) aligns the lawyers' interests with those of the class in achieving the maximum possible recovery; and (iii) reduces the burden on the court by eliminating the detailed and time-consuming lodestar analysis. *See, e.g.*, *Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1374-77 (N.D. Cal. 1989) (collecting authority and describing benefits of percentage method over lodestar method). When awarding a percentage fee, courts may (but are not required to) cross-check the requested fee with counsel's lodestar to ensure its reasonableness. *See In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 784 (9th Cir. 2022); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) (noting that "cross-check of the fee request with a lodestar amount can demonstrate the fee request's reasonableness"); *see also* § II.D *infra* (for lodestar analysis).

MEMORANDUM OF POINTS AND AUTHORITIES ISO LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES

**C.    Lead Counsel's 33⅓% Fee Request Is Warranted**

In the Ninth Circuit, the "starting point" for calculating attorneys' fees is 25% of the common fund. *Vizcaino*, 290 F.3d at 1048; *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). As the Circuit has observed, "[t]he 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases" and "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.

Here, Lead Counsel's fee request above the 25% benchmark is well justified. Courts in this Circuit routinely grant fee awards above 25% when supported by: (i) the results achieved; (ii) the risk of litigation; (iii) the skill required and the quality of work; (iv) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (v) awards made in similar cases (commonly referred to as the "*Vizcaino* factors"). *See Vizcaino*, 290 F.3d at 1048-50; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (in assessing upward adjustment to benchmark, courts consider "the extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis"). "The relative degree of importance to be attached to any particular [*Vizcaino*] factor will depend upon . . . the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Atlas v. Accredited Home Lenders Holding Co.*, 2009 WL 3698393, at *3 (S.D. Cal. Nov. 4, 2009).

Courts in the Ninth Circuit award fees that exceed the benchmark "in most common fund cases." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008); *see Hernandez*, 2021 WL 5053476, at *6 ("District courts within this circuit . . . routinely award attorneys' fees that are one-third of the total settlement fund," and "[s]uch awards are routinely upheld by the Ninth Circuit"); *In re Lidoderm Antitrust Litig.*, 2018 WL

MEMORANDUM OF POINTS AND AUTHORITIES ISO LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES

4620695, at *4 (N.D. Cal. Sep. 20, 2018) (awarding 33⅓% of $104,750,000 settlement and noting "a fee award of one-third is within the range of awards in this Circuit").

As detailed below, each *Vizcaino* factor weighs strongly in favor of Lead Counsel's fee request. Further, and as demonstrated by a lodestar cross-check (*see* § II.D below), the requested 33⅓% fee would not constitute a windfall to Plaintiff's Counsel as it results in a negative lodestar multiplier, and that negative multiplier will increase given the work Plaintiff's Counsel will continue to perform on behalf of the Settlement Class leading up to the Settlement Hearing and through the completion of the distribution of the Net Settlement Fund to Authorized Claimants. *See Lidoderm*, 2018 WL 4620695, at *4 (noting in awarding 33% fee that "rationales for awarding fees at or below the 25% benchmark in some cases—*i.e.* to avoid a windfall for class counsel—do not apply here" given the 1.37 multiplier).

### 1.    Plaintiff's Counsel Achieved a Substantial Result for the Settlement Class

The benefit counsel secured for the class is an important factor in evaluating the reasonableness of a requested fee. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting "the most critical factor is the degree of success obtained"); *Vizcaino*, 290 F.3d at 1048 (noting "[e]xceptional results are a relevant circumstance" in awarding attorneys' fees). Courts recognize that "the law appropriately provides for some upward adjustment [from the 25% benchmark] where the results achieved are significantly better than the norm." *Rodman v. Safeway Inc.*, 2018 WL 4030558, at *3 n.3 (N.D. Cal. Aug. 23, 2018).

Here, Lead Counsel secured a Settlement that provides for a substantial and certain payment of $3,500,000. This recovery represents a substantial portion—approximately 38%—of the Settlement Class's total estimated recoverable damages for the claims remaining in the case at the time of settlement. This result far exceeds the median securities class action recovery as a percentage of damages in cases with estimated damages of less than $20 million, which was 24% in recent years. *See* n. 4 *supra*; *see also Farrar*, 2023 WL 5505981, at *7 (approving settlement representing 3% of estimated damages); *Jiangchen*, 2019 WL 5173771, at *9 (finding settlement "favorable outcome" where settlement

MEMORANDUM OF POINTS AND AUTHORITIES ISO LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES

represented 10% of maximum damages). Moreover, courts have recognized that, when counsel achieves a result for the class that is superior to the norm in comparable cases, it is appropriate to award fees *above* the 25% benchmark to reflect the quality of the result. *See, e.g.*, *Ali v. Franklin Wireless Corp.*, 2024 WL 5179910, at *7 (S.D. Cal. Dec. 19, 2024) (awarding 33.33% fee from securities settlement representing 12.9% of damages and noting the recovery "exceeds similar securities class action settlements approved by courts in this Circuit" and "results achieved by Counsel weigh in favor of an upward adjustment from the 25% benchmark"); *Kendall v. Odonate Therapeutics, Inc.*, 2022 WL 1997530, at *6 (S.D. Cal. June 6, 2022) (awarding 33⅓% fee and noting, in assessing whether an upward adjustment to benchmark was warranted, that "settlement fund represents about approximately 3.49% of the maximum estimate damages, which is above the 2021 median recovery in securities class actions").

In addition, this recovery will benefit a large number of investors. To date, SCS has mailed/emailed over 47,600 notices to potential Settlement Class Members. Craig Decl., ¶ 9. While the claim submission deadline is not until January 17, 2026, a large number of Settlement Class Members are expected to submit Claims in order to be eligible to receive a payment from the Net Settlement Fund.

### 2. Plaintiff's Counsel Undertook Substantial Risk in the Action

The risk of the litigation is another key factor in determining a reasonable fee. *See Vizcaino*, 290 F.3d at 1048; *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2026) (approving requested fee, in part, because the "risks associated with [the] case were substantial"); *AdTrader, Inc. v. Google LLC*, 2022 WL 16579324, at *7 (N.D. Cal. Nov. 1, 2022) (33% fee award justified by "substantial risk" and results).[9]

---

[9] For purposes of reviewing a fee award, the Court should also consider all risks the litigation presented from the outset. *See Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1009 (9th Cir. Oct. 3, 2002) ("[T]here is no dispute that a court should consider risk at the 'outset' of litigation," which the Ninth Circuit has determined to be the point in time "when an attorney determines that there is merit to the client's claim and elects to pursue the claim on the client's behalf").

MEMORANDUM OF POINTS AND AUTHORITIES ISO LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES

As also discussed in the Joost Declaration and Settlement Memorandum, Lead Plaintiff faced many challenges to succeeding in the Action. Indeed, when the Settlement was reached, the Court had just issued its Reconsideration Order, which dismissed statements made prior to the merger between Owlet and Sandbridge, essentially shortening the Class Period to less than two months (i.e., August 5, 2021 through October 4, 2021) and leaving Lead Plaintiff with only appellate rights to the dismissed claims (and the potential damages associated with the claims). ¶ 39.

Lead Plaintiff also faced substantial hurdles to establishing liability and damages for the remaining claims. Defendants were likely prepared to assert aggressive defenses at summary judgment, and, if necessary, at trial. An adverse decision for Lead Plaintiff at summary judgment or trial could have drastically reduced the amount of recoverable damages for the Settlement Class, or eliminated damages altogether. ¶¶ 40-41. *See generally In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007) (noting "significant risks" the PSLRA poses "to plaintiffs' ability to survive . . . summary judgment and prevail[] at trial").

*First*, Lead Plaintiff faced significant risks to establishing Defendants' liability. Defendants would have argued that the statements at issue were not actionable because: (i) Defendants had appropriately warned investors that the FDA "may" not agree with their assessment as to whether the Smart Sock qualified as a consumer product rather than a medical device; (ii) Owlet's risk disclosures accurately represented the regulatory status of the Smart Sock—e.g., Owlet's ongoing dialogue with the FDA and the lack of a definitive position by the FDA regarding the Smart Sock; and (iii) the statements were opinions and Defendants' "corporate optimism" regarding the Smart Sock's classification as a wellness product did not amount to fraudulent intent. ¶¶ 42-44. Moreover, if Defendants were able to successfully convince the Court (or a jury) that either Defendants' statements were factually true or that Defendants did not act with the requisite scienter, Lead Plaintiff's Section 20(a) claims against Workman would have been foreclosed as well, as these claims require Lead Plaintiff to prove a primary violation of the Exchange Act. ¶ 45.

MEMORANDUM OF POINTS AND AUTHORITIES ISO LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES

*Second*, there were also risks to Lead Plaintiff's ability to prove loss causation and damages. Lead Plaintiff would have the burden to prove at trial through complex expert testimony that the alleged disclosure of the fraud on October 4, 2021 proximately caused the decline in the prices of Owlet Securities. ¶ 46. Given the complexity of determining loss causation and measuring damages in the context of a securities fraud case, these issues would have resulted in a "battle of the experts." *Id*; *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("establishing damages at trial would lead to a 'battle of experts' . . . with no guarantee whom the jury would believe"); *see also Radient Pharms.*, 2014 WL 1802293, at *2 (approving requested attorneys' fees and noting particular challenges of proving and calculating damages).

*Finally*, even if all of the obstacles to proving liability and damages had been surmounted, Lead Plaintiff would have faced inevitable appellate proceedings, which would have tied up any recovery for years and could have eliminated it entirely. ¶ 48. The Settlement avoids all of these risks (and others) and secures a meaningful recovery for the Settlement Class. Thus, this factor supports the fee request.

### 3.      Skill Required and Quality of Work

"The experience of counsel is also a factor in determining the appropriate fee award." *In re Heritage Bond Litig.*, 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005). Indeed, "[t]he prosecution and management of a complex national class action requires unique legal skills and abilities." *Omnivision*, 559 F. Supp. 2d at 1047.

Plaintiff's Counsel have extensive experience successfully prosecuting securities class actions and other complex litigation throughout the country.[10] This experience and skill was critical to the prosecution of the Action and its successful resolution. From the outset, Lead Counsel engaged in a concerted effort to obtain the maximum recovery for the Settlement Class. Lead Counsel was assisted by two law firms—Robbins Geller and Schall Law. Robbins Geller assisted Lead Counsel in all aspects of the prosecution and resolution

---

[10] *See* Ex. 3-E (Kessler Topaz resume) and Ex. 4-E (Robbins Geller resume).

MEMORANDUM OF POINTS AND AUTHORITIES ISO LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES

of the Settlement Class's claims. Schall Law, among other things, facilitated communications with Lead Plaintiff during the course of the Action. Through Plaintiff's Counsel's efforts, Lead Plaintiff was able to plead detailed allegations based an extensive investigation, defeat Defendants' motion to dismiss the Complaint in its entirety and partially defeat Defendants' motion for reconsideration, work with a damages consultant to present strong counter-arguments to Defendants' positions, engage in a hard-fought mediation, and secure a highly favorable result for the Settlement Class. ¶¶ 6, 78-79.

The quality of opposing counsel is also important in evaluating the quality of services rendered by Plaintiff's Counsel. *See, e.g.*, *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013). Defendants in this case were represented by experienced counsel from the nationally prominent defense firm Latham & Watkins LLP. Defendants' Counsel spared no effort or cost in vigorously defending their clients. Notwithstanding this formidable opposition, Lead Counsel's ability to present a strong case and to demonstrate its willingness and ability to prosecute the Action through trial helped secure the Settlement. Accordingly, this factor supports Lead Counsel's fee request.

### 4. Plaintiff's Counsel Litigated the Action on a Contingent Basis

The significant risks that Plaintiff's Counsel shouldered for the benefit of the Settlement Class in prosecuting this Action on a fully contingent basis further support the requested fee award. "When counsel takes cases on a contingency fee basis, and litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award." *In re Apple Inc. Device Performance Litig.*, 2021 WL 1022866, at *6 (N.D. Cal. Mar. 17, 2021); *see also Ching v. Siemens Indus., Inc.*, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014) ("Courts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work."); *In re Washington Pub. Power Supply*, 19 F.3d at 1299 ("It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.").

MEMORANDUM OF POINTS AND AUTHORITIES ISO LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES

The risk of no recovery for a class and its counsel in complex cases of this type is very real. There are many examples of plaintiffs' counsel taking on the risk of pursuing claims on contingency, expending thousands of hours, and receiving no remuneration despite their diligence and expertise. *See, e.g.*, *In re Tesla, Inc. Sec. Litig.*, 2022 WL 1497559 (N.D. Cal. Apr. 1, 2022) and *Tesla*, No. 3:18-cv-04865-EMC, ECF 671 (N.D. Cal. Feb. 3, 2023) (jury verdict in defendants' favor after lengthy trial and despite court previously granting summary judgment on certain elements in plaintiff's favor); *Fosbre v. Las Vegas Sands Corp.*, 2017 WL 55878 (D. Nev. Jan. 3, 2017) (granting summary judgment to defendants after six years of litigation), *aff'd sub nom. Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*, 732 F. App'x 543 (9th Cir. 2018); *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009) (granting summary judgment to defendants after eight years of litigation).

Plaintiff's Counsel committed the necessary resources, time, and money to prosecute this Action against Defendants, without any payment or any guarantee of a fee. *See Sypherd v. Lazy Dog Rests., LLC*, 2023 WL 1931319, at *5 (C.D. Cal. Feb. 10, 2023) (Aenlle-Rocha, J.) ("Courts routinely enhance fees for attorneys who assume representation in common fund cases on a contingent basis to compensate them for the risk."); *Martinelli v. Johnson & Johnson*, 2022 WL 4123874, at *9 (E.D. Cal. Sep. 9, 2022) (33.3% award justified based on contingent risk assumed by counsel in case). Plaintiff's Counsel's fees have always been at risk and contingent on the result achieved and on this Court's approval. The contingency fee risk here supports Lead Counsel's fee request.

**5. The Requested Fee Is in Line With Fee Awards in this Circuit**

A review of Ninth Circuit fee awards supports the reasonableness of the fee requested here. In this Circuit, courts presiding over common fund settlements routinely award 33⅓% of the class recovery. *See, e.g.*, *Franklin Wireless*, 2024 WL 5179910, at *11 (awarding 33.3% of $2.7 million settlement); *Davis v. Yelp*, 2023 WL 3063823, at *2 (N.D. Cal. Jan. 27, 2023) (awarding 33.3% of $22.25 million settlement and noting "[t]hese fees, which exceed the Ninth Circuit's benchmark, are justified by the positive result obtained, the

MEMORANDUM OF POINTS AND AUTHORITIES ISO LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES

contingent fee risk, the hours dedicated, the financial commitment, and the important public policy advanced by securities litigation"); *Odonate Therapeutics*, 2022 WL 1997530, at *6 (awarding 33⅓% of $12.75 million settlement); *Khoja v. Orexigen Therapeutics, Inc.*, 2021 WL 5632673, at *10 (S.D. Cal. Nov. 30, 2021) (awarding 33% of $4.8 million settlement); *In re Banc of Cal. Sec. Litig.*, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (awarding one-third of $19.75 million settlement); *Jiangchen v. Rentech, Inc.*, 2019 WL 6001562, at *1 (C.D. Cal. Nov. 8, 2019) (awarding 33⅓% of $2.05 million settlement ); *In re K12 Inc. Sec. Litig.*, 2019 WL 3766420, at *1 (N.D. Cal. July 10, 2019) (awarding 33% of $3.5 million settlement); *Lidoderm*, 2018 WL 4620695, at *4 (awarding 33⅓% of $104,750,000 settlement and noting "a fee award of one-third is within the range of awards in this Circuit"); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *23 (C.D. Cal. June 10, 2005) (awarding fee of 33.33% of $27,783,000 settlement).

A 33⅓% award is supported by awards made in other class action cases and is appropriate here, especially given the recovery obtained for the Settlement Class.

### D.    A Lodestar Cross-Check Confirms Reasonableness of Requested Fee

As noted above, courts may (but are not required to) cross check the proposed fee award against counsel's lodestar. *Farrell v. Bank of Am. Corp.*, N.A., 827 F. App'x 628, 630 (9th Cir. 2020) (refusing to mandate "a [cross-check] requirement"). When the lodestar is used as a cross check, "the focus is not on the necessity and reasonableness of every hour of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007). Under the lodestar method, courts routinely award positive multipliers to account for the contingent risk involved in a case and the quality of the attorneys' work. *See Vizcaino*, 290 F.3d at 1051 (noting "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases"). Here, the requested fee results in a *negative* multiplier on Plaintiff's Counsel's lodestar.

MEMORANDUM OF POINTS AND AUTHORITIES ISO LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES

### 1.    The Number of Hours Devoted to the Action Was Reasonable

As detailed in the Joost Declaration, Plaintiff's Counsel have litigated this Action for three years on behalf of the Settlement Class. Specifically, Plaintiff's Counsel's efforts included: (i) conducting an extensive investigation into the alleged misconduct and legal research to support the Settlement Class's claims; (ii) preparing the detailed Complaint; (iii) opposing Defendants' motion to dismiss the Complaint; (iv) opposing Defendants' motion for reconsideration; (v) obtaining documents from the FDA by making a request pursuant to the Freedom of Information Act; (vi) commencing discovery; (vii) consulting with a damages expert; and (viii) preparing for and engaging in settlement negotiations with Defendants, including a formal mediation session facilitated by Mr. Murphy. ¶ 6. In total, through December 23, 2025, Plaintiff's Counsel devoted over 2,400 hours of attorney and other professional support staff time for the benefit of the Settlement Class. ¶ 77.[11] Plaintiff's Counsel's total lodestar, derived by multiplying the hours each attorney and professional support staff employee spent on the Action by their current hourly rates, is $1,789,623.00. *See id.*[12]

### 2.    Plaintiff's Counsel's Hourly Rates Are Reasonable

A reasonable hourly rate is "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Fowler v. Wells Fargo Bank, N.A.*, 2019 WL 330910, at *6 (N.D. Cal. Jan. 25, 2019). The hourly rates utilized by Plaintiff's Counsel in calculating their lodestar range from: (i) $805 to $1,270 per hour for partners; (ii) $395 to $750 per hour for other attorneys; (iii) $370 to $660 per

---

[11] Lead Counsel will continue to perform legal work on behalf of the Settlement Class should the Court approve the Settlement. Additional resources will be expended assisting Settlement Class Members with their Claims and related inquires and working with SCS to ensure the smooth progression of claims processing and distribution of the Net Settlement Fund. No additional legal fees will be sought for this work.

[12] It is well-established and appropriate to calculate counsel's lodestar based on current, rather than historical rates, as a method of compensating for the delay in payment and the loss of interest on the funds. *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *White v. Experian Info. Solutions, Inc.*, 2018 WL 1989514, at *15 (C.D. Cal. Apr. 6, 2018) ("Courts in this Circuit regularly apply current billing rates in evaluating fee requests in multi-year litigation to account for the delay in payment."), *aff'd in part*, *rev'd in part sub nom.*, *Radcliffe v. Hernandez*, 794 F. App'x 605 (9th Cir. 2019).

MEMORANDUM OF POINTS AND AUTHORITIES ISO LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES

hour for in-house investigators; and (iv) $320 to $435 per hour for paralegals. ¶ 76. These hourly rates are within the range of reasonable rates for attorneys and professional support staff working on sophisticated class action litigation in this District and comparable jurisdictions. *See, e.g.*, *Hope Med. Enters., Inc. v. Fagrgon Compounding Serv., LLC*, 2022 WL 826903, at *3 (C.D. Cal. Mar. 14, 2022) (finding "rates of $895 to $1,295 per hour for partners and counsel, and between $565 and $985 for associates" to be reasonable); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving fee using "billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals").[13]

By way of comparison, Defendants' Counsel, Latham & Watkins LLP, reported rates as high as $2,325 for partners and $1,565 for associates in a recent bankruptcy filing. *See* Suppl. to Tenth Interim Fee Appl., *In re AIG Fin. Prods. Corp.*, No. 22-bk-11309 (MFW) (Bankr. D. Del. Dec. 3, 2025), ECF 737. These rates exceed Plaintiff's Counsel's rates.

### 3. The Requested Fee Reflects a Negative Multiplier and Thus a Substantial Discount on Plaintiff's Counsel's Lodestar

"Although an analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit, a cross-check of the fee request with a lodestar amount can demonstrate the fee request's reasonableness." *Amgen*, 2016 WL 10571773, at *9; *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *10 (N.D. Cal. July 22, 2019) (noting "lodestar may provide a useful perspective on the reasonableness of a given percentage award"). As noted above, under the lodestar method, courts routinely award positive multipliers to account for the contingent nature or risk involved in a case and the quality of the attorneys' work.

As detailed in the Joost Declaration, Plaintiff's Counsel exerted substantial effort in this Action over the past three years in the face of an aggressive and determined defense.

---

[13] "Courts may find hourly rates reasonable based on evidence of other courts approving similar rates or other attorneys engaged in similar litigation charging similar rates." *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010).

MEMORANDUM OF POINTS AND AUTHORITIES ISO LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES

Through December 23, 2025, Plaintiff's Counsel spent over 2,400 hours of attorney and other professional support staff time prosecuting the Action. ¶ 77. Plaintiff's Counsel's lodestar, derived by multiplying the hours spent on the Action by each attorney and professional support staff employee by their current hourly rates, is $1,789,623.00. *Id.*

Accordingly, the requested 33⅓% fee, which equates to $1,166,167 (before interest), represents a multiplier of approximately 0.65 on Plaintiff's Counsel's lodestar. In other words, the requested fee represents roughly 65% of the lodestar value of the time that Plaintiff's Counsel dedicated to the Action or a discount of 35%. This "negative" or fractional multiplier is well below the range of positive multipliers—often between one and four—commonly awarded in comparable litigation. *See Vizcaino*, 290 F.3d at 1051-52 (approving 3.65 multiplier and finding "most" multipliers to be in the range of 1 to 4).

Courts repeatedly recognize that a percentage fee request that is less than counsel's lodestar provides strong confirmation of its reasonableness. *See, e.g.*, *Yelp*, 2023 WL 3063823, at *2 ("[A] multiplier of less than one suggests that the negotiated fee award is reasonable."); *Khoja*, 2021 WL 5632673, at *10 (where 33% fee request resulted in fractional multiplier of 0.528, the court found that the "lodestar cross-check . . . provides a strong indication of the reasonableness of Lead Counsel's requested percentage award"); *Amgen*, 2016 WL 10571773, at *9 ("[C]ourts have recognized that a percentage fee that falls below counsel's lodestar strongly supports the reasonableness of the award."); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 515 (S.D.N.Y. 2009) (finding "no real danger of overcompensation" given that the requested fee represented a discount to counsel's lodestar).

Here, the lodestar cross-check and resulting *negative* multiplier further underscore the reasonableness of the fee request and justify its approval.

## III. PLAINTIFF'S COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

Lead Counsel also requests payment of $116,541.89 from the Settlement Fund for expenses reasonably incurred in prosecuting the Action. These expenses are properly

MEMORANDUM OF POINTS AND AUTHORITIES ISO LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES

recovered by counsel. *See Fleming v. Impax Lab'ys, Inc.*, 2022 WL 2789496, at \*9 (N.D. Cal. July 15, 2022) ("Attorneys who create a common fund for the benefit of a class are entitled to reimbursement of reasonable litigation costs from that fund."); *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (counsel may recover "those out-of-pocket expenses that would normally be charged to fee-paying client"); *Destefano*, 2016 WL 537946, at \*22 ("[C]ourts throughout the Ninth Circuit regularly award litigation costs and expenses—including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses—in securities class actions, as attorneys routinely bill private clients for such expenses in non-contingent litigation.").[14]

The expenses sought by Plaintiff's Counsel are of the type that are charged to hourly paying clients and were required to prosecute the Action. These expenses include, among others, expert/consultant fees, online research, travel-related expenses, photocopying, mail services, and mediation. These expenses are not duplicated in counsel's hourly rates.

The largest expense—totaling $88,607.50 or approximately 76% of Plaintiff's Counsel total expenses—was for the retention of Lead Plaintiff's damages consultant, Peregrine Economics. ¶ 84. Lead Counsel consulted with Peregrine at different stages in the Action and in connection with mediation. Lead Counsel also worked with Peregrine to develop the Plan of Allocation. This consultant was critical to the prosecution and resolution of the Action as its expertise allowed Lead Counsel to fully frame the issues, make a realistic assessment of provable damages, structure resolution of the claims, and develop a fair and reasonable plan for allocating the Settlement proceeds to the Settlement Class. ¶¶ 59, 84.

In addition to the foregoing expense, Plaintiff's Counsel also incurred: (i) $16,250.00 for the mediation with Mr. Murphy; (ii) $6,490.41 for online research; (iii) $3,523.96 for travel-related expenses; and (iv) $787.50 for filing fees. ¶¶ 85-87, Exs. 3-D and 4-D. The notices advised that Lead Counsel would seek payment of Litigation Expenses (which

---

[14] *See* Exhibits 3 and 4 for Plaintiff's Counsel's expenses by category.

MEMORANDUM OF POINTS AND AUTHORITIES ISO LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES

might include reimbursement of Lead Plaintiff's reasonable costs as discussed below) in an amount not to exceed $180,000. The expenses requested are below the amount set forth in the notices and, to date, no objections to the maximum expense request have been received. ¶ 66.[15] As such, Lead Counsel's request for Litigation Expenses should be approved.

## IV.   LEAD PLAINTIFF SHOULD BE AWARDED HIS REASONABLE COSTS UNDER THE PSLRA

The PSLRA provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4); *see also In re Stable Road Acquisition Corp.*, 2024 WL 3643393, at *16 (C.D. Cal. Apr. 23, 2024) ("Reimbursement of such costs are allowed because it encourages participation of plaintiffs in the active supervision of their counsel."). Consistent with the PSLRA, Lead Plaintiff seeks an award of $5,000 for the time he dedicated to the Action.

Here, Dr. Tweito took an active role in the Action and dedicated personal time to prosecuting the Action on behalf of the Settlement Class. *See* Tweito Decl., ¶¶ 5-6. Dr. Tweito has: moved to serve as lead plaintiff in the Action; communicated regularly with his counsel regarding the progress of the case through telephone calls and email; reviewed significant filings in the Action and Court orders; consulted with his counsel regarding the possibility of pursuing mediation and the status of the Parties' settlement negotiations; and evaluated and approved the terms of the Settlement. *See* Tweito Decl., ¶ 5. The foregoing efforts are precisely the types of activities courts have found to support reimbursement to class representatives. *See Stable Road*, 2024 WL 3643393, at *16 (awarding $10,000 to plaintiff who moved for lead plaintiff, produced trading records, regularly communicated with counsel; reviewed significant pleadings and briefs; reviewed court orders; consulted with counsel regarding settlement negotiations, and evaluated and approved settlement).

---

[15] Any objections will be addressed in Lead Counsel's January 23, 2026 reply.

MEMORANDUM OF POINTS AND AUTHORITIES ISO LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES

Moreover, courts in this Circuit, including this Court, have approved similar awards. *See, e.g., In re Honest Co., Inc. Sec. Litig.*, 2025 WL 2205810, at *2 (C.D. Cal. July 29, 2025) (awarding $7,425 to plaintiff); *In re ImmunityBio, Inc. Sec. Litig.*, 2025 WL 1686263, at *16 (S.D. Cal. June 16, 2025) (awarding $10,000 to plaintiff); Order Granting Lead Counsel's Mot. for an Award of Att'ys Fees & Litig. Expenses & for an Award of Lead Pl., *Olsson v. PLDT Inc.*, No. 23-cv-00885 (C.D. Cal. Sep. 17, 2024), ECF 71 (Aenlle-Rocha, J.) (awarding plaintiff $5,000 for "his time and expenses representing the Class"); Order Granting in part Pl.'s Mot. for an Award of Att'ys Fees & Expenses & Award to Lead Pl., *Oh v. Hanmi Fin. Corp.*, No. 20-cv-02844 (C.D. Cal. Sep. 17, 2024), ECF 98 (Aenlle-Rocha, J.) (awarding plaintiff $10,000 "as reimbursement for his lost time and expenses in connection with his prosecution of the Action"); *Yelp*, 2023 WL 3063823, at *2 (awarding $15,000 to plaintiff); *Khoja*, 2021 WL 5632673, at *11 (awarding $9,230 to plaintiff); Order Awarding Att'ys Fees & Litig. Expenses at 3, *In re Snap Inc. Sec. Litig.*, No. 17-cv-03679 (C.D. Cal. Mar. 9, 2021), ECF 400 (approving awards to plaintiffs ranging from $2,500 to $36,750); *Ferreira v. Funko, Inc.*, 2022 WL 22877154, at *13 (C.D. Cal. Dec. 13, 2022) (awarding $14,100 and $18,000 to plaintiffs); *Todd v. STAAR Surgical Co.*, 2017 WL 4877417, at *6 (C.D. Cal. Oct. 24, 2017) (awarding $10,000 to plaintiff). The proposed award to Lead Plaintiff is fully justified under the PSLRA and warrants approval.

## V.    CONCLUSION

Lead Counsel respectfully requests the Court: (i) award attorneys' fees in the amount of 33⅓% of the Settlement Fund; (ii) approve payment of Plaintiff's Counsel's Litigation Expenses in the amount of $116,541.89; and (iii) approve an award to Lead Plaintiff in the amount of $5,000.

MEMORANDUM OF POINTS AND AUTHORITIES ISO LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES

DATED:  January 2, 2026

Respectfully submitted,

KESSLER TOPAZ MELTZER
  & CHECK, LLP
JENNIFER L. JOOST (296164)

_____
/s/ Jennifer L. Joost
JENNIFER L. JOOST

One Sansome Street, Suite 1850
San Francisco, CA  94104
Telephone:  415/400-3000
415/400-3001 (fax)
jjoost@ktmc.com

*Counsel for Lead Plaintiff Dr. Thomas E. Tweito and Lead Counsel for the Section 10(b) Class*

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART
DEBRA J. WYMAN
ASHLEY M. PRICE
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
debraw@rgrdlaw.com
aprice@rgrdlaw.com

*Additional Counsel for Lead Plaintiff Dr. Thomas E. Tweito and for the Section 10(b) Class*

SCHALL LAW FIRM
BRIAN SCHALL (290685)
1880 Century Park East, Suite 404
Los Angeles, CA  90067
Telephone:  310/301-3335
310/338-0192 (fax)
brian@schallfirm.com

*Additional Counsel*

MEMORANDUM OF POINTS AND AUTHORITIES ISO LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES

**LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Lead Plaintiff Dr. Thomas E. Tweito and Lead Counsel for the Section 10(b) Settlement Class, certifies that this brief contains 6,996 words, which complies with the word limit of L.R. 11-6.1.

DATED: January 2, 2026

/s/ Jennifer L. Joost
JENNIFER L. JOOST

MEMORANDUM OF POINTS AND AUTHORITIES ISO LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES